## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTINE M. SEARLE, | No. |
| Plaintiff, | |
| v. | |
| JOHN M. ALLEN ("ALLEN"), IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AS THE TREASURER OF MARICOPA COUNTY; ARAPAHO LLC; AMERICAN PRIDE PROPERTIES, LLC; and JOHN DOE, JANE DOE, BLACK CORPORATIONS, WHITE PARTNERSHIPS, AND GREEN LIMITED LIABILITY COMPANIES, | **COMPLAINT FOR DECLARTORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| Defendants. | |

Plaintiff Christine M. Searle ("Searle") brings this action for the unconstitutional taking of her property by Defendants, in violation of the Takings Clause of the Fifth Amendment to the United States Constitution and the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

## <u>INTRODUCTION</u>

1.      This case challenges a practice permitted by Arizona law, where small, sometimes incredibly minor, amounts of delinquent taxes can lead to the seizure of property and eviction of its owners. Under these statutes, the State or private entities may take possession and title of the property or sell it, often for amounts well exceeding the unpaid taxes. Consequently, the lien purchaser retains all of the homeowner's equity in the property.

2.      Ms. Searle is a 70-year-old woman, who has been wrongfully deprived of her property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home") that she had owned for 18 years.

3.      Defendant Arapaho LLC purchased the 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's Home stemming from Ms. Searle's delinquent taxes.

4.      In 2021, Defendant Arapaho Investment Properties, LLC began foreclosure proceedings on those tax liens.

5.      Defendant Arapaho LLC has never provided to Ms. Searle any assurance that she is able to retain the delta in the value between her home and the purchase price of the lien against her home.

6.      As the Supreme Court found in *Tyler v. Hennepin Cnty., Minnesota*, "The taxpayer must render unto Caesar what is Caesar's, but no more." 598 U.S. 631 (2023). In *Tyler*, the Supreme Court of the United States found that the state's retention of funds following a virtually identical forfeiture process was in direct contravention of the United States Constitution and constitutes a taking under the Fifth Amendment. *Id.* The analysis should be no different where the state delegates the ability to retain funds to a third party.

7.      "The Takings Clause 'was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Id.* at 647 (quoting *Armstrong v. United States*, 364 U.S. 40 (1960)). In fact, the Court specified in *Tyler*, "A taxpayer who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed." *Id.*

8.     Here, the numbers are even more grossly disproportional and offensive to the Constitution. At the time of the foreclosure action leading to the issuance of the treasurer's deed, Ms. Searle owed $1,607.68 in delinquent taxes. Meanwhile, her house is worth several hundred thousand dollars.

9.     Defendants have constructive knowledge of the Supreme Court's decision in *Tyler*, yet have not provided Ms. Searle with just compensation. On the contrary, they have notified Ms. Searle that they will finalize eviction proceedings against her son, who is her current tenant. *See* Exhibit 1.

10.     The practice of taking the entire property, including the surplus value, in excess of the unpaid taxes and associated charges is in violation of both the Arizona and United States Constitutions. This includes the constitutional prohibitions on the taking of private property for without just compensation, as well as the imposition of excessive fines.

11.     Plaintiff seeks an injunction against Defendants preventing eviction proceedings on the basis that the taking at issue is not for public use, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation.

12.     Plaintiff seeks an injunction against Defendants preventing eviction proceedings on the basis that the taking at issue is an excessive fine, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation.

13.     At a minimum, Plaintiff seeks just compensation for the confiscation of her private property under 42 U.S.C. § 1983, and applicable Arizona statutes. Additionally, Plaintiff seeks recovery of attorney's fees as permitted under Arizona law and 42 U.S.C. § 1988, reimbursement for expenses and costs of the suit, and any other relief deemed just and appropriate by the Court.

