Grady J. Block (TX Bar No. 24120616) (*pro hac vice*)
William E. Trachman (CO Bar No. 456384) (*pro hac vice*)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
gblock@mslegal.org
wtrachman@mslegal.org

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax:  (602) 801-2539
vlucero@davillierlawgroup.com

*Attorneys for Christine M. Searle*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine M. Searle,<br><br>        Plaintiff,<br><br>        v.<br><br>John M. Allen ("Allen"), in his individual and official capacity, as The Treasurer of Maricopa County; Arapaho LLC; American Pride Properties, LLC; Kristin Mayes, in her official capacity, as the Attorney General of the State of Arizona, John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies,<br><br>        Defendants | Case No. CV-24-00025-PHX-JJT<br><br>Assigned Judge: John J. Tuchi<br><br>**FIRST AMENDED COMPLAINT FOR DECLARTORY AND INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiff Christine M. Searle ("Searle"), brings this action to challenge a violation of her constitutional rights through the improper taking of her property, invoking the protections of the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment. Additionally, she brings claims for violations of the Gift Clause, Takings Clause, and Excessive Fines Clause of the Arizona Constitution and asserts a cause of action for unjust enrichment.

## INTRODUCTION

1.      This case challenges a legal regime under Arizona law, where small, sometimes incredibly minor, amounts of delinquent taxes can lead to the seizure of property and eviction of its owners.

2.      Under the Arizona tax lien scheme, either the State or private entities may take possession and title of the property or sell it, often for amounts well exceeding the unpaid taxes. Consequently, the lien purchaser retains all of the homeowner's equity in the property. *See, e.g.*, *Arizona Tax Liens Wreaking Havoc On Lenders, Borrowers*, QUARLES & BRADY NEWS AND INSIGHTS (May 9, 2014) ("With shocking frequency across the counties of Arizona, homeowners and lenders are failing to redeem delinquent tax liens, and are thereby losing their pecuniary and fee simple interests.").[1]

3.      Ms. Searle is a 70-year-old woman, who has been deprived of her property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home") that she had owned for 18 years.

---

[1] https://www.quarles.com/newsroom/publications/arizona-tax-liens-wreaking-havoc-on-lenders-borrowers

4.      Defendant Arapaho Investment Properties, LLC (Arapaho or Defendant Arapaho) purchased 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's home, which stemmed from Ms. Searle's delinquent taxes.

5.      In 2021, Arapaho began foreclosure proceedings based on Arizona's tax lien scheme.

6.      Upon information and belief, Arapaho subsequently transferred its interest in Ms. Searle's home to Defendant American Pride Properties, LLC (American Pride or Defendant American Pride).

7.      Neither Arapaho nor American Pride have ever provided to Ms. Searle any funds over and above what she owed in taxes; nor have they provided any assurance that, to the extent that a future sale occurs, she will be provided with the "delta" between the purchase price or market value of the home, and the amount of the tax lien.[2]

8.      Upon information and belief, Arapaho and American Pride intend to retain the delta connected to the sale of Ms. Searle's home.

9.      In May 2023, the Supreme Court decided the case of *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023).

---

[2] Note that at a recent oral argument, the United States took the position that a failure to justly compensate the victim of a taking is an ongoing violation, that occurs every day until just compensation occurs. *See* Oral Argument before the U.S. Supreme Court in *Devillier v. Texas*, No 22-913, at 47:7-11 (Jan. 16, 2024) ("Justice Kagan: It's an ongoing violation of the Constitution, right?  I've taken Mr. McNamara's property.  I haven't paid him.  Every day, I'm violating the Constitution, correct? MR. NIELSON: Yes, Your Honor.").

10.     In *Tyler*, the Supreme Court of the United States held that a county's decision to retain funds following a forfeiture process constituted a taking under the Fifth Amendment.

11.     As the Supreme Court found in *Tyler*, "The taxpayer must render unto Caesar what is Caesar's, but no more." 598 U.S. 631 (2023).

12.     *Tyler* recognized the common law general rule, as stated in Blackstone: "If a tax collector seized a taxpayer's property, he was 'bound by an implied contract in law to restore the property on payment of the debt, duty, and expenses, before the time of sale; or, when sold, to render back the overplus.'" *Tyler*, 598 U.S. at 640 (citing 2 Commentaries on the Laws of England 453 (1771)) (internal brackets omitted).

13.     *Tyler*'s holding applies equally to situations where a county merely authorizes a third-party to retain the delta between a debtor's tax debt and the price of their home. As stated broadly in *Tyler*, "Our precedents have also recognized the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id*.

14.     Here, the numbers are even more grossly disproportional and offensive to the Constitution than they were in *Tyler*. At the time of the foreclosure action leading to the issuance of the treasurer's deed, the relevant tax lien to Ms. Searle was only $1,607.68. Meanwhile, her home is worth several hundred thousand dollars.

15.     Upon information and belief, all Defendants have actual knowledge of the Supreme Court's decision in *Tyler*, yet have not provided Ms. Searle with just compensation, or any assurance of future compensation. On the contrary, counsel for

Arapaho initially notified Ms. Searle that eviction proceedings would soon occur. [*See* ECF 1-1.][3]

16.     The practice of taking the entire value of a property, including the surplus value, in excess of the amount of unpaid taxes and associated charges constitutes a taking under *Tyler*.

17.     In *Tyler*, the Court specifically tied the "taking" to the retention of the excess value from the sale of a property. The Court stated:

> The County argues that the delinquent taxpayer could sell her house to pay her tax debt before the County itself seizes and sells the house. But requiring a taxpayer to sell her house to avoid a taking is not the same as <u>providing her an opportunity to recover the excess value of her house once the State has sold it</u>.

598 U.S. at 644-45 (emphasis added).

18.     In other words, the act of taking extends to the withholding of any value beyond the tax debt owed when a home transfers ownership, depriving the original owner of potential profits from their property's equity.

19.     Separately, Ms. Searle seeks a permanent injunction against Arapaho and American Pride on the basis that merely providing the "delta" on the value of her home—

---

[3] As the Court is aware, Arapaho and Ms. Searle have reached an agreement that stipulates to the injunctive relief sought in Ms. Searle's original motion for a temporary restraining order and preliminary injunction. Eviction proceedings are therefore no longer expected to occur imminently. [*See* ECF 10, at 5 ("Defendant Arapaho has stipulated to the relief requested in Searle's motion, such that eviction proceedings shall not occur for at least 12 months."); *see id.* at 6 ("The parties reserve all rights after the 12-month period, ending March 15, 2025, to reach further agreement, or to apprise the Court that eviction proceedings against Ms. Searle are once again imminent.").]

while perhaps "just" compensation—is not truly for public use, and therefore violates the U.S. Constitution.

