William E. Trachman (CO Bar No. 45384) (*pro hac vice*)
Grady Block (TX Bar No. 24120616) (*pro hac vice*)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
wtrachman@mslegal.org
gblock@mslegal.org

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax: (602) 801-2539
vlucero@davillierlawgroup.com

*Attorneys for Christine M. Searle*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine M. Searle,<br><br>Plaintiff,<br><br>v.<br><br>John M. Allen ("Allen"), in his individual and official capacity, as The Treasurer of Maricopa County; Arapaho LLC; American Pride Properties, LLC; Kristin Mayes, in her official capacity, as the Attorney General of the State of Arizona, John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies,<br><br>Defendants | Case No. CV-24-00025-PHX-JJT<br><br>Assigned Judge: John J. Tuchi<br><br>**Plaintiff's Opposition to Defendants' Motion to Dismiss.** *See* ECF No. 31. |

Plaintiff Christine M. Searle ("Plaintiff") hereby files this Opposition to Defendants' Motion to Dismiss. *See* ECF 31. The motion was filed on February 29, 2024, by Defendants Arapaho LLC ("Arapaho") and American Pride Properties LLC ("American Pride") (collectively, "Defendants"). They challenge Ms. Searle's contentions in her First Amended Complaint that the processes by which she lost ownership of her home—and by which she faces ongoing deprivations of property and the imminent threat of eviction—were unconstitutional, and otherwise illegal under a number of theories.

On March 20, 2024, the Attorney General for the State of Arizona submitted to this Court its official view of Arizona law with respect to one of the key underlying legal issues this case: "[B]ecause the State cannot authorize others to do that which the State is not empowered to do, county treasurers cannot sell to private parties more of a property interest than the State itself could be assigned and retain." ECF 32, at 3, ¶ 4.

In other words, Ms. Searle has essentially prevailed on the fundamental legal theory underpinning her case. *Compare, e.g.*, ECF 14, at 37-38 ("Plaintiff Christine M. Searle respectfully requests that this Court … [f]ind and declare that relevant provisions of Title 42, Chapter 18 of the Arizona Revised Statutes are unconstitutional under the United States and Arizona Constitutions, causing such confiscations and sales to be null and void and in violation of the United States and Arizona Constitutions") *with* ECF 32 at 3 ¶ 5 ("Accordingly, under *Tyler*, A.R.S. § 42-18204(B) is unconstitutional to the extent it

purports to extinguish a dispossessed owner's property interest in the sale proceeds or value of the equity that exceed what the State is owed and could retain by statute.").[1]

Nevertheless, Defendants Arapaho LLC and American Pride LLC hope to keep Ms. Searle's home anyway, and the entire value of her home's equity, by asking this Court to ratify their unconstitutional misconduct regardless of its unconstitutionality. *See* ECF 31, at 2 ("[T]he constitutional defenses raised here come too late."). The Court should reject such an effort.

### Standard of Review

When ruling on a motion to dismiss, courts accept all factual allegations in the plaintiff's complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). In other words, inferences in favor of the defendant are never permitted at this stage. And dismissal is proper under Rule 12(b)(6) only if it appears beyond doubt that the non-movant can prove no set of facts to support its claims. *Id.*

Broadly speaking, the parties agree that a motion to dismiss may be granted only if a plaintiff does not state a claim. Similarly, the parties agree that the Court may take judicial notice of some documents without converting Defendants' motion into a motion for summary judgment. However, Defendants fail to grapple with the light burden placed on plaintiffs at the motion to dismiss stage after the Supreme Court's decision in *Tyler*. *See Tyler*, 598 U.S. at 637 ("At this initial stage of the case, Tyler need not definitively prove

---

[1] Defendants do not contest, nor could they, that the Arizona Attorney General has the duty and responsibility of enforcing and interpreting Arizona law. ECF 14, at 7.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

her injury or disprove the County's defenses. She has plausibly pleaded on the face of her complaint that she suffered financial harm from the County's action, *and that is enough for now.*") (emphasis added).

