David J. Deerson*
Cal. Bar No. 322947
PACIFIC LEGAL FOUNDATION
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
(916) 419-7111
DDeerson@pacificlegal.org

James M. Manley (031820)
PACIFIC LEGAL FOUNDATION
3241 East Shea Blvd., No. 108
Phoenix, AZ 85028
(916) 288-1405
JManley@pacificlegal.org

*Attorneys for Amicus Curiae*
*Pacific Legal Foundation*

*pro hac vice*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Christine M. Searle,<br><br>                 Plaintiff,<br><br>     v.<br><br>John M. Allen ("Allen"), in his individual and official capacity, as The Treasurer of Maricopa County; Arapaho LLC; American Pride Properties, LLC, et. al.,<br><br>                 Defendants. | Case No. CV-24-00025-PHX-JJT<br><br>Assigned Judge: John J. Tuchi<br><br>**BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION IN SUPPORT OF PLAINTIFF** |

## CORPORATE DISCLOSURE AND AUTHORSHIP STATEMENT

Pacific Legal Foundation is a 501(c)(3) nonprofit corporation. It has no parent corporation and no publicly held corporation owns stock in Pacific Legal Foundation.

No party's counsel had any role in authoring this brief in whole or in part. No party nor party's counsel, nor any other person beside *amicus* contributed funds for the preparation or submission of this brief.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE AND AUTHORSHIP STATEMENT ............................... i

TABLE OF AUTHORITIES ................................................................................................ iii

IDENTITY AND INTERST OF AMICUS CURIAE ........................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 2

ARGUMENT ........................................................................................................................... 4

I. NEITHER *ROOKER-FELDMAN* NOR *RES JUDICATA* APPLY BECAUSE THE TAKINGS CLAIMS FOR JUST COMPENSATION ARE SEPARATE AND DISTINCT FROM THE FORECLOSURE ACTION .................... 5

    A. The *Rooker-Feldman* doctrine does not apply ........................................................... 5

    B. Ms. Searle's claims are not precluded by *res judicata* ............................................... 7

II. STATUTE OF LIMITATIONS ................................................................................... 9

    A. The taking was not final until the issuance of the treasurer's deed ........................ 9

    B. Ms. Searle's motion to set aside the judgment tolled the limitations period from when it was filed until it was finally disposed in October 2023 ........ 10

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Michigan*,
  470 Mich. 105 (2004) ............................................................................................... 9

*Alliance of Descendants of Tex. Land Grants v. United States*,
  37 F.3d 1478 (Fed. Cir. 1994) ............................................................................ 7, 9

*Arapaho LLC v. Searle*,
  No. 1 CA-CV 22-0478, 2023 WL 1830382 (Ariz. Ct. App. Feb. 9, 2023),
  *review denied* (Oct. 17, 2023) ..................................................................... 2, 8, 11

*Benavidez v. County of San Diego*,
  993 F.3d 1134 (9th Cir. 2021) ................................................................................ 6

*Cedar Point Nursery v. Hassid*,
  594 U.S. 139 (2021) ................................................................................................ 1

*City of Phoenix v. Sittenfeld*,
  53 Ariz. 240 (1939) ............................................................................................... 11

*Danforth v. United States*,
  308 U.S. 271 (1939) .............................................................................................. 10

*Daystar Investments, L.L.C. v. Maricopa Cnty. Treasurer*,
  207 Ariz. 569 (Ct. App. 2004) ............................................................................. 10

*Dean v. Mich. Dep't of Nat. Res.*,
  399 Mich. 84 (1976) ....................................................................................... 3, 8–9

*Doe & Assocs. Law Offices v. Napolitano*,
  252 F.3d 1026 (9th Cir. 2001) ................................................................................ 6

*Dorce v. City of New York*,
  2 F.4th 82 (2d Cir. 2021) ........................................................................................ 5

*Elkins v. Derby*,
  12 Cal. 3d 410 (1974) ........................................................................................... 11

