WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine M. Searle,<br><br>        Plaintiff,<br><br>v.<br><br>John M. Allen, *et al.*,<br><br>        Defendants. | No. CV-24-00025-PHX-JJT<br><br>**ORDER** |

At issue is Defendants Arapaho, LLC, and American Pride Properties, LLC's Motion to Dismiss (Doc. 31, "MTD"), which Defendant John M. Allen joined (Doc. 51), and to which Plaintiff Christine M. Searle filed a Response (Doc. 37, "Resp."), and Defendants filed a Reply (Doc. 49, "Reply").

**I.    BACKGROUND**

Plaintiff owned a piece of real property ("the Property") in Arizona, which she estimates is currently worth about $400,000 to $500,000. (Doc. 14, "Compl." ¶¶ 3, 46.) After Plaintiff accrued an approximately $1,600 delinquent tax debt, Arapaho purchased two tax liens issued against the Property. (Compl. ¶¶ 4, 48.) In 2021, Arapaho commenced foreclosure proceedings in Arizona state court on one of the tax liens. (Compl. ¶ 5.) Plaintiff initially failed to appear, and Arapaho obtained a default judgment against Plaintiff. (Compl. ¶ 48.) The judgment foreclosed Plaintiff's right to redeem the tax lien, ordered the County Treasurer to deliver the deed conveying the Property to Arapaho upon payment of a fee and presentation of the judgment, and concluded that Plaintiff has "no

further legal or equitable right, title, or interest in the Property." (MTD, Ex. 3, "J."[1]) Plaintiff then appeared and moved the state court to set aside the default judgment, but the court denied the motion. (Compl. ¶ 49.) Plaintiff appealed, the court of appeals affirmed, and the Arizona Supreme Court later denied review. (Compl. ¶ 49.)

In the time between the appellate decision and the denial of review, the United States Supreme Court issued its decision in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631 (2023). The Court held that when a government seizes and sells an individual's property to satisfy a tax debt, it may not retain any more than is necessary to satisfy that debt and the costs of collecting. *Tyler*, 598 U.S. at 637–39. Citing *Tyler*, Plaintiff filed this lawsuit alleging that Defendants have retained hundreds of thousands of dollars in excess value in violation of the United States Constitution, the Arizona Constitution, and Arizona state law. (Compl. at 22–36.)

Defendants now move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) and (6).

## II.   LEGAL STANDARD

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

---

[1] The Court takes judicial notice of the state court judgment, which Defendants attach as Exhibit 3 to their Motion.

"[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513–14 (2006).

## III.  ANALYSIS

Defendants first move to dismiss each claim under the *Rooker–Feldman* doctrine, which provides that a federal district court lacks subject matter jurisdiction to consider an appeal from the final judgment of a state court. *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003). As the Ninth Circuit has noted, the doctrine is easy to apply in its routine form; a disappointed party may not seek reversal of a state court judgment by appealing to a federal district court. *Id.* at 1155. But that is not the scenario at play here. Plaintiff avows that she "is not seeking a review of the state court's judgment and is not arguing that the judgment was improper based on the Arizona statutory scheme." (Compl. ¶ 55.)

Nevertheless, *Rooker–Feldman* also prohibits federal district courts from considering *de facto* appeals—suits in which "the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaardsam*, 334 F.3d 895, 898 (9th Cir. 2003). Thus, *Rooker–Feldman* "looks to federal law to determine 'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" *Id.* at 901 (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)). And when refusing to consider a forbidden *de facto* appeal, a federal district court must also decline "to decide any issue in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1159 (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)).

Defendants argue that Plaintiff's injuries resulted directly from the state court judgment, while Plaintiff responds that her injuries are distinct, as she is only challenging Defendants' post-judgment retention of excess value. (MTD at 9; Resp. at 5.) Accordingly,

whether *Rooker–Feldman* bars Plaintiff's claims turns on what Plaintiff alleges as her harm and from where that harm arose.