3

## PARTIES

14.    Plaintiff Christine M. Searle is an individual residing in Arizona who purchased her Home in 2005.

15.    Defendant John M. Allen ("Allen") is sued in his individual and official capacity as the Treasurer of Maricopa County. His office is responsible for the administration of tax collection, imposition and sale of tax liens, and related proceedings in Maricopa County. *See* Ariz. Rev. Stat. Ann. § 42-18001; *see also* Ariz. Rev. Stat. Ann. § 42-18101.

16.    Defendant Arapaho LLC is a limited liability company involved in the purchase of tax lien certificates and foreclosure of tax liens, including the purchase of the tax lien against the Home in this matter.

17.    Defendant American Pride Properties, LLC is a limited liability company that now owns the Home.

18.    Defendants John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies are fictitious names for any Defendants not named of whom the Plaintiff later may become aware, who may have an interest in the real property at issue or been involved in the taking of Searle's Home.

19.    All Defendants were acting and/or continue to act under color of state law at all times relevant hereto. All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

20.    Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 & 1988 and 28 U.S.C. § 2201 for deprivations of Plaintiff's rights secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

21.     This Court has jurisdiction over this complaint under 28 U.S.C. § 1343, which provides for original jurisdiction in this Court for suits brought pursuant to 42 U.S.C. § 1983.  The Court also has jurisdiction under 28 U.S.C. § 1331 because this matter arises under the Constitution and laws of the United States.

22.     Venue is appropriate in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of property that is the subject of the action is situated within this district.

## STATEMENT OF FACTS
### Arizona Statutory Scheme Allowing Equity Theft

23.     The Arizona Legislature has created a statutory scheme under Title 42, Chapter 18 of the Arizona Revised Statutes in which property owners can be robbed of their hard-earned home equity over relatively miniscule tax liens.

24.     In Arizona, tax liens are created under Ariz. Rev. Stat. Ann. § 42-17153, which establishes that taxes levied on property become liens on the assessed property from January 1 of the tax year, having priority over most other liens. This statute works in tandem with Ariz. Rev. Stat. Ann. § 42-17154, which extends the liability for taxes beyond the specific property assessed, allowing for mutual liability between real and personal property.

25.     The County Treasurer, as tax collector, has the additional duty of securing payment on delinquent taxes by selling liens and/or foreclosing the right to redeem those liens. *See* Ariz. Rev. Stat. Ann. § 42-18001; *see also* Ariz. Rev. Stat. Ann. § 42-18101. Once sold, the County Treasurer must issue a certificate of purchase to the purchaser or assignee, which constitutes prima

facie evidence of a valid purchase. *See* Ariz. Rev. Stat. Ann. § 42-18118; *see also* Ariz. Rev. Stat. Ann. § 42-18119.

26.     Should the lien not be purchased by a private party as outlined above, the lien is assigned to the State by the County Treasurer. *See* Ariz. Rev. Stat. Ann. § 42-18113.

27.     After three years from the sale or assignment of a tax lien, the purchaser or the State may initiate an action to foreclose the right to redeem if the lien is not redeemed. *See* Ariz. Rev. Stat. Ann. § 42-18201.

28.     If the lien is not redeemed and the right to redeem is successfully foreclosed by the resulting judgment, the County Treasurer is directed to deliver a treasurer's deed conveying the property to the purchaser or the State as assignee. *See* Ariz. Rev. Stat. Ann. § 42-18204.

29.     As part of this process, the foreclosure judgment removes all legal and equitable right, title, or interest in the property from the previous owner of the property who lost the right to redeem. *See* Ariz. Rev. Stat. Ann. § 42-18204. In other words, if the right to redeem is foreclosed, the previous owner is deprived of all value, including all home equity, that they had accrued in the property, due merely to owing delinquent taxes.

30.     Should the State be assigned the lien and successfully foreclose the right to redeem, a board of supervisors may then sell the property at auction. If the sale price exceeds the amount of the lien (including the related interest, penalties, etc.), then the excess funds, appropriately, must be paid back to the owner who was dispossessed of their property. *See* Ariz. Rev. Stat. Ann. § 42-18303.