20.     Additionally, while not an issue reached in the majority opinion in *Tyler*, Ms. Searle seeks a permanent injunction against Arapaho and American Pride on the basis that the taking at issue is an excessive fine, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation.

21.     Ms. Searle also seeks an declaratory and injunctive relief in that the Arizona state law tax scheme is unconstitutional.

22.     Plaintiff alleges various state law claims against various defendants.

23.     Plaintiff also seeks other relief in the form of damages against Defendant Allen, as well as relief establishing that the Arizona tax lien scheme constitutes a taking, under the logic of *Tyler*, as well as an excessive fine.

24.     Additionally, Plaintiff seeks recovery of attorney's fees as permitted under Arizona law and 42 U.S.C. § 1988, reimbursement for expenses and costs of the suit, and any other relief deemed just and appropriate by the Court.

## PARTIES

25.     Plaintiff Christine M. Searle is an individual residing in Arizona who purchased her home in 2005.

26.     Defendant Arapaho is a limited liability company involved in the purchase of tax lien certificates and foreclosure of tax liens, including the purchase of the tax lien against the home in this matter.

27.     Defendant American Pride Properties is a limited liability company. Upon information and belief, American Pride now owns Ms. Searle's home.

28.     Defendant John M. Allen ("Allen") is sued in his individual and official capacity as the Treasurer of Maricopa County. His office is responsible for the administration of tax collection, imposition and sale of tax liens, and related proceedings in Maricopa County. *See* ARIZ. REV. STAT. ANN. § 42-18001; *see also* ARIZ. REV. STAT. ANN. § 42-18101.

29.     Defendant the Honorable Kristin Mayes ("Mayes") is the Attorney General of the State of Arizona. She is sued in her official capacity. Her office is "charged with representing state agencies and enforcing the state's laws."[4]

30.     Defendants John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies are fictitious names for any Defendants not named of whom the Plaintiff later may become aware, who may have an interest in the real property at issue or been involved in the taking of Ms. Searle's Home.

31.     All Defendants` were acting and/or continue to act under color of state law at all times relevant hereto. All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

---

[4] Duties and Responsibilities, Arizona Attorney General's Office (Jan. 23, 2024), https://www.azag.gov/duties#:~:text=The%20Arizona%20Attorney%20General%27s%20Office,councils%20to%20achieve%20its%20mission.

## JURISDICTION AND VENUE

32.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 & 1988 and 28 U.S.C. § 2201 for deprivations of Plaintiff's rights secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

33.     This Court has jurisdiction over this complaint under 28 U.S.C. § 1343, which provides for original jurisdiction in this Court for suits brought pursuant to 42 U.S.C. § 1983. The Court also has jurisdiction under 28 U.S.C. § 1331 because this matter arises under the Constitution and laws of the United States.

34.     Venue is appropriate in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of property that is the subject of the action is situated within this district.

35.     Ms. Searle possesses standing because she will suffer a "classic pocketbook injury" from the sale of her home, when the sale results in price over and above what she owed in taxes. *Tyler*, 598 U.S. at 636 (injury caused by County illegally appropriating $25,000 in excess value from sale).

## STATEMENT OF FACTS

### Arizona Statutory Scheme Allowing Equity Theft

36.     The Arizona Legislature has created a statutory scheme under Title 42, Chapter 18 of the Arizona Revised Statutes in which property owners can be robbed of their hard-earned home equity over relatively miniscule tax liens.

37.     In Arizona, tax liens are created under ARIZ. REV. STAT. ANN. § 42-17153, which establishes that taxes levied on property become liens on the assessed property from January 1 of the tax year, having priority over most other liens. This statute works in tandem with ARIZ. REV. STAT. ANN. § 42-17154, which extends the liability for taxes beyond the specific property assessed, allowing for mutual liability between real and personal property.

38.     The County Treasurer, as tax collector, has the additional duty of securing payment on delinquent taxes by selling liens and/or foreclosing the right to redeem those liens. *See* ARIZ. REV. STAT. ANN. § 42-18001; *see also* ARIZ. REV. STAT. ANN. § 42-18101. Once sold, the County Treasurer must issue a certificate of purchase to the purchaser or assignee, which constitutes prima facie evidence of a valid purchase. *See* ARIZ. REV. STAT. ANN. § 42-18118; *see also* ARIZ. REV. STAT. ANN. § 42-18119.

39.     Should the lien not be purchased by a private party as outlined above, the lien is assigned to the State by the County Treasurer. *See* ARIZ. REV. STAT. ANN. § 42-18113.

40.     After three years from the sale or assignment of a tax lien, the purchaser or the State may initiate an action to foreclose the right to redeem if the lien is not redeemed. *See* ARIZ. REV. STAT. ANN. § 42-18201.

41.     If the lien is not redeemed and the right to redeem is successfully foreclosed by the resulting judgment, the County Treasurer is directed to deliver a treasurer's deed conveying the property to the purchaser or the State as assignee. *See* ARIZ. REV. STAT. ANN. § 42-18204.

42.     As part of this process, the foreclosure judgment removes all legal and equitable right, title, or interest in the property from the previous owner of the property who lost the right to redeem. *See* ARIZ. REV. STAT. ANN. § 42-18204. In other words, if the right to redeem is foreclosed, the previous owner is deprived of all value, including all home equity, that they had accrued in the property, due merely to owing delinquent taxes.

43.     Should the State be assigned the lien and successfully foreclose the right to redeem, a board of supervisors may then sell the property at auction. If the sale price exceeds the amount of the lien (including the related interest, penalties, etc.), then the excess funds, appropriately, must be paid back to the owner who was dispossessed of their property. *See* ARIZ. REV. STAT. ANN. § 42-18303.

44.     No such provision applies, however, where the purchaser of the tax lien is a private party. Thus, where a private party forecloses the right to redeem, it reaps a significant windfall by effectively seizing the excess home equity, without any surplus returning to the previous owner.