Moreover, even in the event that the Court grants Defendants' motion, the policy of freely granting leave to amend should be applied with "extreme liberality." *City of Fernley v. Conant*, No. 22-15400, 2023 WL 2549792A, *2 (9th Cir. Mar. 17, 2023). A court may deny leave to amend on the ground of futility—which is what Defendants urge—only if it cannot "conceive of facts that would render the claim viable." *Id.*

## I.    Plaintiff's Claims Are Not Barred By The *Rooker-Feldman* Doctrine.

Defendants first argue that Ms. Searle must lose her home and the entire value of its equity because her federal constitutional claims are barred by the *Rooker-Feldman* doctrine, which prohibits lower federal courts from acting as appellate courts over state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) ("The jurisdiction possessed by the District Courts is strictly original."). But Defendants are wrong. In fact, the *Rooker-Feldman* doctrine does not apply to Ms. Searle's constitutional and other claims, which (1) have never been asserted before, and (2) do not allege that a state court misinterpreted the law or otherwise did not follow existing law. *See Mfd. Home Comm. Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005) ("MHC's complaint does not directly challenge a state court's factual or legal conclusion. MHC's complaint to the district court is, therefore, not a forbidden appeal under *Rooker–Feldman*.").

First, the *Rooker-Feldman* doctrine is a narrow jurisdictional rule that applies in only the most specific of circumstances. *See Skinner v. Switzer*, 562 U.S. 521, 531 (2011) ("[T]he *Rooker–Feldman* doctrine has been applied by this Court only twice, *i.e.*, only in

the two cases from which the doctrine takes its name."); *Mfd. Home Comm.*, 420 F.3d at 1029 ("This court's opinion in *Noel* [*v. Hall*, 341 F.3d 1148 (9th Cir. 2003)] provides a detailed history of how *Rooker–Feldman* developed. It also clarifies the narrow scope and application of the doctrine."). It does not apply where a federal plaintiff asserts an independent federal claim challenging a defendant's conduct. *Skinner*, 562 U.S. at 532 ("If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.") (cleaned up). The doctrine is limited to cases where the plaintiff seeks "appellate review" of a state court judgment. *Id.* at 532 ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.").

Critically, the *Rooker-Feldman* doctrine does not bar federal jurisdiction merely because a state court previously interpreted a statute that is challenged in a federal action. *Skinner*, 562 U.S. at 532 ("Skinner does not challenge the adverse CCA decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed."). Moreover, contrary to Defendants' assertions, there is no corollary to the *Rooker-Feldman* doctrine that federal courts may not hear issues "inextricably intertwined" with issues that a state court passed on previously; instead, the rule is that a plaintiff may not seek a *de facto* appeal of a state court judgment in federal court by making identical claims but couching them in other terms. *See Noel*, 341 F.3d at 1158 ("The federal suit is not a forbidden de facto appeal because it is 'inextricably intertwined' with something. Rather, it is simply a forbidden de facto appeal.").

Here, Ms. Searle asserts independent federal and state law claims, and does not seek appellate review of any state court judgment. Instead, she claims that Defendants' retention of her home and the entire value of its equity—well beyond any amount of taxes that she owed—violates her rights under the Takings Clause and Excessive Fines Clause, and gives rise to an Unjust Enrichment Claim. *See* Compl. ¶¶ 91-104, 133-140. Ms. Searle is not seeking to relitigate the issues decided in state court. Instead, she is challenging Defendants' post-judgment actions that were not directly at issue previously.

Defendants contend that because the tax foreclosure judgment in state court authorized the issuance of a treasurer's deed conveying the property to Defendants, Ms. Searle's constitutional claims are a forbidden *de facto* appeal. But this is a quintessential category error in the *Rooker-Feldman* context; courts invariably reject this formulation. *See Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005) ("The doctrine does not, however, prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation."). Moreover, at a minimum, this ignores the crucial distinction between the court-approved foreclosure of her right to redeem, and Defendants' subsequent retention of the surplus proceeds from that sale, which functioned as both a taking and an excessive fine. Defendants' unconstitutional failure to pay Ms. Searle the excess value of her home after ownership was transferred to them has never been a part of the tax foreclosure proceedings.

Finally, Defendants' arguments would prove too much. Even now, after the Attorney General has conceded the unconstitutionality of the procedures that injured Ms. Searle, federal courts would have little power to vindicate federal constitutional rights.

Under Defendants' theory, no plaintiff with Article III standing could ever bring a takings or excessive fines challenge in federal court in this context, even if a plaintiff's claims were based entirely on post-sale conduct. That cannot be the law.

## II.   Plaintiff Claims Are Not Barred By Res Judicata.

Defendants contend that Ms. Searle's claims are barred by res judicata, because she should could have raised her constitutional arguments in the state court tax lien foreclosure proceeding. Defendants are incorrect because (1) they mistake the bar on successive suits under the doctrine of <u>res judicata</u> with the prohibition on relitigating issues in prior suits under the doctrine of <u>collateral estoppel</u>; (2) the elements of the relevant legal test for collateral estoppel are not met; and (3) Ms. Searle had no duty to mount a challenge to existing federal precedents, take her own challenge to the U.S. Supreme Court, or anticipate that the U.S. Supreme Court would rule in a Takings case that affected her property rights.