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
  544 U.S. 280 (2005) ................................................................................................ 5

*Freed v. Thomas*,
  976 F.3d 729 (6th Cir. 2020) .................................................................................. 2

*Friedemann v. Kirk*,
   197 Ariz. 616 (Ct. App. 2000) ............................................................................................. 9

*Hall v. Lalli*,
   194 Ariz. 54 (1999) ....................................................................................................... 7, 9

*Harrison v. Montgomery Cnty.*,
   997 F.3d 643 (6th Cir. 2021) ................................................................................... 2, 7, 8

*Hosogai v. Kadota*,
   145 Ariz. 227 (1985) (superseded by statute on other grounds as stated in
   *Jepson v. New*, 164 Ariz. 265 (1990)) ........................................................................... 11

*Knick v. Twp. of Scott*,
   588 U.S. 180 (2019) ................................................................................................*passim*

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) ......................................................................................................... 1

*Kougasian v. TMSL, Inc.*,
   359 F.3d 1136 (9th Cir. 2004) ..................................................................................... 5–6

*Lance v. Dennis*,
   546 U.S. 459 (2006) ......................................................................................................... 5

*Lundstrom v. Young*,
   857 F. App'x 952 (2021) .................................................................................................. 5

*Mucciaccio v. Town of Easton*,
   No. 2173cv00004B (Mass. Super. Ct. Mar. 8, 2021) ...................................................... 1

*Nat'l Tax Lien Redemption Servs. LLC v. Sweeney*,
   No. 1 CA-CV 17-0611, 2019 WL 123935 (Ariz. Ct. App. Jan. 8, 2019) ....................... 8

*Noel v. Hall*,
   341 F.3d 1148 (9th Cir. 2003) ......................................................................................... 6

*Nollan v. Cal. Coastal Comm'n*,
   483 U.S. 825 (1987) ......................................................................................................... 1

*Palazzolo v. Rhode Island*,
   533 U.S. 606 (2001) ......................................................................................................... 1

*Rafaeli v. Oakland County*,
   952 N.W.2d 434 (Mich. 2020) ........................................................................................ 1

*Schafer v. Kent Cnty.*,
    990 N.W.2d 876 (Mich. 2023)...................................................................................... 1

*Schafer v. Kent Cnty.*,
    997 N.W.2d 290 (Mich. Ct. App. 2022) ....................................................................... 1

*Sheetz v. County of El Dorado*,
    601 U.S. 267 (2024)....................................................................................................... 1

*Sprang v. Petersen Lumber, Inc.*,
    165 Ariz. 257 (Ct. App. 1990) .................................................................................... 10

*Tyler v. Hennepin County*,
    598 U.S. 631 (2023)............................................................................................. *passim*

*Woodbridge v. City of Greenfield*,
    No. 23-30093-TSH, 2024 WL 2785052 (D. Mass. May 29, 2024).............................. 7

**Statutes**

Ariz. Rev. Stat. § 42-18204 ................................................................................. 4, 8, 10

Ariz. Rev. Stat. § 42-18205 ......................................................................................... 4, 7

Ariz. Rev. Stat. § 42-18205(A) ................................................................................. 9–10

**Rule**

Rule 60(b)(4) ............................................................................................................ 10–11

**Other Authorities**

Legal Appendix: 50 States, Pacific Legal Foundation,
    www.homeequitytheft.org/appendix-laws .................................................................... 3

Order Granting Defendants' Motion for Summary Judgment,
    *Johnson v. City of East Orange*, No. ESX-C-16-23
    (N.J. Sup. Ct. Law Div. Mar. 19, 2024)......................................................................... 1

Order Granting Motion to Reopen Proceeds, *Wayside Church v.
    Cnty. of Van Buren*, No. 1:14-CV-1274 (W.D. Mich. Mar. 26, 2019)........................... 1