Plaintiff alleges nine claims in total: (1) violation of the United States Constitution's Takings Clause because "[t]here is no public use rationale to justify the appropriation or retention of surplus equity from property tax sales," (2) violation of the United States Constitution's Takings Clause "due to the lack of just compensation for the taken property," (3) violation of Plaintiff's property rights under 42 U.S.C. § 1983 for retaining the excess value after *Tyler*, (4) violation of the Arizona Constitution's Takings Clause because "[t]he taking of the surplus value of the property does not fit in any of [the Clause's] enumerated permissible private takings" and "[t]here is no public use rationale," (5) violation of the Arizona Constitution's Takings Clause for "the taking of private property without just compensation," (6) violation of the United States Constitution's Excessive Fines Clause for seizing the entire value of Plaintiff's property to recover a relatively small tax debt, (7) violation of the Arizona Constitution's Excessive Fines Clause for the same reason, (8) unjust enrichment for the "retention of the difference between taxes and Plaintiff's property value," and (9) violation of the Arizona Constitution's Gift Clause against the Maricopa County Treasurer for unlawfully providing a "substantial subsidy . . . through the acquisition of a high-value property for a fraction of its worth." (Compl. ¶¶ 94, 103, 109–119, 121–23, 128–31, 136, 143, 148, 164.)

On its face, the Complaint challenges only Defendants' post-judgment retention of the excess equity in the Property. But Defendants argue that it is the judgment itself that strips Plaintiff of all her property rights. (MTD at 9.) Plaintiff responds, however, that the judgment alone is not the unconstitutional act she challenges here. (Resp. at 5.) As she alleges in the Complaint, it was "the judgment *and* the resulting issuance of the treasurer's deed . . . [that] deprived [Plaintiff] of the value of all the equity she had built in her home." (Compl. ¶ 52, emphasis added.) In her view, the judgment "merely authorized the [Treasurer] to issue a deed conveying the property," and she seeks redress for only the injuries she suffered later, when Defendants took title without compensating her. (Resp. at

7–8, 11.) Thus, the Court must determine whether Plaintiff's alleged harm arose out of the judgment or the later conveyance, and whether the Court could grant Plaintiff relief without disturbing the state court judgment. *See Bianchi*, 334 F.3d at 989–91.

The answer to these questions is found in the judgment and in Arizona's statutes. The judgment stated that Plaintiff was "foreclosed and ha[s] no further legal or equitable right, title, or interest in the Property." (J. at 3.) This language derives from Arizona's statutory scheme, which provides in relevant part that "[a]fter entering judgment the parties whose rights to redeem the tax lien are thereby foreclosed have no further legal or equitable right, title or interest in the property." A.R.S. § 42-18204(B). Therefore, according to the plain language of the statute, "[a]fter entering judgment," Plaintiff lost all "right, title and interest" in the Property. This, of course, includes any right to surplus equity.[2]

To further illustrate the point, Defendants cite *Friedemann v. Kirk*, 5 P.3d 950 (Ariz. Ct. App. 2000). In *Friedemann*, the court was tasked with determining whether an owner's right to redeem a tax lien lasted until the Treasurer delivered the deed, or whether her right was foreclosed when the judgment was entered against her. *Friedemann*, 5 P.3d at 952. The court held that it was the latter under A.R.S. § 42-18204(A), adding that "the delivery of the deed . . . was a mere formality." *Id.* at 953. Although *Friedemann* decided a question different than the one at issue here, its holding is still instructive because it demonstrates that, under the statute, it is not the delivery of the deed but rather the judgment itself that alters the rights of the owner. As in *Friedemann*, the delivery of the deed to Defendants was a "mere formality," because Plaintiff had already lost her rights to the Property when the court issued the judgment.

This result may vary, and the *Rooker–Feldman* analysis may change, under a different statutory scheme. For example, *amicus curiae* points the Court to *Dorce v. City of New York*, 2 F.4th 82, 104–05 (2d Cir. 2021), in which the Second Circuit held, under similar facts, that "*Rooker–Feldman* does not bar [the plaintiffs'] . . . takings claim . . . to

---

[2] Notably, Arizona has recently enacted legislation amending this statute to provide that after such a judgment, the property owner may retain her "interest in the excess proceeds from the sale of the property." S. 1431, 56th Leg., 2nd Reg. Sess. (Ariz. 2024) (effective Sept. 14, 2024, at A.R.S. § 42-18204(D)(3)).

the extent that . . . they seek only the value of their lost property in excess of the amount owed in taxes." (Doc. 67 at 5.) But *Dorce* analyzed *Rooker–Feldman* under New York City's code. *Dorce*, 2 F.4th at 89–90. And under that scheme, it is explicitly "[*u*]*pon the execution of* [*the*] *deed* . . . [that] all persons . . . who may have had any right, title, [or] interest . . . shall be barred and forever foreclosed of all such right, title, [or] interest." N.Y.C. Admin. Code § 11-412(b) (emphasis added). In contrast, Arizona's scheme terminates the owner's rights "[a]fter entering judgment." A.R.S. § 42-18204(B).