31.     No such provision applies where the purchaser of the tax lien is a private party, however. Thus, where a private party forecloses the right to redeem, it reaps a significant windfall by effectively seizing the excess home equity, without any surplus returning to the previous owner.

**The Property and the Tax Lien**

32.     In 2005, Christine Searle purchased Assessor Parcel No. 302-35-259, which is the property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home"). Since then, she has been the sole owner and enjoyed the benefits of home ownership including renting it out as one of her sole forms of income in retirement.

33.     The Maricopa County Assessor has valued this property at $376,800 for the 2024 tax year. As is common with many areas, the market value of this property is likely significantly higher than this valuation. For example, although online real estate estimates are not as reliable as individual professional appraisals, the Zillow estimated range for purchasing Ms. Searle's house is between $425,000-470,000.[1] Redfin, another real estate website, estimates the Home's value at $425,000-505,000.[2] Finally, Trulia and Realtor.com list the estimated value as $447,800,[3] and between $409,818-463,000,[4] respectively.

---

[1] 513 S ASH St, Gilbert, AZ 85233, Zillow (Dec. 27, 2023) https://www.zillow.com/homedetails/513-S-Ash-St-Gilbert-AZ-85233/8180247_zpid/.
[2] 513 S ASH St, Gilbert, AZ 85233, REDFIN (Dec. 27, 2023), https://www.redfin.com/AZ/Gilbert/513-S-Ash-St-85233/home/28096951.
[3] 513 S ASH St, Gilbert, AZ 85233, Trulia (Dec. 27, 2023), https://www.trulia.com/home/513-s-ash-st-gilbert-az-85233-8180247.
[4] 513 S ASH St, Gilbert, AZ 85233, REALTOR (Dec. 27, 2023), https://www.realtor.com/realestateandhomes-detail/513-S-Ash-St_Gilbert_AZ_85233_M29465-56767

34.     Defendant Arapaho LLC purchased the 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's Home stemming from Ms. Searle's delinquent taxes.

35.     In 2021, Defendant Arapaho Investment Properties, LLC began foreclosure proceedings on those tax liens. According to Defendant Arapaho's verified complaint, at the time of the foreclosure action, Ms. Searle owed $1,607.68 in delinquent taxes.

36.     After a legal dispute regarding whether Ms. Searle was provided adequate notice, Defendant Arapaho won a default judgment in accordance with the statutory scheme outlined above and was issued a treasurer's deed for the Home.

37.     Because of the judgment and the resulting issuance of the treasurer's deed, Ms. Searle has been deprived of all of the equity she had built in her home in addition to one of her sole streams of income in retirement via renting the house.

38.     Had the State of Arizona been the assignee of the tax lien, rather than a private entity, she would be entitled to the difference of any sale price and the amount she owed, plus the related costs.

39.     Unfortunately, that is not the case. Instead, Defendant Arapaho will obtain a massive windfall: obtaining a property valued in the mid-$400,000s over a tax lien that at the time of foreclosure, was roughly $1,600.

**States May Not Seize Property for a Private Purpose, nor Seize Property for a Public Purpose Without Providing Just Compensation, nor Levy an Excessive Fine**

40.     The United States and Arizona Constitutions prohibit the taking of private property without a "public use." Moreover, even where a public use can be shown, "just compensation" must be provided if such property is taken.

41.     Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made . . ." This provision, akin to its federal counterpart, restricts takings absent a public purpose and ensures compensation for property owners.

42.     The Fifth Amendment to the United States Constitution articulates similar restrictions, declaring "nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment extends these protections to the states, affirming, "No State shall... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

43.     Both the United States and Arizona Constitutions also prohibit excessive fines. The Eighth Amendment to the United States Constitution, applicable to the states, and Article 2, Section 15 of the Arizona Constitution, both stipulate: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

44.     Despite these constitutional guarantees, Arizona, through its statutory scheme described above, permits the seizure of property from homeowners with unpaid real property taxes,

transferring title to the state or third parties, and deprives the original property owner of the equity or value of their property after taxes and charges are satisfied. Furthermore, there is no provision for the original owner to reclaim this excess equity or surplus from a private party.