**The Property and the Tax Lien**

45.     In 2005, Christine Searle purchased Assessor Parcel No. 302-35-259, which is the property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home"). For years, she was the sole owner, and enjoyed the benefits of home ownership including renting it out as one of her sole forms of income in retirement.

46.     The Maricopa County Assessor has valued this property at $376,800 for the 2024 tax year. As is common with many areas, the market value of this property is likely significantly higher than this valuation. For example, although online real estate estimates

are not as reliable as individual professional appraisals, the Zillow estimated range for purchasing Ms. Searle's house is between $434,000-479,000.[5] Redfin, another real estate website, estimates the Home's value at $429,000-510,000.[6] Finally, Trulia and Realtor.com list the estimated value as $456,500,[7] and between $420,983-464,000,[8] respectively.

47.    Defendant Arapaho purchased the 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's home stemming, from Ms. Searle's delinquent taxes.

48.    In 2021, Defendant Arapaho began foreclosure proceedings on those tax liens. According to Defendant Arapaho's verified complaint in that action, at the time of the foreclosure action, Ms. Searle owed $1,607.68 in delinquent taxes. See Exhibit 1. Arapaho won a default judgment in accordance with the statutory scheme outlined above, and was issued a treasurer's deed for the Home.

49.    Following the entry of the default judgment, Ms. Searle moved to set it aside, contending that she had not received proper notice regarding foreclosure action. However, this motion was denied. Ms. Searle then filed an appeal challenging the denial of her motion

---

[5] 513 S Ash St, Gilbert, AZ 85233, Zillow (Jan. 26, 2024)
https://www.zillow.com/homedetails/513-S-Ash-St-Gilbert-AZ-85233/8180247_zpid/.

[6] 513 S Ash St, Gilbert, AZ 85233, REDFIN (Jan. 26, 2024),
https://www.redfin.com/AZ/Gilbert/513-S-Ash-St-85233/home/28096951.

[7] 513 S Ash St, Gilbert, AZ 85233, Trulia (Jan. 26, 2024),
https://www.trulia.com/home/513-s-ash-st-gilbert-az-85233-8180247.

[8] 513 S Ash St, Gilbert, AZ 85233, REALTOR (Jan. 26, 2024),
https://www.realtor.com/realestateandhomes-detail/513-S-Ash-St_Gilbert_AZ_85233_M29465-56767

to set aside the default judgment. The Court of Appeals of Arizona, Division 1 affirmed the denial of Ms. Searle's motion on February 9, 2023. *Arapaho LLC v. Searle*, No. 1 CA-CV 22-0478, 2023 WL 1830382 (Ariz. Ct. App. Feb. 9, 2023), review denied (Oct. 17, 2023).

50.    On October 17, 2023, further review in the Arizona appellate courts was denied. *Id.*

51.    Due to the foreclosure action resulting in default judgment and the subsequent appeals being limited in scope to a notice issue, the merits of the foreclosure case have not been litigated. In fact, none of the issues surrounding takings or excessive fines have even been litigated with respect to Ms. Searle's home. As a result, neither res judicata or collateral estoppel have any bearing on this suit.

52.    Because of the judgment and the resulting issuance of the treasurer's deed, Ms. Searle will be deprived of the value of all the equity she had built in her home, in addition to one of her sole streams of retirement income via renting the house.

53.    Had the State of Arizona been the assignee of the tax lien, rather than a private entity, Arizona law states that Ms. Searle would be entitled to the difference of any sale price and the amount she owed, plus the related costs.

54.     Unfortunately, Arapaho and/or American Pride will obtain a massive windfall: obtaining a property valued in the mid-$400,000s over a tax lien that at the time of foreclosure was roughly $1,600.[9]

55.     Ms. Searle is not seeking a review of the state court's judgment and is not arguing that the judgment was improper based on the Arizona statutory schemes. Instead, Ms. Searle raises separate constitutional claims based on the retention of a delta, and the delivery of her home to a private party, which constitutes an unconstitutional taking under the Fifth Amendment, an unconstitutional taking without just compensation, an excessive fine, and unjust enrichment, among other things.

56.     These issues were not, and could not have been, adjudicated in the state court proceedings focused on notice and procedural aspects of the foreclosure in the context of a default judgment.

57.     The U.S. Supreme Court has clarified that the *Rooker-Feldman* doctrine does not bar federal jurisdiction over a claim alleging a legal injury that is separate from the state court decision, even if both cases share some common factual predicates. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

---

[9] After conferral with Arapaho's counsel, it has come to light that Ms. Searle does owe other debts, and that the property is otherwise encumbered. However, these amounts do not exceed the value of Ms. Searle's home, and, under *Tyler*, they make little difference to the legal claims in this case. *Tyler*, 598 U.S. at 637 ("Had Tyler received the surplus from the tax sale, she could have at the very least used it to reduce any such liability."). Ms. Searle does not mean to suggest that Arapaho or American Pride are engaging in impropriety or unethical behavior by retaining a windfall.

**States May Not Seize Property for a Private Purpose, nor Seize Property for a Public Purpose Without Providing Just Compensation, nor Levy an Excessive Fine**

58.     The United States and Arizona Constitutions prohibit the taking of private property without a "public use." Moreover, even where a public use can be shown, "just compensation" must be provided if such property is taken.

59.     Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made . . ." This provision, akin to its federal counterpart, restricts takings absent a public purpose and ensures compensation for property owners.

60.     The Fifth Amendment to the United States Constitution articulates similar restrictions, declaring "nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment extends these protections to the states, affirming, "No State shall...deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

61.     Both the United States and Arizona Constitutions also prohibit excessive fines. The Eighth Amendment to the United States Constitution, applicable to the states, and Article 2, Section 15 of the Arizona Constitution, both stipulate: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

62.     Despite these constitutional guarantees, Arizona, through its statutory scheme described above, permits the seizure of property from homeowners with unpaid real property taxes, transferring title to the state or third parties, and deprives the original property owner of the equity or value of their property after taxes and charges are satisfied. Furthermore, there is no provision for the original owner to reclaim this excess equity or surplus from a private party.

63.     By permitting a private entity to obtain the home of a delinquent taxpayer, Arizona's statutory scheme effectuates a *per se* unconstitutional taking for private use, a taking of private property without just compensation, and impose an excessive fine beyond any penalties and tax arrears.