First, respectfully, Arizona courts distinguish between res judicata and collateral estoppel. As a technical matter, Defendants' reliance on the doctrine of res judicata is misplaced, because this is not a second suit by Ms. Searle based on the same causes of action. *See Fuller v. Hartford Acc. and Indem. Co.*, 124 Ariz. 76, 78 (Ariz. Ct. App. 1979) ("[U]nder the doctrine of Res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars the second suit based *on the same cause of action*.") (emphasis added).

Instead, Defendants mean to assert that Ms. Searle's claims against them are barred by collateral estoppel. *See Fuller*, 124 Ariz. at 78 (where a party tries to prevent another party from litigating an issue, "it is clear that in this matter on review we are dealing with the application of collateral estoppel, or issue preclusion, as opposed to Res judicata.").

And for the same reason, Defendants assertion that a default judgment has the same status as a judgment on the merits does not apply here, because there is no such similar rule in the collateral estoppel context. *Id.* at 78 ("Hartford was not precluded from litigating the question of Almer Fagin's residence because it was a non-essential fact to the judgment finding him negligent.").

Second, the elements of collateral estoppel are not met here. Under Arizona law, collateral estoppel applies only when "the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (Ariz. 1986) (en banc). Here, it is indisputable that the state court default judgment was not rendered after actually litigating the constitutional issues presented in this federal lawsuit. The state court case was a narrow *in rem* tax foreclosure action filed by Defendants to obtain title to Ms. Searle's property, based on a tax lien. *See* A.R.S. § 42-18201 (authorizing tax lien holder to foreclose on property). Ms. Searle did not appear in that action, or present any claims; and, of course, a default judgment was entered against her. Compl. ¶ 48; *see also Chaney Bldg. Co.*, 148 Ariz. at 153 ("[I]n the case of a judgment entered by confession, consent or default, none of the issues is actually litigated."). The default judgment merely authorized the County treasurer to issue a deed conveying the property. It did not resolve any substantive disputes, much less adjudicate the claims asserted here, which have no intrinsic connection to a tax lien action.

Separately, Ms. Searle could hardly have advanced a series of constitutional claims based on *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023), when her injuries stemmed from

the state court tax foreclosure case itself. For instance, the Takings violations alleged in this lawsuit arose from Defendants' actions after obtaining the default judgment—specifically, their retention of Ms. Searle's home and surplus equity. Compl. ¶¶ 52-54, 82-86, 133-140; *Tyler*, 598 U.S. at 647 ("The taxpayer must render unto Caesar what is Caesar's, but no more.").[2]

Those claims are not founded on the same "transaction or series of transactions" at issue in the foreclosure case, which simply adjudicated Defendants' right to foreclose based on the tax delinquency. The unconstitutional taking occurred later, when Defendants took title to the property. Because the constitutional violations had not yet happened at the time of the state court case, neither res judicata nor collateral estoppel could apply. Stated differently, Ms. Searle is not attacking the validity of the tax lien or seeking to relitigate the foreclosure. Rather, she is challenging Defendants' unconstitutional conduct that occurred after the foreclosure judgment.

And, in any event, the decision in *Tyler* itself would undermine any argument Defendants could advance. *See Corbett v. ManorCare of America, Inc.*, 213 Ariz. 618, 626 (Ariz. Ct. App. 2006) ("an intervening change in the law will … [trigger the exception to the collateral estoppel doctrine.]"); *cf. Schexnider v. LG Chem LTD of Korea*, No. 6:21-cv-208-JDK, 2022 WL 2181056, *2 (E.D. Tx. June 16, 2022) (explaining that Texas recognizes an exception to the collateral estoppel doctrine where there has been "a change

---

[2] Before *Tyler*, a federal district court in Arizona rejected a Takings claim in an analogous situation. *See Automatic Art, L.L.C. v. Maricopa County*, No. CV 08-1484-PHX-SRB, 2010 WL 11515708, *7 (D. Ariz. Mar. 17, 2010) ("The Arizona statutes implemented by Defendants are constitutional.").

in statutory law or decisional law" that "may alter the legal rights or relations of the parties."); *accord* ECF 14, at 19, ¶ 74 (citing amicus brief signed by Arizona County Treasurers' Association in *Tyler* stating that a ruling in favor of Tyler would cause "dramatic changes to how delinquent property taxes are collected across the country"). Consequently, none of Ms. Searle's instant claims are collaterally barred here.