# IDENTITY AND INTEREST OF AMICUS CURIAE

Pacific Legal Foundation (PLF) is a nonprofit, tax-exempt corporation organized for the purpose of litigating matters affecting the public interest in private property rights, individual liberty, economic freedom, and the separation of powers. Founded more than 50 years ago, PLF is the most experienced legal organization of its kind. PLF attorneys represented petitioner Geraldine Tyler at the Eighth Circuit and in the Supreme Court in *Tyler v. Hennepin County*, 598 U.S. 631 (2023) PLF attorneys have also participated as lead counsel in several other landmark United States Supreme Court cases in defense of the right to make reasonable use of one's property and the corollary right to obtain just compensation when that right is infringed. *See, e.g.*, *Sheetz v. County of El Dorado*, 601 U.S. 267 (2024); *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021); *Knick v. Twp. of Scott*, 588 U.S. 180 (2019); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013); *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987).

PLF attorneys have extensive experience with the questions at issue in this case and have represented former owners of tax-delinquent property lost to foreclosure in several jurisdictions across the country in addition to *Tyler v. Hennepin County*. *See, e.g.*, *Rafaeli v. Oakland County*, 952 N.W.2d 434 (Mich. 2020); *Schafer v. Kent Cnty.*, 990 N.W.2d 876 (Mich. 2023); *Wayside Church v. Cnty. of Van Buren*, No. 1:14-CV-1274, Order Granting Motion to Reopen Proceeds (W.D. Mich. Mar. 26, 2019); *Mucciaccio v. Town of Easton*, No. 2173cv00004B (Mass. Super. Ct. Mar. 8, 2021) (filed and dismissed in 2021 upon favorable settlement); *Johnson v. City of East Orange*, No. ESX-C-16-23, Order Granting Defendants' Motion for Summary Judgment (N.J. Sup. Ct. Law Div. Mar. 19, 2024).

PLF has also frequently participated as amicus curiae in cases alleging that government takes private property without just compensation when it confiscates more than is owed in property taxes. *See also, e.g.*, *Schafer v. Kent Cnty.*, 997 N.W.2d 290 (Mich. Ct. App. 2022); *Harrison v. Montgomery Cnty.*, 997 F.3d 643 (6th Cir. 2021); *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020).

This brief will assist the Court by providing a unique and experienced viewpoint on the adjudication of takings claims following foreclosure under *Tyler*.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

While property may be foreclosed and sold to recover delinquent taxes, neither the government nor private investors may take more than is owed. Last year, the United States Supreme Court held in *Tyler* that taking more property than necessary to satisfy a tax debt violates the Fifth Amendment's Takings Clause. *Tyler*, 598 U.S. at 647–48. This monumental decision invalidated confiscatory tax foreclosure schemes in over a dozen states, including Arizona. *See id.* at 643 (observing that thirty-six states and the Federal Government do not employ such confiscatory measures).

In this case, 70-year-old Christine Searle owed $1,607.68 in delinquent taxes on a home she owned for 18 years. (Second Am. Compl. ¶¶ 45, 48 ("SAC")). The home itself was likely worth close to half a million dollars. (*Id.* ¶ 46). Private investors purchased tax liens on the home from Maricopa County and foreclosed in state court, eventually obtaining a treasurer's deed from the County. (*Id.* ¶¶ 47–49). Ms. Searle moved to set aside the judgment for lack of jurisdiction, which was finally disposed of in October 2023. (*Id.* ¶ 50); *see Arapaho LLC v. Searle*, No. 1 CA-CV 22-0478, 2023 WL 1830382 (Ariz. Ct. App. Feb. 9, 2023), *review denied* (Oct. 17, 2023).

By cooperating to take from Ms. Searle far more than she owed, the private investors and the County together violated the Takings Clause. Ms. Searle therefore has claims for just compensation. *See Tyler*, 598 U.S. at 647–48.