Having established that the judgment extinguished Plaintiff's rights in the Property, the Court turns to each of Plaintiff's claims to determine whether the Court may consider any of them in light of *Rooker–Feldman*. First, Plaintiff asserts two violations of the federal Takings Clause and two violations of Arizona's Takings Clause, each of which alleges that the taking at issue is not the foreclosure judgment but the post-judgment retention of surplus equity. However, "[t]o establish a violation of the Takings Clause, [a plaintiff] must first demonstrate that he has a property interest that is constitutionally protected." *Ward v. Ryan*, 623 F.3d 807, 811 (9th Cir. 2010). Thus, for Plaintiff to prevail on her takings claims, she must first establish that she has an interest in the Property's surplus equity. But because the judgment divested her of any such interest, the state court has resolved that issue. Under *Rooker–Feldman*, the Court may not "undercut the state ruling" that Plaintiff's rights have been extinguished, nor may it consider Plaintiff's post-judgment takings claims because they are "'inextricably intertwined' with that ruling. *See Bianchi*, 334 F.3d at 898; *Noel*, 341 F.3d at 1159. Plaintiff's takings claims are barred.

Plaintiff also brings a claim under 42 U.S.C. § 1983, arguing that Defendants have not taken any measures to unwind their conduct after *Tyler*, which she alleges is clear case law establishing that she suffered an unlawful taking. (Compl. ¶¶ 114–15.) But as discussed, Plaintiff cannot show a taking without upending the state court judgment. Plaintiff's § 1983 claim is therefore barred.

Plaintiff further alleges violations of the United States Constitution's and the Arizona Constitution's Excessive Fines Clauses. She claims that the seizure of the entire

value of the Property due to the delinquency of a relatively small tax debt is an excessive fine. (Compl. ¶¶ 136, 143.) But again, the seizure of the entire value of the Property—the alleged excessive fine—occurred upon the issuance of the judgment. *Rooker–Feldman* bars each of these claims as well.

Plaintiff next brings a claim of unjust enrichment. Under Arizona law, an unjust enrichment claim requires a plaintiff to show an enrichment, an impoverishment, a connection between the two without justification, and the absence of a remedy provided by law. *Perdue v. La Rue*, 474 P.3d 1197, 1205 (Ariz. Ct. App. 2020). Because Plaintiff challenges only Defendants' post-judgment retention of excess value, she can only show an impoverishment if she first shows that she was entitled to the excess value she was deprived of. But because she retained no interest in the Property after the judgment, she cannot satisfy this essential element without challenging the judgment itself. Plaintiff's unjust enrichment claim is therefore barred by *Rooker–Feldman*.

Finally, Plaintiff alleges a violation of Arizona's Gift Clause against the Maricopa County Treasurer. This claim is not barred by *Rooker–Feldman* because Plaintiff need not show that she has any interest in the Property to prevail. *See Schires v. Carlat*, 480 P.3d 639, 642–43 (Ariz. 2021) (explaining that the elements of a Gift Clause violation are only whether the challenged expenditure serves a public purpose and, if so, whether the value to be received by the public is far exceeded by the consideration paid by the public). However, because every other claim is barred by *Rooker–Feldman*, this remaining claim cannot stand alone in federal court; the parties lack diversity, and the claim asks a state law question. *See* 28 U.S.C. §§ 1331, 1332. The Court does not have jurisdiction over Plaintiff's final claim.

Accordingly, the Court must dismiss all of Plaintiff's claims because it lacks subject matter jurisdiction to consider them. But it does not necessarily follow that Plaintiff has no recourse. If Plaintiff's claims have merit—and this decision does not suggest that they do not—she may pursue them in state court. Under *Rooker–Feldman*, however, she may not pursue them here.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 31.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in Defendants' favor and close this case.

Dated this 16th day of July, 2024.

_____
Honorable John J. Tuchi
United States District Judge