45.     By assuming control over the property, transferring title, and keeping proceeds exceeding the owed amount, Defendants effectuate a taking of private property without just compensation and impose an excessive fine beyond any penalties and tax arrears.

46.     The principle that government should not have the unchecked authority to take property from one individual and give it to another has been a foundational concept in American jurisprudence, underscored by cases like *Calder v. Bull*, and enshrined in both the U.S. and Arizona Constitutions as a safeguard against government overreach. 3 U.S. 386 (1798) ("It is against all reason and justice for a people to entrust a legislature" with the power to enact "a law that takes property from A and gives it to B.")

47.     While case law concerning unconstitutional takings often addresses eminent domain and inverse condemnation, the overarching legal principle is clear: the government must fairly compensate the owner whenever a taking occurs, thereby protecting individuals from bearing disproportionate costs meant for the public benefit.

48.     A home or other real property, as well as the equity or value remaining after settling valid taxes and charges, is unequivocally protected under the U.S. and Arizona Constitutions. The concept that a person's home is their sanctuary is deeply embedded in our legal system, as noted in *Lombard v. Louisiana* by Justice Douglas, who asserted "The principle that a man's home is his castle is basic to our system of jurisprudence. 373 U.S. 267 (1963). Equity in real property holds the same protections and is governed by the same principles as any other form of property.

49.     The U.S. Supreme Court has recognized that a homeowner is entitled to any equity he or she may have realized since the purchase of the property: "The public may not by any means confiscate the benefits . . . of the owner's bargain." *Olson v. United States,* 292 U.S. 246, 255, 54 S. Ct. 704, 708, 78 L. Ed. 1236 (1934) (emphasis added). Should this sort of taking occur, "[The owner] is entitled to be put in as good a position as pecuniarily as if his property had not been taken." *Id*.

50.     Defendants actions violate the guiding principles of both the U.S. and Arizona Constitutions, and the fundamental intent to protect homeowners from the severe consequences of tax delinquency.

51.     When Defendants take real property pursuant to property tax seizure and retain the surplus beyond the tax debt owed, such retention transcends a mere remedial action and assumes a punitive or deterrent character. This retention of value or equity from Ms. Searle thus engages the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution.

52.     In alignment with the United States Constitution, proportionality underlies the constitutional examination under the Excessive Fines Clause of the Arizona Constitution. The extent of forfeiture must be commensurate with the severity of the underlying offense it intends to penalize.

53.     Defendants' retention of the surplus following the seizure of Ms. Searle's Home, which is estimated to be worth well over 200 times that of the amount of the remaining tax balance, violates the Excessive Fines Clause as enshrined in both the Arizona and United States Constitutions as an unjust, excessive fine.

54.     Similar when the State is the assignee in Arizona, federal law provides that excess proceeds from a tax sale belong to and must be returned to the former owner. *See*, e.g., *United States v. Rodgers*, 461 U.S. 677, 690-94 (1983) (in a forced sale to recover delinquent federal taxes under 26 U.S.C. § 7403, government may not ultimately collect, as satisfaction for the indebtedness owed to it, more than the amount actually due. If seizure of property extends beyond property necessary to satisfy tax debt, the excess must be repaid as compensation for the taking).

## CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF

### TAKING OF PRIVATE PROPERTY WITHOUT A VALID PUBLIC USE IN VIOLATION OF THE UNITED STATES CONSTITUTION

55.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

56.     The Defendants actions violate Plaintiff's constitutional rights for the reasons stated in the Second Claim For Relief.

57.     Defendants, by seizing private property without a legitimate public use, are in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

58.     There is no public use rationale to justify the appropriation or retention of surplus equity from property tax sales, particularly when such equity exceeds the amount of taxes and related charges due. The U.S. Constitution prohibits such arbitrary exercises of governmental authority.

59.     To the extent that Arizona statutes allow or seem to permit Defendants, or any of them, to seize private property without public use, such statutes, including specific sections of the Arizona Revised Statutes relevant to property tax liens, are unconstitutional.