64.     In analyzing a nearly identical statutory scheme in Colorado, the Colorado Office of the Attorney General issued guidance stating the logic of *Tyler* (and of takings jurisprudence in general) does not warrant a different outcome where the county gives property away, versus selling it. *See* Formal Opinion of Philip J. Weiser, Attorney General, No. 23-01, 2023 WL 6279010, at 4 (Colo. A.G. July 27, 2023) ("There does not appear to be a reasonable basis to conclude that the *Tyler* Court would have ruled differently where the government gives the property to a third party who has paid the tax debt with no opportunity for the taxpayer to recover the excess.").

65.     Indeed, in *Tyler*, the Court emphasized that confiscating a property to satisfy a tax debt, taking more value than was due, was a "classic taking in which the government directly appropriates private property for its own use." *Tyler*, at 639 (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002).) The

fact that the government delegates this power to a third party, in this case Defendant Arapaho, does not change the underlying fact that transferring the title is unquestionably a taking.

66.     The principle that government should not have the unchecked authority to take property from one individual and give it to another has been a foundational concept in American jurisprudence, underscored by cases like *Calder v. Bull*, and enshrined in both the U.S. and Arizona Constitutions as a safeguard against government overreach. 3 U.S. 386 (1798) ("It is against all reason and justice for a people to entrust a legislature" with the power to enact "a law that takes property from A and gives it to B.")

67.     While case law concerning unconstitutional takings often addresses eminent domain and inverse condemnation, the overarching legal principle is clear: the government must fairly compensate the owner whenever a taking occurs, thereby protecting individuals from bearing disproportionate costs meant for the public benefit.

68.     A home or other real property, as well as the equity or value remaining after settling valid taxes and charges, is unequivocally protected under the U.S. and Arizona Constitutions. The concept that a person's home is their sanctuary is deeply embedded in our legal system, as noted in *Lombard v. Louisiana* by Justice Douglas, who asserted "The principle that a man's home is his castle is basic to our system of jurisprudence." 373 U.S. 267 (1963). Equity in real property holds the same protections and is governed by the same principles as any other form of property.

69.     The U.S. Supreme Court has recognized that a homeowner is entitled to any equity he or she may have realized since the purchase of the property: "The public may not

by any means confiscate the benefits . . . of the owner's bargain." *Olson v. United States,* 292 U.S. 246, 255, 54 S. Ct. 704, 708, 78 L. Ed. 1236 (1934) (emphasis added). Should this sort of taking occur, "[The owner] is entitled to be put in as good a position as pecuniarily as if his property had not been taken." *Id.*

### *Tyler v. Hennepin* Is "Clearly Established" Law and the Decision Undoubtedly Invalidated Arizona's Tax Lien Scheme

70.     Arizona's statutory regime was cited as a particularly egregious form of equity theft in the plaintiff's complaint in *Tyler v. Hennepin. See* Joint Appendix in *Tyler v. Hennepin*, No. 20-166, at 15, ¶ 44 (Feb. 23, 2023) (referring to tax forfeitures in Arizona "to which the elderly are particularly vulnerable.").[10]

71.     The Arizona regime and the case law underlying it were cited numerous times in the briefing in *Tyler.*

72.     For instance, Arizona's tax lien scheme was prominently referred to by amici supporting the Petitioner in *Tyler.* As an example, in the amicus brief for the National Legal Aid & Defender Association in support of *Tyler,* the amici cited an article specifically referring to Arizona's statistics. *See* AMICUS BRIEF OF NATIONAL LEGAL AID & DEFENDER ASSOCIATION AS AMICUS CURIAE IN SUPPORT OF PETITIONER, at 8-9 (Mar. 6, 2023) ("As property tax delinquency has fallen disproportionately on historically disadvantaged communities, so too has the weight of home equity theft. In Arizona, the impacts of the tax

---

[10] https://www.supremecourt.gov/DocketPDF/22/22-166/255642/20230227174156602_Tyler%20Joint%20Appendix.pdf

foreclosure scheme are concentrated in high-poverty neighborhoods.").[11] The article even uses Maricopa County as an example: "But of the cases that do lead to foreclosure—1,734 in Maricopa County since 2010—more than a third are primary residences. That means that 642 homeowners lost their homes and all their equity."[12]

73.    Similarly, the Supreme Court had before it the BRIEF FOR AMICI CURIAE NATIONAL ASSOCIATION OF REALTORS, MINNESOTA REALTORS, AND AMERICAN PROPERTY OWNERS ALLIANCE IN SUPPORT OF PETITIONER, No. 22-166 (Mar. 6, 2023). That brief grouped Arizona's statutory scheme in with the Minnesota regime that was invalidated: "These regimes vary in their operation—some permit the government itself to reap the windfall free and clear, *see, e.g.*, MINN. STAT. ANN. § 280.29, others grant foreclosed equity value to private investors in tax liens, *see, e.g.*, ARIZ. REV. STAT. § 42-18201, et seq., while still others vest seemingly absolute discretion in the governments to spend it as they prefer, *see, e.g.*, MASS. GEN. LAWS CH. 60, §§ 43, 53. Yet, for all of their differences, a common thread unites them: each of these statutes deprives property owners of vested property interests without compensation." *See id.* at 9.[13]

---

[11]https://www.supremecourt.gov/DocketPDF/22/22-166/256341/20230306143341766_22-166%20NLADA%20Amicus.pdf. *See id.* at 9 ("Other hard-hit areas in Arizona are those with large Latino and African-American populations.").

[12] Mahoney & Clark, *Arizona owners can lose homes over as little as $50 in back taxes*, Ariz. Republic (Jun. 16, 2017), at https://www.azcentral.com/story/money/real-estate/2017/06/12/tax-lien-foreclosures-arizona-maricopa-county/366328001/

[13] https://www.supremecourt.gov/DocketPDF/22/22-166/256348/20230306150018709_22-166%20merits%20tsac%20NAR.pdf

74.     Upon information and belief, Treasurer Allen has personal and actual knowledge of the Supreme Court's decision in *Tyler*, and its effect on the Arizona tax lien scheme. Indeed, the Arizona County Treasurers Association (ACTA) filed an amicus brief in *Tyler*. *See* Brief of Amici Curiae National Tax Lien Association, the Arizona County Treasurers Association, and the Tax Collectors & Treasurers Association of New Jersey in Support of Respondents in Tyler v. Hennepin Cnty., Minn., No. 22-166 (Mar. 31, 2023).[14] In the brief, the ACTA, among the others named on the brief, expressly stated that a negative ruling in *Tyler* would affect jurisdictions like Arizona: "*Amici* and their members will be affected by the outcome of this case because dramatic changes to how delinquent property taxes are collected across the country could jeopardize the fiscal health of local taxing authorities, resulting in safety and economic consequences for these communities. For these reasons, *Amici* have legitimate interests in this case." (emphasis added).