## III.    Ms. Searle's Claims Are Timely.

A statute of limitations is designed to protect courts and defendants from claims where plaintiffs have "slept on their rights." *See Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, at 464 (Ariz. 1990); *see also Brooks v. S. Pac. Co.*, 105 Ariz. 442, 444 (Ariz. 1970) ("The policy underlying the statute of limitations is primarily for the protection of the defendant, and the courts, from litigation of stale claims where plaintiffs have slept on their rights and evidence may have been lost or witnesses' memories faded."). Ms. Searle has hardly slept on her rights, given that even the Defendants have painted a portrait of repeated legal battles with her.

Regardless, Defendants argue that Plaintiff's claims are barred by the statute of limitations, relying on a simplistic calculation from the dates of the tax lien sale and the entry of judgment for foreclosure. However, these assertions overlook (1) that *Tyler* defines when an injury in this context occurs, such that Treasurer Allen's conveyance took place in February 2022, less than two years before the filing of the complaint; (2) Arizona's well-established discovery rule; and (3) the continuing nature of the Plaintiff's injury in this case, which remains unremedied and is thus ongoing.

**A.    Ms. Searle's Claims Were Brought Less Than Two Years After The Conveyance Of Her Property To Arapaho And The Subsequent Sale to Defendant American Pride.**

The injury in a case like this involves the retention of the value in one's home—in other words, the "taking" of an individual's property and its associated equity. *See Tyler*, 598 U.S. at 638 ("The question is whether that remaining value is property under the Takings Clause, protected from uncompensated appropriation by the State."); *id.* at 639 ("[Hennepin County] could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a classic taking in which the government directly appropriates private property for its own use.") (internal quotation marks omitted). Here, Ms. Searle's complaint was filed before the expiration of any 2-year statute of limitations period after these injuries accrued.

First, the Court may take judicial notice that Ms. Searle's home was conveyed by Defendant John Allen to Defendant Arapaho on February 1, 2022. *See* Exhibit 1, at 2. Second, the Court may take judicial notice that the home was conveyed by Defendant Arapaho to Defendant American Pride on February 3, 2022. *See* Exhibit 1, at 3.[3] Both of these dates are within the two years of the initial complaint filed on January 5, 2024.

**B.     Ms. Searle's Claims Are Timely Under The Discovery Rule.**

Even if the Court were to pin Ms. Searle's injuries to earlier dates, the Arizona Supreme Court has unequivocally held that the discovery rule "delays the accrual of a cause of action until the plaintiff knows or, by the exercise of reasonable diligence, should know the facts underlying the cause." *Doe v. Roe*, 191 Ariz. 313, 321 (1998). Under this rule, the crucial date for statute of limitations purposes is when Plaintiff discovered or should have

---

[3] The Court may take judicial notice of these documents as fairly encompassed by the Complaint.

discovered the actionable injury. This acknowledges the reality that certain injuries and their causal connections to a defendant's actions are not immediately apparent to a plaintiff, and may only become recognizable upon the manifestation of tangible harm. The discovery rule is an equitable doctrine that "protects those who are diligent in pursuing their claims." *Logerquist v. Danforth*, 188 Ariz. 16, 19 (Ariz. Ct. App. 1996). It recognizes that "it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America*, 182 Ariz. 586, 589 (Ariz. 1995).

In this case, it was reasonable for Ms. Searle to discover the full facts underlying her unconstitutional Takings and excessive fines claims only after the treasurer's deed transferring her home to Defendants was issued. So while the default judgment authorizing issuance of the deed was entered on December 14, 2021, the deed transfer itself did not occur until February 2022. Compl. ¶ 48; *cf.* Exhibit 1, at 1 (February 10, 2022 Notice apprising Ms. Searle that they would like to "assist with this transition.").

Until learning that the deed had been issued, Ms. Searle had no knowledge that her home was being taken, much less that Defendants would fail to pay her the surplus equity in the home, as required by the Takings Clause under the *Tyler* decision. The default judgment alone did not effectuate the taking. It merely authorized a future transfer of title by the County treasurer. *See* A.R.S. § 42-18204 (judgment for tax lien foreclosure "shall direct the county treasurer to expeditiously execute and deliver to the party in whose favor judgment is entered a deed conveying the property described in the judgment"). The constitutional violations alleged in the Complaint became complete only later, when Ms. Searle's property was taken and its value retained.