Defendants raise several arguments contesting the justiciability of Ms. Searle's claims for just compensation and the jurisdiction of this Court to adjudicate them. This brief amicus curiae will address those arguments with respect to the *Rooker-Feldman* doctrine, *res judicata*, and the statute of limitations.

Ms. Searle's takings claims are not barred by *Rooker-Feldman* nor *res judicata* because they are separate and distinct from the state court foreclosure action. *Cf. Dean v. Mich. Dep't of Nat. Res.*, 399 Mich. 84, 94 (1976). Ms. Searle's claims for just

compensation do not allege that the foreclosure court committed legal error, nor do they seek to reverse the judgment of foreclosure. They merely seek compensation for the equity interest in the property that properly belongs to Ms. Searle.

Neither is this case barred by the statute of limitations. The taking of Ms. Searle's property was not final, nor even assured, until the appeals from her motion to set aside the judgment were exhausted. That occurred in October 2023, mere months before the filing of this suit. (SAC ¶ 51). Even if the motion and appeals therefrom did not affect the limitations period, the taking of her property still could not have become final until the issuance of the treasurer's deed on February 10, 2022, less than two years before the initial complaint in this case was filed.

Ultimately, Defendants' arguments rest on a misunderstanding of the interaction between the Takings Clause and tax foreclosure proceedings. The Takings Clause does not prohibit foreclosures, even where a property has substantial equity value beyond its tax debt. Rather, it requires that former owners be compensated for that equity value after (but not before) a taking is complete. Thus, takings claims may arise from foreclosure actions, but they do not imply that the underlying foreclosure is invalid. In states like Minnesota, these issues are less likely to arise because foreclosures are accomplished by purely administrative procedure without judicial action. *See Tyler*, 598 U.S. at 635 ("[I]f at the end of three years the bill has not been paid, absolute title vests in the State, and the tax debt is extinguished."). In states like Arizona, by contrast, foreclosures are accomplished judicially.[1] Yet it should not, and does not, make a difference whether a tax is foreclosed by administrative procedure or judicial action. In either case, the former property owner has a constitutional right to compensation for the difference between what was taken and what was owed.

---

[1] For a review of the various tax foreclosure procedures in the fifty states, *see* www.homeequitytheft.org/appendix-laws.

3

For the reasons that follow, this Court should deny the motions to dismiss by the private party and government Defendants alike, and it should allow Ms. Searle's claims to proceed.

## ARGUMENT

Although Ms. Searle's takings claims arose from the foreclosure of her property, this suit is nevertheless conceptually and factually distinct from the foreclosure action in state court. A property owner has a ripe claim for violation of the Takings Clause "as soon as a government takes his property for public use without paying for it." *Knick*, 588 U.S. at 189. The obvious corollary is that a takings claim cannot arise before the property is taken.

This simple principle disposes all of Defendants' arguments with respect to the *Rooker-Feldman* doctrine and *res judicata*. Each of these arguments rests on the same essential mistake: that a claim for just compensation is somehow a collateral attack on the foreclosure judgment that could and should have been raised during the pendency of foreclosure proceedings. It is not. Thus, neither *Rooker-Feldman* nor *res judicata* apply because a takings claim that arises from a foreclosure is not germane to the appropriateness of the foreclosure itself, which depends only on the validity and unredeemed status of the tax lien. *See* Ariz. Rev. Stat. § 42-18204 ("[I]f the court finds that the sale is valid and that the tax lien has not been redeemed, the court shall enter judgment[.]").

The principle that a takings claim cannot arise before property is taken also disposes of Defendants' arguments that this case is barred by the statute of limitations. The limitations period could not have commenced running at the time of service of the foreclosure complaint nor at the time that judgment was entered. (*See* Arapaho's Mot. to Dismiss 12–13). The taking was not yet finalized at either point in time because no property was conveyed until the treasurer's deed issued. Issuance of the deed is not a foregone conclusion; it depended on the payment of a fee by the lienholder. Ariz. Rev. Stat. § 42-18205. Even so, Ms. Searle's motion to set aside the judgment for lack of jurisdiction tolled any limitations period. If successful, that motion would have voided the judgment and the treasurer's deed, and thus mooted any takings claim that Ms. Searle might have filed. It

4

would make little sense to require her to file her claim for just compensation before the disposition of that motion.