**SECOND CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE UNITED STATES CONSTITUTION**

60.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

61.     Defendants acted pursuant to an official, Arizona statutory scheme at all times.

62.     The Fifth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, states, "nor shall private property be taken for public use, without just compensation."

63.     Arizona's statutes in Title 42, Chapter 18 governing the sale of tax liens and the disposition of proceeds provide does not make any provision for returning the surplus of appropriated property to the original owner.

64.     These statutes facilitate and necessitate the appropriation of Plaintiff's private property without just compensation, thereby violating Plaintiff's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

65.     The cause of action for an unconstitutional taking is presented as a direct claim under the Fifth Amendment, as incorporated by the Fourteenth Amendment to the United States Constitution.

66.     Plaintiff has suffered harm and damage due to the lack of just compensation for the taken property and is therefore entitled to appropriate relief including compensatory damages.

67.     Plaintiff seeks a ruling that the Constitution demands that a direct claim for a taking be available under the Fifth Amendment, regardless of any statutory direction otherwise. *See*

*Devillier v. State of Texas*, 63 F.4[th] 416, 434 (5th Cir. 2023) (Oldham, J., dissenting from denial of en banc review) ("At the Founding, it was clear that the Takings Clause afforded a remedy for uncompensated takings separate and apart from any statute.").[5]

### THIRD CLAIM FOR RELIEF

### THE VIOLATION OF PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983

68.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

69.    Alternatively, this cause of action is brought under 42 U.S.C. § 1983, seeking an order directing Defendants to adhere to the mandates of the Fifth, Eighth, and Fourteenth Amendments by compensating Plaintiff justly for the property taken without just compensation.

70.    Ms. Searle's rights to her property and the equity therein have been unequivocally infringed under the U.S. and Arizona Constitutions. The Constitutions protect against the taking of private property without just compensation and ensure that equity in real property is treated with the same regard as any other form of property. The Supreme Court's precedent in *Olson* reinforces this protection by stating that the public cannot confiscate the benefits of a property owner's bargain. 292 U.S. 246, 255, 54 S. Ct. 704, 708, 78 L. Ed. 1236 (1934) (emphasis added). These constitutional provisions are at the heart of Ms. Searle's claim, as her home and its accrued equity have been taken without just compensation.

---

[5] A writ of certiorari was granted in this case, and oral argument before the U.S. Supreme Court is scheduled for January 16, 2024. *See* Supreme Court of the United States October Term 2023, Monthly Oral Argument Calendar for Session Beginning January 8, 2024, at https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalJanuary2024.pdf

71.     All Defendants were acting and/or continue to act under color of state law at all times relevant hereto.

72.     All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

73.     Defendants' seizure and subsequent retention of Ms. Searle's property, including the substantial equity that she accumulated over 18 years, are the proximate cause of Ms. Searle's significant and demonstrable harm.

74.     Given these violations, Ms. Searle seeks redress under 42 U.S.C. § 1983, which entitles her to seek compensation for the deprivation of her constitutional rights. This includes just compensation for the property taken, as well as any additional relief deemed appropriate by the Court, such as attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF

### TAKING OF PRIVATE PROPERTY WITHOUT A VALID PUBLIC OR PRIVATE USE IN VIOLATION OF THE ARIZONA CONSTITUTION

75.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

76.     Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made . . ." This clause mandates that the government must provide or secure just compensation before seizing private property for public use.

77.    The taking of the surplus value of the property does not fit in any of the enumerated permissible private takings.

78.    There is no public use rationale under Arizona law to support or justify allowing the retention of surplus or equity when that equity exceeds the amount of taxes and associated charges owed. The Arizona Constitution prohibits such arbitrary exercises of governmental authority.

79.    Arizona statutes, particularly those found in Title 42, Chapter 18 of the Ariz. Rev. Stat. Ann., allowing Defendants to seize Plaintiff's property for purposes other than public use or one of the enumerated private uses, are unconstitutional.