75.     The amicus brief joined by the ACTA and cited above also acknowledged that a ruling for the Petitioner in *Tyler* would have broad consequences for tax collection schemes through the country: "Because of the web of tax-collection schemes that exist across the country, a broad rule adopted to address Minnesota's statutory process would unnecessarily reverberate throughout the country." *Id.* at 30 (emphasis added).

---

[14] https://www.supremecourt.gov/DocketPDF/22/22-166/262489/20230331142057501_Amicus%20Brief.pdf

76.     Upon information and belief, Treasurer Allen participates in Arizona County Treasurer's Association activities, and Maricopa County hosted the ACTA's conference in Fiscal Year 2023.[15]

77.     Moreover, Hennepin County itself considered the legality of its tax lien scheme to be bound up with the viability of Arizona's scheme. For instance, it cited *Automatic Art, LLC v. Maricopa Cnty.*, 2010 WL 11515708, at *5-6 (D. Ariz. Mar. 18, 2010), for the proposition that "since Arizona law did not provide for distribution of equity to a former owner, plaintiff's interest "terminated completely with the issuance of the treasurer's deed, and no deprivation of constitutional rights occurred." *See* Respondents' Response to the Petition for Writ of Certiorari at 9.[16]

78.     And for good measure, Hennepin County grouped Arizona's law with Minnesota's when it filed its merits brief before the Supreme Court: "Third, the disruption from ruling for Petitioner would be wide-ranging. At least nine states and the District of Columbia mirror Minnesota's approach in most cases." Brief for Respondents, at 43 n.19 (citing Ariz. Rev. Stat. Ann. § 42-18303(C)).[17]

---

[15] *See* Maricopa County Treasurer's Office FY 2023 Annual Report, at 3 (June 2023) ("The Maricopa County Treasurer's Annual Report is published in the summer. It provides information on the preceding fiscal year. Fiscal year 2023 began July 1, 2022, and ended June 30, 2023."), at https://treasurer.maricopa.gov/Reports/index?fileName=Annual_Report_FY2023.pdf

[16] https://www.supremecourt.gov/DocketPDF/22/22-166/249158/20221206120550502_Tyler%20v%20Hennepin%20Respondents%20Response%20to%20the%20Petition%20for%20a%20Writ%20of%20Certiorari.pdf

[17] https://www.supremecourt.gov/DocketPDF/22/22-166/260178/20230329131415863_Hennepin%20Brief%203-29-23%20Final.pdf

79.     To drive home the point, during oral argument before the Supreme Court in *Tyler*, counsel for Hennepin County alluded to Arizona's statutory scheme as one of 19 states whose legal regimes were at stake. Transcript of Oral Argument in *Tyler v. Hennepin Cnty.*, 96:22-97:1 ("I think, here, all you need to decide is you look at this statute and the other 19 states that have exactly—you know, have very similar statutes and you ask is this reasonable[?]").[18]

80.     As noted above, the Colorado Attorney General announced in an official opinion that there does not appear to be "a reasonable basis" for concluding that *Tyler* does apply where the government gives the property to a third party.

81.     Nevertheless, upon information and belief, Defendant Allen has not engaged in any process to protect Ms. Searle's constitutional rights. Undersigned counsel has requested any and all information regarding whether Defendant Allen (1) has called or otherwise communicated with Defendants Arapaho and American Pride to apprise them of the requirements under *Tyler*; (2) attempted to unwind or re-open any prior transfer of ownership; or (3) take other measures to comply with his oath to the U.S. Constitution. Defendant Allen's office has not apprised undersigned counsel of any such efforts and has indeed stated that Defendant Allen has no plan to unwind the foreclosure.

**Defendants Actions Constitute a Taking Under the Clear Meaning of *Tyler***

---

[18] https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-166_h4d8.pdf

82.     Defendants' actions violate the guiding principles of both the U.S. and Arizona Constitutions, and the fundamental intent to protect homeowners from the severe consequences of tax delinquency.

83.     In *Tyler*, the Supreme Court recognized that the retention in excess value constitutes a taking. 598 U.S. at 638 ("Here there was money remaining after Tyler's home was seized and sold by the County to satisfy her past due taxes, along with the costs of collecting them. The question is whether <u>that remaining value</u> is property under the Takings Clause, protected from uncompensated appropriation by the State.") (emphasis added).

### Defendants Actions Constitute an Excessive Fine

84.     When Defendants take real property pursuant to property tax seizure and retain the surplus beyond the tax debt owed, such retention transcends a mere remedial action and assumes a punitive or deterrent character. This retention of value or equity from Ms. Searle thus violates the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution.

85.     In alignment with the United States Constitution, proportionality underlies the constitutional examination under the Excessive Fines Clause of the Arizona Constitution. The extent of forfeiture must be commensurate with the severity of the underlying offense it intends to penalize.

86.     Defendant Arapaho's and American Pride's plan—and ability under Arizona's tax lien scheme—to retain the surplus following the seizure of Ms. Searle's home, which is estimated to be worth well over 200 times that of the amount of the

remaining tax balance, violates the Excessive Fines Clause as enshrined in both the Arizona and United States Constitutions as an unjust, excessive fine.

87.     Similarly, when the State is the assignee in Arizona, federal law provides that excess proceeds from a tax sale belong to and must be returned to the former owner. *See, e.g., United States v. Rodgers*, 461 U.S. 677, 690-94 (1983) (in a forced sale to recover delinquent federal taxes under 26 U.S.C. § 7403, government may not ultimately collect, as satisfaction for the indebtedness owed to it, more than the amount actually due. If seizure of property extends beyond property necessary to satisfy tax debt, the excess must be repaid as compensation for the taking).

### Ms. Searle's Suit Is Not Barred by the Tax Injunction Act

88.     Ms. Searle's relief is not precluded by the Tax Injunction Act.

89.     The legislative history of the Tax Injunction Act underscores a targeted focus: addressing cases where taxpayers preemptively attempt to circumvent their tax obligations through federal court interventions.