Arizona courts have not hesitated to apply the discovery rule in situations where the plaintiff's injury was not fully apparent at the time of the defendant's wrongful conduct. For example, in *Logerquist*, the court held that the plaintiff's cause of action for childhood sexual abuse did not accrue until she recovered memories of the abuse, even though the abuse occurred many years earlier. 188 Ariz. at 20. Similarly, in *Walk v. Ring*, 202 Ariz. 310 (Ariz. 2002), the Arizona Supreme Court applied the discovery rule to delay the accrual of tort claims brought by a minor against his doctor until the minor could reasonably discover the complete facts underlying his claims. *Id.* at 316.

Here, while the default judgment may have started the chain of events that led to the unconstitutional taking of Ms. Searle's property, the constitutional claims were not yet complete, and Ms. Searle had no reason to know of her injury until she became aware that the treasurer's deed was issued by Defendants' posting it on her door, and that Defendants would retain the surplus. In the context of Plaintiff's case, the "injury" encapsulates not merely the procedural act of foreclosing on the tax lien but, critically, the resultant unconstitutional taking without just compensation and the excessive retention of surplus equity. This moment—when the full knowledge of her rights and the extent of the deprivation became indisputably clear to Plaintiff—marks the true onset of the actionable harm and, accordingly, the commencement of the statute of limitations. At that point, the limitations clock began to run. This lawsuit was filed on January 5, 2024, well within two years of these events. Therefore, under the discovery rule, Ms. Searle's claims are timely.

**C.    Ms. Searle Has Alleged A Continuing Violation That Makes Her Claims Timely.**

Even if the discovery rule did not affect the accrual of Ms. Searle's claims, they would still be timely, because Plaintiff's injury—deprivation of her house and its value without just compensation—is continuing and ongoing. Federal courts have long recognized that the statute of limitations does not bar claims for continuing violations. In *Kuhnle Bros., Inc. v. Cnty. of Geauga*, for instance, the Sixth Circuit held that a county's ongoing enforcement of an allegedly unconstitutional ordinance amounted to a continuing violation that constantly reset the limitations period. 103 F.3d 516, at 522-23 (6th Cir. 1997). The court explained that "[a] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment." *Id*. at 522. The Ninth Circuit reached a similar conclusion in a case involving an unlawful taking. In *Hoery v. United States*, the court held that the plaintiff's takings claim was not time-barred because the government's failure to remove toxic chemicals from his land was a continuing violation. 324 F.3d 1220, 1226 (9th Cir. 2003). The limitations period started anew each day the violation continued.

Most notably, during recent oral argument before the U.S. Supreme Court in *Devillier v. Texas*, Justice Kagan posed the question to Texas's Solicitor General regarding how to conceive of an unremedied taking: "It's an ongoing violation of the Constitution, right? [The state has] taken Mr. McNamara's property. [The state] hasn't paid him. Every day, [the state is] violating the Constitution, correct?" *See* Oral Argument before the U.S. Supreme Court in *Devillier v. Texas*, No 22-913, at 47:7-11 (Jan. 16, 2024).[4] Texas's

---

[4]     https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-913_l6gn.pdf

attorney, unsurprisingly, agreed, "Yes, Your Honor."" *Id*. The colloquy describes the exact situation presented here—by retaining Ms. Searle's home and its excess value beyond what was owed for the tax lien, Defendants continue to violate the Takings Clause every day, and continue to injure Ms. Searle with respect to the other theories in her complaint.

### IV.   Ms. Searle Plausibly Alleges A Direct Takings Claim.

Defendants offhandedly dismiss Plaintiff's direct claim under the Fifth Amendment. ECF 31, at 13. But in *Devillier*, the U.S. Supreme Court is currently weighing the question of whether individuals possess a direct claim under the Fifth Amendment for just compensation in the context of takings, independent of the procedural vehicle provided by 42 U.S.C. § 1983. Docket No. 22-913. Should the Supreme Court find the existence of a direct claim under the Fifth Amendment, such a ruling would preserve Ms. Searle's ability to seek redress for the alleged unconstitutional taking and retention of surplus equity in her property. As such, Plaintiff respectfully requests that this Court take judicial notice of the pending decision in *Devillier v. Texas*, and its potential implications to this case.

### V.   Arapaho and American Pride Are Proper Defendants Because They Acted Under Color of State Law in Taking Ms. Searle's Property.

Defendants argue that they cannot be sued under 42 U.S.C. § 1983 or the Arizona Constitution because they are private parties, not government actors. This argument ignores the well-established principle that private entities act "under color of state law" when they exercise powers traditionally reserved to the state. By foreclosing on Ms. Searle's home and retaining the home and its excess equity, Defendants' conduct is fairly attributable to the state. They are therefore proper defendants.