## I. NEITHER *ROOKER-FELDMAN* NOR *RES JUDICATA* APPLY BECAUSE THE TAKINGS CLAIMS FOR JUST COMPENSATION ARE SEPARATE AND DISTINCT FROM THE FORECLOSURE ACTION

### A. The *Rooker-Feldman* doctrine does not apply

Ms. Searle's claims seeking just compensation are not subject to *Rooker-Feldman* because they neither allege a legal error by the state court nor do they seek to reverse the state court's foreclosure judgment. *See Dorce v. City of New York*, 2 F.4th 82, 104–05 (2d Cir. 2021) ("*Rooker-Feldman* does not bar Plaintiffs' … takings claim … to the extent that for each of those claims, they seek only the value of their lost property in excess of the amount owed in taxes.").

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments" and "inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The Supreme Court has repeatedly emphasized the narrowness of the doctrine and has warned against its expansion. *Lance v. Dennis*, 546 U.S. 459, 464 (2006). As the Ninth Circuit explained, *Rooker-Feldman* "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). Unless both the complained-of injury and the sought-after remedy match that description, *Rooker-Feldman* has no application. *Id.*; *see Lundstrom v. Young*, 857 F. App'x 952, 955 (2021) (describing this "two-part test"). With respect to Ms. Searle's claims for just compensation, neither part of this test is satisfied.

First, there is a crucial distinction between cases complaining of legal errors by a state court, on the one hand, and cases which instead challenge "an allegedly illegal act or omission by an adverse party." *Kougasian*, 359 F.3d at 1140 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). In *Kougasian*, the plaintiff sought "to set aside" an earlier

5

state court judgment based on allegations that the defendants there had obtained those judgments through extrinsic fraud on the court. *Kougasian*, 359 F.3d at 1139. The plaintiff did not allege that her injury was caused by legal errors committed by the state court. *Id.* at 1140. Rather, she identified the "defendants' wrongful conduct" as the source of harm. *Id.* Thus, even though she sought to set aside the state court's judgment—a remedy which implicates *Rooker-Feldman*—her claim was not barred. *Id.*; *see also Noel*, 341 F.3d at 1166 (*Rooker-Feldman* inapplicable where plaintiff challenges illegal acts by a party rather than erroneous decision by state-court).

Second, *Rooker-Feldman* can only apply where the remedy sought by plaintiff is the rejection of an earlier state court decision. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021). Thus, the doctrine may bar "a claim where the complaint explicitly sought reversal" of a state court decision. *Id.* (internal quotation omitted). It may also apply where the "state court had considered and rejected" the same constitutional arguments subsequently raised by the plaintiff in federal court, if the federal court cannot rule for plaintiffs "without holding that the state court had erred." *Id.* (quoting *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). But it did not apply in *Benavidez*, where plaintiff parents sued government social workers for the improper medical examination of their children which had resulted from a state court order. 993 F.3d at 1140–41. The plaintiffs did not seek to overturn the underlying order itself, but to hold the social workers liable for misconduct committed in relation to those orders. *Id.* at 1143. Thus, *Rooker-Feldman* did not apply.

Neither does that doctrine apply to Ms. Searle's claims for just compensation. These claims do not allege any legal error on the part of the Maricopa County Superior Court, nor do they seek to reverse its judgment of foreclosure. On the contrary, the just compensation claims inherently assume the finality of foreclosure, since a takings claim cannot be maintained absent a finalized taking. *See Knick*, 588 U.S. at 187–88. As in *Tyler*, the claims for just compensation do not contest that the "County had the power to sell *Tyler*'s home to recover the unpaid property taxes." 598 U.S. at 639. Rather, they argue that neither the

6

County nor the investors may "use the toehold of the tax debt to confiscate more property than was due." *Id.* In short, claims for just compensation do not challenge the foreclosure judgment itself, but the failure to pay compensation for the taking of surplus property.