80.    By appropriating private property without a public use, or one of the enumerated privates uses, Defendants are in violation of the Arizona Constitution.

81.    Plaintiff has suffered harm and damages due to the unconstitutional taking of her property without a public use and is entitled to just compensation and other appropriate relief.

**FIFTH CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE ARIZONA CONSTITUTION**

82.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

83.    As previously noted, the Arizona Constitution prohibits the taking of private property without just compensation regardless of the purported use of the taking.

84.    Arizona statutes, while dictating that any surplus earned by the State following a sale must be returned to the original owner, are silent regarding the surplus after a private transfer.

85.     As such, Ms. Searle has had her property taken without being justly compensated for the taking and has no available mechanism to recover the surplus other than filing this action.

86.     These tax forfeiture statutes allow the seizure of Plaintiff's private property without just compensation, thereby infringing upon the Plaintiff's constitutional rights under the Arizona Constitution.

87.     Plaintiff has been harmed and incurred damages due to the unconstitutional taking of her property without just compensation. She is entitled to damages and other relief as a result of this violation of her constitutional rights.

## SIXTH CLAIM FOR RELIEF

### EXCESSIVE FINES VIOLATION OF THE UNITED STATES CONSTITUTION

88.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

89.     The Eighth Amendment to the United States Constitution safeguards the people against the imposition of excessive fines.

90.     The seizure of the entire value of Plaintiff's property, including the excess or surplus equity, due to non-payment of relatively small amounts of delinquent taxes constitutes an excessive fine under the Eighth Amendment to the United States Constitution. *See Tyler*, 598 U.S. 631, 649-50 (Gorsuch, J., concurring, with Jackson, J., joining) ("Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.")

91.    Defendant Allen is responsible for the administration of tax collection, imposition and sale of tax liens, and related proceedings in Maricopa County. These tax lien seizures effectively operate as grossly excessive fines and thus prohibited under the Eighth Amendment.

92.    Plaintiff has suffered, and continues to suffer, significant and irreparable harm a permanent injunction is not issued, due to the ongoing risk of property rights violations by Defendants.

93.    Plaintiff has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his Constitutional rights.

94.    Defendants would not be harmed by the issuance of injunctive relief prohibiting them from violating Plaintiff's constitutional rights.

95.    The public interest would be served by the issuance of injunctive relief in this matter because "upholding constitutional rights serves the public interest." *Newsom*, 354 F.3d at 261 (4th Cir. 2003); *Homans*, 264 F.3d at 1244.

96.    Plaintiff is entitled to an award of damages against each Defendant named in his or her individual capacity in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### EXCESSIVE FINES VIOLATION OF THE ARIZONA CONSTITUTION

97.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

98.    Article 2, Section 15 of the Arizona Constitution prohibits the imposition of excessive fines.

99.     The confiscation of the entire value of Plaintiff's property, including the excess or surplus equity, due to the non-payment of relatively small amounts of delinquent taxes constitutes an excessive fine under Article 2, Section 15 of the Arizona Constitution.

100.     Defendants are engaged in the assessment and collection of fines that are excessive and thus prohibited under the Arizona Constitution.

101.     Plaintiff has been harmed and incurred damages due to the imposition of unlawful excessive fines under the Arizona Constitution and is entitled to damages and other relief as a result of this constitutional violation.

**EIGHTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

102.     Plaintiff contends that Arapaho LLC and other defendants have been unjustly enriched at her expense, as delineated in *Trustmark Ins. Co. v. Bank One, Ariz., NA,* where the Arizona Court of Appeals defined unjust enrichment as a situation where "one party has and retains money or benefits that in justice and equity belong to another." 202 Ariz. 535, 48 P.3d 485, 491 (Ariz.  Ct.App. 2002). In the present case, Arapaho's retention of the difference between taxes and Plaintiff's property value falls squarely within this definition.