90.     Ms. Searle's lawsuit, grounded in constitutional claims and not seeking to evade tax liabilities, does not fit within this congressional concern. Ms. Searle's suit does not seek to avoid payment of taxes, or to prevent Arizona counties from collecting tax revenues in constitutionally appropriate manners.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### TAKING OF PRIVATE PROPERTY WITHOUT A VALID PUBLIC USE IN VIOLATION OF THE UNITED STATES CONSTITUTION

### AGAINST ALL DEFENDANTS

91.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

92.     The Defendants' actions violate Plaintiff's constitutional rights for the reasons stated in the Second Claim for Relief.

93.     Defendants, by seizing private property without a legitimate public use, are in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

94.     There is no public use rationale to justify the appropriation or retention of surplus equity from property tax sales, particularly when such equity exceeds the amount of taxes and related charges due. The U.S. Constitution prohibits such arbitrary exercises of governmental authority.

95.     The cause of action for an unconstitutional taking is presented as a direct claim under the Fifth Amendment, as incorporated by the Fourteenth Amendment to the United States Constitution.

96.     To the extent that Arizona statutes allow or seem to permit Defendants, or any of them, to seize private property without public use, such statutes, including specific sections of the Arizona Revised Statutes relevant to property tax liens, are unconstitutional.

## SECOND CLAIM FOR RELIEF

### TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE UNITED STATES CONSTITUTION

### AGAINST ALL DEFENDANTS

97.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

98.     Defendants acted pursuant to an official, albeit unconstitutional, Arizona statutory scheme.

99.     The Fifth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, states, "nor shall private property be taken for public use, without just compensation."

100.    Arizona's statutes in Title 42, Chapter 18 governing the sale of tax liens and the disposition of proceeds does not make any provision for returning the surplus of appropriated property to the original owner.

101.    These statutes facilitate and necessitate the appropriation of Plaintiff's private property without just compensation, thereby violating Plaintiff's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

102.    The cause of action for an unconstitutional taking is presented as a direct claim under the Fifth Amendment, as incorporated by the Fourteenth Amendment to the United States Constitution.

103.    Plaintiff has suffered harm and damage due to the lack of just compensation for the taken property and is therefore entitled to appropriate relief including compensatory damages.

104.    Plaintiff seeks a ruling that the Constitution demands that a direct claim for a taking be available under the Fifth Amendment, regardless of any statutory direction otherwise. *See Devillier v. State of Texas*, 63 F.4th 416, 434 (5th Cir. 2023) (Oldham, J.,

dissenting from denial of en banc review) ("At the Founding, it was clear that the Takings Clause afforded a remedy for uncompensated takings separate and apart from any statute.").[19]

## THIRD CLAIM FOR RELIEF

### THE VIOLATION OF PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983

### AGAINST ALL DEFENDANTS, INCLUDING DEFENDANT ALLEN IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES

105.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

106.    Ms. Searle's rights to her property and the equity therein have been unequivocally infringed under the U.S. and Arizona Constitutions. The Constitutions protect against the taking of private property without just compensation and ensure that equity in real property is treated with the same regard as any other form of property. The Supreme Court's precedent in *Olson* reinforces this protection by stating that the public cannot confiscate the benefits of a property owner's bargain. 292 U.S. 246, 255, 54 S. Ct. 704, 708, 78 L. Ed. 1236 (1934) (emphasis added). These constitutional provisions are at the heart of Ms. Searle's claim, as her home and its accrued equity have been taken without just compensation.

107.    All Defendants were acting and/or continue to act under color of state law at all times relevant hereto.

---

[19] A writ of certiorari was granted in this case, and oral argument before the U.S. Supreme Court took place on January 16, 2024. *See* Supreme Court of the United States October Term 2023, Oral Arguments, Argument Audio, Term Year 2023, at https://www.supremecourt.gov/oral_arguments/audio/2023/22-913.

108.     All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

109.     Defendants' seizure and subsequent retention of Ms. Searle's property, including the substantial equity that she accumulated over 18 years, are the proximate cause of Ms. Searle's significant and demonstrable harm.

110.     As noted by the U.S. Supreme Court, these rights were clearly enunciated in the Magna Carta. *See Tyler*, 598 U.S. at 640 ("King John swore in the Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.'") (citing W. McKechnie, Magna Carta, A Commentary on the Great of King John, ch. 26, at 322 (rev. 2d ed. 1914)).

111.     Given that the *Tyler* Court expressly held that a homeowner whose property is taken to satisfy a tax debt is entitled to the surplus value after the sale of the home, this right is sufficiently clear such that any reasonable official, including Defendants Allen and Mayes, would understand that facilitating the retention of a third-party of Ms. Searle's property is a violation of her rights. *See Tyler*, 598 U.S. 631.

112.     Tyler was decided on May 25, 2023. *Id.*

113.     Upon information and belief, Defendant Allen has actual and personal knowledge of *Tyler*.

114.     While the Treasurer's Deed was issued prior to the Supreme Court's decision in *Tyler*, upon information and belief, Defendant Allen has not engaged in any measures to address Ms. Searle's rights, despite his actual knowledge that he has facilitated a taking without just compensation that has or will occur. Defendant Allen owes an ongoing duty

as an official who has taken an oath to the U.S. Constitution to make reasonable efforts to unwind his conduct, and at a minimum, apprise Arapaho and American Pride that they owe duties to Ms. Searle under *Tyler*.

115.   There is clear case law in federal courts that Defendant's Allen has or will result in a taking, and establishing that Arizona's tax lien scheme may be challenged.

116.   There is case law establishing the Constitution applies to the circumstances faced by Defendant Allen.

117.   The Arizona tax lien scheme has fallen into desuetude, because *Tyler* has made it obsolete.[20]

118.   The Arizona tax lien scheme is patently violative of fundamental constitutional principles.

119.   Given these violations, Ms. Searle seeks redress under 42 U.S.C. § 1983, which entitles her to seek damages for the deprivation of her constitutional rights. This includes just compensation for the property taken, as well as any additional relief deemed appropriate by the Court, such as nominal damages, compensatory damages, punitive damages, attorney fees, and costs.

---

[20] Desuetude: Disuse; cessation or discontinuance of use. Applied to obsolete statutes. (*citing James v. Comm.*, 12 Serg. & It. (Pa.) 227.), The Law Dictionary, https://thelawdictionary.org/desuetude/#:~:text=DESUETUDE%20Definition%20%26% 20Legal%20Meaning&text=Disuse%3B%20cessation%20or%20discontinuance%20of,A pplied%20to%20obsolete%20statutes.