Section 1983 provides a cause of action against any person who, under color of state law, deprives another of rights protected by the U.S. Constitution. *See* 42 U.S.C. § 1983. A private party acts under color of state law if it engages in conduct that is "fairly attributable" to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). While the statute is most often used to sue government officials, it also applies to private parties who are "willful participant[s] in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). One way that a private party's conduct can be fairly attributable to the state is if the party exercises "powers traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). When a private entity performs a function that is traditionally associated with sovereignty, it acts under color of law. *See Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002).

Courts have squarely held that private parties engage in state action when they participate in tax lien foreclosures and exercise rights created by state foreclosure laws. *See, e.g., Dieffenbach v. Attorney Gen. of Vermont*, 604 F.2d 187, 194 (2d Cir. 1979) ("Unlike the procedures in other states for non-judicial foreclosure under private power of sale, Vermont's strict foreclosure laws directly engage the state's judicial power in effectuating foreclosure. These official acts are certainly sufficient to give us jurisdiction over the appellant's claim that the strict foreclosure laws of Vermont are unconstitutional."). The same reasoning applies here. Arizona law gives tax lien purchasers like Arapaho and American Pride the power to foreclose on properties and obtain title through a treasurer's deed obtained by a judicial order. A.R.S. §§ 42-18201, 18204. By utilizing Arizona's tax foreclosure statutes to take title to Ms. Searle's home, Defendants invoked the authority of the state to conduct what is normally a government responsibility.

Notably, the state court tax foreclosure judgment itself imbued Defendants with state-conferred rights and privileges. The judgment expressly authorized the County treasurer to issue a deed conveying Ms. Searle's property to Arapaho. Compl. ¶¶ 48-49. It also provided that Ms. Searle would have "no further legal or equitable right, title, or interest in the Property." *Id.* ¶ 51. These are sovereign powers that can only be exercised with the imprimatur of state law.

In reality, Arizona has delegated to private tax lien purchasers like Defendants the governmental function of seizing property to satisfy tax debts. Defendants could not have taken title to Ms. Searle's home without the affirmative authorization and participation of the state through its tax foreclosure laws. Defendants attempt to portray themselves as private parties engaged in a commercial transaction, but they possess Ms. Searle's property only because the state has clothed them with governmental power. "[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299 (1966). So it is here.

Finally, allowing Defendants to evade liability would create a massive loophole in the protection of property rights. If a state could immunize private parties from constitutional claims through delegation, it would render those guarantees a dead letter. Fortunately, that is not the law. When a state empowers private actors to perform governmental functions, those actors are subject to the same constitutional constraints as the state itself. Indeed, it is American Pride itself that currently possesses the property that is necessary to remedy Ms. Searle's constitutional and common law injuries. *Accord* ECF 31, at 3, ¶ 6(a) (noting that the Attorney General does not possess Ms. Searle's property).

**VI.     The Anti-Injunction Act Does Not Bar Ms. Searle's Claims For Injunctive Or Declaratory Relief.**

Defendants briefly argue that Ms. Searle's request for injunctive relief is precluded by the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, and suggest in a footnote that her claims may also be barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. ECF 31, at 17; *id.* at 13 n.9. Both arguments are meritless.

The AIA provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This statute "is designed to prevent friction between federal and state courts by barring federal intervention in all but the narrowest of circumstances." *Sandpiper Vill. Condo. Ass'n v. Louisiana-Pacific Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). However, the AIA does not preclude injunctions against the enforcement of state court judgments obtained in violation of federal law.

The U.S. Supreme Court has squarely held that 42 U.S.C. § 1983—the statute authorizing suits for deprivation of federal rights—is an "expressly authorized" exception to the AIA. *See Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972). "[F]ederal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Id.* at 242. Here, several claims are brought under § 1983 to vindicate Ms. Searle's rights under the Takings Clause and Excessive Fines Clause. Compl. ¶¶ 105-119, 133-146. The relief requested in the Complaint thus falls squarely within *Mitchum*'s § 1983 exception to the AIA.

Notably, the Complaint never seeks to enjoin any state court proceedings, which have already concluded. Rather, it seeks an injunction against Defendants to prevent them from owning Ms. Searle's home, retaining the excess equity, and evicting her. Compl. at 37-38. This type of relief, focused on Defendants' allegedly unconstitutional conduct, does not implicate the AIA's purpose of preventing interference with state court jurisdiction. Ms. Searle is not asking this Court to stay the tax foreclosure case itself.