### B. Ms. Searle's claims are not precluded by *res judicata*

Similarly, the just compensation claims are not precluded by *res judicata*, or by any other doctrine of preclusion, because they could not have been raised in the state court foreclosure action. Under Arizona law, claims are precluded "when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties . . . was, or might have been, determined in the former action." *Hall v. Lalli*, 194 Ariz. 54, 57 (1999) (en banc). Thus, where the claims at issue could not have been determined in the former action, they are not precluded.

Ms. Searle's claims for just compensation could not have been determined in the former action. *See, e.g.*, *Harrison*, 997 F.3d at 650 (takings claim in a similar case was not ripe until homeowner's property was transferred without compensation); *Woodbridge v. City of Greenfield*, No. 23-30093-TSH, 2024 WL 2785052, at *7 (D. Mass. May 29, 2024) (takings claim not precluded by prior tax-foreclosure judgment). The event that gives rise to these claims is the issuance of the treasurer's deed, which completes the taking of Ms. Searle's property and the unjust enrichment of the Defendants, and which did not occur until *after* the conclusion of the foreclosure action. *See* Ariz. Rev. Stat. § 42-18205 (treasurer's deed conveys property described in foreclosure judgment); *Harrison*, 997 F.3d at 650–51. The same logic applies even if the foreclosure judgment itself, and not the treasurer's deed, effected the taking. A property owner has a takings claim "as soon as a government takes his property for public use without paying for it," but not before the property is taken. *Knick*, 588 U.S. at 189; *see id.* at 187 (takings claim not ripe where taking was not yet final); *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994) (A takings claim does not accrue until "all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an

7

1  action."). If the foreclosure judgment itself could preclude a takings claim here, it "would
2  create an [impermissible] end run around *Knick*." *Harrison*, 997 F.3d at 650.

3  In *Harrison*, the Sixth Circuit considered a similar takings claim arising from the
4  uncompensated foreclosure of surplus equity, 997 F.3d at 646. Defendants there, as here,
5  argued that the plaintiff should have filed her claims as a defense during the foreclosure
6  proceedings in state court. *Id.* at 650. The court rejected that argument, observing that it
7  "runs into a claim preclusion imperative, that litigants do not face barriers to presenting
8  their claims in the first action." *Id.* (internal citation and quotation omitted). Because the
9  taking was not complete until the property was transferred, the plaintiff could not have
10 raised her takings claim before that time. *Id.*

11 Besides, the just compensation claims would not have made any difference in the
12 outcome of the foreclosure action. There are only two issues relevant to the disposition of
13 a tax foreclosure action in Arizona: (1) whether the tax lien sale was valid, and (2) whether
14 the tax lien has not been redeemed. Ariz. Rev. Stat. § 42-18204; *see Nat'l Tax Lien*
15 *Redemption Servs. LLC v. Sweeney*, No. 1 CA-CV 17-0611, 2019 WL 123935, at *1 (Ariz.
16 Ct. App. Jan. 8, 2019) (If the sale was valid and the lien unredeemed, "the court must enter
17 judgment."). Defendants argue that Ms. Searle could have raised her claims as defenses
18 because "courts cannot enforce statutes which violate the U.S. Constitution." (Arapaho's
19 Reply in Supp. of Mot. to Dismiss 7). But a claim for just compensation based on *Tyler*
20 does not imply that foreclosure *itself* is unconstitutional. *Tyler*, 598 U.S. at 639 ("The
21 County had the power to sell Tyler's home to recover the unpaid property taxes."). Rather,
22 *Tyler* requires that Ms. Searle must be compensated for the equity interest in her property.
23 She could not have alleged a failure to pay just compensation for the taking before the taking
24 occurred. *Harrison*, 997 F.3d at 650–51 (no taking until the foreclosure caused a transfer of
25 title and no compensation for the equity was paid).