103.     "To establish a claim for unjust enrichment, the plaintiff must allege an impoverishment on his part, an enrichment to the defendant, a connection between the two, the absence of justification, and the absence of a legal remedy." *Haller v. Advanced Indus. Computer Inc.*, 13 F. Supp. 3d 1027, 1031 (D. Ariz. 2014).

104.     Plaintiff has suffered impoverishment by losing her property and the equity she had built in it over years, which far exceeded the amount of unpaid taxes.

105.     Arapaho has been enriched by acquiring the property, including the surplus equity.

106.     There is a direct connection between Plaintiff's impoverishment and Arapaho's enrichment, as the latter's gain directly corresponds to the former's loss.

107.     There is no justifiable reason for Arapaho to retain the surplus equity, as it exceeds the amount required to satisfy the unpaid taxes and related charges. Indeed, if Arapaho were the state, they would be compelled by state and federal law to return the excess.

108.     The statutes and processes allowing this retention do not provide Plaintiff with an adequate legal remedy to recover her lost equity, thereby making the enrichment of Arapaho unjust.

109.     Arapaho's retention of the difference between the property value and the lien constitutes unjust enrichment under Arizona law. Consequently, Plaintiff seeks restitution of the surplus equity, which rightfully belongs to her, and any other relief deemed appropriate by the Court.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff Christine M. Searle respectfully requests that this Court:

A.     Find and declare that Defendants' taking and sale of Plaintiff's property, including all equity therein, is for no public use violates the United States and Arizona Constitutions;

B.     Enter preliminary and permanent injunctions against Defendants preventing eviction proceedings on the basis that the taking at issue is not for public use, and therefore violates the U.S. Constitution, without regard to whether Ms. Searle ultimately receives just compensation;

C.     To the extent that the Court finds that the taking and sale of Plaintiff's property, including all equity therein, is at least partially for public use, in the alternative, that this Court rule

that the delta between the value of Ms. Searle's home and her tax lien debt is a taking not for a public purpose;

D.      Enter preliminary and permanent injunctions against Defendants preventing eviction proceedings on the basis that the taking at issue is an excessive fine, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation;

E.      Find and declare that Defendants' taking and sale of Plaintiff's property, including all equity therein, was not attended by payment or securing just compensation and as such, violates the United States and Arizona Constitutions;

F.      Find and declare that Defendants' appropriation of Plaintiff's real estate equity is an excessive fine in violation of the United States and Arizona Constitutions;

G.      Find and declare relevant provisions of Ariz. Rev. Stat. Ann. Title 42, Chapter 18 are unconstitutional under the United States and Arizona Constitutions, causing such confiscations and sales to be null and void and in violation of the United States and Arizona Constitutions;

H.      Enter an award of damages personally against Defendant Allen, given that clearly established law contradicts his conduct, and he is thus not entitled to qualified immunity.

I.      Retain jurisdiction of this matter for the purpose of enforcing the Court's orders;

J.      To the extent Plaintiff is deprived of her property, enter an award of compensatory damages against all Defendants under the Fifth Amendment's just compensation clause, as incorporated in the 14th Amendment.

K.      To the extent that Plaintiff is deprived of her property, enter an order to disgorge the delta between the value of the home and the amount of the tax lien.

L.      Enter an award of punitive damages against individual Defendants, in their personal capacity, on the basis that Defendants continue to act in reckless disregard of Ms. Searle's rights, given that the Supreme Court's decision in *Tyler v. Hennepin* is clear that Ms. Searle cannot be deprived of her property without just compensation.

M.      Enter an award of attorney fees and costs of suit against all Defendants pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54; and

N.      Order such other and further relief as the Court may deem just, proper and necessary under the circumstances.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues and claims so triable.

DATED this 4th day of January 2024.                    Respectfully submitted,

*/s/ William E. Trachman*
William E. Trachman*
MOUNTAIN STATES LEGAL
FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Tele: (303) 292-2021
Fax: (877) 349-7074
gblock@mslegal.org
wtrachman@mslegal.org
*Attorneys for Plaintiff*
*\*Admitted Pro Hac Vice*