1
2
3
4

### FOURTH CLAIM FOR RELIEF

**TAKING OF PRIVATE PROPERTY WITHOUT A VALID PUBLIC OR PRIVATE USE IN VIOLATION OF THE ARIZONA CONSTITUTION**

**AGAINST ALL DEFENDANTS**

5       120.    Plaintiff realleges and incorporates by reference the allegations set forth
6  above as if fully set forth herein.

7       121.    Article 2, Section 17 of the Arizona Constitution states: "Private property
8  shall not be taken for private use, except for private ways of necessity, and for drains,
9  flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or
10 sanitary purposes. No private property shall be taken or damaged for public or private use
11 without just compensation having first been made. . . ." This clause mandates that the
12 government must provide or secure just compensation before seizing private property for
13 public use.

14       122.    The taking of the surplus value of the property does not fit in any of the
15 enumerated permissible private takings.

16       123.    There is no public use rationale under Arizona law to support or justify
17 allowing the retention of surplus or equity when that equity exceeds the amount of taxes
18 and associated charges owed. The Arizona Constitution prohibits such arbitrary exercises
19 of governmental authority.

20       124.    Arizona statutes, particularly those found in Title 42, Chapter 18, allowing
21 Defendants to seize Plaintiff's property for purposes other than public use or one of the
22 enumerated private uses, are unconstitutional.

125.   By appropriating private property without a public use, or one of the enumerated private uses, Defendants are in violation of the Arizona Constitution.

126.   Plaintiff has suffered harm and damages due to the unconstitutional taking of her property without a public use and is entitled to just compensation and other appropriate relief.

**FIFTH CLAIM FOR RELIEF**

**Taking of Private Property Without Just Compensation in Violation of the Arizona Constitution**

127.   Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

128.   As previously noted, the Arizona Constitution prohibits the taking of private property without just compensation regardless of the purported use of the taking.

129.   Arizona statutes, while dictating that any surplus earned by the State following a sale must be returned to the original owner, are silent regarding the surplus after a private transfer.

130.   As such, Ms. Searle has had her property taken without being justly compensated for the taking and has no available mechanism to recover the surplus other than filing this action.

131.   These tax forfeiture statutes allow the seizure of Plaintiff's private property without just compensation, thereby violating Plaintiff's constitutional rights under the Arizona Constitution.

132.    Plaintiff has been harmed and incurred damages due to the unconstitutional taking of her property without just compensation. She is entitled to damages and other relief as a result of this violation of her constitutional rights.

## SIXTH CLAIM FOR RELIEF

### EXCESSIVE FINES VIOLATION OF THE UNITED STATES CONSTITUTION

### AGAINST ALL DEFENDANTS

133.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

134.    The Eighth Amendment to the United States Constitution safeguards the people against the imposition of excessive fines.

135.    Even a tax forfeiture sale that serves some remedial purpose not tied to criminal culpability and that occasionally confiscates property worth less than the debt owned may nevertheless constitute an excessive fine.

136.    The seizure of the entire value of Plaintiff's property, including the delta in value between the tax owed and the price of the home, due to non-payment of relatively small amounts of delinquent taxes constitutes an excessive fine under the Eighth Amendment to the United States Constitution. *See Tyler*, 598 U.S. 631, 649-50 (Gorsuch, J., concurring, with Jackson, J., joining) ("Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.").

137.    Defendant Allen is responsible for the administration of tax collection, imposition and sale of tax liens, and related proceedings in Maricopa County. These tax

lien seizures effectively operate as grossly excessive fines and are thus prohibited under the Eighth Amendment.

138.    Although *Tyler* did not reach the question of whether the taking at issue also constituted an excessive fine, it is clearly established that in this context, the fine placed on Ms. Searle was grossly disproportional to the taxes owed.

139.    Plaintiff has suffered, and continues to suffer, significant and irreparable harm if a permanent injunction is not issued, due to the ongoing risk of property rights violations by Defendants.

140.    Plaintiff is entitled to an award of damages against each Defendant named in his or her individual capacity in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF

#### EXCESSIVE FINES VIOLATION OF THE ARIZONA CONSTITUTION

#### AGAINST ALL DEFENDANTS

141.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

142.    Article 2, Section 15 of the Arizona Constitution prohibits the imposition of excessive fines.

143.    The confiscation of the entire value of Plaintiff's property, including the delta in value between the tax owed and the price of the home, due to the non-payment of relatively small amounts of delinquent taxes constitutes an excessive fine under Article 2, Section 15 of the Arizona Constitution.

144.    Defendants are engaged in the assessment and collection of fines that are excessive and thus prohibited under the Arizona Constitution.

145.    To the extent that the Court deems Arapaho or American Pride to be the party that is levying an excessive fine, either entity does so under color of law.

146.    Plaintiff has been harmed and incurred damages due to the imposition of unlawful excessive fines under the Arizona Constitution and is entitled to damages and other relief as a result of this constitutional violation.

## EIGHTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### AGAINST ARAPAHO; AMERICAN PRIDE; JOHN DOE, JANE DOE, BLACK CORPORATIONS, WHITE PARTNERSHIPS, AND GREEN LIMITED LIABILITY COMPANIES

147.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

148.    Plaintiff contends that Arapaho, American Pride, John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies have been unjustly enriched at her expense, as delineated in *Trustmark Ins. Co. v. Bank One, Ariz., NA*, where the Arizona Court of Appeals defined unjust enrichment as a situation where "one party has and retains money or benefits that in justice and equity belong to another." 202 Ariz. 535, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). In the present case, Defendants' retention of the difference between taxes and Plaintiff's property value falls squarely within this definition.

149.    "To establish a claim for unjust enrichment, the plaintiff must allege an impoverishment on his part, an enrichment to the defendant, a connection between the two, the absence of justification, and the absence of a legal remedy." *Haller v. Advanced Indus. Computer Inc.*, 13 F. Supp. 3d 1027, 1031 (D. Ariz. 2014).

150.    Plaintiff has suffered impoverishment by losing her property and the equity she had built in it over years, which far exceeds the amount of unpaid taxes.

151.    Arapaho has been enriched by acquiring the property, including the surplus equity.

152.    There is a direct connection between Plaintiff's impoverishment and Arapaho's enrichment, as the latter's gain directly corresponds to the former's loss.