As for the TIA, that statute provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Put simply, it bars federal courts from interfering with a state taxation levy. Importantly, however, the TIA does not affect federal litigation merely because a case touches on state tax administration. The Act was intended to "limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981). "The manifest purpose of s 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7, (1962).

Ms. Searle's lawsuit against Arapaho and American Pride does not implicate these concerns. She is not seeking to enjoin the collection of taxes, or obtain a refund of any taxes paid. On the contrary, Ms. Searle acknowledges that Defendants purchased the tax lien and obtained a foreclosure judgment. Compl. ¶¶ 45-49. But rather than disputing her tax debt, Ms. Searle is challenging Defendants' ability to take away her home, and the surplus equity in her home after the tax debt had been satisfied by transferring the property

to them. Granting her requested relief would not impede Arizona's ability to assess, levy, or collect property taxes. It would simply prevent Defendants from retaining more than they are owed in taxes, consistent with the Supreme Court's decision in *Tyler*.

Courts have held that the TIA does not preclude claims by taxpayers seeking to recover the excess value of their foreclosed property. In *Coleman through Bunn v. D.C.*, 70 F. Supp. 3d 58 (D.D.C. 2014), a case cited in *Tyler*, the court rejected the argument that claims seeking the surplus equity from a tax sale were barred by the TIA. *Id.* at 74-75. The court emphasized that the plaintiffs were not seeking to avoid paying taxes, but rather to obtain just compensation for the excess value taken. *Id.* The same reasoning applies here.

Accordingly, neither the AIA nor the TIA deprives this Court of jurisdiction to hear Ms. Searle's constitutional claims. She is not seeking to enjoin any state court proceeding or avoid her tax liabilities. Instead, she has alleged a violation of her federal rights based on Defendants' retention of her home and its equity. The Court may exercise jurisdiction over these claims notwithstanding the narrow limitations imposed by the two Acts.

**VII.    Pullman Abstention Has No Bearing On Plaintiff's Case.**

Defendants also argue that the Court should abstain from hearing Ms. Searle's state law claims—but not her federal ones—under the Pullman abstention doctrine, based on a hypothetical future state law action. That doctrine allows federal courts to postpone exercising jurisdiction "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). The doctrine is a narrow exception to the federal courts' "virtually unflagging obligation" to adjudicate cases within their jurisdiction. *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 889 (9th Cir. 2011).

For Pullman abstention to apply, three conditions must be satisfied: (1) the case must touch on a sensitive area of social policy upon which federal courts should not enter unless there is no alternative to adjudication; (2) a definitive ruling on the state law issue must potentially obviate the need for constitutional adjudication by the federal court; and (3) the proper resolution of the potentially determinative state law issue must be uncertain. *Potrero Hills*, 657 F.3d at 888-89.

None of these requirements is met here. First, while Defendants assert that state property tax laws are a sensitive area of social policy, the U.S. Supreme Court's decision in *Tyler* shows that federal courts can effectively adjudicate constitutional challenges to tax foreclosure schemes. *Tyler* addressed Minnesota's tax foreclosure law, which is substantially similar to Arizona's, without invoking Pullman abstention. 598 U.S. at 634-36. The Court gave no indication that tax foreclosures are so sensitive that federal courts should avoid ruling on their constitutionality.

Second, there is no longer any need to resolve any state law issue in this case that could potentially obviate the need to decide Ms. Searle's federal constitutional claims. The Complaint alleges that Arizona's tax lien foreclosure statutes violate the Takings Clause and Excessive Fines Clause of the U.S. Constitution. Compl. ¶¶ 91-104, 133-140. The State's Attorney General has announced its agreement with Plaintiff's theory in binding judicial admissions filed with this Court. (Which resulted in a favorable order of this Court dismissing the Attorney General from the case, see ECF 35). Yet Defendants grasp at straws in the hopes that they can delay judgment here. The Court should reject such efforts.

Third, the relevant state law issues are not uncertain or ambiguous. Arizona's tax lien foreclosure statutes are clear and well-established, having been on the books in

substantially the same form for decades. *See* A.R.S. §§ 42-18201 et seq. There is no confusion about what these laws provide or how they operate. Defendants do not identify any unsettled question of state law that could affect the outcome of this case. Moreover, there is nothing novel or uncertain about Ms. Searle's state law claims. Her arguments against Defendants under the Arizona Constitution's Takings Clause, Excessive Fines Clause, and an Unjust Enrichment theory are all based on settled principles of Arizona law. Compl. ¶¶ 120-146. These provisions are routinely interpreted and applied by Arizona courts, and their construction is not in serious doubt. In conclusion, Pullman abstention has no application to this case. The Court should adjudicate Ms. Searle's claims on the merits.