26 The Supreme Court of Michigan addressed a similar issue in *Dean*, 399 Mich. at 94.
27 In *Dean*, the former owner of tax-foreclosed property brought an action for unjust
28 enrichment against a Michigan state agency which had received a windfall from the sale of

8

the property. *Id.* at 87–88. Michigan's doctrine of *res judicata* is similar to Arizona's, barring subsequent actions where a prior action (1) reached a final judgment on the merits, (2) involved the same parties or their privies, and (3) resolved, or could have resolved, the same issues. *Compare Adair v. Michigan*, 470 Mich. 105, 121 (2004), *with Hall*, 194 Ariz. at 57. The Court held that the claim for unjust enrichment "was not barred by . . . the prior judgment" in the foreclosure court, "because the subject matter of that judgment, i.e., the validity of the taxes of the state and the delinquency of plaintiff in the payment of those taxes, is completely independent of the subject matter of plaintiff's instant suit for restitution[.]" *Dean*, 399 Mich. at 94. So too here.

## II. STATUTE OF LIMITATIONS

A takings claim does not accrue until the taking of property is final. *Knick*, 588 U.S. at 180, 187–88. This transpires only "when all events have occurred that fix the alleged liability of the Government[.]" *Descendants of Tex. Land Grants*, 37 F.3d at 1481. In this case, the taking did not become final until the County Treasurer issued a deed conveying the property. Even then, the limitations period was tolled by Ms. Searle's motion to set aside the judgment and the appeals that followed, which were not finally disposed until October 2023, just months before Ms. Searle filed her initial complaint in this action. (SAC ¶ 50).

### A. The taking was not final until the issuance of the treasurer's deed

The limitations period could not have started to run until the treasurer's deed issued on February 1, 2022. It is the treasurer's deed, and not the judgment, which conveys title and therefore takes property. *See* Ariz. Rev. Stat. § 42-18205(A).

Defendants rely on *Friedemann v. Kirk* for the proposition that "the delivery of the [treasurer's] deed" is "a mere formality." Arapaho's Reply in Supp. of Mot. to Dismiss 9–10 (quoting *Friedemann v. Kirk*, 197 Ariz. 616, 619 (Ct. App. 2000)). This reliance is misplaced, because *Friedemann* concerned the availability of redemption, not the accrual point of takings claims for statute of limitations purposes. *See id.*; 197 Ariz. at 618 ("We must determine whether Castillo had the right to redeem the tax lien . . . until the Treasurer

delivered the deed to Friedmann, or if . . . Castillo's redemption right was foreclosed when the judgment was entered against her.");

But while the issuance of a tax deed may be a "mere formality" for purposes of determining when redemption is foreclosed, it is not a mere formality for determining when property is conveyed. *See Daystar Investments, L.L.C. v. Maricopa Cnty. Treasurer*, 207 Ariz. 569, 574 (Ct. App. 2004) (holding that treasurer has discretion to refuse to issue deed, and rejecting the argument that under *Friedman*, "the Treasurer was required to issue the deed"). That is because the deed cannot issue absent the payment of a fee by the lienholder. Ariz. Rev. Stat. § 42-18205(A); *see* Arapaho's Reply in Supp. of Mot. to Dismiss, Exh. 3 (Amended Judgment ordering the treasurer to issue a deed "upon payment of the required fee[.]"). In other words, while the judgment itself forecloses the possibility of redeeming the lien, the actual execution of the lien—and thus, the taking—is not automatic but instead depends on the performance of an additional affirmative step by the lienholder. Until that payment was rendered and the deed issued without compensation to Ms. Searle for her equity, the taking was not complete. *See Danforth v. United States*, 308 U.S. 271, 284 (1939) (taking not complete until actual confiscation without compensation occurs, because taker "may discontinue or abandon his effort").