153.    There is no justifiable reason for Arapaho or American Pride to retain the delta, as it exceeds the amount required to satisfy the unpaid taxes and related charges. Indeed, if Arapaho or American Pride were the state, they would be compelled by state and federal law to return the excess.

154.    The statutes and processes allowing this retention do not provide Plaintiff with an adequate legal remedy to recover her lost equity, thereby making the enrichment of Arapaho unjust.

155.    Arapaho's retention of the difference between the property value and the lien constitutes unjust enrichment under Arizona law. Consequently, Plaintiff seeks restitution of the surplus equity, which rightfully belongs to her, and any other relief deemed appropriate by the Court.

## NINTH CLAIM FOR RELIEF

### VIOLATION OF THE ARIZONA GIFT CLAUSE

### AGAINST DEFENDANTS ALLEN AND MAYES

156.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

157.    The Arizona Constitution provides that "Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation." Ariz. Const. art. IX, § 7.

158.    Arizona applies a two-pronged test for Gift Clause violations. First, the court must determine whether the challenged expenditure serves a legitimate public purpose. *Schires v. Carlat*, 250 Ariz. 371, 374–75, 480 P.3d 639, 642–43 (2021) citing *Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 349, 687 P.2d 354, 357 (1984). If not, the expenditure is considered a Gift Clause violation. *Id.* If a public purpose exists, the second step is to assess whether "the value to be received by the public is significantly outweighed by the consideration being paid by the public," which would also constitute a Gift Clause violation. *Id.*

159.    Under this framework, the acquisition of a tax lien by a private entity followed by the subsequent foreclosure on the property constitutes a clear Gift Clause violation.

160.    The critical aspect of the Gift Clause analysis lies in whether the value received by the public is significantly exceeded by the consideration paid by the public. In

this case, if the private entity acquires the property at a tax lien sale for a sum substantially lower than the property's fair market value, such as here, the public entity is essentially providing a substantial subsidy to the private entity. In other words, if the public entity's goal is to collect delinquent taxes, penalties, and interest, but the private entity ends up acquiring a property with a market value far in excess of the amount owed, the value received by the public (the tax debt) is dwarfed by the benefit conferred upon the private entity (ownership of a valuable property).

161.    The ostensible public purpose here is the collection of delinquent taxes. However, this purpose becomes questionable when examining the disproportionate outcome of the transaction. In Ms. Searle's case, her property, valued conservatively between $425,000 to $505,000 based on various real estate estimates, was acquired by through the foreclosure of a tax lien for a mere $1,607.68 in delinquent taxes.

162.    When applying the second prong of the *Wistuber* test, which examines the balance between the value received by the public and the consideration paid, the disparity becomes starkly evident. The amount recovered in delinquent taxes is substantially outweighed by the value of the property. This imbalance suggests that the public, in this case, has paid considerably more in consideration—in the form of lost property value and potential tax revenue from a higher-valued property—than the value it received, which was merely the satisfaction of a relatively small tax debt.

163.    In essence, the transaction facilitated by the state's statutory scheme but completed by Defendant Allen has resulted in a significant and unjust enrichment of a private entity at the expense of both Ms. Searle and the public interest.

164.    This substantial subsidy to Arapaho and/or American Pride, achieved through the acquisition of a high-value property for a fraction of its worth, indicates that the value to the public is indeed significantly outweighed by what the public has paid, thereby constituting a Gift Clause violation under the Arizona Constitution.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Christine M. Searle respectfully requests that this Court:

A.    Find and declare that Defendants' taking and sale of Plaintiff's property, including all equity therein, is for no public use and violates the United States and Arizona Constitutions;

B.    Enter an injunction against Defendants preventing eviction proceedings on the basis that the taking at issue is not for public use, and therefore violates the U.S. Constitution, without regard to whether Ms. Searle ultimately receives just compensation;

C.    To the extent that the Court finds that the taking and sale of Plaintiff's property, including all equity therein, is at least partially for public use, in the alternative, that this Court rule that the delta between the value of Ms. Searle's home and her tax lien debt is a taking not for a public purpose;

D.    Enter an injunction against Defendants preventing eviction proceedings on the basis that the taking at issue is an excessive fine, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation;

E.    Find and declare that Defendants' taking and sale of Plaintiff's property, including all equity therein, was not attended by payment or securing just compensation and as such, violates the United States and Arizona Constitutions;

F.      Find and declare that Defendants' appropriation of Plaintiff's real estate equity is an excessive fine in violation of the United States and Arizona Constitutions;

G.      Find and declare that relevant provisions of Title 42, Chapter 18 of the Arizona Revised Statutes are unconstitutional under the United States and Arizona Constitutions, causing such confiscations and sales to be null and void and in violation of the United States and Arizona Constitutions;

H.      Find and declare that relevant portions of Title 42, Chapter 18 of the Arizona Revised Statutes violate the Gift Clause of the Arizona Constitution;

I.      Enter an award of damages, including nominal damages, personally against Defendant Allen, given that clearly established law establishes that the sale of Ms. Searle's home will trigger a taking, and that he is thus not entitled to qualified immunity;

J.      Retain jurisdiction of this matter for the purpose of enforcing the Court's orders;

K.      To the extent that Plaintiff is deprived of her property, enter an award of compensatory damages against all Defendants under the Fifth Amendment's just compensation clause, as incorporated in the Fourteenth Amendment;

L.      To the extent that Plaintiff is deprived of her property, enter an order to disgorge the delta between the value of the home and the amount of the tax lien;

M.      Enter an award of punitive damages against individual Defendants, in their personal capacity, on the basis that Defendants continue to act in reckless disregard of Ms. Searle's rights, given that the Supreme Court's decision in *Tyler v. Hennepin* is clear that Ms. Searle cannot be deprived of her property without just compensation.

N.     Enter an award of attorney fees and costs of suit against all Defendants pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54; and

O.     Order such other and further relief as the Court may deem just, proper and necessary under the circumstances.

### JURY DEMAND

Plaintiff requests a trial by jury on all issues and claims so triable.

DATED this 26th day of January 2024.                   Respectfully submitted,

*/s/ Grady J. Block*
Grady J. Block*
William E. Trachman*
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Tele: (303) 292-2021
Fax: (877) 349-7074
gblock@mslegal.org
wtrachman@mslegal.org

*Admitted Pro Hac Vice*

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax: (602) 801-2539
vlucero@davillierlawgroup.com

*Attorneys for Plaintiff*