**VIII.   Plaintiff's Unjust Enrichment Claim is Both Timely and Properly Pled.**

In addition to her constitutional claims, Ms. Searle has asserted a state law claim for unjust enrichment based on Defendants' retention of her home and its surplus equity in her home. Compl. ¶¶ 147-155. Defendants argue that this claim should be dismissed because (1) it is barred by res judicata and the statute of limitations, and (2) unjust enrichment is inapplicable when a party has simply followed the law. Neither argument is sound.

First, for the reasons already explained, Ms. Searle's unjust enrichment claim is not precluded by res judicata, nor is it untimely under the statute of limitations. It was not intrinsically part of the foreclosure action itself, and did not accrue until Defendants obtained title to the property. Defendants' previous arguments are no more persuasive for the unjust enrichment claim than they are for Ms. Searle's constitutional claims.

Second, Defendants are incorrect that unjust enrichment cannot proceed when a party has followed the law. The essence of an unjust enrichment claim is that a defendant has received a benefit at the plaintiff's expense under circumstances that would make it

inequitable for the defendant to retain the benefit. *See Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318 (Ariz. Ct. App. 2012). The doctrine is designed to prevent a party from being "unjustly enriched at the expense of another." *Murdock-Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53 (Ariz. Ct. App. 1985). "In order to be granted restitution, [plaintiff] must demonstrate that [defendant] received a benefit, that by receipt of that benefit [defendant] was unjustly enriched at [plaintiff's] expense, and that the circumstances were such that in good conscience [defendant] should make compensation." *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352 (Ariz. Ct. App.1983). Here, Defendants clearly received a benefit by obtaining Plaintiff's property, which took place at Plaintiff's expense, and this transfer was unconstitutional.

Even if Defendants complied with Arizona's tax lien foreclosure statutes by taking title to Ms. Searle's home, it would be inequitable to allow them to retain her personal home when she is perfectly able to pay off her tax debt; nor would it be just for them to obtain hundreds of thousands of dollars in surplus equity beyond the amount of the tax debt. Defendants paid only $1,607.68 to purchase the tax lien, but obtained a property worth between $425,000 and $505,000. Compl. ¶¶ 44-46, 53-54. Letting Defendants keep this massive windfall would offend principles of fairness, and result in a gross injustice.

Notably, courts in other jurisdictions have upheld unjust enrichment claims by former property owners seeking to recover surplus equity from tax foreclosure sales. For example, in *Rafaeli, LLC v. Oakland County*, the Michigan Supreme Court—analyzing a virtually identical statute—ruled that unjust enrichment was a viable claim because the defendant kept proceeds from a tax sale beyond the amount of the tax delinquency, thereby conferring a benefit at the plaintiff's expense, even though the county had acted in

accordance with state tax foreclosure laws. 505 Mich. 429 (Mich. 2020). The same logic applies here. This is particularly true given that had the state been the recipient of the title, it would be required by statute to return the surplus following a sale. Given Defendants' status as a delegate of state power, they should be similarly constrained.

In sum, Ms. Searle's unjust enrichment claim is a permissible and appropriate means of preventing Defendants from receiving an unearned windfall at her expense. It would be a strange result for Ms. Searle to have successfully persuaded the Attorney General that she was the victim of unconstitutional conduct, but to nevertheless allow Defendants to keep her home and hundreds of thousands of dollars in excess home equity simply because they followed the now unlawful procedural steps for a tax lien foreclosure. The Court should deny Defendants' motion to dismiss, and allow Ms. Searle's claims to proceed.

Dated: April 1, 2024

Respectfully submitted,

*s/ William E. Trachman*
William E. Trachman, CO #45684 (*pro hac vice*)
Grady Block TX # 24120616 (*pro hac vice*)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
wtrachman@mslegal.org
gblock@mslegal.org

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax: (602) 801-2539
vlucero@davillierlawgroup.com

*Attorneys for Christine M. Searle*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April, I caused a true and correct copy of the foregoing **Opposition to Defendants' Motion to Dismiss** to be electronically filed with the Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to the following counsel of record in this matter:

Arapaho LLC:                         John L. Lohr Jr., jll@hgplaw.com

American Pride Properties, LLC:      John L. Lohr Jr., jll@hgplaw.com

Treasurer John Allen:                Kim Miles, milesk@mcao.maricopa.gov

                                     Kate Kane,

                                     Katherine.Kane@mcao.maricopa.gov

                                     */s/ William E. Trachman*
                                     William E. Trachman