**B. Ms. Searle's motion to set aside the judgment tolled the limitations period from when it was filed until it was finally disposed in October 2023**

Following the entry of default judgment, Ms. Searle timely moved to set aside the judgment on grounds of insufficient notice under Rule 60(b)(4). (SAC ¶ 50; Arapaho's Mot. to Dismiss, Exh. 4). A judgment without proper notice is void, as is a deed that follows from such a judgment. *Sprang v. Petersen Lumber, Inc.*, 165 Ariz. 257, 262 (Ct. App. 1990). Thus, until Ms. Searle's allegations of insufficient notice were resolved, it was not known nor knowable whether the judgment and the tax deed would actually result in the taking of her property. *See* Ariz. Rev. Stat. § 42-18204 (foreclosure judgments are subject to the right of appeal and stay of execution); *Sprang*, 165 Ariz. at 264.

Where the resolution of a pending suit is necessary to fix the parties' rights, the statute of limitations cannot run on a subsequent claim based on those rights. *City of Phoenix v. Sittenfeld*, 53 Ariz. 240, 249 (1939) ("[W]here the decision in a pending action is practically conclusive as to the nature and extend of a party's rights . . . the statute does not begin to run as to the new action until the determination of the pending suit[.]"). *Sittenfeld* involved a claim for backpay after the city wrongfully terminated plaintiff's appointment. *Id.* at 241–42. Prior to filing that claim, plaintiff had first appealed the termination to the civil service board and then to the superior court, where he obtained a judgment that the termination was unlawful. *Id.* In his subsequent action, the Court held that the statute of limitations on the claim for backpay could not have started to run until the wrongful termination appeal had concluded. *Id.* at 249.

The case is similar here. If Ms. Searle had prevailed on her Rule 60(b)(4) motion, either at the superior court or on appeal, the judgment and deed would have been void and there would be no claim for a taking. There was a genuine and material dispute between the parties as to the validity of the foreclosure judgment. *See Arapaho, LLC v. Searle*, 2023 WL 1830382, at *5 (finding no evidence that Ms. Searle's motion was "without substantial justification" and denying Arapaho's request for attorneys' fees); *see Sittenfeld*, 53 Ariz. at 249 (plaintiff's backpay claim "obviously depended upon the correctness of the respective contentions of plaintiff and defendant" as to the earlier proceeding). It would make little sense to require Ms. Searle file her takings claim before her motion was resolved, as the validity of the takings claim depended on the resolution of the motion. Indeed, it would waste party and judicial resources to require people like Ms. Searle to assume they will lose their motion and preemptively file another lawsuit.

In short, Ms. Searle's 60(b)(4) motion tolled the limitations period. *See Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974) ("[I]f the defendant is not prejudiced thereby, the running of the limitations period is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursues one.") (internal quotation and citation omitted); *Hosogai v. Kadota*, 145 Ariz. 227, 232 (1985) (Arizona's equitable tolling doctrine includes

11

that principle from *Elkins*, but is even more expansive) (superseded by statute on other grounds as stated in *Jepson v. New*, 164 Ariz. 265 (1990)). This action, filed just months after Ms. Searle exhausted appellate review on that motion, is timely.

## CONCLUSION

For the reasons stated above, Amicus respectfully urge this Court to deny the Defendants' Motions to Dismiss and to allow Ms. Searle's claims to proceed.

DATED this 12th day of June, 2024.

Respectfully submitted,

/s/ James M. Manley
James M. Manley (031820)
PACIFIC LEGAL FOUNDATION
3241 East Shea Blvd., No. 108
Phoenix, AZ 85028
(916) 288-1405
JManley@pacificlegal.org

David J. Deerson*
Cal. Bar No. 322947
PACIFIC LEGAL FOUNDATION
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
(916) 419-7111
DDeerson@pacificlegal.org

*Attorneys for Amicus Curiae*
*Pacific Legal Foundation*
**pro hac vice*

12