John L. Lohr, Jr. (SBN 019876)
David B. Goldstein (SBN 003410)
Justin D. Yetter (SBN 038956)
**HYMSON GOLDSTEIN PANTILIAT& LOHR, PLLC**
8706 E. Manzanita Dr.., Suite 100
Scottsdale, Arizona 85258
(480) 991-9077
jll@hgplaw.com
dbg@hgplaw.com
jyetter@hgplaw.com
minute@hgplaw.com
*Attorneys for Defendants Arapaho, LLC and American Pride Properties, LLC*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Christine M. Searle,<br><br>    Plaintiff,<br><br>vs.<br><br>John M. Allen, in his official capacity as the Treasurer of Maricopa County;<br>Arapaho, LLC; American Pride Properties, LLC, et. al.,<br><br>    Defendants. | Case No. 2:24-CV-00025-jjt<br><br>**SUPPLEMENT TO MOTION TO DISMISS** |

Defendants, Arapaho, LLC ("Arapaho") and American Pride Properties, LLC ("AMPP") (Arapaho and AMPP hereinafter collectively referred to as "Arapaho Defendants"), through counsel undersigned, submit their Supplement to their Motion to Dismiss originally filed February 27, 2024 (Doc. 27) and resubmitted February 29, 2024 (Doc. 31). This supplement addresses significant developments that have occurred since the filing of that motion, including (1) the Ninth Circuit's August 28, 2025 opinion partially remanding this case, and (2) the Maricopa County Superior Court's September 29, 2025 final judgment in the parallel state action, Case No. CV2024-022530. which dismissed all claims asserted by Plaintiff Christine M. Searle.

Although the Ninth Circuit remanded this matter for limited consideration of two claims — Plaintiff's Count One (alleging a taking of "excess equity") and Count Five (facially challenging to Arizona's pre-2024 tax lien statute) — both claims are now subject to dismissal on multiple, independent grounds. The Superior Court's final

judgment has resolved all other related issues with prejudice, triggering res judicata, and subsequent changes in Arizona law have mooted the facial challenge.

Accordingly, Defendants request that this Court dismiss Counts One and Five with prejudice and enter final judgment in their favor.

This Motion is supported by the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I. PROCEDURAL BACKGROUND**

Plaintiff lost title to her property through a tax lien foreclosure conducted under Arizona law. On December 15, 2021, the Maricopa County Superior Court in Case No. CV2021-012279, entered judgment foreclosing her rights of redemption and ordering issuance of a Treasurer's deed to Arapaho. The Arizona Court of Appeals and Arizona Supreme Court both affirmed that judgment.

Plaintiff then filed this federal action on August 20, 2024, asserting seven constitutional and statutory counts against Arapaho, American Pride, Maricopa County, and Treasurer John M. Allen. Defendants moved to dismiss (Doc. 27), arguing that the case was barred under the Rooker–Feldman doctrine, preclusion by *res judicata*, and multiple substantive deficiencies.

On March 10, 2025, this Court granted the motion and dismissed the Complaint for lack of subject-matter jurisdiction under Rooker–Feldman.

Plaintiff appealed that dismissal. On August 28, 2025, the Ninth Circuit affirmed dismissal of all claims challenging the foreclosure judgment foreclosed Plaintiff's request for recovery of title to the property at issue, holding those were barred by Rooker–Feldman, but remanded two narrow claims not jurisdictionally barred:

1.  A potential federal takings claim alleging Arapaho, American Pride, and the County retained "excess equity"; and

2.  A facial constitutional challenge to Arizona's pre-2024 tax lien statute.

All other claims remained finally dismissed.

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

22071-228:PD 2942988v3

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    While the federal appeal was pending, Plaintiff filed a parallel Complaint in

2   Maricopa County Superior Court (CV2024-022530).[1] Attached as **Exhibit 1** is a copy of

3   the Superior Court Complaint. Arapaho Defendants filed a Motion to Dismiss and Reply.

4   See **Exhibits 2 and 3** attached hereto.  On March 10, 2025, Judge Christopher Whitten

5   granted Arapaho Defendants' Motion to Dismiss in an unsigned minute entry. See **Exhibit**

6   **4** attached hereto.   On September 29, 2025, Judge Whitten entered a final order

7   dismissing:

8   • Counts Two, Three, Four, Six, Seven, Eight and Nine— with prejudice[2]; and

9   • Counts One and Five — without prejudice[3], allowing Plaintiff to pursue them in

10     federal court if she chooses.

11

12

13   [1] Plaintiff pursued her claims in the Maricopa County Superior Court as a result of this
14   Court's Order for Dismissal which stated "[a]ccordingly, the Court must dismiss all of
     Plaintiff's claims because it lacks subject matter jurisdiction to consider them. But it does
15   not necessarily follow that Plaintiff has no recourse. If Plaintiff's claims have merit—and
     this decision does not suggest that they do not—she may pursue them in state court.
16   Under *Rooker–Feldman*, however, she may not pursue them here." (Order for Dismissal
17   P. 7, 24-28)

18
     [2] In Plaintiff's count two in the Superior Court case was for the alleged violation of
19   Plaintiff's property rights under 42 U.S.C. § 1983 against all defendants alleging there
     was no public use; Plaintiff's count three alleged a direct fifth amendment claim for the
20   taking of private property without just compensation <u>and</u> no public use); Plaintiff's count
     four alleged an excessive fine in violation of the United States Constitution; Plaintiff's
21   count six was for the taking of private property in violation of the Arizona Constitution
     claiming there was no valid public or private use; Plaintiff's count seven alleged an
22   excessive fine in violation of the Arizona Constitution. All the previously described
     claims were directed at all defendants In contrast, Plaintiff's count eight was only
23   directed at Defendants Allen (the County Treasurer) and Maricopa County and alleged a
     violation of the Arizona gift clause and Plaintiff's count nine alleged unjust enrichment
24   just against Arapaho and American Pride.

25   [3] In Plaintiff's Superior Court case, Plaintiff's Count One was THE VIOLATION OF
     PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983 FAILURE TO PAY
26   JUST COMPENSATION AGAINST ALL DEFENDANTS; and Plaintiff's Count Five
     was the TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE ARIZONA
27   CONSTITUTION NO JUST COMPENSATION AGAINST ALL DEFENDANTS

28

See **Exhibit 5** attached hereto.   Judge Whitten then signed a Final Judgment memorializing the prior rulings with Rule 54(c) language.   See **Exhibit 6** attached hereto. This final judgment terminated all claims in state court and operates as a final adjudication on the merits for *res judicata* purposes in this case on all claims with the exception of the excess proceeds claim which is already barred by res judicata as a result of the original foreclosure case, Case No. CV2021-012279.

The Superior Court's judgment conclusively resolved all claims and triggered res judicata as to every claim dismissed with prejudice.

## II. ARGUMENT

### a.   The Ninth Circuit Ruling Drastically Limits This Court's Jurisdiction Under the Rooker-Feldman Doctrine

First and foremost, it is critical to point out that The Ninth Circuit's August 28, 2025 Opinion affirmed this Court's prior dismissal under the *Rooker–Feldman* doctrine, holding that nearly all of Plaintiff's claims were impermissible collateral attacks on a final state-court judgment. (*Searle v. Arapaho, LLC, et al.*, No. 25-15527 (9th Cir. Aug. 28, 2025)). The panel expressly agreed that federal district courts lack jurisdiction to hear cases that, in substance, seek to review or overturn state-court foreclosure judgments.

The Court of Appeals affirmed dismissal of all claims that challenged the validity, process, or effect of the state foreclosure judgment, including all claims arising from the alleged loss of Plaintiff's home and equity. Those claims—encompassing the due process, unjust enrichment, excessive fines, and state constitutional counts—were held to be barred by *Rooker–Feldman* because they required the federal court to "review and reject the state court's judgment in substance." (*Searle*, slip op. at 5–7).

The Ninth Circuit, however, identified two narrow exceptions that were not jurisdictionally barred:

1. Count One — Plaintiff's federal takings claim alleging that the retention of "excess equity" after the foreclosure constituted a taking without just

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

4

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    compensation, potentially presenting an independent federal issue not dependent

2    on reviewing or upsetting the foreclosure judgment; and

3    2.    Count Five — Plaintiff's facial constitutional challenge to Arizona's pre-2024

4          tax lien foreclosure statute, which the panel viewed as a prospective challenge to

5          a statute, not a review of the state judgment.

6         All other counts—including the due process, unjust enrichment, excessive fines,

7    and Gift Clause claims—remain permanently dismissed for lack of subject-matter

8    jurisdiction.

9         As a result of that ruling, this Court has jurisdiction only over Counts One and

10    Five, and only to the extent they present independent, forward-looking questions that do

11    not disturb the state-court judgment. All other claims are jurisdictionally foreclosed.

12        Even those two surviving counts are now legally untenable for various reasons,

13    including but not limited to the following:

14    •    Count One (Federal Takings) fails because (1) neither Arapaho nor American

15         Pride are state actors; (2) the claim is time-barred by both the two-year federal

16         limitations period and Arizona's one-year statute of limitations, A.R.S. § 12-821;

17         (3) Plaintiff failed to comply with Arizona's notice-of-claim statute, A.R.S. § 12-

18         821.01(A);  (4) Plaintiff's claims are barred by *res judicata* as outlined in the

19         Motion to Dismiss; and (5) Plaintiff dismissed the State which is an

20         indispensable party.

21    •    Count Five (Facial Challenge) is now moot because Arizona amended its tax lien

22         statutes in 2024 to allow former property owners to recover any excess proceeds.

23         The statutory defect alleged in Plaintiff's complaint no longer exists, leaving no

24         live case or controversy.

25        Accordingly, consistent with the Ninth Circuit's mandate, this Court's

26    jurisdiction is limited to assessing whether these two remaining claims—Counts One

27    and Five—can survive on independent, non-barred grounds. As shown below, both fail

28    as a matter of law and should now be dismissed with prejudice.

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

### b. Plaintiff's Claims Are Barred by Res Judicata

Arapaho Defendants raised dismissal on res judicata grounds in the original Motion based upon the Judgment stemming from the initial foreclosure lawsuit and Judgment. The original foreclosure case and original judgment justify a dismissal of the excess equity claims as the Foreclosure Judgment expressly ruled that any equity was foreclosed. In addition, Searle could have but failed to raise her excess proceeds claims in the original foreclosure lawsuit. Thus, those claims are barred by *res judicata*. But now, the Superior Court's September 29, 2025 final judgment under Rule 54(c) is a final adjudication on the merits for all remaining claims with the exception of the excess proceeds claim but as stated above, that is barred by the first foreclosure case. Under Arizona law, *res judicata* precludes Plaintiff from reasserting any claim that was or could have been litigated in the state foreclosure or dismissal proceedings, including the takings theories at issue here. Under Arizona law, claim preclusion applies when (1) there was a prior final judgment on the merits, (2) the parties or their privies are the same, and (3) the subsequent action arises from the same transaction or occurrence. *Save Bull Trout v. Williams*, 51 F.4th 1101 (9th Cir. 2022); see also *Rousselle v. Jewett*, 101 Ariz. 510, 421 P.2d 529 (1966).

The Superior Court's September 29, 2025 Order and Judgment along with the original foreclosure judgment satisfies these elements. They are final judgments under Rule 54(c) disposing of all claims between the same parties with the exception of the excess proceeds claim which is barred by res judicata under the original foreclosure lawsuit as argued in the Motion to Dismiss. Plaintiff's federal takings and facial challenge claims arise from the same foreclosure and alleged deprivation of property rights already litigated (and dismissed) in the state forum. Accordingly, all claims asserted here are barred by *res judicata* and must be dismissed with prejudice.

### c. Plaintiff's Claims Are Time-Barred

As argued in the original Motion to Dismiss, Plaintiff's claims accrued no later than December 15, 2021, when the foreclosure judgment was entered and recorded, fully

divesting her of title. A federal takings claim under § 1983 is governed by the two-year personal-injury limitations period, which applies to all § 1983 claims. See *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004). Under federal accrual standards, a § 1983 claim arises when the plaintiff "knows or has reason to know of the injury." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Here, Plaintiff indisputably knew of the alleged injury at the time of judgment—indeed, she immediately moved to set it aside and appealed.

Even if one looks earlier, Plaintiff had actual and constructive notice as far back as August 18, 2021, when she was served with the foreclosure complaint and *lis pendens*, which fully disclosed the alleged threat to her property rights. A §1983 claim need not await a final judgment to accrue. See *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687–89 (9th Cir. 1993) (takings claim accrues when plaintiff can first challenge the injury); *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026–27 (9th Cir. 2007)(generally, statute of limitations begins to run when a potential plaintiff knows or has reason to know of the injury).

Thus, by any measure, the two-year limitations period expired long before Plaintiff filed this federal action on January 5, 2024. The "continuing violation" doctrine does not apply because the foreclosure judgment is a discrete act, and its ongoing effects do not restart the statute. *Knox v. Davis*, 260 F.3d 1009, 1013–14 (9th Cir. 2001). *See also* the following section for a fuller discussion.

Further, if Plaintiff maintains—as she repeatedly asserts—that Arapaho and American Pride were "state actors," then the one-year limitations period in A.R.S. § 12-821 governs and independently bars her claims.

Either way, the claims are time-barred as a matter of law and must be dismissed with prejudice.

### d.  No Continuing Violation

Plaintiff attempts to avoid the statute of limitations by characterizing her claims as involving a "continuing violation." That theory fails as a matter of law. The Ninth

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

22071-228:PD 2942988v3

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1  Circuit has ruled that the continuing-violation doctrine does not apply where a plaintiff

2  challenges the effects of a past, discrete act rather than a new, ongoing violation. *Knox*

3  *v. Davis*, 260 F.3d 1009, 1013–14 (9th Cir. 2001).

4  The foreclosure judgment here was a single, final event. Plaintiff's ownership

5  rights were terminated and title passed in December 2021. Moreover, the transfer of title

6  resulted in Arapaho and American Pride's retention of the excess proceeds, namely, the

7  value of the property above the taxes, attorneys' fees and costs due from Plaintiff.  That

8  too was a discrete, single, final event. Thus, the judgment and the concomitant transfer

9  of title and all rights were discrete acts that forms the basis of Plaintiff's alleged injury.

10  The fact that the consequences of that judgment continued into the future—such as

11  Plaintiff's loss of ownership, rental value, or alleged "equity"—does not convert a past

12  event into an ongoing constitutional violation.  The alleged violation had already

13  occurred.

14  Accordingly, Plaintiff cannot invoke the continuing-violation doctrine to avoid

15  dismissal. The statute of limitations began running no later than December 2021, and

16  expired well before she filed this action in January 2024.

17  **e.  Arapaho and American Pride Are Not State Actors**

18  A private lienholder's exercise of foreclosure rights created by statute does not

19  transform its conduct into state action. See *Blum v. Yaretsky*, 457 U.S. 991 (1982).

20  Plaintiff alleges no facts establishing that either Defendant exercised powers exclusive

21  to the state. The Takings Clause applies to government action, not to private parties

22  acting under statutory procedures. While Arapaho Defendants raised this argument in

23  the original Motion to Dismiss, Arapaho Defendants expand this argument further

24  below.

25  In order to have a constitutional claim the party must be part of the State. One

26  cannot bring constitutional claims against private parties.  As neither Arapaho nor

27  AMPP are part of the State, all constitutional claims against them must be dismissed

28  for failure to state a claim.

8

22071-228:PD 2942988v3

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

For a private actor to be considered an agent of the state, there must be "significant state involvement[.]" *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972). A statute or regulation that authorized challenged conduct is not enough to establish state action. *See Culbertson v. Leland*, 528 F.2d 426, 431 (1975); s*ee also Niedner v. Salt River Project Agr. Imp. and Power Dist.*, 121 Ariz. 331, 332 (1979) (holding that even though SRP was organized as an agricultural improvement district and was "designated as a political subdivision of the State", it was not a state actor for constitutional purposes since it was owned and operated by private individuals and not the government). *Cf. Kenly v. Miracle Properties*, 412 F.Supp. 1072 (1976) (trustees under Arizona's deed of trust regime not state actors even though they have the power to take and sell real property by statutory grant).

In this case, the Arizona government's role ends after it assesses the taxes and sells a lien to a private party. From that point forward, there is no legal difference between an action to foreclose a tax lien and an action to foreclose any other lien like a mortgage. The interested parties are all given notice and may redeem. If the property owner does not appear or appears and does not redeem the lien, that lien is foreclosed and the property changes hands—just as it would in a mortgage foreclosure action, or foreclosure of a mechanic's lien. Either way, the state or its counties has no involvement other than writing the law, levying the taxes, conducting the auction of tax liens and issuing a Treasurer's Deed. The action of the state ends at that point. That level of state action is never sufficient to transmute a private actor into a state actor for purposes of the Fifth or Fourteenth Amendment. *See Kenly v. Miracle Props.,* 412 F. Supp. 1072 (D. Ariz. 1976)(rejecting due-process challenge and holding that private deed-of-trust foreclosure is not state action despite statutory regulation). Further, the most critical aspect of a Takings Clause violation is a *state taking*. That was the constitutional defect in *Tyler v. Hennepin County,* 598 U.S. 631 (2023)—Minnesota sold the real property at issue and kept all the proceeds for itself. But in Arizona, the state and counties do not sell real property and do not retain any excess proceeds. The

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

central state action—the actual taking—is not present here. Accordingly, there is no state action by Arapaho and AMPP and thus no violation of the Takings Clause. *See Niedner*, *supra*, `121 Ariz. at 332.

Accordingly, Searle cannot bring a direct claim for relief against Arapaho for violating its rights under the U.S. Constitution. *See Azul-Pacifico*, 973 F.2d 704, 705 (9th Cir. 1992)(holding that a plaintiff cannot bring a direct claim under the U.S. Constitution and must proceed, if at all, through § 1983). Accordingly, Searle's First, Second and Sixth Claims for Relief must be dismissed. *Ariz. R. Civ. P.* 12(b)(6).

The Takings Clause restricts governmental, not private, conduct. See *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiff alleges only that Arapaho and American Pride purchased a tax lien and foreclosed under Arizona's statutory procedures — conduct that is wholly private and not "fairly attributable to the state."

Courts uniformly reject attempts to impose constitutional liability on private purchasers acting under state-authorized foreclosure mechanisms. See *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978). Plaintiff's Count One therefore fails as a matter of law.

### f. Plaintiff Failed to Comply with the Arizona Notice-of-Claim Statute

Even assuming that Arapaho Defendants are state actors, Plaintiff's claim still fails because she did not send a Notice of Claim as required by A.R.S. § 12-821.01(A) before filing either of her lawsuits. That statute mandates that "persons who have claims against a public entity or public employee … file claims with the person authorized to accept service… within 180 days after the cause of action accrues." The Arizona Supreme Court has held that § 12-821.01(A) applies broadly to all claims, including constitutional claims. *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527 ¶ 10 (2006); *Deer Valley*, 214 Ariz. at 295 ¶ 6. Plaintiff's failure to serve the notice required by statute independently and decisively bars her claim.

The requirement that a claim be submitted before instituting suit was held to be analogous to a statute of limitations, and may be raised by a motion to dismiss for failure to state a claim. *Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178 (1990); *Howland v.*

10

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

*State*, 169 Ariz. 293, 818 P.2d 1169 (Ct. App. Div. 1 1991).*See, e.g., Pinal County v. Fuller*, 245 Ariz. 337, 429 P.3d 570 (Ct. App. Div. 2 2018) (remanding with directions to dismiss claims for breach of contract and for unjust enrichment based on failure to strictly comply with claims statute).

Plaintiff does not dispute that she failed to serve any of the Arapaho Defendants with the required notice of claim six months prior to filing her lawsuit as required by A.R.S. § 12-821.01(A). Rather, after Plaintiff argues that Arapaho Defendants should be considered state actors, she then turns around and argues that she was not required to serve the notice of claim, which is required when filing a lawsuit against state actors. Plaintiff cannot have it both ways.  If Arapaho Defendants are state actors, the claims must be dismissed for violating A.R.S. § 12-821.01(A).

Any attempt by Plaintiff to rely on vaguely worded requests for relief as sufficient to nullify their requirement to serve a notice of claim should be disregarded. To the extent Arapaho Defendants are to be considered state actors, which Arapaho Defendants argue they are not, Plaintiff was required to serve a notice of claim that contained all the details required by the statute including " ,,, facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed [and] a specific amount for which the claim can be settled and the facts supporting that amount….." She did not. As such, her claims should be dismissed for failure to comply with the claims statute.

### g.  The State of Arizona, The Attorney General, The Speaker of The House, And The President of The Senate Are Indispensable Parties

Plaintiff's facial challenge to the tax lien statute directly attacks the constitutionality of a state law. Under Rule 19, Fed. R. Civ. P., the State of Arizona is an indispensable party because its interests would be directly affected. Plaintiff voluntarily dismissed the State from this case, leaving the action unable to proceed. See *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 780 (9th Cir. 2005).

22071-228:PD 2942988v3

Rule 12(b)(7), *Fed.R.Civ.P.*, mandates dismissal of this action where an indispensable party is not joined in the action.

Rule 19(a), *Fed.R.Civ.P.*, deals with necessary and indispensable parties. Indispensable parties are those without whom the action cannot proceed, and necessary parties are those who have an interest in the controversy but whose interests are separable and will not be directly affected by a decree rendered in their absence, which does full justice between the parties before the court. Barron and Holtzoff, *Federal Practice and Procedure*, Rules Ed. Vol. 2, section 512, p. 58.

The Court in *Town of Gila Bend v. Walled Lake Door Co.*, 107 Ariz. 545, 550, 490 P.2d 551, 556 (1971) defines "indispensable party" as follows:

> An indispensable party. . . is one who has such an interest in the subject matter that a final decree cannot be made without either affecting his interest or leaving the controversy in such condition that a final determination may be wholly inconsistent with equity and good conscience. The test of indispensability in Arizona is whether the absent person's interest in the controversy is such that no final judgment or decree could be entered, doing justice between the parties actually before the court and without injuriously affecting the rights of others not brought into the action.

Under Rule 19(a), *Fed. R. Civ. P.*, the State of Arizona is an indispensable and necessary party for a just adjudication of the merits of Plaintiff's claims. Any constitutional violations came at the hand of the State and any money allegedly owed Searle would be owed by the State. Even based upon Plaintiff's own allegations in the Complaint the State is an indispensable party to this litigation. After all, Plaintiff is challenging the constitutionality of a state statute. Failure to name the State as a Defendant in this action provides a basis upon which the Court should dismiss this action entirely.

Yet, Plaintiff voluntarily dismissed the State and did not join or serve the State officials required by law. This alone compels dismissal under Rule 12(b)(7).

Further, Plaintiff also violated A.R.S. § 12-1851(A), which independently requires dismissal. The statute provides:

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

22071-228:PD 2942988v3

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

> In any proceeding in which a **s**tate statute… is alleged to be unconstitutional, the attorney general and the speaker of the house of representatives and the president of the senate shall be served with a copy of the pleading… and shall be entitled to be heard.

Count Five is a facial constitutional challenge to an Arizona statute. Under § 12-1841(A), Plaintiff was required to (1) join or at minimum serve the Attorney General, the Speaker of the House, and the President of the Senate, and (2) provide each the opportunity to be heard. Plaintiff did neither. The statute's language is unequivocally mandatory ("shall be served"; "shall be entitled to be heard"). Courts applying § 12-1841(A) have emphasized the necessity of compliance with its requirements. *DeVries v. State*, 219 Ariz. 314, 198 P.3d 580 (Ct. App. 2008)

By failing to join or serve the State, the Attorney General, the Speaker, or the Senate President, Plaintiff deprived the very governmental actors whose statute she challenges of their statutory right to defend it. No declaration issued in their absence could be valid or enforceable, and § 12-1851(A) expressly prohibits any judgment that would prejudice the rights of nonparties.

### h.  Count Five Is Moot Because Arizona's 2024 Statutory Amendments Eliminated Any Live Controversy

Plaintiff's constitutional challenge to the now-repealed version of Arizona's tax lien foreclosure statute is moot because the statute she challenges was amended in 2024, and the version under which her foreclosure occurred is no longer in effect. Federal courts lack jurisdiction to adjudicate facial challenges to statutes that have been repealed or substantially amended unless the challenged provisions remain operative or are likely to be reenacted.  The United States Constitution's restriction of federal jurisdiction the actual cases and controversies compels that limitation of jurisdiction.

This principle is well established. In *Diffenderfer v. Central Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412 (1972) (per curiam), the Supreme Court dealt with a challenge to a property tax exemption statute after the legislature amended the statute in a manner that resolved the alleged constitutional defect. The Court explained that the relief sought was no longer appropriate once the statute in question was repealed.

22071-228:PD 2942988v3

Similarly, in *United States v. Alaska S.S. Co*., 253 U.S. 113 (1920), the Supreme Court held that where subsequent legislation or law ends a controversy, the case becomes moot.

The same reasoning applies here. Plaintiff's attack is on the validity of the prior version of Arizona's tax lien foreclosure statute. But in 2024, the Arizona Legislature materially amended the statute—removing the very provisions Plaintiff claims violate due process.[4] There is thus no ongoing controversy, and no injunctive or declaratory relief could issue as to a repealed statutory scheme. Plaintiff's facial challenge is moot because the Arizona Legislature amended the tax lien foreclosure statute in 2024.

### i.   Section 1983 Exclusivity Bars Direct Constitutional Claims

Count One must be dismissed because Plaintiff cannot assert standalone constitutional claims against private parties allegedly acting under color of state law. The Ninth Circuit has consistently held that where a plaintiff alleges violations of constitutional rights by state actors, the remedy is a cause of action under 42 U.S.C. § 1983. There is no implied cause of action directly under the Constitution. *Azul-Pacifico, Inc. supra*, 973 F.2d at 705 (9th Cir. 1992).

In Count One, Plaintiff does not plead a Section-1983 claim. She instead asserts those theories directly under the Constitution. That is not legally cognizable under Ninth Circuit precedent. The Court should dismiss Count One on that ground alone.

---

[4] A.R.S. § 42-18204 now allows a property owner to apply for excess proceeds if they can demonstrate that there is equity in the property. A.R.S. § 42-18204(B) provides as follows:

> B. A property owner whose right to redeem is being foreclosed may request the court to determine if the sale of the property to recover excess proceeds is reasonable. The court shall determine that the sale of the property for excess proceeds is reasonable if the sale price of the property is likely to be more than $2,500 above the total of the amounts described in paragraph 1 of this subsection….

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

14

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    Even assuming Plaintiff had properly invoked § 1983, the claim would still fail

2 as time-barred as previously argued.[5]

3    Plaintiff's own allegations claim Defendants acted with the authority or

4 cooperation of the state. If that's true, then § 12-821 governs, and the one-year

5 limitations period bars her claim.

6    Either way, Plaintiff's effort to bypass § 1983 is impermissible, and Count One

7 must be dismissed.

8    **j.  No Factual or Legal Basis Exists for Any Claims Against American**

9        **Pride**

10    Even accepting Plaintiff's allegations as true, her claims against American Pride

11 Properties, LLC fail as a matter of law because American Pride was not the foreclosing

12 party and did not engage in any state action.

13    The record shows that Arapaho, LLC, not American Pride, purchased the tax

14 lien, initiated and completed the foreclosure, and obtained the Treasurer's deed.

15 (Verified Complaint ¶¶ 18–22; Treasurer's Deed, Ex. A). American Pride's only

16 involvement came later—it acquired title from Arapaho by quitclaim deed after the

17 foreclosure judgment became final. American Pride did not participate in, influence, or

18 benefit from the judicial foreclosure process and had no interaction with Plaintiff at any

19 point during it.

20    Under settled law, the Takings Clause and 42 U.S.C. § 1983 reach only

21 governmental action or conduct "fairly attributable to the state*." Flagg Bros., Inc. v.*

22 *Brooks*, 436 U.S. 149, 157–58 (1978). American Pride's post-foreclosure acquisition by

23 deed is purely private conduct, not state action. Nor can Plaintiff hold American Pride

24 liable as a successor in interest to Arapaho, because there is no allegation that American

25 Pride assumed any obligations or that the entities are alter egos. Arizona law treats

26

27

28    [5] See section II(c) titled "Plaintiff's Claims Are Time Barred" which discusses this argument and its basis more in depth

15

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

LLCs as distinct and separate juridical entities. *Dietel v. Day*, 16 Ariz. App. 206, 208, 492 P.2d 455 (1972).

Furthermore, title to the property is no longer in dispute. The foreclosure judgment and Treasurer's deed are final, and the state court's rulings have conclusively resolved all ownership issues. The Ninth Circuit has ruled that the *Rooker-Feldman* doctrine precludes revisiting those issues. Because American Pride's title derived from Arapaho's lawfully obtained deed and has since been quieted, there is no longer a live controversy involving American Pride. Without a current property interest at stake, there can be no taking, no deprivation, and no equitable or monetary relief available against it.

Importantly, this issue was not raised earlier because title remained an active point of contention during the prior proceedings, and Plaintiff continued to assert ownership rights and to challenge the validity of the foreclosure judgment. Now that those disputes have been conclusively adjudicated by the state court and the 9th Circuit, any claim against American Pride has become moot and legally untenable. The only reason American Pride was named originally was because it then held title derived from the challenged foreclosure; with title no longer in issue, t no basis exists for American Pride to remain a party to this action.

Plaintiff's complaints also fail to allege any theory—such as veil-piercing, alter-ego, or successor liability—that could support liability. There are no allegations of shared ownership, misuse of the LLC form, or assumption of obligations between Arapaho and American Pride.

### k.  The Superior Court's Final Judgment Reinforces Finality

The Superior Court's Rule 54(c) judgment conclusively resolved all claims among all parties. Under *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), federal district courts lack jurisdiction to revisit or undermine final state-court judgments. Plaintiff's attempt to repackage dismissed claims is precisely the type of collateral attack the Rooker-Feldman doctrine and preclusion principles prohibit.

16

22071-228:PD 2942988v3

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1

### III.    CONCLUSION

2       For the reasons set forth above and in the Motion to Dismiss, even under the

3   narrow scope permitted by the Ninth Circuit's remand, Plaintiff's remaining claims

4   cannot proceed. Both Count One and Count Five are barred on multiple, independent

5   grounds—including *res judicata*, lack of state action, the statute of limitations, failure to

6   comply with Arizona's notice-of-claim statute, failure to join indispensable parties, and

7   mootness arising from Arizona's 2024 statutory amendments. No amendment could

8   cure these defects.

9       Accordingly, Arapaho Defendants respectfully request that the Court dismiss

10   Counts One and Five with prejudice, enter final judgment in favor of Arapaho and

11   American Pride, and close this case.

12       DATED this 17th day of November, 2025.

13                              **HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**

14                              /s/ John L. Lohr, Jr.

15                              John L. Lohr, Jr. (SBN 019876)
                               David B. Goldstein (SBN 003410)
16                              Justin D. Yetter (SBN 038956)
                               *Attorneys for Defendants Arapaho, LLC and American*
17                              *Pride Properties, LLC*

18

19

20

21

22

23

24

25

26

27

28

22071-228:PD 2942988v3

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and electronic copy to the following parties:

Grady J. Block
William E. Trachman
**MOUNTAIN STATES LEGAL FOUNDATION**
gblock@mslegal.org
wtrachman@mslegal.org
*Attorneys for Plaintiff Christine M. Searle*

Veronica Lucero
Veronica.lucero@gmail.com
*Attorneys for Plaintiff Christine M. Searle*

Kim Miles
Katherine Kane
**RACHEL H. MITCHELL MARICOPA COUNTY ATTORNEY**
milesk@mcao.maricopa.gov
Katherine.kane@mcao.maricopa.gov
Ca-civilmailbox@mcao.maricopa.gov

/s/ Richard Knaeble

**HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

18

22071-228:PD 2942988v3

# EXHIBIT 1

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

Clerk of the Superior Court
*** Electronically Filed ***
A. Mariscal, Deputy
8/19/2024 2:46:55 PM
Filing ID 18361089

1   Veronica Lucero (030292)
    **Davillier Law Group, LLC**
2   4105 N. 20th St. Ste. 110
3   Phoenix, AZ 85016
    Telephone: (602) 730-2985
4   Fax: (602) 801-2539
5   Emails:
    Vlucero@davillierlawgroup.com
6   PhxAdmin@davillierlawgroup.com (file copies)
7
    Grady J. Block (TX Bar No. 24120616) (*pro hac vice pending*)
8   William E. Trachman (CO Bar No. 456384) (*pro hac vice pending*)
    Mountain States Legal Foundation
9   2596 S. Lewis Way
10  Lakewood, Colorado 80227
    Telephone: (303) 292-2021
11  gblock@mslegal.org
12  wtrachman@mslegal.org
    *Attorneys for Plaintiff*
13

14              **IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA IN AND**

15                        **FOR THE COUNTY OF MARICOPA**

16  Christine M. Searle,
                                              Case No.  **CV2024-022530**
17          Plaintiff,
                                              **Verified Complaint**
18              v.

19
    John M. Allen ("Allen"), in his official
20  capacity as The Treasurer of Maricopa
    County; Arapaho LLC; American
21  Pride Properties, LLC; Maricopa
    County, John Doe, Jane Doe, Black
22  Corporations, White Partnerships, and
23  Green Limited Liability Companies,

24          Defendants
25

26          Plaintiff Christine M. Searle ("Ms. Searle") is on the verge of losing her home based

27  on an Arizona state tax lien regime that is unconstitutional. That's not just an unfounded

28

                                              1

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

assertion. The Arizona Attorney General agrees, and the State Legislature has amended the regime at issue because it knew that the law that applied to Ms. Searle was unconstitutional in its past form. Yet the new law is not retroactive, and Ms. Searle is, to this day, threatened with eviction from her home.

Ms. Searle brings this action to challenge a violation of her constitutional rights through the improper taking of her property, invoking the protections of the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment. Additionally, she brings claims for violations of the Gift Clause, Takings Clause, and Excessive Fines Clause of the Arizona Constitution, and asserts a cause of action for unjust enrichment.

## INTRODUCTION

1.    This case challenges a legal regime under Arizona law, where small, sometimes incredibly minor, amounts of delinquent taxes can lead to the seizure of a property and the eviction of its owners.[1]

2.    Under this Arizona tax lien scheme, either the State or private entities may take possession and title of the property or sell it, often for amounts well exceeding the unpaid taxes. Consequently, the lien purchaser retains all of the homeowner's equity in the

---

[1] On April 23, a bill was been signed by the Arizona Governor Katie Hobbs changing this regime. However, the bill is not retroactive, and therefore has not protected Ms. Searle. *See* Arizona Senate Bill 1431 (Signed by Governor on April 23, 2024) (SB 1431), https://legiscan.com/AZ/bill/SB1431/2024

SUP000002

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

property. *See, e.g.*, *Arizona Tax Liens Wreaking Havoc On Lenders, Borrowers*, QUARLES & BRADY NEWS AND INSIGHTS (May 9, 2014) ("With shocking frequency across the counties of Arizona, homeowners and lenders are failing to redeem delinquent tax liens, and are thereby losing their pecuniary and fee simple interests.").[2]

3.    Ms. Searle is a 71-year-old woman, who has been deprived of her property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home") that she had owned since purchasing it in 2005.

4.    Defendant Arapaho Investment Properties, LLC (Arapaho or Defendant Arapaho) purchased 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's home, which stemmed from Ms. Searle's delinquent taxes.

5.    In late 2021, Arapaho began foreclosure proceedings based on Arizona's tax lien scheme. But Ms. Searle maintained her ownership of her property at that time. Although the foreclosure process began in 2021, the constitutional violation did not occur until at least the issuance of the Treasurer's Deed, and Defendants' failure to pay Ms. Searle just compensation and fair market value for the equity that she had accumulated in the home. *See infra*, ¶ 18 (the taking in *Tyler* is the retention of the excess value).

6.    Upon information and belief, Arapaho subsequently transferred its interest in Ms. Searle's home to Defendant American Pride Properties, LLC (American Pride or Defendant American Pride) on February 3, 2022.

---

[2] https://www.quarles.com/newsroom/publications/arizona-tax-liens-wreaking-havoc-on-lenders-borrowers

3

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

7.      Neither Arapaho nor American Pride have ever provided to Ms. Searle any funds over and above what she owed in taxes; nor have they provided any assurance that, to the extent that a future sale occurs, she will be provided with the "delta" between the purchase price or market value of the home, and the amount of the tax lien.[3]

8.      Upon information and belief, Arapaho and American Pride intend to retain the delta connected to the sale of Ms. Searle's home.

9.      In May 2023, the Supreme Court decided the case of *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023).

10.     In *Tyler*, the Supreme Court of the United States held that a county's decision to retain funds following a forfeiture process constituted a taking under the Fifth Amendment.

11.     As the Supreme Court found in *Tyler*, "The taxpayer must render unto Caesar what is Caesar's, but no more." 598 U.S. 631 (2023); *see also Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001) ("A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.").

---

[3] Note that in the Supreme Court oral argument in the *Devillier* case, the State of Texas agreed with the position that a failure to justly compensate the victim of a taking is an ongoing violation, that occurs every day until just compensation occurs. *See* Oral Argument before the U.S. Supreme Court in *Devillier v. Texas*, No 22-913, at 47:7-11 (Jan. 16, 2024) ("Justice Kagan: It's an ongoing violation of the Constitution, right? I've taken Mr. McNamara's property. I haven't paid him. Every day, I'm violating the Constitution, correct? MR. NIELSON: Yes, Your Honor.").

4

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

12.    *Tyler* recognized the common law general rule, as stated in Blackstone: "If a tax collector seized a taxpayer's property, he was 'bound by an implied contract in law to restore the property on payment of the debt, duty, and expenses, before the time of sale; or, when sold, to render back the overplus.'" *Tyler*, 598 U.S. at 640 (citing 2 Commentaries on the Laws of England 453 (1771)) (internal brackets omitted).

13.    *Tyler*'s holding applies equally to situations where a county merely authorizes a third-party to retain the delta between a debtor's tax debt and the price of their home. As stated broadly in *Tyler*, "Our precedents have also recognized the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id*.

14.    Here, the numbers are even more grossly disproportional and offensive to the Constitution than they were in *Tyler*. At the time of the foreclosure action leading to the issuance of the treasurer's deed, the relevant tax lien to Ms. Searle was only $1,607.68. Meanwhile, her home is worth several hundred thousand dollars.

15.    Upon information and belief, Defendants Arapaho and American Pride have actual knowledge of the Supreme Court's decision in *Tyler*, yet have not provided Ms. Searle with just compensation, or any assurance of future compensation. On the contrary,

5

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

counsel for Arapaho initially notified Ms. Searle that eviction proceedings would soon occur. [*See* Exhibit 1.][4]

16.    The practice of taking the entire value of a property, including the surplus value, in excess of the amount of unpaid taxes and associated charges constitutes a taking under *Tyler*.

17.    In *Tyler*, the Court specifically tied the "taking" to the retention of the excess value from the sale of a property. The Court stated:

> The County argues that the delinquent taxpayer could sell her house to pay her tax debt before the County itself seizes and sells the house. But requiring a taxpayer to sell her house to avoid a taking is not the same as providing her an opportunity to recover the excess value of her house once the State has sold it.

598 U.S. at 644-45 (emphasis added).

18.    In other words, the act of taking extends to the withholding of any value beyond the tax debt owed when a home transfers ownership, depriving the original owner of potential profits from their property's equity.

19.    Separately, Ms. Searle seeks a permanent injunction against Arapaho and American Pride on the basis that merely providing the "delta" on the value of her home— while perhaps "just" compensation—is not truly for public use, and therefore violates the

---

[4] Previously, before the federal District Court, Arapaho and Ms. Searle reached an agreement that stipulates to the injunctive relief sought in Ms. Searle's original motion for a temporary restraining order and preliminary injunction. Eviction proceedings are therefore no longer expected to occur imminently. [*See* Exhibit 2, at 5 ("Defendant Arapaho has stipulated to the relief requested in Searle's motion, such that eviction proceedings shall not occur for at least 12 months."); *see id.* at 6 ("The parties reserve all rights after the 12-month period, ending March 15, 2025, to reach further agreement, or to apprise the Court that eviction proceedings against Ms. Searle are once again imminent.").]

SUP000006

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

U.S. Constitution. Whatever public use exists in getting people to pay their tax bill hardly encompasses losing one's personal home to a private party—as opposed to merely redeeming the debt with additional fees and/or penalties.

20.    Additionally, while not an issue reached in the majority opinion in *Tyler*, Ms. Searle seeks a permanent injunction against Arapaho and American Pride on the basis that the taking at issue is an excessive fine, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation.

21.    Here, Ms. Searle's claims seek declarations that Arizona's prior tax lien statutes violated the Arizona Constitution, and must therefore be declared invalid and enjoined in their application to Ms. Searle..

22.    Searle alleges various state law claims against various defendants.

23.    Searle also seeks other relief in the form of damages against Arapaho and American Pride, as well as relief establishing that the Arizona's prior tax lien scheme constitutes a taking, under the logic of *Tyler*, as well as an excessive fine.

24.    Additionally, Searle is seeking recovery of attorney's fees as permitted under A.R.S. § 12-341.01, reimbursement for expenses and costs of the suit, and any other relief deemed just and appropriate by the court. *See Corrigan v. Scottsdale*, 720 P.2d 513, 516 (Ariz. 1986) ("More significantly, in a case very similar to the one before us the New Hampshire Supreme Court not only allowed damages for a [] taking but also reasonable attorney['s] fees and double costs.").

SUP000007

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

**PARTIES**

25.    Plaintiff Christine M. Searle is an individual residing in Arizona who purchased her home in 2005.

26.    Defendant Arapaho is a limited liability company involved in the purchase of tax lien certificates and foreclosure of tax liens, including the purchase of the tax lien against the home in this matter.

27.    Defendant American Pride Properties is a limited liability company. Upon information and belief, American Pride now owns Ms. Searle's home.

28.    Defendant John M. Allen ("Allen") is sued in his official capacity as the Treasurer of Maricopa County. His office is responsible for the administration of tax collection, imposition and sale of tax liens, and related proceedings in Maricopa County. *See* ARIZ. REV. STAT. ANN. § 42-18001; *see also* ARIZ. REV. STAT. ANN. § 42-18101.

29.    Defendant Maricopa County is a political subdivision of the State of Arizona. Maricopa County, through its Treasurer's Office, is responsible for implementing and enforcing the tax lien foreclosure scheme challenged in this action.

30.    Defendants John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies are fictitious names for any Defendants not named of whom Ms. Searle later may become aware, who may have an interest in the real property at issue or been involved in the taking of Ms. Searle's Home.

31.    All Defendants` were acting and/or continue to act under color of state law at all times relevant hereto. All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

8

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

**JURISDICTION AND VENUE**

32.     Ms. Searle brings this action for the deprivation of Ms. Searle's right secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

33.     Additionally, she brings claims for violations of the Gift Clause, Takings Clause, and Excessive Fines Clause of the Arizona Constitution, and asserts a cause of action for unjust enrichment.

34.     Ms. Searle incorporates by reference all other allegations made in this Verified Complaint.

35.     This Court has subject matter jurisdiction over this action pursuant to Arizona Revised Statutes (A.R.S.) § 12-123 because the amount in controversy exceeds the jurisdictional threshold for Arizona Superior Courts, and the claims arise under Arizona state law, and the United States Constitution.

36.     Venue is appropriate in this district under A.R.S. § 12-401 because all, or substantially all, parts of the events or omissions giving rise to Ms. Searle's claims occurred in this district and all real property at issue in this litigation is located in Maricopa County, Arizona where Ms. Searle currently reside.

37.     Ms. Searle possesses standing because she will suffer a "classic pocketbook injury" from the sale of her home, when the sale results in price over and above what she owed in taxes. *Tyler*, 598 U.S. at 636 (injury caused by County illegally appropriating $25,000 in excess value from sale).

**STATEMENT OF FACTS**

**Arizona's Statutory Scheme Allowed Equity Theft**

9

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

38.     The Arizona Legislature previously established a statutory scheme under Title 42, Chapter 18 of the Arizona Revised Statutes in which property owners could be robbed of their hard-earned home equity over relatively miniscule tax liens.

39.     In Arizona, tax liens are created under ARIZ. REV. STAT. ANN. § 42-17153, which established that taxes levied on property become liens on the assessed property from January 1 of the tax year, having priority over most other liens. This statute worked in tandem with ARIZ. REV. STAT. ANN. § 42-17154, which extended the liability for taxes beyond the specific property assessed, allowing for mutual liability between real and personal property.

40.     The County Treasurer, as tax collector, has the additional duty of securing payment on delinquent taxes by selling liens and/or foreclosing the right to redeem those liens. *See* ARIZ. REV. STAT. ANN. § 42-18001; *see also* ARIZ. REV. STAT. ANN. § 42-18101. Once sold, the County Treasurer must issue a certificate of purchase to the purchaser or assignee, which constitutes prima facie evidence of a valid purchase. *See* ARIZ. REV. STAT. ANN. § 42-18118; *see also* ARIZ. REV. STAT. ANN. § 42-18119.

41.     Should the lien not be purchased by a private party as outlined above, the lien is assigned to the State by the County Treasurer. *See* ARIZ. REV. STAT. ANN. § 42-18113.

42.     After three years from the sale or assignment of a tax lien, the purchaser or the State may initiate an action to foreclose the right to redeem if the lien is not redeemed. *See* ARIZ. REV. STAT. ANN. § 42-18201.

10

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

43.    If the lien is not redeemed and the right to redeem is successfully foreclosed by the resulting judgment, the County Treasurer is directed to deliver a treasurer's deed conveying the property to the purchaser or the State as assignee. *See* ARIZ. REV. STAT. ANN. § 42-18204.

44.    As part of this process, the foreclosure judgment removed all legal and equitable right, title, or interest in the property from the previous owner of the property who lost the right to redeem. *See* ARIZ. REV. STAT. ANN. § 42-18204. In other words, if the right to redeem was foreclosed, the previous owner was deprived of all value, including all home equity, that they had accrued in the property, due merely to owing delinquent taxes.

45.    However, under A.R.S. § 42-18205(A), the treasurer's deed issues only after the lienholder pays a $50 fee. (referring to "a fee of fifty dollars per parcel").

46.    In the alternative event that the State be assigned the lien and successfully foreclose the right to redeem, a board of supervisors may then sell the property at auction. If the sale price exceeds the amount of the lien (including the related interest, penalties, etc.), then the excess funds, appropriately, must be paid back to the owner who was dispossessed of their property. *See* ARIZ. REV. STAT. ANN. § 42-18303.

47.    No such provision applied, however, where the purchaser of the tax lien was a private party. Thus, where a private party foreclosed the right to redeem, it reaped a significant windfall by effectively seizing the excess home equity, without any surplus returning to the previous owner.

**The Property and the Tax Lien**

11

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

48.     In 2005, Christine Searle purchased Assessor Parcel No. 302-35-259, which is the property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home"). For years, she was the sole owner, and enjoyed the benefits of home ownership including renting it out as one of her sole forms of income in retirement.

49.     The Maricopa County Assessor has valued this property at $376,800 for the 2024 tax year. As is common with many areas, the market value of this property is likely significantly higher than this valuation. For example, although online real estate estimates are not as reliable as individual professional appraisals, the Zillow estimated range for purchasing Ms. Searle's house is between $438,000-484,000.[5] Redfin, another real estate website, estimates the Home's value at $430,000-512,000.[6] Finally, Trulia and Realtor.com list the estimated value as $461,200,[7] and between $433,581-480,000,[8] respectively.

50.     Defendant Arapaho purchased the 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's home stemming, from Ms. Searle's delinquent taxes.

---

[5] 513 S Ash St, Gilbert, AZ 85233, Zillow (Jan. 26, 2024)
https://www.zillow.com/homedetails/513-S-Ash-St-Gilbert-AZ-85233/8180247_zpid/.

[6] 513 S Ash St, Gilbert, AZ 85233, REDFIN (Jan. 26, 2024),
https://www.redfin.com/AZ/Gilbert/513-S-Ash-St-85233/home/28096951.

[7] 513 S Ash St, Gilbert, AZ 85233, Trulia (Jan. 26, 2024),
https://www.trulia.com/home/513-s-ash-st-gilbert-az-85233-8180247.

[8] 513 S Ash St, Gilbert, AZ 85233, REALTOR (Jan. 26, 2024),
https://www.realtor.com/realestateandhomes-detail/513-S-Ash-St_Gilbert_AZ_85233_M29465-56767

12

SUP000012

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

51.     In 2021, Defendant Arapaho began the initial stages of foreclosure proceedings on those tax liens. According to Defendant Arapaho's verified complaint in that action, at the time of the foreclosure action, Ms. Searle owed $1,607.68 in delinquent taxes. *See* Exhibit 1. Arapaho won a default judgment in accordance with the statutory scheme outlined above, and was issued a treasurer's deed for the Home on February 1, 2022. *See* Exhibit 4 at 2.

52.     The Treasurer's deed formally removed Ms. Searle's ownership of the property in question, and is the earliest possible time when she was first owed just compensation under the Fifth Amendment. *See Salt River Project Agricultural Improvement and Power Dist. v. Miller Park, LLC,* 183 P.3d 467, 500 (Ariz. 2008) ("An owner of condemned property is constitutionally entitled to 'just compensation.' Just compensation equals the fair market value of the property.") (quoting U.S. Const. amend. V; Ariz Const. art. 2 § 17); *See Sprang v. Petersen Lumber, Inc.*, 798 P.2d 395, 400 (Ariz. App. 1st Div. 1990) ("A treasurer's deed usually conveys a new and complete title under an independent grant from the sovereign, free of any prescriptive title and all other liens and encumbrances."); *See Allied Am. Inv. Co. v. Petit*, 179 P.2d 437, 438-39 (Ariz. 1947) (describing the character and the numerous rights that a treasurer's deed triggers).

53.     Following the entry of the default judgment, Ms. Searle received a letter dated February 10, 2022, informing her of the issuance of the Treasurer's and foreclosure. *See* Exhibit 4 at 1. Ms. Searle then moved to set the default judgment aside, contending that she had not received proper notice regarding foreclosure action. However, this motion was denied. Ms. Searle then filed an appeal challenging the denial of her motion to set

13

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

aside the default judgment. The Court of Appeals of Arizona, Division 1 affirmed the denial of Ms. Searle's motion on February 9, 2023. *See Arapaho LLC v. Searle*, No. 1 CA-CV 22-0478, 2023 WL 1830382 (Ariz. Ct. App. Feb. 9, 2023), review denied (Oct. 17, 2023).

54.     On October 17, 2023, further review in the Arizona appellate courts was denied. *Id.*

55.     Due to the foreclosure action resulting in default judgment and the subsequent appeals being limited in scope to a notice issue, the merits of the foreclosure case have not been litigated. In fact, none of the issues surrounding takings or excessive fines have even been litigated with respect to Ms. Searle's home. As a result, neither res judicata or collateral estoppel have any bearing on this suit.

56.     *Tyler* represents new law. *Compare Automatic Art LLC v. State of Arizona*, No. CV 08-1484, 2010 WL 11515708, *6 (D. Ariz. March 18, 2010) ("[T]he Court still concludes that Ms. Searle's interest in the subject property terminated completely with the issuance of the treasurer's deed, and no deprivation of constitutional rights occurred.")[9]; *see contra* Testimony of Maricopa County Treasurer John Allen regarding Senate Bill 1431, Arizona State Senate Finance and Commerce Committee, at 25:35 (Feb. 12, 2024) ("We don't give a mechanism [to distribute excess proceeds] in the liens [context.] And so

---

[9] Note that even the Court in *Automatic Art* pinned the deprivation of property rights to no earlier than "the issuance of the treasurer's deed." *Id.* at *6 ("[T]he Court has concluded that Plaintiff had no continuing property interest in the subject property <u>after the treasurer's deed issued</u>." (emphasis added).

SUP000014

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

this is adding that mechanism to the liens so that you have the ability to say 'I'm owed something here. I would like to get it back.'")[10]; *see infra*, para. 81.

57.    Because of the issuance of the treasurer's deed, and an imminent future foreclosure, Ms. Searle will be deprived of the value of all the equity she had built in her home, in addition to one of her sole streams of retirement income via renting the house.

58.    Had the State of Arizona been the assignee of the tax lien, rather than a private entity, Arizona law states that Ms. Searle would be entitled to the difference of any sale price and the amount she owed, plus the related costs. Testimony of Maricopa County Treasurer John Allen regarding Senate Bill 1431, Arizona State Senate Finance and Commerce Committee, at 25:30 (Feb. 12, 2024) ("When I sell property I do distribute the excess proceeds.").

59.    Unfortunately, Arapaho and/or American Pride will obtain a massive windfall: obtaining a property valued in the mid-$400,000s over a tax lien that at the time of foreclosure was roughly $1,600.[11]

_____

[10] http://www.azleg.gov/videoplayer/?eventID=2024021046&startStreamAt=1147

[11] After conferral with Arapaho's counsel in the federal district court case, it came to light that Ms. Searle does owe other debts, and that the property is otherwise encumbered. However, these amounts do not exceed the value of Ms. Searle's home, and, under *Tyler*, they make little difference to the legal claims in this case. *Tyler*, 598 U.S. at 637 ("Had Tyler received the surplus from the tax sale, she could have at the very least used it to reduce any such liability."). Ms. Searle does not mean to suggest that Arapaho or American Pride are engaging in impropriety or unethical behavior by retaining a windfall.

SUP000015

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

**States May Not Seize Property for a Private Purpose, nor Seize Property for a Public Purpose Without Providing Just Compensation, nor Levy an Excessive Fine**

60.     The United States and Arizona Constitutions prohibit the taking of private property without a "public use." Moreover, even where a public use can be shown, "just compensation" must be provided if such property is taken.

61.     Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made . . ." This provision, akin to its federal counterpart, restricts takings absent a public purpose and ensures compensation for property owners.

62.     The Fifth Amendment to the United States Constitution articulates similar restrictions, declaring "nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment extends these protections to the states, affirming, "No State shall...deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

63.     Both the United States and Arizona Constitutions also prohibit excessive fines. The Eighth Amendment to the United States Constitution, applicable to the states, and Article 2, Section 15 of the Arizona Constitution, both stipulate: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

SUP000016

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

64.     Despite these constitutional guarantees, Arizona, through its statutory scheme described above, permitted the seizure of property from homeowners with unpaid real property taxes, transferred title to the state or third parties, and deprived the original property owner of the equity or value of their property after taxes and charges are satisfied. Furthermore, there is no provision for the original owner to reclaim this excess equity or surplus from a private party.

65.     By permitting a private entity to obtain the home of a delinquent taxpayer, Arizona's statutory scheme effectuated a *per se* unconstitutional taking for private use, a taking of private property without just compensation, and imposed an excessive fine beyond any penalties and tax arrears. *Cao v. PFP Dorsey Inv., LLC*, 545 P.3d 459, 464 ("In addition to prohibiting government-executed takings for private use, article 2, section 17 prohibits the legislature from authorizing private individuals to take property for private use, except for some enumerated exceptions not implicated here.").

66.     In analyzing a nearly identical statutory scheme in Colorado, the Colorado Office of the Attorney General issued guidance stating the logic of *Tyler* (and of takings jurisprudence in general) does not warrant a different outcome where the county gives property away, versus selling it. *See* Formal Opinion of Philip J. Weiser, Attorney General, No. 23-01, 2023 WL 6279010, at 4 (Colo. A.G. July 27, 2023) ("There does not appear to be a reasonable basis to conclude that the *Tyler* Court would have ruled differently where the government gives the property to a third party who has paid the tax debt with no opportunity for the taxpayer to recover the excess.").

SUP000017

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

67.     Indeed, in *Tyler*, the Court emphasized that confiscating a property to satisfy a tax debt, taking more value than was due, was a "classic taking in which the government directly appropriates private property for its own use." *Tyler*, at 639 (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002)). The fact that the government delegates this power to a third party, in this case Defendant Arapaho, does not change the underlying fact that transferring the title is unquestionably a taking.

68.     In fact, in his testimony regarding Ariz. H.B. 2098, which was one bill offered as a potential legislative solution in the wake of *Tyler*, Treasurer Allen recognized that a private purchaser stood in the place of the government, stating that "the purchase of the original lien was under the understanding that [the purchaser] would have an opportunity to own the property[.]" Tax Lien; Redemption; Property Sale: Hearing on H.B. 2098 Before the H. Comm. on Ways & Means, 2024 Leg., Fifty-sixth Legislature – Second Regular Sess. (Ariz. 2024) (testimony taken on Feb. 14, 2024 by John Allen at 34:15, Treasurer of Maricopa County).

69.     Testifying further, Treasurer Allen described the foreclosure process as a delegation of power by stating "we subcontract that activity" regarding the priority of the lien for the purposes of foreclosure. Tax Lien; Redemption; Property Sale: Hearing on H.B. 2098 Before the H. Comm. on Ways & Means, 2024 Leg., Fifty-sixth Legislature – Second Regular Sess. (Ariz. 2024) (testimony taken on Feb. 14, 2024 by John Allen at 35:03, Treasurer of Maricopa County).

18

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

70.    The principle that government should not have the unchecked authority to take property from one individual and give it to another has been a foundational concept in American jurisprudence, underscored by cases like *Calder v. Bull*, and enshrined in both the U.S. and Arizona Constitutions as a safeguard against government overreach. 3 U.S. 386 (1798) ("It is against all reason and justice for a people to entrust a legislature" with the power to enact "a law that takes property from A and gives it to B.")

71.    While case law concerning unconstitutional takings often addresses eminent domain and inverse condemnation, the overarching legal principle is clear: the government must fairly compensate the owner whenever a taking occurs, thereby protecting individuals from bearing disproportionate costs meant for the public benefit.

72.    A home or other real property, as well as the equity or value remaining after settling valid taxes and charges, is unequivocally protected under the U.S. and Arizona Constitutions. The concept that a person's home is their sanctuary is deeply embedded in our legal system, as noted in *Lombard v. Louisiana* by Justice Douglas, who asserted "The principle that a man's home is his castle is basic to our system of jurisprudence." 373 U.S. 267 (1963). Equity in real property holds the same protections and is governed by the same principles as any other form of property.

73.    The Arizona Supreme Court has recognized that homeowners were equitably subrogated to the mortgage lien's priority for the amount they paid to satisfy the mortgage, thereby recognizing their entitlement to proceeds from any sale of the property in the amount they paid to satisfy the debt. *Sourcecorp, Inc. v. Norcutt*, 274 P.3d 1204 (Ariz.

19

SUP000019

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

2012). This indicates an acknowledgment of the homeowner's right to equity realized through their financial contributions.

74.    The U.S. Supreme Court has recognized that a homeowner is entitled to any equity he or she may have realized since the purchase of the property: "The public may not by any means confiscate the benefits . . . of the owner's bargain." *Olson v. United States,* 292 U.S. 246, 255 (1934) (emphasis added). Should this sort of taking occur, "[The owner] is entitled to be put in as good a position as pecuniarily as if his property had not been taken." *Id.*

75.    Arizona courts have long recognized the broad scope of protection afforded by the takings clauses in both the state and federal constitutions. In *State ex. rel. Herman v. Southern Pac. Co.*, the court emphasized: "the prohibition against 'taking' private property for public use without just compensation, contained in both our State and National Constitutions, is designed to protect not only the landowner's proprietary interest, but also his economic interest." 445 P.2d 186 (Ariz. 1968). This underscores that Ms. Searle's full property rights, including her accrued equity, are protected against unconstitutional takings.

**_Tyler v. Hennepin_ Undoubtedly Invalidated The Arizona Tax Lien Scheme That Led to the Deprivation of Ms. Searle's Home.**

76.    Arizona's statutory regime was cited as a particularly egregious form of equity theft in the plaintiff's complaint in *Tyler v. Hennepin*. *See* Joint Appendix in *Tyler*

20

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

*v. Hennepin*, No. 20-166, at 15, ¶ 44 (Feb. 23, 2023) (referring to tax forfeitures in Arizona "to which the elderly are particularly vulnerable.").[12]

77.    The Arizona regime and the case law underlying it were cited numerous times in the briefing in *Tyler*.

78.    For instance, Arizona's tax lien scheme was prominently referred to by amici supporting the Petitioner in *Tyler*. As an example, in the amicus brief for the National Legal Aid & Defender Association in support of *Tyler*, the amici cited an article specifically referring to Arizona's statistics. *See* AMICUS BRIEF OF NATIONAL LEGAL AID & DEFENDER ASSOCIATION AS AMICUS CURIAE IN SUPPORT OF PETITIONER, at 8-9 (Mar. 6, 2023) ("As property tax delinquency has fallen disproportionately on historically disadvantaged communities, so too has the weight of home equity theft. In Arizona, the impacts of the tax foreclosure scheme are concentrated in high-poverty neighborhoods.").[13] The article even uses Maricopa County as an example: "But of the cases that do lead to foreclosure—1,734 in Maricopa County since 2010—more than a third are primary residences. That means that 642 homeowners lost their homes and all their equity."[14]

---

[12] https://www.supremecourt.gov/DocketPDF/22/22-166/255642/20230227174156602_Tyler%20Joint%20Appendix.pdf

[13] https://www.supremecourt.gov/DocketPDF/22/22-166/256341/20230306143341766_22-166%20NLADA%20Amicus.pdf. *See id.* at 9 ("Other hard-hit areas in Arizona are those with large Latino and African-American populations.").

[14] Mahoney & Clark, *Arizona owners can lose homes over as little as $50 in back taxes*, Ariz. Republic (Jun. 16, 2017), at https://www.azcentral.com/story/money/real-estate/2017/06/12/tax-lien-foreclosures-arizona-maricopa-county/366328001/

SUP000021

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

79.     Similarly, the Supreme Court had before it the BRIEF FOR AMICI CURIAE NATIONAL ASSOCIATION OF REALTORS, MINNESOTA REALTORS, AND AMERICAN PROPERTY OWNERS ALLIANCE IN SUPPORT OF PETITIONER, No. 22-166 (Mar. 6, 2023). That brief grouped Arizona's statutory scheme in with the Minnesota regime that was invalidated: "These regimes vary in their operation—some permit the government itself to reap the windfall free and clear, *see, e.g.*, MINN. STAT. ANN. § 280.29, others grant foreclosed equity value to private investors in tax liens, *see, e.g.*, ARIZ. REV. STAT. § 42-18201, et seq., while still others vest seemingly absolute discretion in the governments to spend it as they prefer, *see, e.g.*, MASS. GEN. LAWS CH. 60, §§ 43, 53. Yet, for all of their differences, a common thread unites them: each of these statutes deprives property owners of vested property interests without compensation." *See id.* at 9.[15]

80.     As demonstrated by his testimony on SB 1431, Defendant Allen himself has questioned the viability of Arizona's prior tax lien system after *Tyler*. This is consistent with the Arizona County Treasurers Association (ACTA) amicus brief in *Tyler*. *See* BRIEF OF AMICI CURIAE NATIONAL TAX LIEN ASSOCIATION, THE ARIZONA COUNTY TREASURERS ASSOCIATION, AND THE TAX COLLECTORS & TREASURERS ASSOCIATION OF NEW JERSEY IN SUPPORT OF RESPONDENTS IN TYLER V. HENNEPIN CNTY., MINN., NO. 22-166 (Mar. 31, 2023).[16] In the brief, the ACTA, among the others named on the brief,

---

[15] https://www.supremecourt.gov/DocketPDF/22/22-166/256348/20230306150018709_22-166%20merits%20tsac%20NAR.pdf

[16] https://www.supremecourt.gov/DocketPDF/22/22-166/262489/20230331142057501_Amicus%20Brief.pdf

22

SUP000022

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

expressly stated that a negative ruling in *Tyler* would affect jurisdictions like Arizona: "*Amici* and their members will be affected by the outcome of this case because dramatic changes to how delinquent property taxes are collected across the country could jeopardize the fiscal health of local taxing authorities, resulting in safety and economic consequences for these communities. For these reasons, *Amici* have legitimate interests in this case." (emphasis added).

81.     The amicus brief joined by the ACTA and cited above also acknowledged that a ruling for the Petitioner in *Tyler* would have broad consequences for tax collection schemes through the country: "Because of the web of tax-collection schemes that exist across the country, a broad rule adopted to address Minnesota's statutory process would unnecessarily reverberate throughout the country." *Id.* at 30 (emphasis added).

82.     Defendant Allen participates in Arizona County Treasurer's Association activities, and Maricopa County hosted the ACTA's conference in Fiscal Year 2023.[17]

83.     Moreover, Hennepin County itself considered the legality of its tax lien scheme to be bound up with the viability of Arizona's scheme. For instance, it cited *Automatic Art, LLC v. Maricopa Cnty.*, 2010 WL 11515708, at *5-6 (D. Ariz. Mar. 18, 2010), for the proposition that "since Arizona law did not provide for distribution of equity to a former owner," Ms. Searle's interest "terminated completely with the issuance of the

---

[17] *See* Maricopa County Treasurer's Office FY 2023 Annual Report, at 3 (June 2023) ("The Maricopa County Treasurer's Annual Report is published in the summer. It provides information on the preceding fiscal year. Fiscal year 2023 began July 1, 2022, and ended June 30, 2023."), at https://treasurer.maricopa.gov/Reports/index?fileName=Annual_Report_FY2023.pdf

23

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

treasurer's deed, and no deprivation of constitutional rights occurred." *See* Respondents' Response to the Petition for Writ of Certiorari at 9.[18]

84.    And for good measure, Hennepin County grouped Arizona's law with Minnesota's when it filed its merits brief before the Supreme Court: "Third, the disruption from ruling for Petitioner would be wide-ranging. At least nine states and the District of Columbia mirror Minnesota's approach in most cases." Brief for Respondents, at 43 n.19 (citing Ariz. Rev. Stat. Ann. § 42-18303(C)).[19]

85.    To drive home the point, during oral argument before the Supreme Court in *Tyler*, counsel for Hennepin County alluded to Arizona's statutory scheme as one of 19 states whose legal regimes were at stake. Transcript of Oral Argument in *Tyler v. Hennepin Cnty.*, 96:22-97:1 ("I think, here, all you need to decide is you look at this statute and the other 19 states that have exactly—you know, have very similar statutes and you ask is this reasonable[?]").[20]

86.    As noted above, the Colorado Attorney General announced in an official opinion that there does not appear to be "a reasonable basis" for concluding that *Tyler* does apply where the government gives the property to a third party.

**Defendants' Actions Constitute a Taking Under the Clear Meaning of *Tyler***

---

[18] https://www.supremecourt.gov/DocketPDF/22/22-166/249158/20221206120550502_Tyler%20v%20Hennepin%20Respondents%20Response%20to%20the%20Petition%20for%20a%20Writ%20of%20Certiorari.pdf

[19] https://www.supremecourt.gov/DocketPDF/22/22-166/260178/20230329131415863_Hennepin%20Brief%203-29-23%20Final.pdf

[20] https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-166_h4d8.pdf

24

SUP000024

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

87.   Defendants' actions violate the guiding principles of both the U.S. and Arizona Constitutions, and the fundamental intent to protect homeowners from the severe consequences of tax delinquency.

88.   In *Tyler*, the Supreme Court recognized that the retention in excess value constitutes a taking. 598 U.S. at 638 ("Here there was money remaining after Tyler's home was seized and sold by the County to satisfy her past due taxes, along with the costs of collecting them. The question is whether that remaining value is property under the Takings Clause, protected from uncompensated appropriation by the State.") (emphasis added).

89.   As part of a joint motion in the federal district court case, (Exhibit 3) the Arizona Attorney General, Kristin Mayes, stated and acknowledged that:

a.   In *Tyler v. Hennepin County*, 598 U.S. 631 (2023), the U.S. Supreme Court confirmed that states can collect "taxes on property," and "[i]n collecting these taxes, [states] may impose interest and late fees," *id.* at 637-38, as well as "seize and sell property, including land, to recover the amount owed," *id.* at 638, 639. The Supreme Court held, however, that states cannot "confiscate more property than [is] due," which violates the Fifth Amendment's Takings Clause as incorporated against the states through the Fourteenth Amendment. *See id.* at 637, 639 (citation omitted).

b.   Consistent with *Tyler*, Arizona's statutory scheme recognizes that when the State forecloses on an unsatisfied tax lien, it cannot confiscate more than it is owed. *See* A.R.S. §§ 42-18303(C), 42-18113(B)(1). Rather, the State must sell the encumbered property, subtract the amount owed—including interest,

25

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

penalties, fees, and costs—and return the "balance remaining" to "the owner of the property who was dispossessed by the sale." A.R.S. § 42-18303(C); *see id.* § 42-18113(A), (B)(1) (providing that a county treasurer can assign the lien to the State, and that taxes "assessed against that property are not payable until they have been derived from the sale or redemption of the property" or resale of the lien).

       c.     Arizona's statutory scheme allows county treasurers to sell tax liens to private parties to "secure the payment of unpaid delinquent taxes." A.R.S. § 42-18101(A); *id.* § 42-18114 (authorizing sale to "the person who pays the whole amount of delinquent taxes, interest, penalties and charges due on the property, and who in addition offers to accept the lowest rate of interest on the amount so paid to redeem the property"). When county treasurers sell tax liens to private parties, they do so on the State's behalf. *See id.* § 42-18001(A)(1).

       d.     Under *Tyler*, the State cannot "extinguish a property interest that it recognizes everywhere else to avoid paying just compensation when it is the one doing the taking." 598 U.S. at 645. And because the State cannot authorize others to do that which the State is not empowered to do, county treasurers cannot sell to private parties more of a property interest than the State itself could be assigned and retain. Thus, when a private party purchases a tax lien pursuant to A.R.S. §§ 42-18101 *et seq.*, only the interest in the tax lien (including authorized fees, costs, and interest) is conveyed.

       e.     Accordingly, under *Tyler*, A.R.S. § 42-18204(B) is unconstitutional to the extent it purports to extinguish a dispossessed owner's property interest in the

SUP000026

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

sale proceeds or value of the equity that exceed what the State is owed and could retain by statute. Further, to the extent a private party retains the excess proceeds of a sale or value of the equity in a home that exceeds what the State could retain by statute, that result is an unconstitutional taking under *Tyler*.

90.     Under state law, the Arizona "attorney general shall have charge of and direct the department of law and shall serve as chief legal officer of the state." AZ Stats. § 41-192(A). As such, its interpretation of Arizona law—borne out by the swift and unanimous passage of SB 1431—should be given the deference that it is due. *Accord Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.") (describing *Skidmore* deference by judges to federal executive branch pronouncements).

### Defendants' Actions Constitute an Excessive Fine

91.     When Defendants take real property pursuant to property tax seizure and retain the surplus beyond the tax debt owed, such retention transcends a mere remedial action and assumes a punitive or deterrent character. This retention of value or equity from Ms. Searle thus violates the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution.

92.     In alignment with the United States Constitution, proportionality underlies the constitutional examination under the Excessive Fines Clause of the Arizona

SUP000027

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

Constitution. The extent of forfeiture must be commensurate with the severity of the underlying offense it intends to penalize.

93.     Defendant Arapaho's and American Pride's plan—and ability under Arizona's tax lien scheme—to retain the surplus following the seizure of Ms. Searle's home, which is estimated to be worth well over 200 times that of the amount of the remaining tax balance, violates the Excessive Fines Clause as enshrined in both the Arizona and United States Constitutions as an unjust, excessive fine.

94.     Similarly, when the State is the assignee in Arizona, federal law provides that excess proceeds from a tax sale belong to and must be returned to the former owner. *See*, *e.g.*, *United States v. Rodgers*, 461 U.S. 677, 690-94 (1983) (in a forced sale to recover delinquent federal taxes under 26 U.S.C. § 7403, government may not ultimately collect, as satisfaction for the indebtedness owed to it, more than the amount actually due. If seizure of property extends beyond property necessary to satisfy tax debt, the excess must be repaid as compensation for the taking).

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

#### THE VIOLATION OF PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983 – FAILURE TO PAY JUST COMPENSATION

##### AGAINST ALL DEFENDANTS

95.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

SUP000028

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

96.    Arizona's statutes in Title 42, Chapter 18, governing the sale of tax liens and the disposition of proceeds, does not make any provision for returning the surplus of appropriated property to the original owner.

97.    The Fifth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, states, "nor shall private property be taken for public use, without just compensation."

98.    Ms. Searle's rights to her property and the equity therein have been unequivocally infringed under the U.S. Constitution. The Constitution protects against the taking of private property without just compensation, and ensures that equity in real property is treated with the same regard as any other form of property.

99.    The public cannot confiscate the benefits of a property owner's bargain. *Olson*, 292 U.S. at 255.

100.    In *Scottsdale v. CGP-Aberdeen, L.L.C.*, 177 P.3d 1198, 1200 (Ariz. 2008) the court discussed the requirement for just compensation under both the United States and Arizona Constitution, emphasizing that property may not be taken without just compensation being paid to the owner. The case also addressed the issue of valuation dates in condemnation actions, highlighting the importance of fair compensation based on the property's value at the time of taking.

101.    All Defendants were acting and/or continue to act under color of state law at all times relevant hereto.

102.    All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

SUP000029

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

103.   Defendants' seizure and subsequent retention of Ms. Searle's property, including the substantial equity that she accumulated since purchasing the home in 2005, are the proximate cause of Ms. Searle's significant and demonstrable harm.

104.   As noted by the U.S. Supreme Court, these rights were clearly enunciated in the Magna Carta. *See Tyler*, 598 U.S. a t 640 ("King John swore in the Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.'") (citing W. McKechnie, Magna Carta, A Commentary on the Great of King John, ch. 26, at 322 (rev. 2d ed. 1914)).

105.   Given that the *Tyler* Court expressly held that a homeowner whose property is taken to satisfy a tax debt is entitled to the surplus value after the sale of the home, this right is clear. *See Tyler*, 598 U.S. 631.

106.   The Arizona tax lien scheme was patently violative of fundamental constitutional principles.

107.   Given these violations, Ms. Searle seeks redress under 42 U.S.C. § 1983, which entitles her to seek relief for the deprivation of her constitutional rights. This includes just compensation for the property taken, as well as any additional relief deemed appropriate by the Court, such as nominal damages, compensatory damages, punitive damages, attorney fees, and costs. *See Corrigan,* 720 P.2d at 516. ("We believe that once a taking is found, the Arizona Constitution mandates the payment of money as damages for the injury suffered.").

SUP000030

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

108.   *Tucson Airport Auth. v. Freilich*, 665 P.2d 1002, 1004 (Ariz. 1983), reiterated that just compensation must be the full equivalent of the property's value at the time of taking, and if compensation is delayed, and additional amount must be added to account for the delay.

109.   Given that Defendants Arapaho and American Pride have notice of *Tyler*, notice of this suit, and knowledge of Ms. Searle's imminent loss of her home, these Defendants act in reckless disregard for Ms. Searle's constitutional rights, and she is therefore entitled to punitive damages.

110.   To the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

## SECOND CLAIM FOR RELIEF

### THE VIOLATION OF PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983 – NO PUBLIC USE

#### AGAINST ALL DEFENDANTS

111.   Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

112.   Defendants acted pursuant to an official, albeit unconstitutional, Arizona statutory scheme.

113.   The Constitution prohibits the taking of private property for a non-public use, even if just compensation is paid. *See supra,* ¶ 70 (*citing Calder v. Bull*, 3 U.S. at 386). Here, Ms. Searle alleges that the taking of her home was not for a valid public use.

31

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

114.    Defendants Arapaho and American Pride seized private property—a personal home of Ms. Searle—for their financial gain. They could just have easily charged Ms. Searle to pay more in fees or penalties related to her tax lien, rather than permanently take away her home, which has intrinsic and intangible value to her. By seizing private property without a legitimate public use, Defendants have violated of the Takings Clause of the Fifth Amendment to the United States Constitution.

115.    Separately, there is no public use rationale to justify the appropriation or retention of surplus equity from property tax sales, particularly when such equity exceeds the amount of taxes and related charges due. As the passage of SB 1431 shows, the state does not need to retain a homeowner's equity to achieve any public purpose. The U.S. Constitution prohibits such arbitrary exercises of governmental authority.

116.    The Fifth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, states, "nor shall private property be taken for public use, without just compensation."

117.    Ms. Searle has suffered harm and damage for the taken property and is therefore entitled to appropriate relief, including prospective equitable relief and compensatory damages.

**THIRD CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY –DIRECT FIFTH AMENDMENT CLAIM**

**AGAINST ALL DEFENDANTS FOR NO JUST COMPENSATION AND NO PUBLIC USE**

118.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

SUP000032

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

119.    The Fifth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, states, "nor shall private property be taken for public use, without just compensation."

120.    With respect to the allegations in Count 1 and Count 2, Ms. Searle brings takings claims for just compensation and a no-public-use-taking claim pursuant to 42 U.S.C. § 1983.

121.    Ms. Searle also seeks relief directly under the Fifth Amendment, on the basis that relief is always directly available under the Fifth Amendment, regardless of any limitation on 42 U.S.C. § 1983. *See DeVillier v. Texas*, 601 U.S. 285, 291 (2024) ("We have explained that a property owner acquires an irrevocable right to just compensation immediately upon a taking because of the self-executing character of the Takings Clause with respect to compensation.") (cleaned up); *Bonito Partners, LLC v. City of Flagstaff*, 229 Ariz. 75, 79 (Ariz. Ct. App. 2012) (a party has a right to bring a takings action when a valid police power is exercised to deprive an individual of a property right).

122.    To the extent that Arizona statutes allow or seem to permit Defendants, or any of them, to seize private property without public use, such statutes, including specific sections of the Arizona Revised Statutes relevant to property tax liens, are unconstitutional.

123.    This claim is not subject to any relevant statute of limitations under 42 U.S.C. § 1983. However, to the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

33

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

124.    Defendants Arapaho and American Pride seized private property—a personal home of Ms. Searle—without just compensation or public use. They could just have easily charged Ms. Searle to pay more in fees or penalties related to her tax lien, rather than permanently take away her home, which has intrinsic and intangible value to her. By seizing private property without a just compensation or a legitimate public use, Defendants have violated of the Takings Clause of the Fifth Amendment to the United States Constitution.

125.    The cause of action for an unconstitutional taking is presented as a direct claim under the Fifth Amendment, as incorporated by the Fourteenth Amendment to the United States Constitution.

<div align="center">

**FOURTH CLAIM FOR RELIEF**

**EXCESSIVE FINES VIOLATION OF THE UNITED STATES CONSTITUTION**

**AGAINST ALL DEFENDANTS**

</div>

126.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

127.    The Eighth Amendment to the United States Constitution safeguards the people against the imposition of excessive fines.

128.    Even a tax forfeiture sale that serves some remedial purpose not tied to criminal culpability and that occasionally confiscates property worth less than the debt owned may nevertheless constitute an excessive fine.

129.    The seizure of the entire value of Ms. Searle's property, including the delta in value between the tax owed and the price of the home, due to non-payment of relatively

<div align="center">34</div>

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

small amounts of delinquent taxes constitutes an excessive fine under the Eighth Amendment to the United States Constitution. *See Tyler*, 598 U.S. 631, 649-50 (Gorsuch, J., concurring, with Jackson, J., joining) ("Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.").

130.    Defendant Allen and Maricopa County are responsible for the administration of tax collection, the imposition and sale of tax liens, and related proceedings in Maricopa County. These tax lien seizures effectively operate as grossly excessive fines, and are thus prohibited under the Eighth Amendment.

131.    Although *Tyler* did not reach the question of whether the taking at issue also constituted an excessive fine, the fine placed on Ms. Searle was grossly disproportional to the taxes owed.

132.    Ms. Searle has suffered, and continues to suffer, significant and irreparable harm. If a permanent injunction is not issued, she will soon be evicted from her home, due to the ongoing risk of property rights violations by Defendants.

133.    Ms. Searle is entitled to prospective equitable relief, injunction relief, and an award of damages against each Defendant named in his or her individual capacity in an amount to be proven at trial.

134.    To the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

35

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

**FIFTH CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE ARIZONA CONSTITUTION – NO JUST COMPENSATION**

**AGAINST ALL DEFENDANTS**

135.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

136.     Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made. . . ." This clause mandates that if property is taken, just compensation must be provided.

137.     Arizona statutes, while dictating that any surplus earned by the State following a sale must be returned to the original owner, were silent regarding the surplus after a private transfer when Ms. Searle's home was foreclosed upon.

138.     As such, Ms. Searle has had her property taken without being justly compensated for the taking, and has no available mechanism to recover the surplus other than filing this action.

139.     These tax forfeiture statutes allow the seizure of Ms. Searle's private property without just compensation, thereby violating Ms. Searle's constitutional rights under the Arizona Constitution.

SUP000036

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

140.     Ms. Searle has been harmed and incurred damages due to the unconstitutional taking of her property without just compensation. She is entitled to injunctive relief, prospective equitable relief, and damages and other relief as a result of this violation of her constitutional rights.

141.     To the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

### SIXTH CLAIM FOR RELIEF

**TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE ARIZONA CONSTITUTION – NO VALID PUBLIC OR PRIVATE USE**

**AGAINST ALL DEFENDANTS**

142.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

143.     Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made. . . ." This clause mandates that the government must provide or secure just compensation before seizing private property for public use.

144.     The taking of the surplus value of the property does not fit in any of the enumerated permissible private takings.

37

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

145.    There is no public use rationale under Arizona law to support or justify allowing the retention of surplus or equity when that equity exceeds the amount of taxes and associated charges owed. The Arizona Constitution prohibits such arbitrary exercises of governmental authority.

146.    Arizona statutes, particularly those found in Title 42, Chapter 18, allowing Defendants to seize Ms. Searle's property for purposes other than public use or one of the enumerated private uses, are unconstitutional.

147.    By appropriating private property without a public use, or one of the enumerated private uses, Defendants are in violation of the Arizona Constitution.

148.    Ms. Searle has suffered harm and damages due to the unconstitutional taking of her property without a public use and is entitled to just compensation and other appropriate relief.

149.    To the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

## SEVENTH CLAIM FOR RELIEF

### EXCESSIVE FINES VIOLATION OF THE ARIZONA CONSTITUTION

#### AGAINST ALL DEFENDANTS

150.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

151.    Article 2, Section 15 of the Arizona Constitution prohibits the imposition of excessive fines.

38

SUP000038

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

152.    The confiscation of the entire value of Ms. Searle's property, including the delta in value between the tax owed and the price of the home, due to the non-payment of relatively small amounts of delinquent taxes constitutes an excessive fine under Article 2, Section 15 of the Arizona Constitution.

153.    Defendants are engaged in the assessment and collection of fines that are excessive and thus prohibited under the Arizona Constitution.

154.    To the extent that the Court deems Arapaho or American Pride to be the party that is levying an excessive fine, either entity does so under color of law.

155.    Ms. Searle has been harmed and incurred damages due to the imposition of unlawful excessive fines under the Arizona Constitution and is entitled to damages and other relief as a result of this constitutional violation.

156.    To the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF THE ARIZONA GIFT CLAUSE

### AGAINST DEFENDANTS ALLEN AND MARICOPA COUNTY

157.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

158.    The Arizona Constitution provides that "Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credit

39

SUP000039

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation." Ariz. Const. art. IX, § 7.

159.    Arizona applies a two-pronged test for Gift Clause violations. First, the court must determine whether the challenged expenditure serves a legitimate public purpose. *Schires v. Carlat*, 480 P.3d 639, 642–43 (Ariz. 2021) citing *Wistuber v. Paradise Valley Unified Sch. Dist.*, 687 P.2d 354, 357 (1984). If not, the expenditure is considered a Gift Clause violation. *Id.* If a public purpose exists, the second step is to assess whether "the value to be received by the public is significantly outweighed by the consideration being paid by the public," which would also constitute a Gift Clause violation. *Id.*

160.    Under this framework, the acquisition of a tax lien by a private entity followed by the subsequent foreclosure on the property constitutes a clear Gift Clause violation.

161.    The critical aspect of the Gift Clause analysis lies in whether the value received by the public is significantly exceeded by the consideration paid by the public. In this case, if the private entity acquires the property at a tax lien sale for a sum substantially lower than the property's fair market value, such as here, the public entity is essentially providing a substantial subsidy to the private entity. In other words, if the public entity's goal is to collect delinquent taxes, penalties, and interest, but the private entity ends up acquiring a property with a market value far in excess of the amount owed, the value received by the public (the tax debt) is dwarfed by the benefit conferred upon the private entity (ownership of a valuable property).

40

SUP000040

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

162.    The ostensible public purpose here is the collection of delinquent taxes. However, this purpose becomes questionable when examining the disproportionate outcome of the transaction. In Ms. Searle's case, her property, valued conservatively between $425,000 to $505,000 based on various real estate estimates, was acquired by through the foreclosure of a tax lien for a mere $1,607.68 in delinquent taxes.

163.    When applying the second prong of the *Wistuber* test, which examines the balance between the value received by the public and the consideration paid, the disparity becomes starkly evident. The amount recovered in delinquent taxes is substantially outweighed by the value of the property. This imbalance suggests that the public, in this case, has paid considerably more in consideration—in the form of lost property value and potential tax revenue from a higher-valued property—than the value it received, which was merely the satisfaction of a relatively small tax debt.

164.    In essence, the transaction facilitated by the state's statutory scheme but completed by Defendant Allen has resulted in a significant and unjust enrichment of a private entity at the expense of both Ms. Searle and the public interest.

165.    This substantial subsidy to Arapaho and/or American Pride, achieved through the acquisition of a high-value property for a fraction of its worth, indicates that the value to the public is indeed significantly outweighed by what the public has paid, thereby constituting a Gift Clause violation under the Arizona Constitution.

166.    To the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

41

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

**NINTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

**AGAINST ARAPAHO; AMERICAN PRIDE; JOHN DOE, JANE DOE, BLACK CORPORATIONS, WHITE PARTNERSHIPS, AND GREEN LIMITED LIABILITY COMPANIES**

167.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

168.     Ms. Searle contends that Arapaho, American Pride, John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies have been unjustly enriched at her expense, as delineated in *Trustmark Ins. Co. v. Bank One, Ariz., NA*, where the Arizona Court of Appeals defined unjust enrichment as a situation where "one party has and retains money or benefits that in justice and equity belong to another." 48 P.3d 485, 491 (Ariz. Ct. App. 2002). In the present case, Defendants' retention of the difference between taxes and Ms. Searle's property value falls squarely within this definition.

169.     "To establish a claim for unjust enrichment, the plaintiff must allege an impoverishment on his part, an enrichment to the defendant, a connection between the two, the absence of justification, and the absence of a legal remedy." *Haller v. Advanced Indus. Computer Inc.*, 13 F. Supp. 3d 1027, 1031 (D. Ariz. 2014).

170.     Ms. Searle has suffered impoverishment by losing her property and the equity she had built in it over years, which far exceeds the amount of unpaid taxes.

171.     Arapaho has been enriched by acquiring the property, including the surplus equity.

42

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

172.     There is a direct connection between Ms. Searle's impoverishment and Arapaho's enrichment, as the latter's gain directly corresponds to the former's loss.

173.     There is no justifiable reason for Arapaho or American Pride to retain the delta, as it exceeds the amount required to satisfy the unpaid taxes and related charges. Indeed, if Arapaho or American Pride were the state, they would be compelled by state and federal law to return the excess.

174.     The statutes and processes allowing this retention do not provide Ms. Searle with an adequate legal remedy to recover her lost equity, thereby making the enrichment of Arapaho unjust.

175.     Arapaho's retention of the difference between the property value and the lien constitutes unjust enrichment under Arizona law. Consequently, Ms. Searle seeks restitution of the surplus equity, which rightfully belongs to her, and any other relief deemed appropriate by the Court.

176.     To the extent that the Court deems this or any claim to outside of the statute of limitations, Ms. Searle asks that the Court equitably toll the statute in light of the Supreme Court's decision in *Tyler*, as well as equitable factors.

### **Relief Requested**

WHEREFORE, Plaintiff Christine M. Searle respectfully requests that this Court:

A.     Find and declare that relevant provisions of Title 42, Chapter 18 of the Arizona Revised Statutes are unconstitutional under the United States and Arizona Constitutions;

43

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

B.     Find and declare that relevant provisions of Title 42, Chapter 18 of the Arizona Revised Statutes are unconstitutional under the United States and Arizona Constitutions as applied to Ms. Searle;

C.     Declare that confiscations and sales taking place under Title 42, Chapter 18 of the Arizona Revised Statutes imposed a taking;

D.     Declare that confiscations and sales taking place under Title 42, Chapter 18 of the Arizona Revised Statutes as applied to Ms. Searle imposed a taking;

E.     Declare that confiscations and sales taking place under Title 42, Chapter 18 of the Arizona Revised Statutes are null and void;

F.     Declare that confiscations and sales taking place under Title 42, Chapter 18 of the Arizona Revised Statutes are null and void as applied to Ms. Searle;

G.     Find and declare that relevant portions of Title 42, Chapter 18 of the Arizona Revised Statutes violate the Gift Clause of the Arizona Constitution;[21]

H.     Find and declare that relevant portions of Title 42, Chapter 18 of the Arizona Revised Statutes violate the Gift Clause of the Arizona Constitution as applied to Ms. Searle;

---

[21] Because SB 1431 is not retroactive, Ms. Searle does not view her claims directed at Arizona's prior tax lien scheme as moot. *See, e.g.*, *Federal Bureau of Investigation v. Fikre*, 144 S. Ct. 771, 777 (Mar. 19, 2024) (a litigant's complaint is moot only when "a complaining party manages to secure outside of litigation all the relief he might have won in it"); *Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1037 (9th Cir. 2018) ("Regarding mootness, a defendant's voluntary cessation does not moot a case unless (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have <u>completely and irrevocably eradicated the effects of the alleged violation</u>.") (emphasis added and internal quotation marks omitted).

44

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

I.      Enter an injunction against Defendants preventing eviction proceedings from proceeding against Ms. Searle, on the basis that (1) evicting her without just compensation constitutes a taking, and (2) evicting her constitutes an excessive fine, without regard to whether she ultimately receives just compensation;

J.      Find and declare that Defendants' taking and sale of Ms. Searle's property, including all equity therein, was not attended by payment or securing just compensation and as such, violates the United States and Arizona Constitutions;

K.      Find and declare that Defendants' taking and sale of Ms. Searle's property, including all equity therein, is for no public use and violates the United States and Arizona Constitutions;

L.      To the extent that the Court finds that the taking and sale of Ms. Searle's property, including all equity therein, is at least partially for public use, in the alternative, that this Court rule that the delta between the value of Ms. Searle's home and her tax lien debt is a taking not for a public purpose;

M.      Find and declare that Defendants' appropriation of Ms. Searle's real estate equity is an excessive fine in violation of the United States and Arizona Constitutions;

N.      Enter an award of damages, including nominal damages, Maricopa County, Arapaho, and American Pride, given that *Tyler* and other case law establish that the sale of Ms. Searle's home will trigger a taking;

O.      Enter an award of punitive damages against Defendants Arapaho and American Pride, on the basis that Defendants continue to act in reckless disregard of Ms.

45

SUP000045

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

1    Searle's rights, given that the Supreme Court's decision in *Tyler* is clear that Ms. Searle

2    cannot be deprived of her property without just compensation.

3            P.        Retain jurisdiction of this matter for the purpose of enforcing the Court's

4    orders;

5

6            Q.        To the extent that Ms. Searle is deprived of her property, enter an award of

7    compensatory damages against all Defendants under the Fifth Amendment's just

8    compensation clause, as incorporated in the Fourteenth Amendment;

9

10           R.        To the extent that Ms. Searle is deprived of her property, enter an order to

11   disgorge the delta between the value of the home and the amount of the tax lien;

12           S.        Enter an award of attorney fees and costs of suit against all Defendants

13   pursuant to A.R.S. § 12-348;

14

15           T.        Enter an award of attorney fees and costs of suit against all Defendants

16   pursuant to the Arizona Private Attorney General Doctrine;

17           U.        Order such other and further relief as the Court may deem just, proper and

18   necessary under the circumstances.

19

20

21

22

23

24

25

26

27

28

SUP000046

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

**Jury Demand**

Plaintiff requests a trial by jury on all issues and claims so triable.

Dated this 19th day of August, 2024.          Respectfully submitted,

By: */s/ Veronica Lucero*

Veronica Lucero
**Davillier Law Group LLC**
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016

Grady J. Block*
William E. Trachman*
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
*Pro Hac Vice Pending*

*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

47

SUP000047

Docusign Envelope ID: 301AE013-A5A4-4DBA-9DC3-CEE2B2DDAD6B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Verification</u>**

      I, Christine M. Searle, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. To the extent I am relying on documents as to matters of fact of which I do not have personal knowledge, I have a reasonable belief that those documents are genuine and accurate.

Executed on:

By: *William Randall Searle on behalf of Christine Searle*
Christine M. Searle

48

Exhibit 1

SUP000049

# Exhibit 1 - Arapaho-Searle; Best and Final Offer

SUP000050



**From:** John Lohr Jr <jll@hgplaw.com>
**Sent:** Tuesday, January 2, 2024 8:46 AM
**To:** Braddock, Cory <cbraddock@swlaw.com>
**Cc:** Jackson Hendrix <JHendrix@hgplaw.com>
**Subject:** RE: ARAPAHO-SEARLE; BEST AND FINAL OFFER

[EXTERNAL] jll@hgplaw.com

---

Cory

Good morning.
As we did not hear back, we will need to move forward with the eviction.
Thank you.



Exhibit 2

SUP000052

1   William E. Trachman (CO Bar No. 45384) (*pro hac vice*)
    Grady Block (TX Bar No. 24120616) (*pro hac vice*)
2   Mountain States Legal Foundation
3   2596 S. Lewis Way
    Lakewood, Colorado 80227
4   Telephone: (303) 292-2021
    wtrachman@mslegal.org
5   gblock@mslegal.org
6
7   *Attorneys for Christine M. Searle*

8                  **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE DISTRICT OF ARIZONA**

10  Christine M. Searle,
                                              Case No. CV-24-00025-PHX-JJT
11         Plaintiff,
                                              Assigned Judge: John J. Tuchi
12         v.

13  John M. Allen ("Allen"), in his          **PLAINTIFF'S MOTION TO**
    individual and official capacity, as The **WITHDRAW HER FORTHWITH**
14  Treasurer of Maricopa County;            **MOTION FOR TEMPORARY**
15  Arapaho LLC; American Pride              **RESTRAINING ORDER AND**
    Properties, LLC; and John Doe, Jane      **PRELIMINARY INJUNCTION (DOC. 2)**
16  Doe, Black Corporations, White           **AND VACATE JANUARY 30 HEARING**
17  Partnerships, and Green Limited          **(DOC. 5)**
    Liability Companies,
18
19         Defendants

20

21

22

23

24

25

26

27

28

SUP000053

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Christine M. Searle hereby moves to withdraw her Forthwith Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2), and to vacate the hearing set for January 30, 2024, on the Motion (Doc. 5).

Pursuant to LR Civ 7.2(b), Ms. Searle files the following Memorandum of Points and Authorities relied upon in support of the motion. A Proposed Order is attached as Exhibit 1.

1

SUP000054

William E. Trachman (CO Bar No. 45384) (*pro hac vice*)
Grady Block (TX Bar No. 24120616) (*pro hac vice*)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
wtrachman@mslegal.org
gblock@mslegal.org

*Attorneys for Christine M. Searle*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine M. Searle, | Case No. CV-24-00025-PHX-JJT |
| Plaintiff, | Assigned Judge: John J. Tuchi |
| v. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION TO WITHDRAW HER FORTHWITH MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DOC. 2) AND VACATE JANUARY 30 HEARING (DOC. 5)** |
| John M. Allen ("Allen"), in his individual and official capacity, as The Treasurer of Maricopa County; Arapaho LLC; American Pride Properties, LLC; and John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies, | |
| Defendants | |

In support of her Motion, Ms. Searle states as follows:

1.      This action was filed on January 5, 2024.

2.      On the same day, January 5, 2024, Ms. Searle filed her Forthwith Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2). The Motion states that Ms. Searle is "threatened with immediate eviction proceedings."

3.      The motion also cited to ECF No. 1-1, which is an e-mail dated January 2, 2024, from Defendant Arapaho LLC's (Defendant Arapaho) counsel, stating: "Good morning. As we did not hear back, we will need to move forward with the eviction. Thank you." [*Id.* at 2.]

4.      The Motion requested the following relief with respect to Defendant Arapaho: "Plaintiff[] requests that the Court issue an injunction preventing eviction proceedings, as violative of the U.S. Constitution, along with the Arizona Constitution, which prohibit the taking of private property without public use, and which prohibit a forfeiture that operates as an excessive fine." (Doc. 2, at 3).

5.      On January 8, 2024, this Court entered an Order setting a briefing schedule and collapsing Ms. Searle's request for a Temporary Restraining Order and Preliminary Injunction into a single hearing. The Order set the hearing on the Motion for 9:00am on January 30, 2024. (Doc. 5).

6.      After the Court's January 8, 2024 Order, counsel for Defendant Arapaho and Ms. Searle have conferred, and have reached a resolution regarding Ms. Searle's Motion.

7.      Defendant Arapaho has stipulated to the relief requested in Searle's motion, such that eviction proceedings shall not occur for at least 12 months.

1

SUP000056

8.      By March 15, 2024—or 45 days after the date currently set for the hearing—Ms. Searle shall properly obtain a bond in the amount of $12,000 for the first 8 months of this period, and $1,500/month for the subsequent four months.

9.      The parties reserve all rights after the 12-month period, ending March 15, 2025, to reach further agreement, or to apprise the Court that eviction proceedings against Ms. Searle are once again imminent.

10.      If Defendant Arapaho prevails in this matter, the funds referred to in Paragraph 8 shall be released to Arapaho at the conclusion of all litigation, including appeals. If Ms. Searle prevails in this matter and the conclusion of all litigation including appeals, the funds referred to in Paragraph 8 shall be returned to her.

11.      Because Ms. Searle and Arapaho have now reached an agreement stipulating to the relief requested by Ms. Searle for a 12-month period, the Motion (Doc. 2) is not yet ripe.

12.      In the event the case is fully resolved prior to 12 months either through adjudication of this matter and any relevant appeals or through an agreement of the parties, the stay of the eviction shall terminate 30 days after that full adjudication or agreement unless the parties mutually agree otherwise or by further Court order.

13.      In the interest of judicial resources, Ms. Searle moves to withdraw her Motion without prejudice, and to vacate the January 30 hearing.

14.      Although the relief sought in the Motion was not against Defendant Allen, Ms. Searle has apprised Defendant Allen that she will be moving to withdraw her previous motion and to vacate the January 30 hearing date.

2

1    15.    Ms. Searle further apprises the Court that after providing the Complaint to

2   Defendant Allen's Office, counsel has conferred with counsel for Defendant Allen, and has

3   determined that she will need to file an amended complaint. Defendant Allen has stipulated

4   to the amended complaint, to be filed by January 26, 2024. No action by the Court is

5
6   currently required with respect to a motion to amend the complaint.

7    16.    Undersigned counsel certifies that this Motion was circulated to counsel for

8   Defendant Arapaho, and that Defendant Arapaho's counsel has conveyed agreement with

9
10  paragraphs 7-10 above, and that paragraph 12 was added at the request of Defendant

11  Arapaho's counsel.

12
13  Dated: January 17, 2024

14                                          Respectfully submitted,

15                                          s/ William E. Trachman
                                            William E. Trachman, CO #45684 (pro hac vice)
16                                          Grady Block TX # 24120616 (pro hac vice)
                                            Mountain States Legal Foundation
17                                          2596 S. Lewis Way
18                                          Lakewood, Colorado 80227
                                            Telephone: (303) 292-2021
19                                          wtrachman@mslegal.org
20                                          gblock@mslegal.org

21

22

23

24

25

26

27

                                         3

**CERTIFICATE OF SERVICE**

1
2          I hereby certify that upon filing this Motion on this 17th day of January 2024, I shall
3   cause a true and correct copy of the foregoing **PLAINTIFF'S MOTION TO**
4   **WITHDRAW HER FORTHWITH MOTION FOR TEMPORARY RESTRAINING**
5   **ORDER AND PRELIMINARY INJUNCTION (DOC. 2) AND VACATE JANUARY**
6   **30 HEARING (DOC. 5)** and **PLAINTIFF'S MEMORANDUM OF POINTS AND**
7   **AUTHORITIES IN SUPPORT OF HER MOTION TO WITHDRAW HER**
8   **FORTHWITH MOTION FOR TEMPORARY RESTRAINING ORDER AND**
9   **PRELIMINARY INJUNCTION (DOC. 2) AND VACATE JANUARY 30**
10  **HEARING (DOC. 5)** to be electronically circulated to the following counsel in this
11  matter:

12
    Arapaho LLC:                          John L. Lohr Jr., jll@hgplaw.com
13

14  American Pride Properties, LLC:       John L. Lohr Jr., jll@hgplaw.com

15
    Treasurer John Allen:                 Kim Miles, milesk@mcao.maricopa.gov
16

17                                        Kate Kane,

18                                        Katherine.Kane@mcao.maricopa.gov

19                                        _/s/ William E. Trachman_____
20                                        William E. Trachman

21

22

23

24

25

26

27

4

SUP000059

Exhibit 3

SUP000060

Grady J. Block, TX Bar No. 24120616 (Pro hac vice)
William E. Trachman, CO Bar No. 45684 (Pro hac vice)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Tele: (303) 292-2021
Fax: (877) 349-7074
gblock@mslegal.org
wtrachman@mslegal.org

*Attorneys for Plaintiff Christine M. Searle*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christine M. Searle,<br><br>                  Plaintiff,<br><br>v.<br><br>John M. Allen ("Allen"), in his individual and official capacity, as The Treasurer of Maricopa County; Arapaho LLC; American Pride Properties, LLC; Kristin Mayes, in her official capacity, as the Attorney General of the State of Arizona; John Doe; Jane Doe; Black Corporations; White Partnerships; and Green Limited Liability Companies,<br><br>                  Defendants. | Case No. CV-24-00025-PHX-JJT<br><br>**JOINT STIPULATED MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS AGAINST DEFENDANT ATTORNEY GENERAL KRISTIN K. MAYES** |

SUP000061

Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff Christine M. Searle and Defendant Arizona Attorney General Kristin K. Mayes ("the moving parties") respectfully ask the Court to dismiss with prejudice all claims against the Attorney General.  In so moving, Attorney General Mayes acknowledges and states the following view of the law:

1.    In *Tyler v. Hennepin County*, 598 U.S. 631 (2023), the U.S. Supreme Court confirmed that states can collect "taxes on property," and "[i]n collecting these taxes, [states] may impose interest and late fees," *id.* at 637-38, as well as "seize and sell property, including land, to recover the amount owed," *id.* at 638, 639. The Supreme Court held, however, that states cannot "confiscate more property than [is] due," which violates the Fifth Amendment's Takings Clause as incorporated against the states through the Fourteenth Amendment.  *See id.* at 637, 639 (citation omitted).

2.    Consistent with *Tyler*, Arizona's statutory scheme recognizes that when the State forecloses on an unsatisfied tax lien, it cannot confiscate more than it is owed. *See* A.R.S. §§ 42-18303(C), 42-18113(B)(1).   Rather, the State must sell the encumbered property, subtract the amount owed—including interest, penalties, fees, and costs—and return the "balance remaining" to "the owner of the property who was dispossessed by the sale." A.R.S. § 42-18303(C); *see id.* § 42-18113(A), (B)(1) (providing that a county treasurer can assign the lien to the State, and that taxes "assessed against that property are not payable until they have been derived from the sale or redemption of the property" or resale of the lien).

3.    Arizona's statutory scheme allows county treasurers to sell tax liens to private parties to "secure the payment of unpaid delinquent taxes."  A.R.S. § 42-18101(A); *id.* § 42-18114 (authorizing sale to "the person who pays the whole amount of delinquent taxes, interest, penalties and charges due on the property, and who in addition offers to accept the lowest rate of interest on the amount so paid to redeem the property").  When county treasurers sell tax liens to private

2

SUP000062

parties, they do so on the State's behalf.  *See id.* § 42-18001(A)(1).

4.      Under *Tyler*, the State cannot "extinguish a property interest that it recognizes everywhere else to avoid paying just compensation when it is the one doing the taking."  598 U.S. at 645.  And because the State cannot authorize others to do that which the State is not empowered to do, county treasurers cannot sell to private parties more of a property interest than the State itself could be assigned and retain.  Thus, when a private party purchases a tax lien pursuant to A.R.S. §§ 42-18101 *et seq.*, only the interest in the tax lien (including authorized fees, costs, and interest) is conveyed.

5.      Accordingly, under *Tyler*, A.R.S. § 42-18204(B) is unconstitutional to the extent it purports to extinguish a dispossessed owner's property interest in the sale proceeds or value of the equity that exceed what the State is owed and could retain by statute.  Further, to the extent a private party retains the excess proceeds of a sale or value of the equity in a home that exceeds what the State could retain by statute, that result is an unconstitutional taking under *Tyler*.

6.      Accordingly, the moving parties agree that:

        a.      The State does not presently possess any property or funds that belong to Plaintiff;

        b.      given the Attorney General's view of the law in light of *Tyler*, Plaintiff has thus received all the relief from the Attorney General to which she is entitled and that the Attorney General can give with respect to Plaintiff's claims; and

        c.      the claims against the Attorney General should therefore be dismissed.

Notwithstanding the foregoing, Plaintiff reserves all claims, arguments, and other rights available by law with respect to the Maricopa County Treasurer John M. Allen, Arapaho LLC, and American Pride Properties LLC, and does not waive or forfeit any claims or arguments against the remaining private party defendants with respect to

3

SUP000063

1  Plaintiff's property interests.

2        For purposes of this stipulated dismissal, the Attorney General takes no position
3  on the remaining issues in the case, including any defenses, which are for the private
4  parties to resolve.

5        The moving parties agree that the Attorney General does not waive or forfeit any
6  claims, defenses, arguments, or other rights available by law in future proceedings in this
7  matter or any related matters, except to the extent that they contradict the
8  acknowledgments and statements above.

9        For these reasons, the moving parties respectfully ask the Court to dismiss with
10  prejudice all claims against the Attorney General and enter the proposed order attached
11  herewith.  The moving parties agree to bear their own costs and fees.

12
13        RESPECTFULLY SUBMITTED this 20th day of March, 2024.

14                      By: */s/ Grady J. Block*
                       Grady J. Block* (Pro hac vice)
15                         William E. Trachman (Pro hac vice)
                       Mountain States Legal Foundation
16                         2596 S. Lewis Way
                       Lakewood, Colorado 80227
17                         Tele: (303) 292-2021
18                         Fax: (877) 349-7074
19                         gblock@mslegal.org
                       wtrachman@mslegal.org
20
21                      By: */s/ Veronica Lucero*
                       Veronica Lucero
22                         Davillier Law Group LLC
                       4105 N. 20th St., Ste. 110
23                         Phoenix, AZ 85016
                       Tele: (602) 730-2985 ext. 705
24                         Fax: (602) 801-2539
25                         vlucero@davillierlawgroup.com

26                         *Attorneys for Plaintiff Christine M. Searle*

27

28

                4

SUP000064

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: _/s/ Luci D. Davis (with permission)_

    Hayleigh S. Crawford (No. 032326)
    Emma H. Mark (No. 032249)
    Luci D. Davis (No. 035347)
    Office of the Arizona Attorney General
    2005 N. Central Avenue
    Phoenix, AZ 85004-1592
    (602) 542-3333
    Hayleigh.Crawford@azag.gov
    Emma.Mark@azag.gov
    Luci.Davis@azag.gov
    ACL@azag.gov

    *Attorneys for Defendant Arizona Attorney*
    *General Kristin K. Mayes*

5

1

**CERTIFICATE OF SERVICE**

2

  I hereby certify that upon filing this Motion on this 20th day of March 2024, I

3

shall cause a true and correct copy of the foregoing **JOINT STIPULATED MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS AGAINST DEFENDANT**

4

**ATTORNEY GENERAL KRISTIN K. MAYES** to be electronically circulated to the

5

following counsel in this matter:

6

  Arapaho LLC:     John L. Lohr Jr., jll@hgplaw.com

7

  American Pride Properties, LLC: John L. Lohr Jr., jll@hgplaw.com

8

  Treasurer John Allen:   Kim Miles, milesk@mcao.maricopa.gov

9

           Kate Kane, Katherine.Kane@mcao.maricopa.gov

10

           */s/ William E. Trachman*

           William E. Trachman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUP000066

Exhibit 4

SUP000067

# REO AMERICA, INC.
Rebuilding America

February 10, 2022

Christine Searle
513 S Ash Street
Gilbert, AZ 85233

RE: 513 S Ash St., Gilbert

Dear Ms. Searle,

As you should be aware, Maricopa County has sold multiple tax liens on the property mentioned above due to delinquent taxes. Arapaho, LLC filed a foreclosure action on delinquent 2015 real estate tax lien that they purchased in 2017. Due to the tax lien not being redeemed, a judgment foreclosing the property was entered and a Treasurer's Deed issued to Arapaho, LLC. Arapaho has since sold the property to American Pride Properties, LLC.

I would like to speak with you regarding the change of ownership. We understand that times are tough which is why we would like to assist with this transition and offer a compensation package. Please contact me directly at (321) 280-8021 or via email at tcone@reo-america.com.

Sincerely,

Tiffany Cone



225 S. Westmonte Dr.
Suite 3050
Altamonte Springs, FL 32714

Phone: 407-339-1108
Fax: 407-339-1128
Website: www.reo-america.com

SUP000068

When Recorded Return to:

HYMSON, GOLDSTEIN, PANTILIAT & LOHR, PLLC
JOHN L LOHR JR
14500 N NORTHSIGHT BLVD., SUITE 101
SCOTTSDALE AZ 85260

PARCEL NO:        302-35-259 1
C.P. NO.            15012304

### TREASURER'S DEED
after suit

Know All Men By these Presents, that I, JOHN M. ALLEN, Treasurer of Maricopa County, State of Arizona, pursuant to law and to the judgment of the Superior Court in Maricopa County, the State of Arizona, entered on         November 9, 2021   in an action numbered     CV2021-012279

entitled:         ARAPAHO, LLC TESCO AS CUSTODIAN, an Arizona limited liability company

plaintiff Vs        CHRISTINE M. SEARLE, a single woman; et al;

defendant, in consideration of the amount paid to the treasurer at the sale in the above entitled action foreclosed, and in further consideration of the amount of ten dollars, have conveyed and by these presents do convey, unto the said     ARAPAHO LLC
                                                  PO BOX 30538
                                                  TAMPA FL 336303538

the following described real property situated in the County of Maricopa, State of Arizona to wit:

302-35-259 1    LOT 41, OF PARCEL 10 OF LAGO ESTANCIA, ACCORDING TO THE PLAT OF
RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY,
ARIZONA, RECORDED IN BOOK 359 OF MAPS, PAGE 43.

In Witness Whereof, I, JOHN M. ALLEN, Treasurer of the County of Maricopa, State of Arizona,
by virtue of law, have hereunto set my hand and seal this   1st   day of February , 2022

_____
TREASURER, MARICOPA COUNTY

STATE OF ARIZONA

COUNTY OF MARICOPA                    ss

This instrument was acknowledged before me this   1st   day of February , 2022
by JOHN M. ALLEN, Treasurer of the County of Maricopa, State of Arizona who then and there stated
to me that he executed the same for the purpose and consideration therein expressed.

_____
NOTARY PUBLIC

JASMIN CHAIDEZ
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 564937
Expires April 26, 2023

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
STEPHEN RICHER
20220104303   02/03/2022   11:30
ELECTRONIC RECORDING

22071227D-1-1-1--
Garciac

**When Recorded Return To:**
American Pride Properties. LLC
225 S. Westmonte Drive, Suite 3050
Altamonte Springs, FL 32714

### QUIT CLAIM DEED
Exempt pursuant to A.R.S. Section 11-1134(B)(7)(b)

For the consideration of ten dollars and 00/100's and other valuable consideration,
**Arapaho, LLC, Tesco as Custodian, an Arizona limited liability company**, hereby quit claims
to **American Pride Properties, LLC**, a Delaware limited liability company, the Grantee herein,
all right, title and interest in the following described real property situated in Maricopa County,
Arizona:

**Lot 41, of PARCEL 10 OF LAGO ESTANCIA, according to the plat of record in the
office of the County Recorder of Maricopa County, Arizona, recorded in Book 359 of
Maps, Page 43.**

Also known as: 513 S. Ash Street, Gilbert, Arizona 85233 and known as Parcel No. 302-35-259

To have and to hold the same, together with all and singular the rights and appurtenances to
Grantee, his successors and assigns forever. SUBJECT TO: Current taxes and other assessments,
reservations in patents and all easements, rights of way, encumbrances, liens, covenants,
conditions, restrictions, obligations and liabilities as may appear of record.

**DATED** this __3__ day of __February__ 2022.

_____
Tiffany Cone, attorney-in-fact for Arapaho,
LLC TESCO as Custodian

STATE OF __Florida__ )
                     ) ss.
County of __Seminole__ )

The foregoing instrument was acknowledged before me, the Notary Public, on this __3__ day of
__February__, 2022, personally appeared Tiffany Cone whose signature on this
page is the person whom I have personal knowledge of or who provided satisfactory evidence of
identity, and who acknowledged to me that this is her signature that is affixed to this Quit Claim
Deed.

My Commission Expires: __11/4/2023__

_____
Notary Public

Sonishari Bellamy
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG925579
Expires 11/4/2023

Page 1 of 1

SUP000070

# EXHIBIT "2"

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
12/27/2024 1:11:25 PM
Filing ID 19075916

1  John L. Lohr, Jr. (SBN 019876)
   David B. Goldstein (SBN 003410)
2  James-Henry R. Courteau (SBN 039173)
   **HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**
3  8706 E. Manzanita Drive, Suite 100
   Scottsdale, Arizona 85258
4  Telephone:  480-991-9077
   E-mail: jll@hgplaw.com
5  dbg@hgplaw.com
   jcourteau@hgplaw.com
6  minute@hgplaw.com
   *Attorneys for Arapaho, LLC*
7  *and American Pride Properties, LLC*

8

9                **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10                    **IN AND FOR THE COUNTY OF MARICOPA**

11  CHRISTINE M. SEARLE;                    Case No. CV2024-022530

12                 Plaintiff,                **MOTION TO DISMISS**

13  v.                                       (Assigned to the Honorable Christopher
                                             Whitten)
14  JOHN M. ALLEN, IN HIS OFFICIAL
    CAPACITY AS THE TREASURER OF            **Oral Argument Requested**
15  MARICOPA COUNTY; ARAPAHO,
    LLC; AMERICAN PRIDE
16  PROPERTIES, LLC; JOHN DOE; JANE
    DOE; BLACK CORPORATIONS;
17  WHITE PARTNERSHIPS; and GREEN
    LIMITED LIABILITY COMPANIES;
18
19                 Defendants.
20
21          Pursuant to Rules 12(b)(6) and (b)(7) *Ariz.R.Civ.P.*, Defendants, ARAPAHO, LLC

22  ("Arapaho") and AMERICAN PRIDE PROPERTIES, LLC ("AMPP") (collectively

23  "Arapaho Defendants"), move this Court dismiss Plaintiff's, Christine M. Searle ("Plaintiff"

24  or "Searle"), Complaint.

25          As explained in the following Memorandum of Points and Authorities, judgment of

26  dismissal is warranted for several independently sufficient grounds including: the effect of

27  *res judicata* and the bar of the applicable statutes of limitation, among other grounds.

28  Searle's Complaint cannot ignore the unavoidable fact that the constitutional defenses raised

here come too late. As argued in greater detail below, Searle cannot come into this Court with new theories for why the judgment entered against her in the prior State cases should be set aside. Searle's claims are barred by *res judicata.* In addition, neither Arapaho nor American Pride are state actors and cannot commit constitutional violations; but if the Arapaho Defendants could be considered State Actors, Searle failed to comply with the notice of claims statute applicable to actions against the state by failing to provide any of the Defendants a notice of claim six months prior to filing her lawsuit as required by A.R.S. § 12-821.01(A). Moreover, Searle's claims in this Court are too late in the literal sense as they all occurred more than two years before this action was filed and are barred by the statute of limitations under A.R.S. § 12-542.

Searle also failed to join the one party that could commit a constitutional violation as an indispensable party, the State.  Because the State is not named and is an indispensable party to her claims, this case must be dismissed pursuant to Rule 12(b)(7).[1]

Arapaho Defendants attempted in good faith to resolve this dispute before filing this Motion. However, Plaintiff refused to dismiss the case. Accordingly, Arapaho Defendants request that this Court award them attorney's fees pursuant to Rule 11 and/or A.R.S. § 12-349.   This Motion is supported by the pleadings on record before this Court and the following memorandum of law set forth below.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF FACTS RELEVANT TO THIS MOTION

The facts giving rise to Plaintiff's claims as stated in her Complaint began with Arapaho's filing of a tax lien foreclosure lawsuit 2021 in the Maricopa County Superior Court, Case No. CV2021-012279 (the "Foreclosure Action"). (Complaint, ¶5, p.3.) The tax lien was sold to Arapaho by the Maricopa County Treasurer (the "Treasurer"). (Complaint,

---

[1] For some unknown reason to Arapaho Defendants, Plaintiff actually entered into a stipulation and order to dismiss the State from the federal case with prejudice, United States District Court, Case No. 2:24-CV-00025-jjt.

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

22071-230:PD 2840220v3

SUP000074

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1   p.3, ¶4.) Searle was no stranger to both Arapaho or the tax lien foreclosure process; she had

2   already been sued in related cases on multiple occasions including another action by

3   Arapaho filed in 2020.[2]

4        Arapaho's Foreclosure Action sought to foreclose its tax lien pursuant to A.R.S. § 42-

5   18201 *et. seq*. (Complaint at ¶2-4.) The property at issue was then owned by Searle and

6   located at 513 S. Ash St., Gilbert, AZ 85233 (the "Property"). (Foreclosure Action

7   Complaint attached hereto as **Exhibit 1** at p11, ¶11, hereafter the "Foreclosure Complaint"

8   of which this Court can take judicial notice[3]); Complaint at ¶3.) Searle failed to pay property

9   taxes to the Treasurer for several years including 2015, the tax year at issue in the

10  Foreclosure Action. (Complaint, p.11, ¶47.)

11

12

---

13  [2] Before Arapaho filed its lawsuit, three other tax lien holders filed three separate tax lien
    cases, but Searle redeemed those tax liens. *See* Maricopa County Case Numbers: CV2010-
14  098238 CV2015-003075 and CV2019-004047.  Arapaho also filed its first Complaint
    against Searle on March 11, 2021 to foreclose the 2016 tax lien in Maricopa County Case
15  No. CV2021-003965 before foreclosing the 2015 lien in the Foreclosure Action. Searle
16  redeemed the 2016 taxes in Case No. CV2021-003965, and Arapaho obtained a Judgment
    against Appellant for attorney's fees and costs pursuant to A.R.S. § 42-18206 in the amount
17  of $6,064.36, which Searle never paid. Searle also owed an additional approximately
    $12,000 in property taxes on the 2017-2020 tax liens which were not paid nor foreclosed due
18  to Maricopa County's bifurcated Certificate of Purchase system.

19

20  [3] Defendants request this Court take judicial notice of the following: (1) The form of the
    recorded Judgment in the Foreclosure Action and its terms; (2) the recorded Lis Pendens
21  from the Foreclosure Action; (3) the undisputed facts from the Foreclosure Action including
    the date and method of service of the Complaint, and the mailing of the application for entry
22  of default;  (4) the orders and opinions issued by the three courts which addressed the issues
    and claims in the Foreclosure Action; and (5) the order of dismissal from the federal case
23  commenced after conclusion of the Foreclosure Action, the appeal a denial of a motion to
    vacate the judgment in that action and denial of a petition for review after that denial was
24  affirmed.  These events are matters of public record, and this Court can take judicial notice
25  of them in connection with a motion to dismiss under Rule 12(b)(6) as they are in its own
    files or the files of other courts and made part of the record in this case and do not transform
26  this motion into one for summary judgment. this  . *Visco v. Universal Refuse Removal Co.*,
27  11 Ariz. App. 73, 74, 462 P.2d 90, 91 (1969)(ruling that "it is proper for a court to take
    judicial notice of the record in another action tried in that same court.").

28

SUP000075

After Arapaho filed the Complaint in the Foreclosure Action, Arapaho recorded a Lis Pendens with the Maricopa County recorder advising the public that the Foreclosure Action would affect the title to the Property.

On August 18, 2021, Searle was personally served with the Foreclosure Action Complaint as well as a copy of the recorded Lis Pendens. *See Arapaho LLC v. Searle*, No. 1 CA-CV 22-0478, 2023 WL 1830382, *1, ¶7 (Ariz. Ct. App. Feb. 9, 2023). When Searle failed to answer the Foreclosure Action Complaint Arapaho moved for entry of default under Arizona Rule of Procedure 55(a). *See Searle*, 2023 WL 1830382 at *1, ¶8. But Searle did not appear, and the default became automatic. *See* Ariz. R. Civ. P. 55(a); *see also Searle*, 2023 WL 1830382 at *1, ¶8. Defendant Arapaho then moved for a default hearing and judgment against Searle. *See Searle*, *supra*, 2023 WL 1830382 at *1, ¶8. After a hearing before the Maricopa County Superior Court, the Court entered a judgment against Searle. *Id.* There was a scrivener's error in that initial judgment, so Arapaho moved for entry of an amended judgment. Soon after that a final amended judgment entered by the Superior Court on December 14, 2021 corrected. That final amended judgment is referred to in this Motion as simply the "Judgment".[4]

The Judgment, after affirming the jurisdictional and factual bases supporting entry its entry, provided the following:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** foreclosing the right of Defendants to redeem the tax liens pursuant to A.R.S. § 42-18204(A)(1).

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that pursuant to A.R.S. § 42-18204(A)(2), the County Treasurer of Maricopa County shall, upon payment of the required fee pursuant to A.R.S. § 42-18205, and upon presentation of a certified copy of this judgment, expeditiously execute and deliver to Plaintiff a deed conveying to Plaintiff the property known as Assessor's Parcel No. **302-35-259**, with an purported address of 513 S. Ash St., Gilbert, AZ 85233 (hereinafter the "Property"). The Property is also identified with the legal description as follows:

…

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendants, Defendants' heirs, agents, and assigns, are hereby foreclosed and have no further legal

---

[4] A copy of the recorded Judgment is attached to this Motion as **Exhibit "2"**.

4

SUP000076

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    or equitable right, title, or interest in the Property subject to the right of appeal and stay
2    of execution as in other civil actions.

(*See* **Ex. "2"** attached hereto.) The next day, December 15, 2021, Arapaho recorded a copy
3    of the Judgment with the Maricopa County Recorder. (*See* **Ex. "2"** attached hereto.)
4    Pursuant to the Judgment, the Treasurer executed a deed (the "Treasurer's Deed")
5    confirming the conveyance of Searle's interest in the Property to Arapaho which was
6    recorded. (Complaint, p.11, ¶48.) Arapaho assigned title to the Property to Defendant
7    American Pride after delivery of the Treasurer's Deed. (Complaint, p.3, ¶6.)

8        Three and a half months after the Court entered the Amended Judgment, Searle,
9    though her attorneys, appeared in the Foreclosure Action and moved to set the Judgment
10   aside alleging she lacked proper notice of the Foreclosure Action Complaint despite personal
11   service on both her and her adult son who lived at the Property at that time. *See Searle*, 2023
12   WL 1830382 at *2, ¶9. The Superior Court, after full briefing and argument, denied Searle's
13   motion holding that Searle was given all the notice required by Arizona's procedural rules,
14   which provide an additional notice not included in the analogous federal rule 55, and that she
15   had failed to offer any other "extraordinary circumstances warranting Rule 60 relief". *See*
16   *Searle*, 2023 WL 1830382 at *2, ¶10.[5]

17       Searle timely appealed that denial to the Arizona Court of Appeals, Case No. 1 CA-
18   CV 22-0478. Again, after full briefing and argument, the Court of Appeals affirmed the
19   denial by the trial court. See **Exhibit "4"** attached hereto. (Complaint, p.11, ¶53.) Searle
20   filed a petition for review by the Arizona Supreme Court, which it denied on October 17,
21   2023. (Complaint, p.13, ¶54.). See **Exhibit "5"** attached hereto.

22       On January 5, 2024, Searle commenced her nearly identical case to this matter in
23   federal court. See Federal Amended Complaint **Exhibit "6"** attached hereto. Just like the
24   present case, the Federal Amended Complaint alleged the Judgment violated the Takings and
25   Excessive Fines Clauses of the U.S. and Arizona Constitutions. In support of these
26
27
28   ────────────
     [5] A copy of the Superior Court's ruling in the Foreclosure Action is attached here as
     **Exhibit "3"**.

5

22071-230:PD 2840220v3

1    allegations, Searle pointed to U.S. Supreme Court case *Tyler v. Hennepin County*, 598 U.S.

2    631 (2023), issued during the litigation in the Foreclosure Action.  The District Court

3    dismissed the Federal Amended Complaint and that dismissal is the subject of an appeal to

4    the United States Court of Appeals for the Ninth Circuit that is still pending.

5        In federal court and now before this Court, Arapaho Defendants dispute *Tyler* applies

6    to the former version of Arizona's tax lien scheme and object to Searle's allegations that they

7    are in any way "state actors" and therefore liable to Searle for alleged constitutional

8    violations. How American Pride, which even Searle alleges is merely an assignee, can be

9    considered a state actor is not explained at all.

10        But before this Court can even address Searle's constitutional claims, it must decide

11    whether to dismiss those claims on the meritorious grounds raised in this Motion.  As

12    demonstrated below dismissal is warranted, and this Court need not reach the constitutional

13    issues that may be raised by statutes that are no longer in effect.

14    **II.    LEGAL ARGUMENT**

15        Arapaho Defendants move to dismiss Searle's claims for failure to state a claim under

16    Rule 12(b)(6).

17        **A.    Arizona's *Res Judicata* Jurisprudence Precludes Searle's Claims in this
         Action Because Each Could Have Been Raised in the Foreclosure Action
18         Before and After Entry of the Judgment.**

19

20        Whether Searle's claims are barred as *res judicata* is appropriate for a determination

21    on a motion to dismiss. *Peterson v. Newton*, 232 Ariz. 593, 595, 307 P.3d 1020, 1022 (Ct.

22    App. 2013); *Hoff v. City of Mesa*, 86 Ariz. 259, 344 P.2d 1013 (1959)

23        In Arizona, the elements necessary to invoke the preclusive effect of *res judicata* are as

24    follows:

25        Briefly stated, the doctrine of res judicata is that an existing final judgment rendered
         upon the merits, without fraud or collusion, by a court of competent jurisdiction, is
26        conclusive as to every point decided therein and also as to every point raised by the
         record which could have been decided, with respect to the parties and their privies, in
27        all other actions in the same or any other judicial tribunal of concurrent jurisdiction.
         {Emphasis supplied]

28

6

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

SUP000078

1    *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.*, 26 Ariz. App. 204, 206, 547 P.2d 56, 58

2    (1976) (quoting *Hoff v. City of Mesa*, 86 Ariz. 259, 261, 344 P.2d 1013 at 1014 (1959)). In

3    Arizona, "[a] default judgment has the same res judicata effect as a judgment on the merits

4    where the issues were litigated." *Technical Air Products, Inc. v. Sheridan-Gray, Inc.*, 103

5    Ariz. 450, 452, 445 P.2d 426, 428 (1968)(affirming dismissal of a complaint because of the

6    impact of *res judicata* arising from a default judgment); *see also Miner Contracting, Inc. v.*

7    *Toho-Tolani County Imp. Distr.*, 233 Ariz. 249 (Ct. App. 2013)(administrative agency

8    decision given *res judicata* effect and barred subsequent lawsuit).

9         The well-established principles of *res judicata* preclude Searle from directly or

10   collaterally attacking the validity of the Judgment. All elements for *res judicata* are met here:

11   the parties are the same; there is a final default judgment that has the same preclusive effect

12   as a judgment on the merits; and the Foreclosure Action Court had all the jurisdiction it

13   needed to enter the Judgment.  Searle doubtless ***could have*** raised any of challenges she

14   brings here in that Foreclosure Action. Nothing in Arizona law prevents its state courts from

15   hearing claims that application of a statute is unconstitutional. But in Arizona, *res judicata*

16   applies even though Searle did not raise those challenges in the prior case. That Searle failed

17   to appear in the Foreclosure Action prior to entry of the Judgment does not affect that

18   Judgment's prelusive effect. *See Technical Air Products*, 103 Ariz. at 452, 445 P.2d at 428.

19   Judgments entered by default have preclusive effect on the parties to the action. *See Miner*

20   *Contracting, Inc. v. Toho-Tolani County Imp. Distr.*, 233 Ariz. 249 (Ct. App. 2013) ("A

21   default judgment has the same res judicata effect as a judgment on the merits where the

22   issues were litigated"); Moreover, even after she appeared, nothing prevented Searle from

23   seeking relief from the Judgment on the grounds that the Judgment was entered in violation

24   of the U.S or Arizona Constitutions. *See, e.g.*, Ariz. R. Civ. Pro. 60(b)(6) (allowing parties to

25   seek relief from a final judgment for "any other reason justifying relief."). Accordingly, the

26   Foreclosure Judgment bars all of Searle's claims.

27        **B.**    **The Complaint is an Improper Collateral Attack on the Default Judgment**

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona, 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

22071-230:PD 2840220v3

SUP000079

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    Searle cannot seek damages and thereby upend the Default Judgment through her new

2    lawsuit.  "The law of Arizona is, and for long has been, that a judgment may not be attacked

3    collaterally even for fraud unless it is void upon its face." *School District No. 1 of Navajo*

4    *County v. Snowflake Union High School District*, 100 Ariz. 389, 391 (1966)(*res judicata*

5    effect given to judgment in a certiorari action that was not void on its face even though it

6    might have been erroneous). Judgments are not "void on their face" if the issuing Court had

7    "(a) jurisdiction of the subject-matter of the case, (b) jurisdiction of the persons involved in

8    the litigation, and (c) jurisdiction to render the particular judgment given. If these three

9    matters are present, even though the judgment is erroneous or wrong so that it could be

10   reversed on appeal or set aside on direct attack, it is not void as against collateral attack." *Id*.

11   (citations and internal quotation marks omitted).

12   Searle claims in this new lawsuit which seeks money damages, that the Default

13   Judgment was entered in error on the grounds that it violated the U.S. and Arizona

14   constitutions.  As noted by the Supreme Court in *School District No. 1 of Navajo County v.*

15   *Snowflake Union High School District*, errors in a judgment must be "reversed on appeal or

16   set aside on direct attack".  *Id*.  Searle filed a motion to set aside and appealed the Default

17   Judgment in a direct attack but chose not to raise the constitutional challenges that she raises

18   now. Searle cannot challenge the Foreclosure Judgment now in a separate lawsuit. *See*

19   *Walker v. Davies*, 113 Ariz. 233 (1976) (holding no denial of due process in execution sale

20   where judgment debtors were properly served but failed to answer and did not enter any

21   objection to judgment by default).

22   **C.    Arapaho and AMPP Are not State Actors and Could not Have Violated the**
        **Constitution.**

23

24   In order to have a constitutional claim the party must be part of the State. One cannot

25   bring constitutional claims against private parties.  As neither Arapaho nor AMPP are part of

     the State, all constitutional claims against them must be dismissed for failure to state a claim.

26

27   For a private actor to be considered an agent of the state, there must be "significant

28   state involvement[.]" *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972).  A statute or

8

SUP000080

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona  85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    regulation that authorized challenged conduct is not enough to establish state action. *See*

2    *Culbertson v. Leland*, 528 F.2d 426, 431 (1975); s*ee also Niedner v. Salt River Project Agr.*

3    *Imp. and Power Dist.*, 121 Ariz. 331, 332 (1979) (holding that even though SRP was

4    organized as an agricultural improvement district and was "designated as a political

5    subdivision of the State", it was not a state actor for constitutional purposes since it was

6    owned and operated by private individuals and not the government); *Kenly v. Miracle*

7    *Properties*, 412 F.Supp. 1072 (1976) (trustees under Arizona's deed of trust regime not state

8    actors even though they have the power to take and sell real property by statutory grant).

9       In this case, the Arizona government's role ends after it assesses the taxes and sells a

10   lien to a private party. From that point forward, there is no legal difference between an action

11   to foreclose a tax lien and an action to foreclose any other lien like a mortgage. The

12   interested parties are all given notice and may redeem. If the property owner does not appear

13   or appears and does not redeem the lien, that lien is foreclosed and the property changes

14   hands—just as it would in a mortgage foreclosure action, or foreclosure of a mechanic's lien.

15   Either way, the state or its counties has no involvement other than writing the law, levying

16   the taxes and conducting the auction of tax liens and issue a Treasurer's Deed.  But that level

17   of state action is never sufficient to transmute a private actor into a state actor for purposes of

18   the Fifth or Fourteenth Amendment. *See Kenly v. Miracle Properties*, 412 F.Supp. 1072.

19      Further, the most critical aspect of a Takings Clause violation is a *state taking*.  That

20   was the constitutional defect in *Tyler v. Hennepin County,* 598 U.S. 631 (2023)—Minnesota

21   sold the real property at issue and kept all the proceeds for itself. But in Arizona, the state

22   and counties do not sell real property and do not retain any excess proceeds. The central state

23   action—the actual taking—is not present here.  Accordingly, there is no state action by

24   Arapaho and AMPP and thus no violation of the Takings Clause. *See Niedner*, 121 Ariz. at

25   332.

26      Accordingly, Searle cannot bring a direct claim for relief against Arapaho for violating

27   its rights under the U.S. Constitution. *See Azul-Pacifico*, 973 F.2d at 705. Accordingly,

28

9

SUP000081

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

Searle's First, Second and Sixth Claims for Relief must be dismissed. *Ariz. R. Civ. P.* 12(b)(6).

### D. Because Defendants are not State Actors and Searle's Claims for Violation of Arizona's Constitution are Barred.

Searle's Fifth, Sixth, Seventh and Eighth Claims for Relief that allege Arapaho violated the Arizona Constitution must also be dismissed. Like the claims under the U.S. Constitution they only apply to actions by the State of Arizona, its political subdivisions and municipalities or their agents. The Arapaho Defendants cannot be considered state actors or state agents. Though Searle alleges Arapaho is a state actor. (*See* Complaint at ¶¶31, 65, 82, 84, 124, 129, 144.), that is a legal conclusion, which unlike a factual allegation, this Court need not accept as true.

First, Searle's takings clause violations arise under Article 2, § 17 of the Arizona Constitution. That section, like its federal analogy, requires some form of governmental action that results in the deprivation of property or just compensation. *See Ariz. Elec. Power Coop., Inc. v. DLJ 2007 LLC*, 246 Ariz. 534, ¶15 (Ariz. Ct. App. 2019). Absent allegations that Arapaho is acting as some form of state or municipal agent, Arapaho cannot have violated Article 2, § 17 of the Arizona Constitution.

Second, Searle's claim that the Judgment represents an excessive fine in violation of Article 2, § 15 of the Arizona Constitution only applies to governmental action. This section provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." As its text makes clear, this section, like that in the Eighth Amendment of the U.S. Constitution, protects private citizens from their state or local governments. *See State v. Russo*, 219 Ariz. 223, 196 P.3d 826 (Ct. App. 2008).

Finally, Searle's claim that the Judgment violates Article 9, § 7 (the "Gift Clause") lies only against the state, its political subdivisions, municipalities and their respective agents. That section prohibits the state, nor any county, city, town, municipality, or other subdivision of the state" from making certain gifts. *See e.g., Schires v. Carlat*, 250 Ariz. 371, 374–75,

22071-230:PD 2840220v3

SUP000082

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

480 P.3d 639, 642–43 (Ariz. 2021) (noting the Gift Clause as intended to prevent "depletion of the public treasury or inflation of public debt by a public entity engaging in non-public enterprises.") Thus, Searle's claims that Arapaho violated her rights under the Arizona Constitution are only viable if Arapaho is deemed to be the state, a political subdivision, municipality or some agent thereof and it cannot be so deemed.

**E.    Searle Failed To Serve A Notice Of Claim Upon Any Of The Defendants.**

Alternatively, if Arapaho and/or AMPP are considered state actors, Searle's claims against them must be dismissed as a matter of law as she never served Arapaho, AMPP, the State nor the County with a notice of claim six months prior to filing her lawsuit as required by A.R.S. § 12-821.01(A).[6] The requirement that a claim be submitted before instituting suit was held to be analogous to a statute of limitations, and may be raised by a motion to dismiss for failure to state a claim. *Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178 (1990); *Howland v. State*, 169 Ariz. 293, 818 P.2d 1169 (Ct. App. Div. 1 1991). *See, e.g., Pinal County v. Fuller*, 245 Ariz. 337, 429 P.3d 570 (Ct. App. Div. 2 2018) (remanding with directions to dismiss claims for breach of contract and for unjust enrichment based on failure to strictly comply with claims statute).

**F.    Searle's Claims for Relief Under Federal Law Are All Barred By the Applicable Statute of Limitations.**

Even if Searle could demonstrate the Arapaho Defendants were State Actors and was able to get beyond the lack of notice of claim under A.R.S. § 12-821.01(A), Searle's causes of action brought under federal law, including her claim for declaratory relief, are all barred by the statute of limitations.

---

[6] Thus, and in furtherance of that purpose, before a complaint for damages is filed against a public entity, A.R.S. § 12-821.01(A) requires the claimant file a notice of claim "with the person or persons authorized to accept service for the public entity … as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." *See* A.R.S. § 12-821.01(A). *See also Deer Valley Unified School Dist. No. 97 v. Houser*, 214 Ariz. 293, 152 P.3d 490 (2007).

11

22071-230:PD 2840220v3

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    The applicable time period for all of Searle's federal claims is two years from the date

2    of accrual pursuant to under A.R.S. § 12-542. (*See, infra* Section i.) Searle's claims accrued

3    at three possible points in the state-court litigation: (1) when the complaint was served;

4    (2) when she could bring a preliminary injunction to prevent any action that could be

5    challenged under the state or federal Constitutions; or (3) when the judgment was entered or

6    recorded. No matter which of these is when her claims accrued, they are all time-barred.

7    In this case, Searle's federal claims accrued August 18, 2021, the date she was

8    personally served with the Complaint in the Foreclosure Action or at the very latest on

9    December 14, 2021 when the Judgment against her was recorded. Searle did not commence

10   this action until August 19, 2024, (three years and a day from the date she was served in the

11   Foreclosure Action and two years and eight months after the Foreclosure Judgment). Thus,

12   her federal claims are untimely.[7]  Dismissal under Rule 12(b)(6) is proper because the

13   running of the statute is apparent on the face of the Complaint. "The affirmative defense of

14   statute of limitations is properly raised in a motion to dismiss where it appears from the face

15   of the complaint that the claim is barred." *Dicenso v. Bryant Air Conditioning Co.,* 131 Ariz.

16   605, 606, 643 P.2d 701, 703 (1982).

17        **i.    The Applicable Statute of Limitations for Searle's Federal Claims is**
            **Two Years from the Date of Accrual.**
18

19   Searle alleges that the Foreclosure Judgment against her violates the Fifth, Fourteenth

20   and Eighth Amendments to the U.S. Constitution. Searle, in addition to bringing claims

21   "directly", also couches those claims in an action under 42 U.S.C. § 1983.

22   Regardless of her framing in the Complaint, the only action available to Searle to

23   vindicate her constitutional rights is through a claim bought pursuant to 42 U.S.C. § 1983.

24   *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (reh'g en

25   banc) ("Plaintiff has no cause of action directly under the United States Constitution. We

26

27

28   _____

[7] Even if the claim accrues from the recording of the Treasurer's Deed as Searle contends that is still more than two years from when the Complaint in this action was filed.

12

SUP000084

1    have previously held that a litigant complaining of a violation of a constitutional right must

2    utilize 42 U.S.C. § 1983.") (citations omitted).

3        Section 1983 does not come with its own statute of limitations and instead borrows the

4    applicable limitation period from the forum state's personal injury statutes. *See Wilson v.*

5    *Garcia*, 471 U.S. 261, 279-80 (1985). In this case, the limitation period for Searle's § 1983

6    claims is two years under A.R.S. § 12-542. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d

7    969, 974 (9th Cir. 2004) ("The applicable statute of limitations for personal injury claims in

8    Arizona is two years."); *Madden-Tyler v. Maricopa Cnty.*, 189 Ariz. 462, 466, 943 P.2d 822,

9    826 (Ct. App. 1997)(holding that "the two-year limitations period of A.R.S. § 12–542(1)

10    applies to appellant's § 1983 claim."). Because Searle filed her Complaint well beyond the

11    two year statute of limitations, her claims must be dismissed as matter of law.

> **ii.    Searle's Action Accrued when she was able to bring a claim for relief including preliminary injunctive relief.**

14        A cause of action brought under § 1983 accrues when a plaintiff knows or has reason

15    to know of the injury which is the basis of the action. *TwoRivers v. Lewis*, 174 F.3d 987, 991

16    (9th Cir. 1999) (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)); *see also Action*

17    *Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026–27 (9th Cir.

18    2007)).

19        With respect to a claim that Searle's property was taken in violation of the U.S.

20    Constitution, her claim accrued when she could bring an action challenging the taking or

21    seeking relief which in this case would have been as early as when her Answer in the

22    Foreclosure Action was due. *See Honchariw v. County of Stanislaus*, 530 F.Supp.3d 939

23    (E.D. Cal. 2021) (citing *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th

24    Cir. 2008)). Although a takings claim generally only accrues when there is a final judgment

25    denying the owner compensation, "[a]n exception exists where the state does not have a

26    "reasonable, certain, and adequate provision for obtaining compensation" at the time of the

27    taking, in which case the facial takings claim is instantly ripe." *San Remo Hotel v. City and*

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona  85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

22071-230:PD 2840220v3

SUP000085

*County of San Francisco*, 145 F.3d 1095, 1101-02 (9th Cir. 1998) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985)).  That is the very claim – albeit unjustified – that Searle is alleging here, that Arizona's formerly effective tax-lien statutes fail to provide her with a means to obtain her equity above the amount owed on account of her failure to pay taxes that were unquestionably due.

Searle's excessive fines claim also accrued for statute of limitations purposes at the time when she could bring a challenge or defense to the Foreclosure Action. *See United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994) ("In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items. This interest need not be an ownership interest; it can be any type of interest, including a possessory interest.").

Searle's claims for declaratory relief are analyzed no differently than her § 1983 claims for the purposes of statute of limitations and accrual. *See Levald,* 998 F.2d 680, 688-89 (9th Cir. 1993)(barring a request for declaratory judgment under the same statute of limitations analysis applied to Searle's § 1983 claims).

Further, it is well established that § 1983 empowers courts to issue injunctive relief in order to prevent a deprivation of constitutional rights. *See Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022); *see also Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (citations omitted). Thus, Searle's claims accrued for purposes of the statute of limitations when she could have requested an injunction to prevent the constitutional harm she alleges here.

> **iii.    Alternatively, Searle's Federal Claims Accrued When Searle was Served with the Complaint in the Foreclosure Action or when the Judgment was Recorded; Either Way Her Claims Are Barred.**

All of Searle's § 1983 claims accrued no later than the day Searle was served with the Complaint in the Foreclosure Action. Searle's takings claims were "instantly ripe" upon service of that Complaint because, as Searle alleges, there was no remedy for her to apply for

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona  85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

14

SUP000086

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona, 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1  just compensation under the applicable Arizona statutes. Searle did not need to wait for a

2  final judgment to seek relief under § 1983. *See San Remo Hotel*, 145 F.3d at 1101-02.

3       Searle's claim that the Judgment represents an excessive fine barred by the Eighth

4  Amendment also accrued when the Foreclosure Complaint was served. It put her on notice

5  that her interest in the Property was in jeopardy. The recording of a *lis pendens* served with

6  the Foreclosure Complaint informed Searle that the Complaint would affect title to the

7  Property imperiling her interest in it. Searle had no requirement that she wait until ***after*** the

8  harm occurred to seek injunctive or declaratory relief.

9       Further, when Searle was served, she could have immediately sought relief in either

10  state or federal court seeking to enjoin the state proceedings pursuant to § 1983 in order to

11  prevent the deprivation of her constitutional rights that were at issue in that Foreclosure

12  Action. *See Riley's American Heritage Farms*, 32 F.4th at 731. At the very least she could

13  have raised these defenses in her answer to the Complaint.

14       Accordingly, Searle's § 1983 claims, and by extension her related claims for

15  declaratory relief, all began to accrue on August 18, 2021 when she was personally served

16  with the Complaint, Summons and copy of the recorded *lis pendens*. Even if that date was

17  not close enough to an imminent final judgment to allow Searle to seek relief under § 1983,

18  Searle was given notice on September 8, 2021 that an entry for default had been applied for

19  and that within 10 days the default would be final unless she appeared and defended. Thus,

20  Searle had ***actual*** knowledge of the looming Judgment of which she now complains.

21       Finally, even if Searle's § 1983 claims did not accrue until there was a final judgment,

22  the two-year statute of limitations still bars her claims today in this Court. The Judgment

23  itself was entered on December 14, 2021. It was then recorded on December 15, 2021 with

24  the Maricopa County Recorder.  Even if Searle lacked actual knowledge of the recorded

25  Judgment, which is doubtful given she quickly appeared and moved to set that Judgment

26  aside, Arizona law is clear that Searle had ***constructive*** knowledge of the Judgment. A.R.S. §

27  33-416 provides that "[t]he record of a grant, deed or instrument in writing authorized or

28

22071-230:PD 2840220v3

SUP000087

1   required to be recorded, which has been duly acknowledged and recorded in the proper

2   county, shall be notice to all persons of the existence of such grant, deed or instrument[.]"

3   Searle's federal causes of action are all time barred because this action was filed on

4   August 19, 2024.  Even applying the latest time when Searle had knowledge, December 15,

5   2021, her Complaint was still untimely as it was filed more than two years after Searle's

6   claims accrued.

7   **G.    Searle's Arizona's Constitution Claims are Also Time Barred.**

8
9   Searle's Fifth, Sixth, Seventh and Eighth Claims for Relief allege Arapaho violated the

10  Arizona Constitution.  Like Searle's analogous federal claims, those Arizona constitutional

11  claims are also time-barred.

12  The time to bring a claim against Arizona, or its employees or agents, is one year after

13  the claim accrues. *See* A.R.S. § 12-821 ("All actions against any public entity or public

14  employee shall be brought within one year after the cause of action accrues and not

15  afterward."); *see also Flood Control Dist. Maricopa Cty. v. Gaines*, 202 Ariz. 248 (Ariz. Ct.

16  App. 2002) (affirming Arizona's statute limiting claims for violation of state rights against

17  the state or state employees is constitutional in that it regulated rather than abrogated the

18  time to bring a cause for relief).

19  The notices Searle received that caused her § 1983 claims to accrue described above

20  all apply to Searle's claims for an injury under Arizona's Constitution. Because the statute of

21  limitations to seek relief from the State or its agents is one year from date of accrual, Searle's

22  state constitutional claims are similarly time barred. Indeed, Searle has been actively

23  litigating the Foreclosure Action since at least March 28, 2022 when she moved to set aside

24  the Judgment. *See Searle*, 2023 WL 1830382 at *2, ¶9. Either way, Searle's claims that

25  Arapaho violated the Arizona Constitution were filed well after the one-year period to seek

26  relief under A.R.S. § 12-821. Accordingly, those claims must be dismissed.

27  **H.    Searle's Claim for Unjust Enrichment Should be Dismissed as Precluded, Untimely, and Simply Inapplicable**

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

16

SUP000088

1    Unjust Enrichment under Arizona law has no place in this Complaint.  The claim the

2    Judgment is unjust because it awards too much to Arapaho is precluded by application of

3    Arizona's *res judicata* case law.

4    Further, even if she had served the notice of claim, which she did not, the one-year

5    statute of limitations under Ariz. Rev. Stat. Ann. § 12-821 bars that claim on the grounds that

6    Searle is, at least according to her Complaint, seeking relief from Arapaho as an agent of the

7    state or similar public entity.

8    Alternatively, if Searle now claims that Arapaho is not an agent of the State, the three

9    year statute of limitations under A.R.S. § 12-543(1) applies. *Costanzo v. Stewart*, 9 Ariz.

10   App. 430, 433, 453 P.2d 526, 529 (1969)(holding that the three year statute of limitations

11   applies to unjust enrichment claims). Accordingly, Searle's unjust enrichment claims, all

12   began to accrue on August 18, 2021 when she was personally served with the Complaint,

13   Summons and copy of the recorded *lis pendens*.  Because she failed to file the present action

14   until August 19, 2024, the action is barred as she filed the Compliant one day late.

15   To the extent Searle alleges Arapaho was not acting as a state agent, then Searle has no

16   reason for this Court to hear her state law claim almost exclusively reserved for disputes

17   between parties in quasi-contractual relationship. Moreover, if Arapaho is not a state actor,

18   there is no unjust enrichment claim at all. Arapaho was simply acting according to century-

19   old statutes in the Foreclosure Action. Searle makes no allegation that Arapaho violated

20   those statutes.  There can be no unjust enrichment for following laws which are presumed to

21   be valid and constitutional at that time that Arapaho filed its Foreclosure Action. *PLM Tax*

22   *Certificate Program 1991-92, L.P. v. Schweikert*, 216 Ariz. 47, 50, 162 P.3d 1267, 1270 (Ct.

23   App. 2007)(precluding a tax lien holder from brining an unjust enrichment claim when the

24   tax lien statute provided for a full remedy).

25   **I.    Equitable tolling should not be allowed.**

26

27   Searle claims that the statute of limitations should be equitably tolled but no

28   justification exists for equitably tolling the limitation periods.

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona, 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

17

HYMSON GOLDSTEIN PANTILIAT & LOBR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona, 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

In Arizona, equitable tolling applies when the plaintiff is excusably ignorant of the limitations period and the defendant would not be prejudiced by the late filing. *Kyles v. Contractors/Engineers Supply, Inc.,* 190 Ariz. 403, 949 P.2d 63 (Ct. App. Div. 2 1997)(allowing equitable tolling in a discrimination case due to a mistake made by the EEOC on the deadline in the notice of claim letter sent to the plaintiff). Here, Plaintiff made no allegations or showing in the Complaint that she was excusably ignorant of the limitation periods that applies to her claims or their existence. In addition, she failed to allege that Defendants would not be prejudiced by the late filing of her Complaint.  In fact, just the opposite is demonstrated in her Complaint.  Defendants would be extremely prejudiced if Plaintiff were allowed a third bite at the apple with this new lawsuit. Defendants would incur additional attorney's fees unnecessarily and potentially would be required to pay damages that they would not be required to pay if Plaintiff were allowed to proceed and ultimately prevailed in this new lawsuit.

## J.    Searle Failed to Name an Indispensable party.

Rule 12(b)(7), *Ariz.R.Civ.P.*, mandates dismissal of this action where an indispensable party is not joined in the action.

Rule 19(a), Rules of Civil Procedure, deals with necessary and indispensable parties. Indispensable parties have been defined as those without whom the action cannot proceed, and necessary parties are those who have an interest in the controversy but whose interests are separable and will not be directly affected by a decree rendered in their absence, which does full justice between the parties before the court. Barron and Holtzoff, Federal Practice and Procedure, Rules Ed. Vol. 2, section 512, p. 58.

The Court in *Town of Gila Bend v. Walled Lake Door Co*., 107 Ariz. 545, 550, 490 P.2d 551, 556 (1971) defines "indispensable party" as follows:

> "An indispensable party. . . is one who has such an interest in the subject matter that a final decree cannot be made without either affecting his interest or leaving the controversy in such condition that a final determination may be wholly inconsistent with equity and good conscience. The test of indispensability in Arizona is whether the absent person's interest in the controversy is such that no

18

SUP000090

1    final judgment or decree could be entered, doing justice between the parties
2    actually before the court and without injuriously affecting the rights of others not
     brought into the action."

3        Under Rule 19(a), Ariz. R. Civ. P., the State of Arizona is a party indispensable and
4    necessary for a just adjudication of the merits of Plaintiff's claims.  Any constitutional
5    violations came at the hand of the State and any money allegedly owed Searle would be
6    owed by the State. Even based upon Plaintiff's own allegations in the Complaint the State is
7    an indispensable party to this litigation. Failure to name the State as a Defendant in this
8    action provides a basis upon which the Court should dismiss this action.

9    **III.    CONCLUSION**

10       Searle has already spent the last two years litigating the validity of the Judgment in
11   Arizona's State Courts. She has no right to start that litigation anew in this Court simply
12   because she came up with new defenses she could have asserted previously. Accordingly,
13   and for the reasons stated more fully above, Defendants respectfully request their Motion to
14   Dismiss be granted, that Searle be denied any right to further amend her complaint and that
15   Searle's claims against them be dismissed with prejudice.

16       RESPECTFULLY SUBMITTED this 27th  day of December, 2024.

17                          **HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**

18                          /s/John L. Lohr, Jr.
19                          John L. Lohr, Jr. (SBN 019876)
                            James-Henry R. Courteau (SBN 039173)
20                          *Attorneys for Arapaho Defendants*

21   ORIGINAL e-filed this 27th day of , 2024
22   and copies mailed the same day to:

23   Veronica Lucero
24   Davillier Law Group, LLC
     4105 N. 20th St. Ste. 110
25   Phoenix, AZ 85016
     Vlucero@davillierlawgroup.com
26   PhxAdmin@davillierlawgroup.com
     *Attorney for Christine M. Searle*

27

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona  85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

19

1  Grady J. Block
   William E. Trachman
   Mountain States Legal Foundation
2  2596 S. Lewis Way
   Lakewood, Colorado 80227
3  gblock@mslegal.org
   wtrachman@mslegal.org
4  *Attorney for Christine M. Searle*

5  /s/Rachel Hogan

6

7                        **CERTIFICATE OF GOOD FAITH**

8  Pursuant to *Ariz.R.Civ.P.* Rule 7.1(h) counsel for Defendants, ARAPAHO, LLC and

9  AMERICAN PRIDE PROPERTIES, LLC certifies that he made a good faith effort to confer

10 with  Plaintiff's counsel regarding the subject of this motion by emailing Plaintiff a request to

11 dismiss and discussed the same in a video teleconference. As of the filling of this Motion there

12 has been no satisfactory resolution.

13     RESPECTFULLY SUBMITTED this 27th day of December, 2024.

14                        **HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**

15     /s/John L. Lohr, Jr.

16     John L. Lohr, Jr. (SBN 019876)
       *Attorneys for Arapaho Defendants*

17

18

19

20

21

22

23

24

25

26

27

28

22071-230:PD 2840220v3

SUP000092

**EXHIBIT "1"**

SUP000093

Clerk of the Superior Court
*** Electronically Filed ***
M. Bouise, Deputy
8/3/2021 11:19:24 AM
Filing ID 13202844

John L. Lohr, Jr. (SBN 019876)
Jackson D. Hendrix (SBN036452)
**HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone:  480-991-9077
E-mail: jll@hgplaw.com
jhendrix@hgplaw.com
minute@hgplaw.com
*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| ARAPAHO, LLC TESCO AS CUSTODIAN, an Arizona limited liability company; | Case No. **CV2021-012279** |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | **Civil – TAX LIEN FORECLOSURE** |
| CHRISTINE M. SEARLE, a single woman; THE ESTATE OF CHRISTINE M. SEARLE, if deceased; UNKNOWN HEIRS OF THE ESTATE OF CHRISTINE M. SEARLE; LAGO ESTANCIA COMMUNITY ASSOCIATION, INC., a domestic nonprofit corporation; PLATT AND WESTBY, PC., a domestic professional corporation; MARICOPA COUNTY TREASURER, an Arizona political subdivision; JOHN DOES I through V; JANE DOES I through V; BLACK CORPORATIONS I through V; WHITE PARTNERSHIPS I through V; and GREEN LIMITED LIABILITY COMPANIES I through V; | |
| Defendants. | |

Plaintiff, ARAPAHO, LLC AS TESCO CUSTODIAN, by way of this Complaint states

and alleges as follows:

///
///
///

123080:1/22071-227:PD
1758043v1

**PARTIES AND JURISDICTION**

1.      Plaintiff, ARAPAHO, LLC TESCO AS CUSTODIAN ("ARAPAHO" or "Plaintiff"), is the owner of a real property tax lien certificate on real property located in MARICOPA County, Arizona.

2.      Defendant, CHRISTINE M. SEARLE, a single woman ("SEARLE"), owns the real property at issue in this case located in MARICOPA County, Arizona. Out of an abundance of caution, in the event SEARLE may be deceased, Plaintiff names SEARLE'S Estate and Unknown Heirs in the alternative as they may have an interest in the property at issue (collectively the Estate and Unknown Heirs shall be referred to as "The Estate of SEARLE").

3.      Defendant, LAGO ESTANCIA COMMUNITY ASSOCIATION, INC., Domestic Nonprofit Corporation, may have an interest in the Property through a judgement recorded with the Maricopa County Recorder's Office on August 13, 2019, Document No. 20190619278 and a lis pendens recorded on May 6, 2014, at Document No. 20140294019.

4.      Defendant, PLATT AND WESTBY, PC, domestic professional corporation; may have an interest in the Property through a Deed of Trust recorded with the Maricopa County Recorder's Office on June 29, 2013, Document No. 20150466087.

5.      Upon information and belief, Defendant, MARICOPA County Treasurer, is a political subdivision.

6.      JOHN DOES I through V; JANE DOES I through V; BLACK CORPORATIONS I through V; WHITE PARTNERSHIPS I through V; and GREEN LIMITED LIABILITY COMPANIES I through V, are fictitious names for any Defendants not named of whom the Plaintiff later may become aware, who may have an interest in the real property at issue.

7.      The real property that is the subject of this action is located in MARICOPA County, Arizona.  This Court has jurisdiction over this action.

///

///

123080:1/22071-227:PD
1758043v1

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077 / Facsimile: 480-443-8854

**GENERAL ALLEGATIONS**

8.    SEARLE owns the real property known as Assessor's Parcel No. **302-35-259** with an address of 513 S. Ash St., Gilbert, AZ 85233 (hereinafter the "Property").

9.    The Property is also identified with the legal description as follows:
    **Lot 41, of PARCEL 10 OF LAGO ESTANCIA, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 359 of Maps, Page 41.**

10.    DEFENDANTS (EXCLUDING THE TREASURER) failed to pay the property taxes to MARICOPA County on the Property for the 2015 tax years.

11.    ARAPAHO purchased the 2015 tax lien certificate at auction, CP number **15012304**.

12.    As of August 3, 2021, DEFENDANTS (EXCLUDING THE TREASURER) owed taxes and interest and fees under ARAPAHO's 2015 tax lien certificate in the amount of $1,607.68.

13.    More than three years have elapsed since the date of the original sale of the tax lien certificate.

14.    Pursuant to A.R.S. § 42-18201 *et al*, ARAPAHO has the right to foreclose the tax lien certificate.

15.    On June 30, 2021, ARAPAHO complied with the notice requirements and sent PROPERTY OWNERS and the MARICOPA County Treasurer the 30-day notices pursuant to A.R.S. § 42-18202 as required before the commencement of this action.  A true and correct copy of the 30-day notice is attached hereto as **Exhibit "1"**.

16.    Pursuant to A.R.S. § 42-18201 *et al*, ARAPAHO is entitled to foreclose the rights of DEFENDANTS (EXCLUDING THE TREASURER) to redeem the Property from said sale.

17.    ARAPAHO is the lawful owner of the tax lien certificates on the Property, subject only to the rights of DEFENDANTS (EXCLUDING THE TREASURER) to redeem the Property and to pay its costs and attorneys' fees pursuant to A.R.S. § 42-18206.

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077 / Facsimile: 480-443-8854

18.  ARAPAHO also purchased the 2017 and 2018 tax lien certificates at auction, CP Numbers **17013380** and **18013853** which are included for purposes of consolidation and reformation purposes only.

### FIRST CLAIM FOR RELIEF

### (LIEN FORECLOSURE PURSUANT TO A.R.S. § 42-18201 *et al,*)

19.  ARAPAHO realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

20.  A.R.S. § 42-18201 provides that "[a]t any time beginning three years after the sale of a tax lien certificate but not later than ten years after the last day of the month in which the lien was acquired pursuant to § 42-18114, if the lien is not redeemed, the purchaser or the purchaser's heirs or assigns, or the state if it is the assignee, may bring an action to foreclose the right to redeem."

21.  A.R.S § 42-18202 provides as follows:

A. At least thirty days before filing an action to foreclose the right to redeem under this article, but not more than one hundred eighty days before such an action is commenced or may be commenced under § 42-18101 the purchaser shall send notice of intent to file the foreclosure action by certified mail to:

1. The property owner of record according to the records of the county recorder in the county in which the property is located or to all of the following:

(a) The property owner according to the records of the county assessor in the county in which the property is located as determined by § 42-13051.

(b) The situs address of the property, if shown on the tax roll and if different from the owner's address under subdivision (a).

(c) The tax bill mailing address according to the records of the county treasurer in the county in which the property is located if that address is different from the addresses under subdivisions (a) and (b).

2. The treasurer of the county in which the real property is located.

B. The notice shall include:

1. The property owner's name.

2. The real property tax parcel identification number.

3. The legal description of the real property.

4. The certificate of purchase number.

5. The proposed date of filing the action.

22.  ARAPAHO complied with A.R.S § 42-18202 and sent the 30-day notices.

123080:1/22071-227:PD
1758043v1

SUP000097

23.   A.R.S. § 42-18204(A) provides that "[i]n an action to foreclose the right to redeem, if the court finds that the sale is valid and that the tax lien has not been redeemed, the court shall enter judgment:

1. Foreclosing the right of the defendant to redeem.
2. Directing the county treasurer to expeditiously execute and deliver to the party in whose favor judgment is entered, including the state, a deed conveying the property described in the certificate of purchase.

24.   Pursuant to A.R.S. § 42-18204(A), ARAPAHO is entitled to a Judgment foreclosing DEFENDANTS' (EXCLUDING THE TREASURER) rights of redemption as three years have passed since the sale of the tax lien certificates in its favor and the sales were valid.

25.   ARAPAHO is entitled to a Judgment that orders that it is the lawful owner of the Property and foreclosing DEFENDANTS' (EXCLUDING THE TREASURER) rights to redeem.

26.   ARAPAHO is entitled to a Judgment that directs the MARICOPA County Treasurer to expeditiously execute and deliver to ARAPAHO a deed conveying the Property described in the certificate of purchase.

27.   ARAPAHO is entitled to its costs and attorneys' fees as allowed by law pursuant to A.R.S. § 42-18206 if DEFENDANTS (EXCLUDING THE TREASURER) redeem after the commencement of this lawsuit.

WHEREFORE, ARAPAHO requests Judgment against DEFENDANTS (EXCLUDING THE TREASURER) as follows:

A.   For an order establishing ARAPAHO's sole and exclusive rights in the Property and forever barring and estopping DEFENDANTS (EXCLUDING THE TREASURER) or their agents, representatives, successors, and/or assigns from having or claiming any right or title to the Property adverse to ARAPAHO;

B.   For an order, directing MARICOPA County to issue a deed in ARAPAHO's favor;

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077 / Facsimile: 480-443-8854

123080:1/22071-227:PD
1758043v1

SUP000098

1    C.    For costs and attorneys' fees incurred herein as allowed by law in the event that a

2  Defendant redeems; and

3    D.    For an award of attorneys' fees in the amount of no less than $3,500.00 in the

4  event ARAPAHO obtains a Default Judgment against any person that holds a legal or equitable

5  interest that redeems. For such other and further relief as the Court deems just and proper.

6    RESPECTFULLY SUBMITTED this 3rd day of August 2021.

7

8    **HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**

9

10   _____

11   John L. Lohr, Jr. (SBN 019876)
     Jackson D. Hendrix (SBN 036452)
     *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077 / Facsimile: 480-443-8854

123080:1/22071-227:PD
1758043v1

**VERIFICATION**

1

2  STATE OF  ARIZONA__ )
                       ) ss:
3  County of MARICOPA   )

4       I, John Lohr, Jr., state as follows:

5       I am one of Plaintiff's attorneys in the above-entitled cause of action; I have read the

6  foregoing Verified Complaint and know the contents thereof, the allegations contained therein

7  are true to the best of my knowledge, except those made upon information and belief, and as

8  to those, I believe them to be true.

9

10

11

12                                By:  _____
                                       John Lohr, Jr.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

123080:1/22071-227:PD
1758043v1

*(vertical text, left margin)* HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone:  480-991-9077 / Facsimile:  480-443-8854

SUP000100

# EXHIBIT 1

SUP000101

14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260-3659
480-991-9077 Phone
480-443-8854 Fax
www.scottsdale-lawyer.com

525 Chestnut Street, Suite 203
Cedarhurst, New York 11516
516-596-8366 Phone
480-443-8854 Fax
www.scottsdale-lawyer.com



# HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC

ATTORNEYS, MEDIATORS & COUNSELORS

*Our Business is Your Peace of Mind ®*

June 30, 2021

**CERTIFIED MAIL, R.R.R. and U.S.P.S., FIRST CLASS MAIL**

Searle Christine M
513 S Ash St.,
Gilbert, AZ 85233

| | | |
|---|---|---|
| Re: | Property Owner: | **Searle Christine M** |
| | Property Address: | **513 S Ash St., Gilbert, AZ 85233** |
| | Assessor's Parcel No: | **302-35-259** |
| | Certificate of Purchase Nos.: | **15012304** |
| | Proposed date of lawsuit: | **August 2, 2021** |

Dear Searle Christine M:

My client is the holder of the 2015 tax lien related to the above-mentioned property. This notice is sent pursuant to A.R.S. § 42-18202 to notify you of my client's intent to file a foreclosure action to redeem the tax lien regarding the referenced property legally described as follows:

**Lot 41, Parcel 10, LAGO ESTANCIA, a subdivision recorded in Book 359 of Maps, page 43, records of Maricopa County, Arizona**

Please be advised my client intends to file the foreclosure action on August 2, 2021 unless all taxes, interest, and fees as follows are paid to our firm within thirty days of the date of this letter.

| Year | Tax | Interest | Redemption Fee | Total |
|---|---|---|---|---|
| 2015 | $1,353.99 | $239.18 | $10.00 | $1,603.17 |
| | | | Attorney's Fees | $75.00 |
| | | | **Total** | **$1,678.17** |

Please forward a certified check or money order in the amount of $1,678.17 made payable to Hymson Goldstein Pantiliat & Lohr, PLLC in order to avoid a foreclosure lawsuit.

***In the event that you are unable to pay the taxes and are willing to voluntarily turn over possession and title to the property, my client may be willing to compensate you for doing so. Please contact me to discuss if you would like to pursue this alternative.*** Thank you.

120360:1/22071-227:CDR
1749556v1

June 30, 2021
Page | 2

Sincerely,

John L. Lohr, Jr.

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTION
## PRACTICES ACT, 15 U.S.C. § 1601, AS AMENDED

1.    The principal amount of the debt is $1,678.17

2.    The debt set forth in Paragraph 1 herein will be assumed to be valid by the Creditor's attorneys, Hymson Goldstein Pantiliat & Lohr, PLLC unless the Debtor(s) dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this Notice.

3.    If the Debtor(s) notify Hymson Goldstein Pantiliat & Lohr, PLLC within the thirty (30) day period that the debt, or any portion thereof is disputed, Hymson Goldstein Pantiliat & Lohr, PLLC will obtain a verification of the debt and a copy of such verification will be mailed to the Debtor(s).

4.    If the Creditor named in Paragraph 2 is not the original Creditor, and if the Debtor(s) makes a written request to Hymson Goldstein Pantiliat & Lohr, PLLC within thirty (30) days from the receipt of this notice, the name and address of the original Creditor will be mailed to the Debtor(s) by Hymson Goldstein Pantiliat & Lohr, PLLC

5.    Written requests should be addressed to:

    John L. Lohr, Jr., Esq.
    Hymson Goldstein Pantiliat & Lohr, PLLC
    14500 North Northsight Boulevard, Suite 101
    Scottsdale, AZ 85260

THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

Certified Mail Return Receipt Requested:
Maricopa County Treasurer
301 West Jefferson Street, Suite 100
Phoenix, AZ 85003-2143

120360:1/22071-227:CDR
1749556v1







**CERTIFIED MAIL®**

Label 800-PB, Oct. 2015
Pitney Bowes

9489 0090 0027 6231 8389 51

02 1P    $ 005.86⁰
0000918354    JUN 30 2021
MAILED FROM ZIP CODE 85260

HGPL
DSTEIN PANTILIAT & LOH
EYS. MEDIATORS & COUNSELORS
r Business is Your Peace of Mind®

N. Northsight Blvd., Suite 101
Scottsdale, AZ 85260

Maricopa County Treasurer
301 West Jefferson Street, Suite 100
Phoenix, AZ 85003-2143







**CERTIFIED MAIL®**

Label 800-PB, Oct. 2015
Pitney Bowes

9489 0090 0027 6231 8389 44

02 1P    $ 005.86⁰
0000918354    JUN 30 2021
MAILED FROM ZIP CODE 85260

HGPL
DSTEIN PANTILIAT & LOH
EYS. MEDIATORS & COUNSELORS
r Business is Your Peace of Mind®

N. Northsight Blvd., Suite 101
Scottsdale, AZ 85260

Searle Christine M
513 S Ash St.,
Gilbert, AZ 85233

SUP000104

**EXHIBIT "2"**

SUP000105

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
STEPHEN RICHER
20211325033  12/15/2021  09:25
ELECTRONIC RECORDING

22071227B-7-1-1--
yorkm

**WHEN RECORDED, RETURN TO:**
John L. Lohr, Jr.
HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Boulevard, Suite 101
Scottsdale, Arizona 85260

---

DOCUMENT TO BE RECORDED:

**AMENDED JUDGMENT**
(Supersedes prior recorded document no. 20211221210)

SUP000106



20211325033

Granted as Submitted
***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
T. Sachse, Deputy
12/14/2021 8:00:00 AM
Filing ID 13710124

John L. Lohr, Jr. (SBN 019876)
Jackson D. Hendrix (SBN 036452)
**HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077
E-mail: jll@hgplaw.com
jhendrix@hgplaw.com
minute@hgplaw.com
*Attorneys for Plaintiff*

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077 / Facsimile: 480-443-8854

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| ARAPAHO, LLC TESCO AS CUSTODIAN, an Arizona limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINE M. SEARLE, a single woman; THE ESTATE OF CHRISTINE M. SEARLE, if deceased; UNKNOWN HEIRS OF THE ESTATE OF CHRISTINE M. SEARLE; LAGO ESTANCIA COMMUNITY ASSOCIATION, INC., a domestic nonprofit corporation; PLATT AND WESTBY, PC., a domestic professional corporation; MARICOPA COUNTY TREASURER, an Arizona political subdivision; JOHN DOES I through V; JANE DOES I through V; BLACK CORPORATIONS I through V; WHITE PARTNERSHIPS I through V; and GREEN LIMITED LIABILITY COMPANIES I through V;<br><br>Defendants. | Case No. CV2021-012279<br><br>**AMENDED JUDGMENT** |

This matter having come before the Court on Motion for Default Judgment by Plaintiff, ARAPAHO LLC TESCO AS CUSTODIAN, an Arizona limited liability company

20211325033

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    ("Plaintiff"). The Court, having reviewed the pleadings of record submitted by Plaintiff in

2    connection herewith and having held a default hearing on November 9, 2021, finds that

3    Defendants, CHRISTINE M. SEARLE, a single woman; THE ESTATE OF CHRISTINE M.

4    SEARLE, if deceased; UNKNOWN HEIRS OF THE ESTATE OF CHRISTINE M.

5    SEARLE ("Defendants"), were served with the Complaint, Summons, Certificate of

6    Compulsory Arbitration and Notice of Lis Pendens by personal service on August 18, 2021,

7    that Defendants failed to appear and answer Plaintiff's Complaint within the period

8    prescribed by law, that the default of Defendants are duly entered by this Court.  The Court

9    finding that the sale of the 2015 tax lien certificate for Assessor Parcel No. **302-35-259**, with

10   an purported address of 513 S. Ash St., Gilbert, AZ 85233 CP Number **15012304**  ("tax

11   lien") to Plaintiff was valid, that Plaintiff complied with the requirements of A.R.S. § 42-

12   18201 *et al*, that the tax lien has not been redeemed by Defendants, and that Plaintiff is

13   entitled to judgment foreclosing Defendants' right to redeem said tax liens pursuant to

14   A.R.S. § 42-18204(A) and there being no just reason for the delay in the entry of this

15   judgment, there being no further matters remain pending and that this Judgment is being

16   entered pursuant to *Ariz.R.Civ.P.* 54(c).  Based upon the foregoing findings, and good cause

17   appearing therefor;

18       **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** foreclosing the right

19   of Defendants to redeem the tax liens pursuant to A.R.S. § 42-18204(A)(1).

20       **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that pursuant to

21   A.R.S. § 42-18204(A)(2), the County Treasurer of Maricopa County shall, upon payment of

22   the required fee pursuant to A.R.S. § 42-18205, and upon presentation of a certified copy of

23   this judgment, expeditiously execute and deliver to Plaintiff a deed conveying to Plaintiff the

24   property known as Assessor's Parcel No. **302-35-259**, with an purported address of 513 S.

25   Ash St., Gilbert, AZ 85233 (hereinafter the "Property").  The Property is also identified with

26   the legal description as follows:

27

28

2

20211325033

**Lot 41, of PARCEL 10 OF LAGO ESTANCIA,** according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 359 of Maps, Page 43.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendants, Defendants' heirs, agents, and assigns, are hereby foreclosed and have no further legal or equitable right, title, or interest in the Property subject to the right of appeal and stay of execution as in other civil actions.

DATED: _____, 202__.

_____
Judge of the Maricopa County Superior Court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, Arizona 85260
Telephone: 480-991-9077 / Facsimile: 480-443-8854

3

129211:1/22071-227:PD
1821283v1

CERTIFIED COPY - 8B3-7CC4-4885-348D - 12/15/2021 08:45:02 MST - Page 3 of 5

SUP000109

20211325033

# eSignature Page 1 of 1

Filing ID: 13710124   Case Number: CV2021-012279
Original Filing ID: 13658435

---

Granted as Submitted



/S/ Gary Popham Date: 12/13/2021

Judicial Officer of Superior Court

SUP000110

20211325033

## ENDORSEMENT PAGE

CASE NUMBER: CV2021-012279

E-FILING ID #: 13710124

SIGNATURE DATE: 12/13/2021

FILED DATE: 12/14/2021 8:00:00 AM

JOHN L LOHR JR.

SUP000111

20211325033

Certification Page For: Case No. CV2021012279

Arapaho L L C Tesco Vs. Searle, Et.Al.

ORD - Order



This is an exact replica of the electronic court record of the Superior Court in Maricopa.

Attest: December 15, 2021

Certified Document Number: 8B3-7CC4-4885-348D

Total Pages: 5

This certified document can be visually verified at:
https://www.azcourtdocs.gov/arizona/publicRetrieveDocument.admin within 180 days from the above attest date.
In addition, at any time the court may be contacted directly to visually verify the document.

SUP000112

**EXHIBIT "3"**

SUP000113

Clerk of the Superior Court
*** Filed ***
06/08/2022 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2021-012279                                           06/07/2022

HONORABLE GARY L. POPHAM JR.                  CLERK OF THE COURT
                                                      A.Hoff
                                                      Deputy

ARAPAHO L L C TESCO AS CUSTODIAN          JOHN L LOHR JR.

v.

CHRISTINE M SEARLE, et al.                         CORY L BRADDOCK

                                                      COMM. POPHAM

MINUTE ENTRY

      Before the Court is Defendant Christine M. Searle's *Rule 60(b) Motion to Set Aside Judgment* which has been fully briefed and argued to this Court. For the reasons that follow, the Court will deny Defendant Searle's *Motion* as the Court finds Plaintiff Arapaho, L.L.C. Tesco as Custodian ("Plaintiff Arapaho") complied with *Rule 55(a)(3)(A), Ariz.R.Civ.P.*, the November 9, 2021 *Default Judgment* is not void, and Defendant Searle has failed to demonstrate excusable neglect or a meritorious defense.

      Defendant Searle is the record owner of the real property located at 513 South Ash Street in Gilbert, Arizona (Parcel No.: 302-35-259) (the "Ash Street Property"), the property at issue in this tax lien foreclosure action. Defendant Searle seeks, pursuant to *Rule 60(b)(4), Ariz.R.Civ.P.*, to have the November 9, 2021 *Default Judgment* entered against her set aside. She contends that the *Judgment* is void because Plaintiff Arapaho did not provide her with notice of *Application for Entry of Default* filed with this Court on September 8, 2021.

      A party seeking relief from a valid, final judgment must show good cause for setting aside the judgment. *See, Dauo v. Harris, 139 Ariz. 353, 358-359, 678 P.2d 934, 939-940 (1984); Webb v. Erickson, 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982); Laveen Meadows*

SUP000114

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2021-012279                                                    06/07/2022

*Homeowners Association*, 249 Ariz. 81, 83, 466 P.3d 858, 860 (App. 2020). Under circumstances where a plaintiff has failed to satisfy the notice requirements of *Rule 55(a)(3)*, *Rule 60(b)(4)* requires a court to grant relief to the defendant and render a judgment void. *See, e.g., Ruiz v. Lopez*, 225 Ariz. 217, 222-223, 236 P.3d 444, 449-450 *(App. 2010).* The defendant bears the burden of demonstrating her entitlement to have the judgment set aside. *Miller v. Nat'l Franchise Servs., Inc.*, 167 Ariz. 403, 406, 807 P.2d 1139, 1142 (App. 1991).

*Rule 55(a)(3), Ariz.R.Civ.P.* requires notice of default be given to a defendant claimed to be in default. Where the plaintiff knows the "whereabouts" of the defendant claimed to be in default, the plaintiff is required to mail a copy of the *Application for Entry of Default* to that defendant. *Rule 55(a)(3)(A), Ariz.R.Civ.P.*

Our courts have defined "whereabouts" to mean a specific address where the defendant claimed to be in default can be found or located. *Ruiz v. Lopez, 225 Ariz. at 221, 236 P.3d at 448.* Notably, *Rule 55(a)(3)(A)* does not require an *Application for Entry of Default* to be mailed to the defendant's residence indicating, as the *Ruiz* court recognized, the *Rule* "contemplates the possibility of mailing a notice to some other 'place' where the party can be found." *Id., 225 Ariz. at 222, 236 P.3d at 449.*

This Court finds Plaintiff Arapaho complied with the notice requirements of *Rule 55(a)(3)(A).* Plaintiff Arapaho, through counsel, mailed the September 8, 2021 *Application for Entry of Default* to Defendant Searle at the subject Ash Street Property (the same address Defendant Searle identifies as her mailing address with the Maricopa County Assessor and Maricopa County Treasurer, the same address where Plaintiff Arapaho's counsel sent in June 2021 notice (pursuant to *A.R.S. § 42-*18202) prior to this tax lien foreclosure action, the same address where mailings addressed to Defendant Searle from Plaintiff Arapaho's counsel were successfully delivered in January 2021 and August 2021, the same address where Defendant Searle's son who had communicated with Plaintiff Arapaho's counsel regarding Defendant Searle's redemption of a separate tax lien in June 2021 claimed to live) and to Two Hats Training Stable located on North Tucson Boulevard in Tucson, Arizona (the same address where Defendant Searle was personally served on August 18, 2021 with the *Summons* and *Complaint* in this tax lien foreclosure action and the same address Plaintiff Arapaho learned Defendant Searle frequented for the purpose of caring for horses). *See, Plaintiff Arapaho's Application for Entry of Default* (filed September 28, 2021), mailing cert., p. 3; *see also, Declaration of John L. Lohr, Jr.* (filed April 8, 2022 with Plaintiff Arapaho's *Response*), ¶¶ 49-57. These two addresses were

Docket Code 926                          Form V000A                          Page 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2021-012279                                          06/07/2022

known whereabouts where Plaintiff Arapaho successfully had found and communicated with Defendant Searle in the months leading up to Arapaho's filing of its September 8, 2021 *Application for Entry of Default*.  Proper notice was given.

The Court is not persuaded by Defendant Searle's argument that a copy of the *Application for Entry of Default* should have been sent to her residence on North Jackson Avenue in Tucson, Arizona because, although Defendant Searle's claimed residence, the Jackson Avenue property is apparently surrounded by a locked gate and Plaintiff Arapaho has never successfully found Defendant Searle at the Jackson Avenue property such that the Jackson Avenue property would have been to Plaintiff Arapaho known whereabouts for Defendant Searle.  Furthermore, "whereabouts" as used in *Rule 55(a)(3)(A)* has been held to not be limited to a defendant's residence.  *Ruiz v. Lopez, 225 Ariz. at 222, 236 P.3d at 449*.

With respect to Defendant Searle's assertion that she never received the *Application for Entry of Default* mailed to the Ash Street Property and to the Two Hats Training Stable, Defendant Searle's mere denial of receipt of notice does not negate the evidence before this Court that Plaintiff Arapaho, through counsel, mailed the *Application* as required by *Rule 55(a)(3)(A)*.  *See, Plaintiff Arapaho's Application for Entry of Default* (filed September 28, 2021), mailing cert., p. 3; *see also, Declaration of John L. Lohr, Jr.* (filed April 8, 2022 with Plaintiff Arapaho's *Response*), ¶¶ 49-57.  Plaintiff Arapaho complied with *Rule 55(a)(3)(A)*.  Proper notice was given.  Furthermore, the tax lien foreclosure action was properly served and Defendant Searle failed to timely answer or otherwise appear and defend.  The November 9, 2021 *Default Judgment* is not void.

Although Defendant Searle has not argued that the November 9, 2021 *Default Judgment* should be set aside pursuant to *Rule 60(b)(1)* due to excusable neglect or pursuant to Rule 60(b)(6) because extraordinary circumstances justifies such relief, Defendant Searle did suggest that she was purposely waiting to receive the *Application for Entry of Default* before attempting to redeem the subject tax lien.  Such purposeful delay in addressing a lawsuit with which one has been served is not the actions of a reasonably prudent person.  Furthermore, there are no extraordinary circumstances warranting *Rule 60* relief in favor of Defendant Searle.  On the contrary, the *Default Judgment* having been entered nearly eight months ago, Plaintiff Arapaho's entitlement to the finality that should have resulted from the *Judgment* outweighs the general policy to have matters decided on the merits, especially in light of Defendant Searle's failure to assert any meritorious defense.  Defendant Searle has not shown good cause entitling her to *Rule 60* relief.

SUP000116

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2021-012279                                              06/07/2022

Therefore,

**IT IS HEREBY ORDERED** that denying Defendant Searle's *Rule 60(b) Motion to Set Aside Judgment* (filed March 28, 2022).

_____
Gary L. Popham, Jr., Commissioner
Arizona Superior Court, Maricopa County

SUP000117

**EXHIBIT "4"**

SUP000118

NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

ARAPAHO LLC TESCO AS CUSTODIAN, *Plaintiff/Appellee*,

*v.*

CHRISTINE M. SEARLE, *Defendant/Appellant*.

No. 1 CA-CV 22-0478
FILED 2-9-2023

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2021-012279
The Honorable Gary L. Popham, Judge *Pro Tempore*

**AFFIRMED**

———————————————

COUNSEL

Hymson Goldstein Pantiliat & Lohr, PLLC, Scottsdale
By John L. Lohr, Jr. and Jackson D. Hendrix (argued)
*Co-Counsel for Plaintiff/Appellee*

Snell & Wilmer L.L.P., Phoenix
By Andrew M. Jacobs (argued), Cory L. Braddock, and Emily R. Parker
*Co-Counsel for Defendant/Appellant*

SUP000119

ARAPAHO v. SEARLE
Decision of the Court

—————————————————

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Michael J. Brown and Judge Michael S. Catlett joined.

—————————————————

**M c M U R D I E**, Judge:

¶1          Christine M. Searle appeals from the superior court's denial of her motion to set aside the default judgment. Because the superior court did not abuse its discretion, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          Searle failed to pay taxes assessed on real property she owned in Gilbert ("Gilbert property"). Arapaho, LLC Tesco as Custodian ("Arapaho") bought the 2015 and 2016 tax lien certificates on the Gilbert property.

¶3          In January 2021, Arapaho began a foreclosure action on the 2016 tax lien. Arapaho mailed the foreclosure notice to the Gilbert property because the Maricopa County Assessor and Treasurer listed the Gilbert property address as Searle's mailing address. *See* A.R.S. § 42-18202. Someone at the Gilbert property signed and acknowledged receipt of the foreclosure notice.

¶4          Later, Arapaho filed a complaint to foreclose the 2016 tax lien. Trying to serve Searle, Arapaho's counsel identified a Tucson address ("Tucson property") "through online research as an address that might be connected to Ms. Searle." A process server tried to effect service using the Tucson property's address five times but could not gain access.

¶5          Arapaho eventually completed service at the Gilbert property through a resident who knew Searle. Searle's son contacted Arapaho's counsel after service. They discussed the status of the 2015 and 2016 tax liens over email. According to Arapaho's counsel's sworn declaration, Searle's son redeemed the 2016 tax lien on Searle's behalf. In August 2021, Arapaho sent a letter to the Gilbert property requesting payment of attorney's fees, and someone signed to confirm receipt.

¶6          In June 2021, Arapaho mailed notice of its intent to foreclose on the 2015 tax lien to the Gilbert property's address. This notice was

2

SUP000120

ARAPAHO v. SEARLE
Decision of the Court

marked "return to sender," and the letter's recipient noted on the envelope that the "Property is Rented." But in a sworn declaration, Searle's son stated he lived at the Gilbert property starting in February or March 2021, and he "receive[d] and review[ed] any mail delivered to the Property."

¶7            In August 2021, Arapaho filed to foreclose on the Gilbert property's 2015 tax lien. Arapaho tried to serve Searle at the Gilbert property but failed. The process server reported that when attempting service, "a truck known to belong to Searle or [her son] was in the driveway." After searching social media, Arapaho discovered that Searle frequented a horse-training stable in Tucson ("Tucson stable"). Searle's counsel confirmed at the oral argument in the trial court that Searle worked at the Tucson stable caring for the horses. Arapaho personally served Searle at the Tucson stable in late August.

¶8            In September, Arapaho applied for a default judgment, alleging Searle failed to plead or defend against the judicial foreclosure claim timely. Arapaho mailed copies of the application for entry of default judgment to the address for the Tucson stable and the Gilbert property's address.[1] After a default hearing, the superior court entered a default judgment against Searle, finding that she received proper notice and failed to answer or appear.

¶9            In late March 2022, Searle moved to set aside the default judgment under Arizona Rule of Civil Procedure 60(b)(4), arguing the judgment was void because Arapaho "failed to mail the application for entry of default to Searle's known whereabouts as required by [Arizona Rule of Civil Procedure] 55(a)(3)(A)." She claimed Arapaho should have mailed the application to the Tucson property, along with the Gilbert property. Arapaho responded that the judgment was not void because it fully complied with Rule 55 by mailing the application to the Gilbert address and the Tucson stable. Searle replied that Arapaho knew she resided at the Tucson property and thus needed to mail the application to the Tucson property's address to comply with Rule 55(a)(3)(A) to provide Searle with the "best notice practicable under the circumstances."

---

[1]       Before the superior court, Searle disputed that Arapaho mailed the application to the Gilbert property's address. But the superior court found that Arapaho did mail the application to the Gilbert property, and Searle does not challenge this finding on appeal.

3

SUP000121

ARAPAHO v. SEARLE
Decision of the Court

¶10        After oral argument, the superior court denied the motion to set aside. The court found that "Arapaho complied with the notice requirements" by mailing the application to the Gilbert property and the Tucson stable. The court noted that the Gilbert property's address was Searle's identified mailing address, Arapaho successfully delivered mail there in January and August 2021, and Arapaho successfully used this address to reach Searle's son and discuss the tax liens on the property. Moreover, Arapaho had served Searle at the horse stable, a place she frequented. The court found that Arapaho complied with Rule 55 by mailing notice to the Gilbert property and the Tucson stable because those properties' "addresses were known whereabouts where Plaintiff Arapaho successfully had found and communicated with Defendant Searle in the months leading up to Arapaho's filing of its [application]."

¶11        The court rejected Searle's argument that Rule 55(a)(3)(A) required Arapaho to mail the application for entry of default to the Tucson property. It reasoned that Arapaho "never successfully found" Searle at the Tucson address. Moreover, citing *Ruiz v. Lopez*, 225 Ariz. 217 (App. 2010), the court noted that a person's known "whereabouts" are not "limited to a defendant's residence."

¶12        Searle appealed. We have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

¶13        Searle contends that because Arapaho did not mail notice to the Tucson address, the superior court should have set aside the default judgment as void under Rule 60(b)(4). But we conclude the superior court correctly denied Searle's motion to set aside the default judgment because Arapaho complied with Rule 55(a)(3)(A).

¶14        We review the denial of a motion to set aside a judgment for an abuse of discretion. *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8 (App. 2012). "[W]e defer to the superior court's factual findings, and will not set them aside unless they are clearly erroneous." *Bank of N.Y. Mellon v. Dodev*, 246 Ariz. 1, 6, ¶ 15 (App. 2018) (quoting *Ruffino v. Lokosky*, 245 Ariz. 165, 168, ¶ 9 (App. 2018)).

¶15        A party seeking to enter default judgment must provide notice to the party claimed to be in default. Ariz. R. Civ. P. 55(a)(3). "If the party requesting the entry of default knows the whereabouts of the party claimed to be in default, a copy of the application for entry of default must be mailed to the party claimed to be in default." Ariz. R. Civ. P. 55(a)(3)(A).

4

ARAPAHO v. SEARLE
Decision of the Court

"A party should receive the best notice practicable under the circumstances." *Ruiz*, 225 Ariz. at 221, ¶ 15. If the party seeking default fails to satisfy the notice requirements, the resulting judgment is void, and the court will set aside the default judgment. *Id.* at 222, 223, ¶¶ 18, 21. When challenging the judgment, the moving party must establish that the judgment should be set aside. *Miller v. Nat'l Franchise Servs., Inc.*, 167 Ariz. 403, 406 (App. 1991).

¶16        We consider two policies when reviewing a motion to set aside a default judgment. First, "if the trial court has doubt about whether to vacate a default judgment, it should rule in favor of the moving party." *Gonzalez v. Nguyen*, 243 Ariz. 531, 534, ¶ 11 (2018) (quoting *Daou v. Harris*, 139 Ariz. 353, 359 (1984)). But "[t]here is also, however, a principle of finality in proceedings which is to be recognized and given effect." *Id.*

¶17        In *Ruiz v. Lopez*, we held that in the context of Rule 55,[2] the "whereabouts" of a party means "a particular or specific 'place' where that person can be found or located." *Ruiz*, 225 Ariz. at 221, ¶ 13. For example, a private mailbox qualifies as a person's known whereabouts if the "defendant regularly used that box for multiple purposes and mail was reasonably calculated to reach her there." *See id.* (citing *Barlage v. Valentine*, 210 Ariz. 270, 276, ¶¶ 22–23 (App. 2005)); *see also Advanced Prop. Tax Liens, Inc. v. Coquina Prop. Invs., LLC*, 2 CA-CV 2021-0045, 2021 WL 5027453, at *2, ¶ 7 (Ariz. App. Oct. 29, 2021) (mem. decision) (A post office box qualified as the defendant's "whereabouts" because the county assessor listed the address as the defendant's mailing address, and the plaintiff previously sent mail there and received a return receipt confirming delivery.).

¶18        Moreover, "because [Rule 55] refers to 'whereabouts' rather than to [a] residential or home address, it contemplates the possibility of mailing a notice to some other 'place' where the party can be found." *Ruiz*, 225 Ariz. at 222, ¶ 15. Thus, we have held that mailing a notice to a defendant's place of employment can satisfy the notice requirements if the defendant had been served there. *Id.* at 220, 221, ¶¶ 6, 13; *see also MACWCP II, LLC v. Alton*, 1 CA-CV 14-0552, 2016 WL 126281, at *2, ¶ 10 (Ariz. App. Jan. 12, 2016) (mem. decision) (Mailing the application for default to the

---

[2]        *Ruiz* discusses Arizona Rule of Civil Procedure 55(a)(1)(i). But Rule 55 has since been amended, and the notice requirements are now found in Arizona Rule of Civil Procedure 55(a)(3). For purposes of this decision, no material differences exist between the two versions.

SUP000123

ARAPAHO v. SEARLE
Decision of the Court

property address was sufficient because the property owner had been served there.).

**A.    The Superior Court Did Not Err by Finding that the Gilbert Property and the Tucson Stable Were Searle's Known Whereabouts.**

¶19        The Gilbert property was one of Searle's known whereabouts. Searle owned the Gilbert property and listed the address as her mailing address with the Maricopa County Assessor and Treasurer. *See Coquina*, 2 CA-CV 2021-0045, at *2, ¶ 7. The property was the subject of the foreclosure, and Arapaho had completed service using the Gilbert property's address. *See MACWCP II*, 1 CA-CV 14-0552, at *2, ¶ 10. Arapaho had successfully mailed letters there and reached Searle's son by using the address. *See Coquina*, 2 CA-CV 2021-0045, at *2, ¶ 7. Because the Gilbert property's address was on public record as Searle's mailing address, and the parties communicated through that address, Rule 55(a)(3)(A) required Arapaho to mail a copy of the default application to Searle at the Gilbert property's address. *See Ruiz*, 225 Ariz. at 221, ¶ 13.

¶20        Even so, Searle asserts that sending mail to the Gilbert property's address, not the Tucson property's address, was unreasonable. She argues that the "return to sender" letter supports her position. Searle did not raise this argument before the superior court when Arapaho referenced the same letter to cast doubt on Searle's son's credibility. And Searle's argument discounts that Arapaho successfully delivered mail to this address both before and after the returned letter. Also, Searle's son resided at the property when Arapaho sent both the returned letter and the notice of the default application, and he declared he received and reviewed Searle's mail while living there. We conclude that the trial court did not abuse its discretion by finding that the Gilbert property's address was one of Searle's known whereabouts in September 2021.

¶21        The Tucson stable was also one of Searle's known whereabouts at that time. Searle frequented the stable, she worked there, and Arapaho personally served Searle there. *See Ruiz*, 225 Ariz. at 220, 221, ¶¶ 6, 13; *MACWCP II*, 1 CA-CV 14-0552, at *2, ¶ 10. We agree with the superior court that the Tucson stable was a place where Searle could be found or located. *Ruiz*, 225 Ariz. at 221, ¶ 13.

¶22        The superior court correctly found that the Gilbert property and the Tucson stable were Searle's known whereabouts under Rule 55(a)(3). *See Ruiz*, 225 Ariz. at 221, ¶ 15.

6

ARAPAHO v. SEARLE
Decision of the Court

**B.    The Superior Court Correctly Found that Arapaho Satisfied Rule 55(a)(3) by Mailing the Application to the Gilbert Property and the Tucson Stable.**

¶23        Searle contends that to achieve the "best notice practicable under the circumstances," Arapaho needed to mail the notice to all three locations: the Gilbert property, the Tucson stable, and the Tucson property. Searle's counsel suggested at oral argument in the superior court that Arapaho should have mailed notice "to every address [it] could possibly find for [Searle]." But Rule 55(a)(3) does not require a party to send notice to every location where the defaulting party might appear. Instead, Rule 55(a)(3)(A) requires a claimant to mail an application for entry of default to the defaulting party's known whereabouts, which is "a particular or specific 'place' where that person can be found or located, not a 'general area or locale' where she might be possibly found." *Ruiz*, 225 Ariz. at 221, ¶ 13.

¶24        Searle contends the superior court abused its discretion by finding that Arapaho did not know Searle could be located at the Tucson property. Granted, the process server listed the Tucson property's address as Searle's home address in its affidavit of non-service after attempting service of a prior lawsuit in March 2021. Counsel explained that it identified the Tucson address as a possible connection to Searle, and it was standard practice for them to send process servers to all potential addresses they found online. But a process server unsuccessfully sought to access the gated community where the Tucson property is located five times and could not otherwise find Searle or anyone who knew Searle. There is little record evidence supporting Searle living at the Tucson address or being present in September 2021. The declaration that Searle submitted in support of her March 2022 motion to set aside the default judgment states only, "I reside at [the Tucson property's address]." The declaration does not show where Searle resided six months prior, in September 2021, when Arapaho needed to comply with Rule 55(a)(3)(A). There is scant, if any, other evidence from which the superior court could have found that Searle was located at the Tucson property in September 2021. *See Ruiz*, 225 Ariz. at 221, ¶ 13. Thus, the superior court correctly found that the Tucson property was not one of Searle's known whereabouts under Rule 55(a)(3).

¶25        Because the Gilbert property and the Tucson stable were Searle's known whereabouts in September 2021, and the Tucson property was not one of her known whereabouts, we conclude that Arapaho complied with Rule 55(a)(3)(A) by mailing its application for entry of default to the Gilbert property and the Tucson stable. We, therefore, affirm

SUP000125

ARAPAHO v. SEARLE
Decision of the Court

the superior court's denial of Searle's motion to set aside the default judgment under Rule 60(b)(4).

## ATTORNEY'S FEES AND COSTS

¶26        Arapaho requests attorney's fees under A.R.S. § 12-349. Because Arapaho fails to show how Searle brought a claim "without substantial justification" or otherwise unjustifiably acted as described by the statute, we decline this request. *See* A.R.S. § 12-349. Arapaho is entitled to appellate costs upon compliance with ARCAP 21.

## CONCLUSION

¶27        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8

**EXHIBIT "5"**

SUP000127



# Supreme Court
### STATE OF ARIZONA

**ROBERT BRUTINEL**
Chief Justice

**ARIZONA STATE COURTS BUILDING**
1501 WEST WASHINGTON STREET, SUITE 402
PHOENIX, ARIZONA 85007
TELEPHONE: (602) 452-3396

**TRACIE K. LINDEMAN**
Clerk of the Court


October 17, 2023


**RE:  ARAPAHO v SEARLE**
Arizona Supreme Court No. CV-23-0056-PR
Court of Appeals, Division One No. 1 CA-CV 22-0478
Maricopa County Superior Court No. CV2021-012279


GREETINGS:

The following action was taken by the Supreme Court of the State
of Arizona on October 17, 2023, in regard to the above-
referenced cause:

**ORDERED: Petition for Review = DENIED.**


Tracie K. Lindeman, Clerk

TO:
John L Lohr Jr
Jackson D Hendrix
Cory L Braddock
Emily Parker
Amy M Wood
jd

**EXHIBIT "6"**

SUP000129

1 | Grady J. Block (TX Bar No. 24120616) (*pro hac vice*)
William E. Trachman (CO Bar No. 456384) (*pro hac vice*)
2 | Mountain States Legal Foundation
2596 S. Lewis Way
3 | Lakewood, Colorado 80227
4 | Telephone: (303) 292-2021
gblock@mslegal.org
5 | wtrachman@mslegal.org
6 |
7 | Veronica Lucero
Davillier Law Group LLC
8 | 4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
9 | Tele: (602) 730-2985 ext. 705
Fax:  (602) 801-2539
10 | vlucero@davillierlawgroup.com
11 |
12 | *Attorneys for Christine M. Searle*

13 | **IN THE UNITED STATES DISTRICT COURT**

14 | **FOR THE DISTRICT OF ARIZONA**

15 | Christine M. Searle,

16 |          Plaintiff,                       | Case No. CV-24-00025-PHX-JJT

17 |                v.                          | Assigned Judge: John J. Tuchi

18 | John M. Allen ("Allen"), in his           | **FIRST AMENDED COMPLAINT FOR**
19 | individual and official capacity, as The   | **DECLARTORY AND INJUNCTIVE**
| Treasurer of Maricopa County;             | **RELIEF AND DAMAGES**
20 | Arapaho LLC; American Pride
| Properties, LLC; Kristin Mayes, in her
21 | official capacity, as the Attorney
| General of the State of Arizona, John
22 | Doe, Jane Doe, Black Corporations,
| White Partnerships, and Green Limited
23 | Liability Companies,
24 |
|          Defendants
25 |
26 |
27 |
28 |

SUP000130

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Christine M. Searle ("Searle"), brings this action to challenge a violation of her constitutional rights through the improper taking of her property, invoking the protections of the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment. Additionally, she brings claims for violations of the Gift Clause, Takings Clause, and Excessive Fines Clause of the Arizona Constitution and asserts a cause of action for unjust enrichment.

**INTRODUCTION**

1.      This case challenges a legal regime under Arizona law, where small, sometimes incredibly minor, amounts of delinquent taxes can lead to the seizure of property and eviction of its owners.

2.      Under the Arizona tax lien scheme, either the State or private entities may take possession and title of the property or sell it, often for amounts well exceeding the unpaid taxes. Consequently, the lien purchaser retains all of the homeowner's equity in the property. *See, e.g.*, *Arizona Tax Liens Wreaking Havoc On Lenders, Borrowers*, QUARLES & BRADY NEWS AND INSIGHTS (May 9, 2014) ("With shocking frequency across the counties of Arizona, homeowners and lenders are failing to redeem delinquent tax liens, and are thereby losing their pecuniary and fee simple interests.").[1]

3.      Ms. Searle is a 70-year-old woman, who has been deprived of her property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home") that she had owned for 18 years.

---

[1] https://www.quarles.com/newsroom/publications/arizona-tax-liens-wreaking-havoc-on-lenders-borrowers

1

SUP000131

4.     Defendant Arapaho Investment Properties, LLC (Arapaho or Defendant Arapaho) purchased 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's home, which stemmed from Ms. Searle's delinquent taxes.

5.     In 2021, Arapaho began foreclosure proceedings based on Arizona's tax lien scheme.

6.     Upon information and belief, Arapaho subsequently transferred its interest in Ms. Searle's home to Defendant American Pride Properties, LLC (American Pride or Defendant American Pride).

7.     Neither Arapaho nor American Pride have ever provided to Ms. Searle any funds over and above what she owed in taxes; nor have they provided any assurance that, to the extent that a future sale occurs, she will be provided with the "delta" between the purchase price or market value of the home, and the amount of the tax lien.[2]

8.     Upon information and belief, Arapaho and American Pride intend to retain the delta connected to the sale of Ms. Searle's home.

9.     In May 2023, the Supreme Court decided the case of *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023).

---

[2] Note that at a recent oral argument, the United States took the position that a failure to justly compensate the victim of a taking is an ongoing violation, that occurs every day until just compensation occurs. *See* Oral Argument before the U.S. Supreme Court in *Devillier v. Texas*, No 22-913, at 47:7-11 (Jan. 16, 2024) ("Justice Kagan: It's an ongoing violation of the Constitution, right? I've taken Mr. McNamara's property. I haven't paid him. Every day, I'm violating the Constitution, correct? MR. NIELSON: Yes, Your Honor.").

2

SUP000132

10.    In *Tyler*, the Supreme Court of the United States held that a county's decision to retain funds following a forfeiture process constituted a taking under the Fifth Amendment.

11.    As the Supreme Court found in *Tyler*, "The taxpayer must render unto Caesar what is Caesar's, but no more." 598 U.S. 631 (2023).

12.    *Tyler* recognized the common law general rule, as stated in Blackstone: "If a tax collector seized a taxpayer's property, he was 'bound by an implied contract in law to restore the property on payment of the debt, duty, and expenses, before the time of sale; or, when sold, to render back the overplus.'" *Tyler*, 598 U.S. at 640 (citing 2 Commentaries on the Laws of England 453 (1771)) (internal brackets omitted).

13.    *Tyler*'s holding applies equally to situations where a county merely authorizes a third-party to retain the delta between a debtor's tax debt and the price of their home. As stated broadly in *Tyler*, "Our precedents have also recognized the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id.*

14.    Here, the numbers are even more grossly disproportional and offensive to the Constitution than they were in *Tyler*. At the time of the foreclosure action leading to the issuance of the treasurer's deed, the relevant tax lien to Ms. Searle was only $1,607.68. Meanwhile, her home is worth several hundred thousand dollars.

15.    Upon information and belief, all Defendants have actual knowledge of the Supreme Court's decision in *Tyler*, yet have not provided Ms. Searle with just compensation, or any assurance of future compensation. On the contrary, counsel for

3

1   Arapaho initially notified Ms. Searle that eviction proceedings would soon occur. [*See* ECF
2   1-1.][3]
3           16.     The practice of taking the entire value of a property, including the surplus
4
5   value, in excess of the amount of unpaid taxes and associated charges constitutes a taking
6   under *Tyler*.
7           17.     In *Tyler*, the Court specifically tied the "taking" to the retention of the excess
8
9   value from the sale of a property. The Court stated:
10          The County argues that the delinquent taxpayer could sell her house to pay
            her tax debt before the County itself seizes and sells the house. But requiring
11          a taxpayer to sell her house to avoid a taking is not the same as <u>providing her</u>
            <u>an opportunity to recover the excess value of her house once the State has</u>
12          <u>sold it</u>.
13
14  598 U.S. at 644-45 (emphasis added).
15          18.     In other words, the act of taking extends to the withholding of any value
16
    beyond the tax debt owed when a home transfers ownership, depriving the original owner
17
    of potential profits from their property's equity.
18
19          19.     Separately, Ms. Searle seeks a permanent injunction against Arapaho and
20  American Pride on the basis that merely providing the "delta" on the value of her home—
21
22
23
24  [3] As the Court is aware, Arapaho and Ms. Searle have reached an agreement that stipulates
    to the injunctive relief sought in Ms. Searle's original motion for a temporary restraining
25  order and preliminary injunction. Eviction proceedings are therefore no longer expected to
    occur imminently. [*See* ECF 10, at 5 ("Defendant Arapaho has stipulated to the relief
26  requested in Searle's motion, such that eviction proceedings shall not occur for at least 12
    months."); *see id.* at 6 ("The parties reserve all rights after the 12-month period, ending
27  March 15, 2025, to reach further agreement, or to apprise the Court that eviction
    proceedings against Ms. Searle are once again imminent.").]
28

4

while perhaps "just" compensation—is not truly for public use, and therefore violates the U.S. Constitution.

20.     Additionally, while not an issue reached in the majority opinion in *Tyler*, Ms. Searle seeks a permanent injunction against Arapaho and American Pride on the basis that the taking at issue is an excessive fine, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation.

21.     Ms. Searle also seeks an declaratory and injunctive relief in that the Arizona state law tax scheme is unconstitutional.

22.     Plaintiff alleges various state law claims against various defendants.

23.     Plaintiff also seeks other relief in the form of damages against Defendant Allen, as well as relief establishing that the Arizona tax lien scheme constitutes a taking, under the logic of *Tyler*, as well as an excessive fine.

24.     Additionally, Plaintiff seeks recovery of attorney's fees as permitted under Arizona law and 42 U.S.C. § 1988, reimbursement for expenses and costs of the suit, and any other relief deemed just and appropriate by the Court.

**PARTIES**

25.     Plaintiff Christine M. Searle is an individual residing in Arizona who purchased her home in 2005.

26.     Defendant Arapaho is a limited liability company involved in the purchase of tax lien certificates and foreclosure of tax liens, including the purchase of the tax lien against the home in this matter.

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     27.     Defendant American Pride Properties is a limited liability company. Upon information and belief, American Pride now owns Ms. Searle's home.

     28.     Defendant John M. Allen ("Allen") is sued in his individual and official capacity as the Treasurer of Maricopa County. His office is responsible for the administration of tax collection, imposition and sale of tax liens, and related proceedings in Maricopa County. *See* ARIZ. REV. STAT. ANN. § 42-18001; *see also* ARIZ. REV. STAT. ANN. § 42-18101.

     29.     Defendant the Honorable Kristin Mayes ("Mayes") is the Attorney General of the State of Arizona. She is sued in her official capacity. Her office is "charged with representing state agencies and enforcing the state's laws."[4]

     30.     Defendants John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies are fictitious names for any Defendants not named of whom the Plaintiff later may become aware, who may have an interest in the real property at issue or been involved in the taking of Ms. Searle's Home.

     31.     All Defendants` were acting and/or continue to act under color of state law at all times relevant hereto. All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

---

[4] Duties and Responsibilities, Arizona Attorney General's Office (Jan. 23, 2024), https://www.azag.gov/duties#:~:text=The%20Arizona%20Attorney%20General%27s%20Office,councils%20to%20achieve%20its%20mission.

6

SUP000136

**JURISDICTION AND VENUE**

32.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 & 1988 and 28 U.S.C. § 2201 for deprivations of Plaintiff's rights secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

33.     This Court has jurisdiction over this complaint under 28 U.S.C. § 1343, which provides for original jurisdiction in this Court for suits brought pursuant to 42 U.S.C. § 1983. The Court also has jurisdiction under 28 U.S.C. § 1331 because this matter arises under the Constitution and laws of the United States.

34.     Venue is appropriate in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of property that is the subject of the action is situated within this district.

35.     Ms. Searle possesses standing because she will suffer a "classic pocketbook injury" from the sale of her home, when the sale results in price over and above what she owed in taxes. *Tyler*, 598 U.S. at 636 (injury caused by County illegally appropriating $25,000 in excess value from sale).

**STATEMENT OF FACTS**

**Arizona Statutory Scheme Allowing Equity Theft**

36.     The Arizona Legislature has created a statutory scheme under Title 42, Chapter 18 of the Arizona Revised Statutes in which property owners can be robbed of their hard-earned home equity over relatively miniscule tax liens.

7

37.     In Arizona, tax liens are created under ARIZ. REV. STAT. ANN. § 42-17153, which establishes that taxes levied on property become liens on the assessed property from January 1 of the tax year, having priority over most other liens. This statute works in tandem with ARIZ. REV. STAT. ANN. § 42-17154, which extends the liability for taxes beyond the specific property assessed, allowing for mutual liability between real and personal property.

38.     The County Treasurer, as tax collector, has the additional duty of securing payment on delinquent taxes by selling liens and/or foreclosing the right to redeem those liens. *See* ARIZ. REV. STAT. ANN. § 42-18001; *see also* ARIZ. REV. STAT. ANN. § 42-18101. Once sold, the County Treasurer must issue a certificate of purchase to the purchaser or assignee, which constitutes prima facie evidence of a valid purchase. *See* ARIZ. REV. STAT. ANN. § 42-18118; *see also* ARIZ. REV. STAT. ANN. § 42-18119.

39.     Should the lien not be purchased by a private party as outlined above, the lien is assigned to the State by the County Treasurer. *See* ARIZ. REV. STAT. ANN. § 42-18113.

40.     After three years from the sale or assignment of a tax lien, the purchaser or the State may initiate an action to foreclose the right to redeem if the lien is not redeemed. *See* ARIZ. REV. STAT. ANN. § 42-18201.

41.     If the lien is not redeemed and the right to redeem is successfully foreclosed by the resulting judgment, the County Treasurer is directed to deliver a treasurer's deed conveying the property to the purchaser or the State as assignee. *See* ARIZ. REV. STAT. ANN. § 42-18204.

8

SUP000138

42.    As part of this process, the foreclosure judgment removes all legal and equitable right, title, or interest in the property from the previous owner of the property who lost the right to redeem. *See* ARIZ. REV. STAT. ANN. § 42-18204. In other words, if the right to redeem is foreclosed, the previous owner is deprived of all value, including all home equity, that they had accrued in the property, due merely to owing delinquent taxes.

43.    Should the State be assigned the lien and successfully foreclose the right to redeem, a board of supervisors may then sell the property at auction. If the sale price exceeds the amount of the lien (including the related interest, penalties, etc.), then the excess funds, appropriately, must be paid back to the owner who was dispossessed of their property. *See* ARIZ. REV. STAT. ANN. § 42-18303.

44.    No such provision applies, however, where the purchaser of the tax lien is a private party. Thus, where a private party forecloses the right to redeem, it reaps a significant windfall by effectively seizing the excess home equity, without any surplus returning to the previous owner.

### The Property and the Tax Lien

45.    In 2005, Christine Searle purchased Assessor Parcel No. 302-35-259, which is the property located at 513 S. Ash St., Gilbert, AZ 85233 (the "Home"). For years, she was the sole owner, and enjoyed the benefits of home ownership including renting it out as one of her sole forms of income in retirement.

46.    The Maricopa County Assessor has valued this property at $376,800 for the 2024 tax year. As is common with many areas, the market value of this property is likely significantly higher than this valuation. For example, although online real estate estimates

9

SUP000139

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

are not as reliable as individual professional appraisals, the Zillow estimated range for purchasing Ms. Searle's house is between $434,000-479,000.[5] Redfin, another real estate website, estimates the Home's value at $429,000-510,000.[6] Finally, Trulia and Realtor.com list the estimated value as $456,500,[7] and between $420,983-464,000,[8] respectively.

47.     Defendant Arapaho purchased the 2015 and 2016 tax liens issued by the Maricopa County Treasurer's office against Ms. Searle's home stemming, from Ms. Searle's delinquent taxes.

48.     In 2021, Defendant Arapaho began foreclosure proceedings on those tax liens. According to Defendant Arapaho's verified complaint in that action, at the time of the foreclosure action, Ms. Searle owed $1,607.68 in delinquent taxes. See Exhibit 1. Arapaho won a default judgment in accordance with the statutory scheme outlined above, and was issued a treasurer's deed for the Home.

49.     Following the entry of the default judgment, Ms. Searle moved to set it aside, contending that she had not received proper notice regarding foreclosure action. However, this motion was denied. Ms. Searle then filed an appeal challenging the denial of her motion

---

[5] 513 S Ash St, Gilbert, AZ 85233, Zillow (Jan. 26, 2024)
https://www.zillow.com/homedetails/513-S-Ash-St-Gilbert-AZ-85233/8180247_zpid/.

[6] 513 S Ash St, Gilbert, AZ 85233, REDFIN (Jan. 26, 2024),
https://www.redfin.com/AZ/Gilbert/513-S-Ash-St-85233/home/28096951.

[7] 513 S Ash St, Gilbert, AZ 85233, Trulia (Jan. 26, 2024),
https://www.trulia.com/home/513-s-ash-st-gilbert-az-85233-8180247.

[8] 513 S Ash St, Gilbert, AZ 85233, REALTOR (Jan. 26, 2024),
https://www.realtor.com/realestateandhomes-detail/513-S-Ash-St_Gilbert_AZ_85233_M29465-56767

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to set aside the default judgment. The Court of Appeals of Arizona, Division 1 affirmed the denial of Ms. Searle's motion on February 9, 2023. *Arapaho LLC v. Searle*, No. 1 CA-CV 22-0478, 2023 WL 1830382 (Ariz. Ct. App. Feb. 9, 2023), review denied (Oct. 17, 2023).

50.     On October 17, 2023, further review in the Arizona appellate courts was denied. *Id.*

51.     Due to the foreclosure action resulting in default judgment and the subsequent appeals being limited in scope to a notice issue, the merits of the foreclosure case have not been litigated. In fact, none of the issues surrounding takings or excessive fines have even been litigated with respect to Ms. Searle's home. As a result, neither res judicata or collateral estoppel have any bearing on this suit.

52.     Because of the judgment and the resulting issuance of the treasurer's deed, Ms. Searle will be deprived of the value of all the equity she had built in her home, in addition to one of her sole streams of retirement income via renting the house.

53.     Had the State of Arizona been the assignee of the tax lien, rather than a private entity, Arizona law states that Ms. Searle would be entitled to the difference of any sale price and the amount she owed, plus the related costs.

11

54.     Unfortunately, Arapaho and/or American Pride will obtain a massive windfall: obtaining a property valued in the mid-$400,000s over a tax lien that at the time of foreclosure was roughly $1,600.[9]

55.     Ms. Searle is not seeking a review of the state court's judgment and is not arguing that the judgment was improper based on the Arizona statutory schemes. Instead, Ms. Searle raises separate constitutional claims based on the retention of a delta, and the delivery of her home to a private party, which constitutes an unconstitutional taking under the Fifth Amendment, an unconstitutional taking without just compensation, an excessive fine, and unjust enrichment, among other things.

56.     These issues were not, and could not have been, adjudicated in the state court proceedings focused on notice and procedural aspects of the foreclosure in the context of a default judgment.

57.     The U.S. Supreme Court has clarified that the *Rooker-Feldman* doctrine does not bar federal jurisdiction over a claim alleging a legal injury that is separate from the state court decision, even if both cases share some common factual predicates. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

---

[9] After conferral with Arapaho's counsel, it has come to light that Ms. Searle does owe other debts, and that the property is otherwise encumbered. However, these amounts do not exceed the value of Ms. Searle's home, and, under *Tyler*, they make little difference to the legal claims in this case. *Tyler*, 598 U.S. at 637 ("Had Tyler received the surplus from the tax sale, she could have at the very least used it to reduce any such liability."). Ms. Searle does not mean to suggest that Arapaho or American Pride are engaging in impropriety or unethical behavior by retaining a windfall.

12

SUP000142

**States May Not Seize Property for a Private Purpose, nor Seize Property for a Public Purpose Without Providing Just Compensation, nor Levy an Excessive Fine**

58.    The United States and Arizona Constitutions prohibit the taking of private property without a "public use." Moreover, even where a public use can be shown, "just compensation" must be provided if such property is taken.

59.    Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made . . ." This provision, akin to its federal counterpart, restricts takings absent a public purpose and ensures compensation for property owners.

60.    The Fifth Amendment to the United States Constitution articulates similar restrictions, declaring "nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment extends these protections to the states, affirming, "No State shall...deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

61.    Both the United States and Arizona Constitutions also prohibit excessive fines. The Eighth Amendment to the United States Constitution, applicable to the states, and Article 2, Section 15 of the Arizona Constitution, both stipulate: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

13

SUP000143

62.     Despite these constitutional guarantees, Arizona, through its statutory scheme described above, permits the seizure of property from homeowners with unpaid real property taxes, transferring title to the state or third parties, and deprives the original property owner of the equity or value of their property after taxes and charges are satisfied. Furthermore, there is no provision for the original owner to reclaim this excess equity or surplus from a private party.

63.     By permitting a private entity to obtain the home of a delinquent taxpayer, Arizona's statutory scheme effectuates a *per se* unconstitutional taking for private use, a taking of private property without just compensation, and impose an excessive fine beyond any penalties and tax arrears.

64.     In analyzing a nearly identical statutory scheme in Colorado, the Colorado Office of the Attorney General issued guidance stating the logic of *Tyler* (and of takings jurisprudence in general) does not warrant a different outcome where the county gives property away, versus selling it. *See* Formal Opinion of Philip J. Weiser, Attorney General, No. 23-01, 2023 WL 6279010, at 4 (Colo. A.G. July 27, 2023) ("There does not appear to be a reasonable basis to conclude that the *Tyler* Court would have ruled differently where the government gives the property to a third party who has paid the tax debt with no opportunity for the taxpayer to recover the excess.").

65.     Indeed, in *Tyler*, the Court emphasized that confiscating a property to satisfy a tax debt, taking more value than was due, was a "classic taking in which the government directly appropriates private property for its own use." *Tyler*, at 639 (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002).) The

14

SUP000144

fact that the government delegates this power to a third party, in this case Defendant Arapaho, does not change the underlying fact that transferring the title is unquestionably a taking.

66.    The principle that government should not have the unchecked authority to take property from one individual and give it to another has been a foundational concept in American jurisprudence, underscored by cases like *Calder v. Bull*, and enshrined in both the U.S. and Arizona Constitutions as a safeguard against government overreach. 3 U.S. 386 (1798) ("It is against all reason and justice for a people to entrust a legislature" with the power to enact "a law that takes property from A and gives it to B.")

67.    While case law concerning unconstitutional takings often addresses eminent domain and inverse condemnation, the overarching legal principle is clear: the government must fairly compensate the owner whenever a taking occurs, thereby protecting individuals from bearing disproportionate costs meant for the public benefit.

68.    A home or other real property, as well as the equity or value remaining after settling valid taxes and charges, is unequivocally protected under the U.S. and Arizona Constitutions. The concept that a person's home is their sanctuary is deeply embedded in our legal system, as noted in *Lombard v. Louisiana* by Justice Douglas, who asserted "The principle that a man's home is his castle is basic to our system of jurisprudence." 373 U.S. 267 (1963). Equity in real property holds the same protections and is governed by the same principles as any other form of property.

69.    The U.S. Supreme Court has recognized that a homeowner is entitled to any equity he or she may have realized since the purchase of the property: "The public may not

15

SUP000145

1
2
3
4
5

by any means confiscate the benefits . . . of the owner's bargain." *Olson v. United States,* 292 U.S. 246, 255, 54 S. Ct. 704, 708, 78 L. Ed. 1236 (1934) (emphasis added). Should this sort of taking occur, "[The owner] is entitled to be put in as good a position as pecuniarily as if his property had not been taken." *Id*.

6
7

***Tyler v. Hennepin* Is "Clearly Established" Law and the Decision Undoubtedly Invalidated Arizona's Tax Lien Scheme**

8
9
10
11
12

70.    Arizona's statutory regime was cited as a particularly egregious form of equity theft in the plaintiff's complaint in *Tyler v. Hennepin*. *See* Joint Appendix in *Tyler v. Hennepin*, No. 20-166, at 15, ¶ 44 (Feb. 23, 2023) (referring to tax forfeitures in Arizona "to which the elderly are particularly vulnerable.").[10]

13
14

71.    The Arizona regime and the case law underlying it were cited numerous times in the briefing in *Tyler*.

15
16
17
18
19
20
21
22
23
24
25
26

72.    For instance, Arizona's tax lien scheme was prominently referred to by amici supporting the Petitioner in *Tyler*. As an example, in the amicus brief for the National Legal Aid & Defender Association in support of *Tyler*, the amici cited an article specifically referring to Arizona's statistics. *See* AMICUS BRIEF OF NATIONAL LEGAL AID & DEFENDER ASSOCIATION AS AMICUS CURIAE IN SUPPORT OF PETITIONER, at 8-9 (Mar. 6, 2023) ("As property tax delinquency has fallen disproportionately on historically disadvantaged communities, so too has the weight of home equity theft. In Arizona, the impacts of the tax

27
28

[10] https://www.supremecourt.gov/DocketPDF/22/22-166/255642/20230227174156602_Tyler%20Joint%20Appendix.pdf

16

SUP000146

1
2
3
4
5

foreclosure scheme are concentrated in high-poverty neighborhoods.").[11] The article even uses Maricopa County as an example: "But of the cases that do lead to foreclosure—1,734 in Maricopa County since 2010—more than a third are primary residences. That means that 642 homeowners lost their homes and all their equity."[12]

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

73.    Similarly, the Supreme Court had before it the BRIEF FOR AMICI CURIAE NATIONAL ASSOCIATION OF REALTORS, MINNESOTA REALTORS, AND AMERICAN PROPERTY OWNERS ALLIANCE IN SUPPORT OF PETITIONER, No. 22-166 (Mar. 6, 2023). That brief grouped Arizona's statutory scheme in with the Minnesota regime that was invalidated: "These regimes vary in their operation—some permit the government itself to reap the windfall free and clear, *see, e.g.*, MINN. STAT. ANN. § 280.29, others grant foreclosed equity value to private investors in tax liens, *see, e.g.*, ARIZ. REV. STAT. § 42-18201, et seq., while still others vest seemingly absolute discretion in the governments to spend it as they prefer, *see, e.g.*, MASS. GEN. LAWS CH. 60, §§ 43, 53. Yet, for all of their differences, a common thread unites them: each of these statutes deprives property owners of vested property interests without compensation." *See id.* at 9.[13]

22
23
24

[11]https://www.supremecourt.gov/DocketPDF/22/22-166/256341/20230306143341766_22-166%20NLADA%20Amicus.pdf.  *See id.*  at  9 ("Other hard-hit areas in Arizona are those with large Latino and African-American populations.").

25
26

[12] Mahoney & Clark, *Arizona owners can lose homes over as little as $50 in back taxes*, Ariz. Republic (Jun. 16, 2017), at https://www.azcentral.com/story/money/real-estate/2017/06/12/tax-lien-foreclosures-arizona-maricopa-county/366328001/

27
28

[13] https://www.supremecourt.gov/DocketPDF/22/22-166/256348/20230306150018709_22-166%20merits%20tsac%20NAR.pdf

17

SUP000147

74.    Upon information and belief, Treasurer Allen has personal and actual knowledge of the Supreme Court's decision in *Tyler*, and its effect on the Arizona tax lien scheme. Indeed, the Arizona County Treasurers Association (ACTA) filed an amicus brief in *Tyler*. *See* BRIEF OF AMICI CURIAE NATIONAL TAX LIEN ASSOCIATION, THE ARIZONA COUNTY TREASURERS ASSOCIATION, AND THE TAX COLLECTORS & TREASURERS ASSOCIATION OF NEW JERSEY IN SUPPORT OF RESPONDENTS IN TYLER V. HENNEPIN CNTY., MINN., NO. 22-166 (Mar. 31, 2023).[14] In the brief, the ACTA, among the others named on the brief, expressly stated that a negative ruling in *Tyler* would affect jurisdictions like Arizona: "*Amici* and their members will be affected by the outcome of this case because dramatic changes to how delinquent property taxes are collected across the country could jeopardize the fiscal health of local taxing authorities, resulting in safety and economic consequences for these communities. For these reasons, *Amici* have legitimate interests in this case." (emphasis added).

75.    The amicus brief joined by the ACTA and cited above also acknowledged that a ruling for the Petitioner in *Tyler* would have broad consequences for tax collection schemes through the country: "Because of the web of tax-collection schemes that exist across the country, a broad rule adopted to address Minnesota's statutory process would unnecessarily reverberate throughout the country." *Id.* at 30 (emphasis added).

---

[14] https://www.supremecourt.gov/DocketPDF/22/22-166/262489/20230331142057501_Amicus%20Brief.pdf

18

SUP000148

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

76.      Upon information and belief, Treasurer Allen participates in Arizona County Treasurer's Association activities, and Maricopa County hosted the ACTA's conference in Fiscal Year 2023.[15]

77.      Moreover, Hennepin County itself considered the legality of its tax lien scheme to be bound up with the viability of Arizona's scheme. For instance, it cited *Automatic Art, LLC v. Maricopa Cnty.*, 2010 WL 11515708, at *5-6 (D. Ariz. Mar. 18, 2010), for the proposition that "since Arizona law did not provide for distribution of equity to a former owner, plaintiff's interest "terminated completely with the issuance of the treasurer's deed, and no deprivation of constitutional rights occurred." *See* Respondents' Response to the Petition for Writ of Certiorari at 9.[16]

78.      And for good measure, Hennepin County grouped Arizona's law with Minnesota's when it filed its merits brief before the Supreme Court: "Third, the disruption from ruling for Petitioner would be wide-ranging. At least nine states and the District of Columbia mirror Minnesota's approach in most cases." Brief for Respondents, at 43 n.19 (citing Ariz. Rev. Stat. Ann. § 42-18303(C)).[17]

_____

[15] *See* Maricopa County Treasurer's Office FY 2023 Annual Report, at 3 (June 2023) ("The Maricopa County Treasurer's Annual Report is published in the summer. It provides information on the preceding fiscal year. Fiscal year 2023 began July 1, 2022, and ended June 30, 2023."), at https://treasurer.maricopa.gov/Reports/index?fileName=Annual_Report_FY2023.pdf

[16] https://www.supremecourt.gov/DocketPDF/22/22-166/249158/20221206120550502_Tyler%20v%20Hennepin%20Respondents%20Response%20to%20the%20Petition%20for%20a%20Writ%20of%20Certiorari.pdf

[17] https://www.supremecourt.gov/DocketPDF/22/22-166/260178/20230329131415863_Hennepin%20Brief%203-29-23%20Final.pdf

19

SUP000149

79.    To drive home the point, during oral argument before the Supreme Court in *Tyler*, counsel for Hennepin County alluded to Arizona's statutory scheme as one of 19 states whose legal regimes were at stake. Transcript of Oral Argument in *Tyler v. Hennepin Cnty.*, 96:22-97:1 ("I think, here, all you need to decide is you look at this statute and the other 19 states that have exactly—you know, have very similar statutes and you ask is this reasonable[?]").[18]

80.    As noted above, the Colorado Attorney General announced in an official opinion that there does not appear to be "a reasonable basis" for concluding that *Tyler* does apply where the government gives the property to a third party.

81.    Nevertheless, upon information and belief, Defendant Allen has not engaged in any process to protect Ms. Searle's constitutional rights. Undersigned counsel has requested any and all information regarding whether Defendant Allen (1) has called or otherwise communicated with Defendants Arapaho and American Pride to apprise them of the requirements under *Tyler*; (2) attempted to unwind or re-open any prior transfer of ownership; or (3) take other measures to comply with his oath to the U.S. Constitution. Defendant Allen's office has not apprised undersigned counsel of any such efforts and has indeed stated that Defendant Allen has no plan to unwind the foreclosure.

**Defendants Actions Constitute a Taking Under the Clear Meaning of *Tyler***

---

[18] https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-166_h4d8.pdf

20

SUP000150

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

82.    Defendants' actions violate the guiding principles of both the U.S. and Arizona Constitutions, and the fundamental intent to protect homeowners from the severe consequences of tax delinquency.

83.    In *Tyler*, the Supreme Court recognized that the retention in excess value constitutes a taking. 598 U.S. at 638 ("Here there was money remaining after Tyler's home was seized and sold by the County to satisfy her past due taxes, along with the costs of collecting them. The question is whether that remaining value is property under the Takings Clause, protected from uncompensated appropriation by the State.") (emphasis added).

**Defendants Actions Constitute an Excessive Fine**

84.    When Defendants take real property pursuant to property tax seizure and retain the surplus beyond the tax debt owed, such retention transcends a mere remedial action and assumes a punitive or deterrent character. This retention of value or equity from Ms. Searle thus violates the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution.

85.    In alignment with the United States Constitution, proportionality underlies the constitutional examination under the Excessive Fines Clause of the Arizona Constitution. The extent of forfeiture must be commensurate with the severity of the underlying offense it intends to penalize.

86.    Defendant Arapaho's and American Pride's plan—and ability under Arizona's tax lien scheme—to retain the surplus following the seizure of Ms. Searle's home, which is estimated to be worth well over 200 times that of the amount of the

21

SUP000151

remaining tax balance, violates the Excessive Fines Clause as enshrined in both the Arizona and United States Constitutions as an unjust, excessive fine.

87.   Similarly, when the State is the assignee in Arizona, federal law provides that excess proceeds from a tax sale belong to and must be returned to the former owner. *See, e.g.*, *United States v. Rodgers*, 461 U.S. 677, 690-94 (1983) (in a forced sale to recover delinquent federal taxes under 26 U.S.C. § 7403, government may not ultimately collect, as satisfaction for the indebtedness owed to it, more than the amount actually due. If seizure of property extends beyond property necessary to satisfy tax debt, the excess must be repaid as compensation for the taking).

**Ms. Searle's Suit Is Not Barred by the Tax Injunction Act**

88.   Ms. Searle's relief is not precluded by the Tax Injunction Act.

89.   The legislative history of the Tax Injunction Act underscores a targeted focus: addressing cases where taxpayers preemptively attempt to circumvent their tax obligations through federal court interventions.

90.   Ms. Searle's lawsuit, grounded in constitutional claims and not seeking to evade tax liabilities, does not fit within this congressional concern. Ms. Searle's suit does not seek to avoid payment of taxes, or to prevent Arizona counties from collecting tax revenues in constitutionally appropriate manners.

**<u>CAUSES OF ACTION</u>**

**FIRST CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY WITHOUT A VALID PUBLIC USE IN VIOLATION OF THE UNITED STATES CONSTITUTION**

**AGAINST ALL DEFENDANTS**

22

91.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

92.     The Defendants' actions violate Plaintiff's constitutional rights for the reasons stated in the Second Claim for Relief.

93.     Defendants, by seizing private property without a legitimate public use, are in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

94.     There is no public use rationale to justify the appropriation or retention of surplus equity from property tax sales, particularly when such equity exceeds the amount of taxes and related charges due. The U.S. Constitution prohibits such arbitrary exercises of governmental authority.

95.     The cause of action for an unconstitutional taking is presented as a direct claim under the Fifth Amendment, as incorporated by the Fourteenth Amendment to the United States Constitution.

96.     To the extent that Arizona statutes allow or seem to permit Defendants, or any of them, to seize private property without public use, such statutes, including specific sections of the Arizona Revised Statutes relevant to property tax liens, are unconstitutional.

**SECOND CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE UNITED STATES CONSTITUTION**

**AGAINST ALL DEFENDANTS**

23

SUP000153

97.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

98.    Defendants acted pursuant to an official, albeit unconstitutional, Arizona statutory scheme.

99.    The Fifth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, states, "nor shall private property be taken for public use, without just compensation."

100.    Arizona's statutes in Title 42, Chapter 18 governing the sale of tax liens and the disposition of proceeds does not make any provision for returning the surplus of appropriated property to the original owner.

101.    These statutes facilitate and necessitate the appropriation of Plaintiff's private property without just compensation, thereby violating Plaintiff's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

102.    The cause of action for an unconstitutional taking is presented as a direct claim under the Fifth Amendment, as incorporated by the Fourteenth Amendment to the United States Constitution.

103.    Plaintiff has suffered harm and damage due to the lack of just compensation for the taken property and is therefore entitled to appropriate relief including compensatory damages.

104.    Plaintiff seeks a ruling that the Constitution demands that a direct claim for a taking be available under the Fifth Amendment, regardless of any statutory direction otherwise. *See Devillier v. State of Texas*, 63 F.4th 416, 434 (5th Cir. 2023) (Oldham, J.,

24

SUP000154

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

dissenting from denial of en banc review) ("At the Founding, it was clear that the Takings Clause afforded a remedy for uncompensated takings separate and apart from any statute.").[19]

### THIRD CLAIM FOR RELIEF

### THE VIOLATION OF PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983

### AGAINST ALL DEFENDANTS, INCLUDING DEFENDANT ALLEN IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES

105.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

106.    Ms. Searle's rights to her property and the equity therein have been unequivocally infringed under the U.S. and Arizona Constitutions. The Constitutions protect against the taking of private property without just compensation and ensure that equity in real property is treated with the same regard as any other form of property. The Supreme Court's precedent in *Olson* reinforces this protection by stating that the public cannot confiscate the benefits of a property owner's bargain. 292 U.S. 246, 255, 54 S. Ct. 704, 708, 78 L. Ed. 1236 (1934) (emphasis added). These constitutional provisions are at the heart of Ms. Searle's claim, as her home and its accrued equity have been taken without just compensation.

107.    All Defendants were acting and/or continue to act under color of state law at all times relevant hereto.

---

[19] A writ of certiorari was granted in this case, and oral argument before the U.S. Supreme Court took place on January 16, 2024. *See* Supreme Court of the United States October Term 2023, Oral Arguments, Argument Audio, Term Year 2023, at https://www.supremecourt.gov/oral_arguments/audio/2023/22-913.

25

SUP000155

108.    All Defendants are "persons" for purposes of 42 U.S.C. § 1983.

109.    Defendants' seizure and subsequent retention of Ms. Searle's property, including the substantial equity that she accumulated over 18 years, are the proximate cause of Ms. Searle's significant and demonstrable harm.

110.    As noted by the U.S. Supreme Court, these rights were clearly enunciated in the Magna Carta. *See Tyler*, 598 U.S. at 640 ("King John swore in the Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.'") (citing W. McKechnie, Magna Carta, A Commentary on the Great of King John, ch. 26, at 322 (rev. 2d ed. 1914)).

111.    Given that the *Tyler* Court expressly held that a homeowner whose property is taken to satisfy a tax debt is entitled to the surplus value after the sale of the home, this right is sufficiently clear such that any reasonable official, including Defendants Allen and Mayes, would understand that facilitating the retention of a third-party of Ms. Searle's property is a violation of her rights. *See Tyler*, 598 U.S. 631.

112.    Tyler was decided on May 25, 2023. *Id.*

113.    Upon information and belief, Defendant Allen has actual and personal knowledge of *Tyler*.

114.    While the Treasurer's Deed was issued prior to the Supreme Court's decision in *Tyler*, upon information and belief, Defendant Allen has not engaged in any measures to address Ms. Searle's rights, despite his actual knowledge that he has facilitated a taking without just compensation that has or will occur. Defendant Allen owes an ongoing duty

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

as an official who has taken an oath to the U.S. Constitution to make reasonable efforts to unwind his conduct, and at a minimum, apprise Arapaho and American Pride that they owe duties to Ms. Searle under *Tyler*.

115.    There is clear case law in federal courts that Defendant's Allen has or will result in a taking, and establishing that Arizona's tax lien scheme may be challenged.

116.    There is case law establishing the Constitution applies to the circumstances faced by Defendant Allen.

117.    The Arizona tax lien scheme has fallen into desuetude, because *Tyler* has made it obsolete.[20]

118.    The Arizona tax lien scheme is patently violative of fundamental constitutional principles.

119.    Given these violations, Ms. Searle seeks redress under 42 U.S.C. § 1983, which entitles her to seek damages for the deprivation of her constitutional rights. This includes just compensation for the property taken, as well as any additional relief deemed appropriate by the Court, such as nominal damages, compensatory damages, punitive damages, attorney fees, and costs.

---

[20] Desuetude: Disuse; cessation or discontinuance of use. Applied to obsolete statutes. (*citing James v. Comm.*, 12 Serg. & It. (Pa.) 227.), The Law Dictionary, https://thelawdictionary.org/desuetude/#:~:text=DESUETUDE%20Definition%20%26%20Legal%20Meaning&text=Disuse%3B%20cessation%20or%20discontinuance%20of,Applied%20to%20obsolete%20statutes.

27

SUP000157

**FOURTH CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY WITHOUT A VALID PUBLIC OR PRIVATE USE IN VIOLATION OF THE ARIZONA CONSTITUTION**

**AGAINST ALL DEFENDANTS**

120.   Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

121.   Article 2, Section 17 of the Arizona Constitution states: "Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made. . . ." This clause mandates that the government must provide or secure just compensation before seizing private property for public use.

122.   The taking of the surplus value of the property does not fit in any of the enumerated permissible private takings.

123.   There is no public use rationale under Arizona law to support or justify allowing the retention of surplus or equity when that equity exceeds the amount of taxes and associated charges owed. The Arizona Constitution prohibits such arbitrary exercises of governmental authority.

124.   Arizona statutes, particularly those found in Title 42, Chapter 18, allowing Defendants to seize Plaintiff's property for purposes other than public use or one of the enumerated private uses, are unconstitutional.

28

SUP000158

125.    By appropriating private property without a public use, or one of the enumerated private uses, Defendants are in violation of the Arizona Constitution.

126.    Plaintiff has suffered harm and damages due to the unconstitutional taking of her property without a public use and is entitled to just compensation and other appropriate relief.

**FIFTH CLAIM FOR RELIEF**

**TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE ARIZONA CONSTITUTION**

127.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

128.    As previously noted, the Arizona Constitution prohibits the taking of private property without just compensation regardless of the purported use of the taking.

129.    Arizona statutes, while dictating that any surplus earned by the State following a sale must be returned to the original owner, are silent regarding the surplus after a private transfer.

130.    As such, Ms. Searle has had her property taken without being justly compensated for the taking and has no available mechanism to recover the surplus other than filing this action.

131.    These tax forfeiture statutes allow the seizure of Plaintiff's private property without just compensation, thereby violating Plaintiff's constitutional rights under the Arizona Constitution.

SUP000159

132.    Plaintiff has been harmed and incurred damages due to the unconstitutional taking of her property without just compensation. She is entitled to damages and other relief as a result of this violation of her constitutional rights.

**SIXTH CLAIM FOR RELIEF**

**EXCESSIVE FINES VIOLATION OF THE UNITED STATES CONSTITUTION**

**AGAINST ALL DEFENDANTS**

133.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

134.    The Eighth Amendment to the United States Constitution safeguards the people against the imposition of excessive fines.

135.    Even a tax forfeiture sale that serves some remedial purpose not tied to criminal culpability and that occasionally confiscates property worth less than the debt owned may nevertheless constitute an excessive fine.

136.    The seizure of the entire value of Plaintiff's property, including the delta in value between the tax owed and the price of the home, due to non-payment of relatively small amounts of delinquent taxes constitutes an excessive fine under the Eighth Amendment to the United States Constitution. *See Tyler*, 598 U.S. 631, 649-50 (Gorsuch, J., concurring, with Jackson, J., joining) ("Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.").

137.    Defendant Allen is responsible for the administration of tax collection, imposition and sale of tax liens, and related proceedings in Maricopa County. These tax

SUP000160

lien seizures effectively operate as grossly excessive fines and are thus prohibited under the Eighth Amendment.

138.    Although *Tyler* did not reach the question of whether the taking at issue also constituted an excessive fine, it is clearly established that in this context, the fine placed on Ms. Searle was grossly disproportional to the taxes owed.

139.    Plaintiff has suffered, and continues to suffer, significant and irreparable harm if a permanent injunction is not issued, due to the ongoing risk of property rights violations by Defendants.

140.    Plaintiff is entitled to an award of damages against each Defendant named in his or her individual capacity in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF

#### EXCESSIVE FINES VIOLATION OF THE ARIZONA CONSTITUTION

##### AGAINST ALL DEFENDANTS

141.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

142.    Article 2, Section 15 of the Arizona Constitution prohibits the imposition of excessive fines.

143.    The confiscation of the entire value of Plaintiff's property, including the delta in value between the tax owed and the price of the home, due to the non-payment of relatively small amounts of delinquent taxes constitutes an excessive fine under Article 2, Section 15 of the Arizona Constitution.

31

SUP000161

144.     Defendants are engaged in the assessment and collection of fines that are excessive and thus prohibited under the Arizona Constitution.

145.     To the extent that the Court deems Arapaho or American Pride to be the party that is levying an excessive fine, either entity does so under color of law.

146.     Plaintiff has been harmed and incurred damages due to the imposition of unlawful excessive fines under the Arizona Constitution and is entitled to damages and other relief as a result of this constitutional violation.

### EIGHTH CLAIM FOR RELIEF

#### UNJUST ENRICHMENT

#### AGAINST ARAPAHO; AMERICAN PRIDE; JOHN DOE, JANE DOE, BLACK CORPORATIONS, WHITE PARTNERSHIPS, AND GREEN LIMITED LIABILITY COMPANIES

147.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

148.     Plaintiff contends that Arapaho, American Pride, John Doe, Jane Doe, Black Corporations, White Partnerships, and Green Limited Liability Companies have been unjustly enriched at her expense, as delineated in *Trustmark Ins. Co. v. Bank One, Ariz., NA*, where the Arizona Court of Appeals defined unjust enrichment as a situation where "one party has and retains money or benefits that in justice and equity belong to another." 202 Ariz. 535, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). In the present case, Defendants' retention of the difference between taxes and Plaintiff's property value falls squarely within this definition.

32

SUP000162

149.    "To establish a claim for unjust enrichment, the plaintiff must allege an impoverishment on his part, an enrichment to the defendant, a connection between the two, the absence of justification, and the absence of a legal remedy." *Haller v. Advanced Indus. Computer Inc.*, 13 F. Supp. 3d 1027, 1031 (D. Ariz. 2014).

150.    Plaintiff has suffered impoverishment by losing her property and the equity she had built in it over years, which far exceeds the amount of unpaid taxes.

151.    Arapaho has been enriched by acquiring the property, including the surplus equity.

152.    There is a direct connection between Plaintiff's impoverishment and Arapaho's enrichment, as the latter's gain directly corresponds to the former's loss.

153.    There is no justifiable reason for Arapaho or American Pride to retain the delta, as it exceeds the amount required to satisfy the unpaid taxes and related charges. Indeed, if Arapaho or American Pride were the state, they would be compelled by state and federal law to return the excess.

154.    The statutes and processes allowing this retention do not provide Plaintiff with an adequate legal remedy to recover her lost equity, thereby making the enrichment of Arapaho unjust.

155.    Arapaho's retention of the difference between the property value and the lien constitutes unjust enrichment under Arizona law. Consequently, Plaintiff seeks restitution of the surplus equity, which rightfully belongs to her, and any other relief deemed appropriate by the Court.

33

SUP000163

### NINTH CLAIM FOR RELIEF

#### VIOLATION OF THE ARIZONA GIFT CLAUSE

#### AGAINST DEFENDANTS ALLEN AND MAYES

156.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

157.    The Arizona Constitution provides that "Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation." Ariz. Const. art. IX, § 7.

158.    Arizona applies a two-pronged test for Gift Clause violations. First, the court must determine whether the challenged expenditure serves a legitimate public purpose. *Schires v. Carlat*, 250 Ariz. 371, 374–75, 480 P.3d 639, 642–43 (2021) citing *Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 349, 687 P.2d 354, 357 (1984). If not, the expenditure is considered a Gift Clause violation. *Id.* If a public purpose exists, the second step is to assess whether "the value to be received by the public is significantly outweighed by the consideration being paid by the public," which would also constitute a Gift Clause violation. *Id.*

159.    Under this framework, the acquisition of a tax lien by a private entity followed by the subsequent foreclosure on the property constitutes a clear Gift Clause violation.

160.    The critical aspect of the Gift Clause analysis lies in whether the value received by the public is significantly exceeded by the consideration paid by the public. In

34

SUP000164

this case, if the private entity acquires the property at a tax lien sale for a sum substantially lower than the property's fair market value, such as here, the public entity is essentially providing a substantial subsidy to the private entity. In other words, if the public entity's goal is to collect delinquent taxes, penalties, and interest, but the private entity ends up acquiring a property with a market value far in excess of the amount owed, the value received by the public (the tax debt) is dwarfed by the benefit conferred upon the private entity (ownership of a valuable property).

161.    The ostensible public purpose here is the collection of delinquent taxes. However, this purpose becomes questionable when examining the disproportionate outcome of the transaction. In Ms. Searle's case, her property, valued conservatively between $425,000 to $505,000 based on various real estate estimates, was acquired by through the foreclosure of a tax lien for a mere $1,607.68 in delinquent taxes.

162.    When applying the second prong of the *Wistuber* test, which examines the balance between the value received by the public and the consideration paid, the disparity becomes starkly evident. The amount recovered in delinquent taxes is substantially outweighed by the value of the property. This imbalance suggests that the public, in this case, has paid considerably more in consideration—in the form of lost property value and potential tax revenue from a higher-valued property—than the value it received, which merely the satisfaction of a relatively small tax debt.

163.    In essence, the transaction facilitated by the state's statutory scheme but completed by Defendant Allen has resulted in a significant and unjust enrichment of a private entity at the expense of both Ms. Searle and the public interest.

35

SUP000165

164.    This substantial subsidy to Arapaho and/or American Pride, achieved through the acquisition of a high-value property for a fraction of its worth, indicates that the value to the public is indeed significantly outweighed by what the public has paid, thereby constituting a Gift Clause violation under the Arizona Constitution.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Christine M. Searle respectfully requests that this Court:

A.    Find and declare that Defendants' taking and sale of Plaintiff's property, including all equity therein, is for no public use and violates the United States and Arizona Constitutions;

B.    Enter an injunction against Defendants preventing eviction proceedings on the basis that the taking at issue is not for public use, and therefore violates the U.S. Constitution, without regard to whether Ms. Searle ultimately receives just compensation;

C.    To the extent that the Court finds that the taking and sale of Plaintiff's property, including all equity therein, is at least partially for public use, in the alternative, that this Court rule that the delta between the value of Ms. Searle's home and her tax lien debt is a taking not for a public purpose;

D.    Enter an injunction against Defendants preventing eviction proceedings on the basis that the taking at issue is an excessive fine, and therefore violates the U.S. Constitution, without regard to whether she ultimately receives just compensation;

E.    Find and declare that Defendants' taking and sale of Plaintiff's property, including all equity therein, was not attended by payment or securing just compensation and as such, violates the United States and Arizona Constitutions;

36

SUP000166

F.    Find and declare that Defendants' appropriation of Plaintiff's real estate equity is an excessive fine in violation of the United States and Arizona Constitutions;

G.    Find and declare that relevant provisions of Title 42, Chapter 18 of the Arizona Revised Statutes are unconstitutional under the United States and Arizona Constitutions, causing such confiscations and sales to be null and void and in violation of the United States and Arizona Constitutions;

H.    Find and declare that relevant portions of Title 42, Chapter 18 of the Arizona Revised Statutes violate the Gift Clause of the Arizona Constitution;

I.    Enter an award of damages, including nominal damages, personally against Defendant Allen, given that clearly established law establishes that the sale of Ms. Searle's home will trigger a taking, and that he is thus not entitled to qualified immunity;

J.    Retain jurisdiction of this matter for the purpose of enforcing the Court's orders;

K.    To the extent that Plaintiff is deprived of her property, enter an award of compensatory damages against all Defendants under the Fifth Amendment's just compensation clause, as incorporated in the Fourteenth Amendment;

L.    To the extent that Plaintiff is deprived of her property, enter an order to disgorge the delta between the value of the home and the amount of the tax lien;

M.    Enter an award of punitive damages against individual Defendants, in their personal capacity, on the basis that Defendants continue to act in reckless disregard of Ms. Searle's rights, given that the Supreme Court's decision in *Tyler v. Hennepin* is clear that Ms. Searle cannot be deprived of her property without just compensation.

37

1        N.      Enter an award of attorney fees and costs of suit against all Defendants

2 pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54; and

3        O.      Order such other and further relief as the Court may deem just, proper and

4

5 necessary under the circumstances.

6 <div align="center">**JURY DEMAND**</div>

7        Plaintiff requests a trial by jury on all issues and claims so triable.

8

9 DATED this 26th day of January 2024.       Respectfully submitted,

10                                */s/ Grady J. Block*

11                                  Grady J. Block*

12                                William E. Trachman*

Mountain States Legal Foundation

13                                2596 S. Lewis Way

14                                Lakewood, Colorado 80227

Tele: (303) 292-2021

15                                Fax: (877) 349-7074

16                                gblock@mslegal.org

wtrachman@mslegal.org

17                                *Admitted Pro Hac Vice*

18

19                                Veronica Lucero

Davillier Law Group LLC

20                                4105 N. 20th St., Ste. 110

21                                Phoenix, AZ 85016

Tele: (602) 730-2985 ext. 705

22                                Fax: (602) 801-2539

23                                vlucero@davillierlawgroup.com

24                                *Attorneys for Plaintiff*

25

26

27

28

<div align="center">38</div>

SUP000168

Case 2:24-cv-00025-JJT    Document 90    Filed 11/17/25    Page 187 of 230

Case 2:24-cv-00025-JJT    Document 14-1    Filed 01/26/24    Page 1 of 4

ARAPAHO, LLC Tesco as Custodian, an Arizona limited..., 2021 WL 10429567...

2021 WL 10429567 (Ariz.Super.) (Trial Pleading)
Superior Court of Arizona.
Maricopa County

ARAPAHO, LLC Tesco as Custodian, an Arizona limited liability company;, Plaintiff,

v.

Christine M. SEARLE, a single woman; the Estate of Christine M. Searle, if deceased; Unknown Heirs
of the Estate of Christine M. Searle; Lago Estancia Community Association, Inc., a domestic nonprofit
corporation; Platt and Westby, PC., a domestic professional corporation; Maricopa County Treasurer, an
Arizona political subdivision; John Does I through V; Jane Does I through V; Black Corporations I through
V; White Partnerships I through V; and Green Limited Liability Companies I through V;, Defendants.

No. CV2021-012279.
August 3, 2021.

**Verified Complaint Civil - Tax Lien Foreclosure**

John L. Lohr, Jr. (SBN 019876), Jackson D. Hendrix (SBN036452), Hymson Goldstein Pantiliat & Lohr, PLLC,
14500 N. Northsight Blvd., Suite 101, Scottsdale, Arizona 85260, Telephone: 480-991-9077, E-mail: jll@hgplaw.com,
jhendrix@hgplaw.com, minute@hgplaw.com, for plaintiff.

Plaintiff, ARAPAHO, LLC AS TESCO CUSTODIAN, by way of this Complaint states and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff, ARAPAHO, LLC TESCO AS CUSTODIAN ("ARAPAHO" or "Plaintiff"), is the owner of a real property tax lien
certificate on real property located in MARICOPA County, Arizona.

2. Defendant, CHRISTINE M. SEARLE, a single woman ("SEARLE"), owns the real property at issue in this case located
in MARICOPA County, Arizona. Out of an abundance of caution, in the event SEARLE may be deceased, Plaintiff names
SEARLE'S Estate and Unknown Heirs in the alternative as they may have an interest in the property at issue (collectively the
Estate and Unknown Heirs shall be referred to as "The Estate of SEARLE").

3. Defendant, LAGO ESTANCIA COMMUNITY ASSOCIATION, INC., Domestic Nonprofit Corporation, may have an
interest in the Property through a judgement recorded with the Maricopa County Recorder's Office on August 13, 2019,
Document No. 20190619278 and a lis pendens recorded on May 6, 2014, at Document No. 20140294019.

4. Defendant, PLATT AND WESTBY, PC, domestic professional corporation; may have an interest in the Property through a
Deed of Trust recorded with the Maricopa County Recorder's Office on June 29, 2013, Document No. 20150466087.

5. Upon information and belief, Defendant, MARICOPA County Treasurer, is a political subdivision.

6. JOHN DOES I through V; JANE DOES I through V; BLACK CORPORATIONS I through V; WHITE PARTNERSHIPS I
through V; and GREEN LIMITED LIABILITY COMPANIES I through V, are fictitious names for any Defendants not named
of whom the Plaintiff later may become aware, who may have an interest in the real property at issue.

SUP000169

ARAPAHO, LLC Tesco as Custodian, an Arizona limited..., 2021 WL 10429567...

7. The real property that is the subject of this action is located in MARICOPA County, Arizona. This Court has jurisdiction over this action.

## GENERAL ALLEGATIONS

8. SEARLE owns the real property known as Assessor's Parcel No. **302-35-259** with an address of 513 S. Ash St., Gilbert, AZ 85233 (hereinafter the "Property").

9. The Property is also identified with the legal description as follows:

> **Lot 41, of PARCEL 10 OF LAGO ESTANCIA, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 359 of Maps, Page 41.**

10. DEFENDANTS (EXCLUDING THE TREASURER) failed to pay the property taxes to MARICOPA County on the Property for the 2015 tax years.

11. ARAPAHO purchased the 2015 tax lien certificate at auction, CP number **15012304.**

12. As of August 3, 2021, DEFENDANTS (EXCLUDING THE TREASURER) owed taxes and interest and fees under ARAPAHO's 2015 tax lien certificate in the amount of $1,607.68.

13. More than three years have elapsed since the date of the original sale of the tax lien certificate.

14. Pursuant to A.R.S. § 42-18201 *et al,* ARAPAHO has the right to foreclose the tax lien certificate.

15. On June 30, 2021, ARAPAHO complied with the notice requirements and sent PROPERTY OWNERS and the MARICOPA County Treasurer the 30-day notices pursuant to A.R.S. § 42-18202 as required before the commencement of this action. A true and correct copy of the 30-day notice is attached hereto as **Exhibit "1".**

16. Pursuant to A.R.S. § 42-18201 *et al,* ARAPAHO is entitled to foreclose the rights of DEFENDANTS (EXCLUDING THE TREASURER) to redeem the Property from said sale.

17. ARAPAHO is the lawful owner of the tax lien certificates on the Property, subject only to the rights of DEFENDANTS (EXCLUDING THE TREASURER) to redeem the Property and to pay its costs and attorneys' fees pursuant to A.R.S. § 42-18206.

18. ARAPAHO also purchased the 2017 and 2018 tax lien certificates at auction, CP Numbers **17013380** and **18013853** which are included for purposes of consolidation and reformation purposes only.

## FIRST CLAIM FOR RELIEF

### (LIEN FORECLOSURE PURSUANT TO A.R.S. § 42-18201 *et al,*)

19. ARAPAHO realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

SUP000170

20. A.R.S. § 42-18201 provides that "[a]t any time beginning three years after the sale of a tax lien certificate but not later than ten years after the last day of the month in which the lien was acquired pursuant to § 42-18114, if the lien is not redeemed, the purchaser or the purchaser's heirs or assigns, or the state if it is the assignee, may bring an action to foreclose the right to redeem."

21. A.R.S § 42-18202 provides as follows:
A. At least thirty days before filing an action to foreclose the right to redeem under this article, but not more than one hundred eighty days before such an action is commenced or may be commenced under § 42-18101 the purchaser shall send notice of intent to file the foreclosure action by certified mail to:

1. The property owner of record according to the records of the county recorder in the county in which the property is located or to all of the following:

(a) The property owner according to the records of the county assessor in the county in which the property is located as determined by § 42-13051.

(b) The situs address of the property, if shown on the tax roll and if different from the owner's address under subdivision (a).

(c) The tax bill mailing address according to the records of the county treasurer in the county in which the property is located if that address is different from the addresses under subdivisions (a) and (b).

2. The treasurer of the county in which the real property is located.

B. The notice shall include:

1. The property owner's name.

2. The real property tax parcel identification number.

3. The legal description of the real property.

4. The certificate of purchase number.

5. The proposed date of filing the action.

22. ARAPAHO complied with A.R.S § 42-18202 and sent the 30-day notices.

23. A.R.S. § 42-18204(A) provides that "[i]n an action to foreclose the right to redeem, if the court finds that the sale is valid and that the tax lien has not been redeemed, the court shall enter judgment:
1. Foreclosing the right of the defendant to redeem.

2. Directing the county treasurer to expeditiously execute and deliver to the party in whose favor judgment is entered, including the state, a deed conveying the property described in the certificate of purchase.

24. Pursuant to A.R.S. § 42-18204(A), ARAPAHO is entitled to a Judgment foreclosing DEFENDANTS' (EXCLUDING THE TREASURER) rights of redemption as three years have passed since the sale of the tax lien certificates in its favor and the sales were valid.

SUP000171

ARAPAHO, LLC Tesco as Custodian, an Arizona limited..., 2021 WL 10429567...

25.  ARAPAHO  is  entitled  to  a  Judgment  that  orders  that  it  is  the  lawful  owner  of  the  Property  and  foreclosing
DEFENDANTS' (EXCLUDING THE TREASURER) rights to

26. ARAPAHO is entitled to a Judgment that directs the MARICOPA County Treasurer to expeditiously execute and deliver to
ARAPAHO a deed conveying the Property described in the certificate of purchase.

27. ARAPAHO is entitled to its costs and attorneys' fees as allowed by law pursuant to A.R.S. § 42-18206 if DEFENDANTS
(EXCLUDING THE TREASURER) redeem after the commencement of this lawsuit.

WHEREFORE, ARAPAHO requests Judgment against DEFENDANTS (EXCLUDING THE TREASURER) as follows:

A. For an order establishing ARAPAHO's sole and exclusive rights in the Property and forever barring and estopping
DEFENDANTS (EXCLUDING THE TREASURER) or their agents, representatives, successors, and/or assigns from having
or claiming any right or title to the Property adverse to ARAPAHO;

B. For an order, directing MARICOPA County to issue a deed in ARAPAHO's favor;

C. For costs and attorneys' fees incurred herein as allowed by law in the event that a Defendant redeems; and

D. For an award of attorneys' fees in the amount of no less than $3,500.00 in the event ARAPAHO obtains a Default Judgment
against any person that holds a legal or equitable interest that redeems. For such other and further relief as the Court deems
just and proper.

RESPECTFULLY SUBMITTED this 3 rd day of August 2021.

**HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**

<<signature>>

John L. Lohr, Jr. (SBN 019876)

Jackson D. Hendrix (SBN 036452)

*Attorneys for Plaintiff*

---

End of Document                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SUP000172

# EXHIBIT "3"

Clerk of the Superior Court
*** Electronically Filed ***
L. Sanchez, Deputy
2/26/2025 4:57:38 PM
Filing ID 19406301

1    John L. Lohr, Jr. (SBN 019876)
2    David B. Goldstein (SBN 003410)
     Justin D. Yetter (SBN 038956)
3    **HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**
     8706 E. Manzanita Drive, Suite 100
4    Scottsdale, Arizona 85258
     Telephone:  480-991-9077
5    E-mail: jll@hgplaw.com
     dbg@hgplaw.com
6    jyetter@hgplaw.com
     minute@hgplaw.com
7    *Attorneys for Arapaho, LLC*
     *and American Pride Properties, LLC*
8

9              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10                **IN AND FOR THE COUNTY OF MARICOPA**

11   CHRISTINE M. SEARLE;                    Case No. CV2024-022530

12                  Plaintiff,              **REPLY IN SUPPORT OF MOTION TO**
13                                                    **DISMISS**

     v.                                      (Assigned to the Honorable Christopher
14                                                          Whitten)

15   JOHN M. ALLEN, IN HIS OFFICIAL            **Oral Argument Requested**
     CAPACITY AS THE TREASURER OF
16   MARICOPA COUNTY; ARAPAHO,
     LLC; AMERICAN PRIDE
17   PROPERTIES, LLC; JOHN DOE; JANE
     DOE; BLACK CORPORATIONS;
18   WHITE PARTNERSHIPS; and GREEN
     LIMITED LIABILITY COMPANIES;
19

20                  Arapaho Defendants.

21        Arapaho Defendants, ARAPAHO, LLC ("Arapaho") and AMERICAN PRIDE

22   PROPERTIES, LLC ("AMPP") (collectively "Arapaho Defendants"), file their Reply in

23   Support of their Motion to Dismiss. Arapaho Defendants respectfully request that this Court

24   dismiss Plaintiff's, Christine M. Searle ("Plaintiff" or "Searle"), Complaint for the following

25   reasons:

26        1.   Searle and her counsel are completely obfuscating the facts surrounding Arapaho

27             Defendants' good faith efforts to have Searle dismiss the case. Arapaho

28             Defendants' counsel and Searle's counsel had two separate good faith video

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

SUP000232

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

conference meetings where Arapaho Defendants requested that Searle dismiss the case and Searle's counsel refused.  One meeting occurred on November 18, 2024, before Arapaho Defendants filed the Motion and one after on January 30, 2025. See the calendar invitation sent from William E. Trachman attached hereto as **Exhibit 1** and January 29, 2025 email exchange between counsel attached as **Exhibit 2**. Bottom line is that no matter how many times Arapaho Defendants would have asked Searle to dismiss the case, she is and always was going to refuse to do so. Thus, any good faith efforts on Arapaho Defendants part were always going to be futile.  Thus, the requirements of Rules 7.1(h) and 12 (j), Arizona Rules of Civil Procedure have been satisfied.

2.  Contrary to Searle's response, *res judicata* does control and the cases she cited do not obviate the preclusive effect of the doctrine.

3.  Searle confused the collateral attack rule with collateral estoppel.[1]  Arapaho Defendants did not argue that collateral estoppel applies. Under the collateral attack rule, Searle cannot collaterally attack the prior State Court Judgment with this new lawsuit. Because Searle failed to address the collateral attack doctrine at all in her response, Arapaho Defendants should prevail on this argument.

4.  Arapaho Defendants are not state actors. The out-of-state Nebraska law cited by Searle does not make sense and is not controlling on this Court. Therefore, none of the constitutional claims can be sustained against Arapaho Defendants.

5.  Searle wants desperately for the Arapaho Defendants to be state actors but then complains that the Arapaho Defendants caught her flat-footed on her inaction of not sending a notice of claim six months prior to her filing her lawsuit as required

---

[1] "Collateral estoppel" refers to a legal doctrine that prevents a party from relitigating an issue that was already decided in a previous lawsuit, essentially barring them from raising the same issue again in a different case, while a "collateral attack" is a challenge to the validity of a prior judgment made in a separate legal proceeding, rather than directly appealing the original decision; essentially, it's an attempt to undermine a judgment outside of the original case where it was rendered.

2

SUP000233

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1  by A.R.S. § 12-821.01(A). Searle cannot have it both ways. Either Arapaho
2  Defendants are not state actors, and the constitutional claims do not apply, or if
3  they are, Searle's claims must be dismissed for failing to comply with A.R.S. § 12-
4  821.01(A).

5  6.  Searle admits that she failed to serve a Notice of Claim. There were never any
6  emergency circumstances justifying Searle's failure to comply with A.R.S. § 12-
7  821.01(A) as claimed.  Because Searle is not seeking to recover title to the
8  foreclosed property in this or in the federal case and only money damages, she was
9  never legally entitled to possession of the property requiring emergency relief.
10  Arapaho Defendants voluntarily agreed to allow Searle to stay in the home to save
11  attorney's fees on having to deal with Searle's application for injunction in federal
12  court until resolution of her claims but that does not mean she could legally avoid
13  the requirements of A.R.S. § 12-821.01(A).

14  7.  Searle's claims are barred by the statute of limitations. Searle completely misses
15  the mark on when the statute of limitations began to run. Searle failed to even
16  explain why the date she chose should be the starting point and why the dates
17  Arapaho Defendants asserted do not control. Contrary to Searle's argument, the
18  latest date the statute of limitations started to run was from the date of the Amended
19  Judgment, which was the mechanism that allegedly deprived her of her equity in
20  the property, not the ministerial act of the Treasurer issuing the treasurer's deed as
21  Searle claims in her response.

22  8.  Whether she likes it or not, giving the State a pass by dismissing it from the Federal
23  case with prejudice is fatal to Searle's claims. The State adopted the law that Searle
24  complains of so vehemently and was therefore an indispensable party precluding
25  this case.

26  This Reply is supported by the following memorandum of law set forth below.

27
28

3

SUP000234

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    LEGAL ARGUMENT**

   **A.  Searle's claims are barred by *res judicata*.**

   Plaintiff's claims are barred by *res judicata*, which precludes a party from relitigating claims that were or could have been raised in a prior proceeding. See *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.*, 26 Ariz. App. 204, 206 (1976) (holding that res judicata applies where "every point raised by the record which could have been decided" was not litigated). In Arizona, a default judgment has the same res judicata effect as a judgment on the merits where the party had an opportunity to litigate the issues. *Technical Air Products, Inc. v. Sheridan-Gray, Inc.*, 103 Ariz. 450, 452, 445 P.2d 426, 428 (1968).

   Here, Plaintiff had ample opportunity to challenge the foreclosure action on constitutional grounds, including asserting a takings claim, before the final judgment was entered. Instead, she chose not to appear, failed to answer, and only sought relief through a post-judgment motion—which was denied and affirmed on appeal. The prior foreclosure judgment (in CV2021-012279) fully adjudicated her rights in the property, including the extinguishment of her legal and equitable interest.

   Plaintiff incorrectly asserts that she could not have raised a Takings Clause claim in the Foreclosure Action because the Supreme Court's decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), established that claim for the first time. But the Takings Clause of the Fifth Amendment has been recognized as a valid cause of action for decades, long before *Tyler*. Even before *Tyler*, property owners had successfully challenged tax foreclosure schemes under the Takings Clause. See *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434 (2020).  If Plaintiff believed the facts of this case supported a takings claim, she could have raised it in the foreclosure action. Parties can always attempt to advocate for a change in the law or that a law is unconstitutional despite prior precedent as long as they have good faith basis for doing so. Here, there were cases around the country that challenging the constitutionality of state property tax lien collection structures and even law review articles on

22071-230:PD 2861941v2

SUP000235

the subject. *See, e.g.,* Celene Chen, Homeowners' Rights: How Courts Can Prevent States from Stealing Home Equity During Property Tax Foreclosure, 41 Rev. Banking & Fin. L. 385, 385 (2021). If Plaintiff's argument were accepted, *res judicata* would never apply simply because a new precedent was later issued by a higher court.

Plaintiff had a full and fair opportunity to raise the takings claim in the previous foreclosure action. She could have raised that argument in her Rule 60 motion or on direct appeal. She failed to do so, and the Arizona Court of Appeals affirmed the denial of post-judgment relief.

*Industrial Park* does not support Plaintiff's argument. The *Industrial Park* Court refused to apply *res judicata* where the plaintiff could not have raised certain claims in the prior litigation because the previous case was a forcible detainer action—a limited proceeding that only determines the right of possession. See *Industrial Park*, 26 Ariz. App. at 206. Here, real property tax lien foreclosure actions are not limited proceedings—Plaintiff had every opportunity to challenge the validity of the tax lien foreclosure, including under constitutional grounds.

Plaintiff also cites *Ray v. Frye*, 119 P.2d 941 (Ariz. 1941), which is also inapposite. *Ray* addressed whether a county board of supervisors was obligated to accept a conditional bid in a tax sale—not whether *res judicata* applies to foreclosure judgments. Plaintiff appears to rely on *Ray* to argue that Arizona law has long permitted tax foreclosures without considering surplus equity. However, *Ray* did not address constitutional takings claims, nor did it hold that tax lien foreclosure judgments are immune from constitutional challenges.

Further, Plaintiff cannot escape *res judicata* simply because the judgment in the Foreclosure Action stemmed from a default. Under Arizona law, a default judgment has the same preclusive effect as a judgment on the merits where the party had an opportunity to litigate the claims but failed to do so. See *Technical Air Products, Inc. v. Sheridan-Gray, Inc.*, 103 Ariz. at 452, 445 P.2d at 428; *Miner Contracting, Inc. v. Toho-Tolani County Imp. Distr.*, 233 Ariz. 249 (Ct. App. 2013). Plaintiff was personally served with the Foreclosure Action Complaint, was notified of the pending default in compliance with Rule 55 (a)(2), Arizona

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

5

SUP000236

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    Rules of Civil Procedure, and failed to respond. She then unsuccessfully attempted to set aside

2    the judgment, and the denial of her motion to vacate the judgment was affirmed on appeal.

3    Because Plaintiff had a full and fair opportunity to present her claims but failed to do so, she

4    cannot now circumvent *res judicata*.

5        Accepting Plaintiff's argument would create an unworkable precedent in which any

6    litigant could evade *res judicata* by waiting for a change in case law before attempting to

7    relitigate previously adjudicated claims.

8    **B. Searle cannot collaterally attack the prior judgment in the foreclosure**

9        **proceeding.**

10        Searle failed to address the collateral attack argument entirely. On this basis alone, the

11    case should be dismissed. She conflates collateral estoppel with collateral attack, two distinct

12    legal doctrines. The Arapaho Defendants did not raise collateral estoppel as a defense; rather,

13    they argued that her claims are barred under the collateral attack rule. Because Searle's

14    response does not actually address the argument presented, it is legally deficient and should be

15    disregarded.

16        The collateral attack doctrine applies when a plaintiff attempts to invalidate or destroy

17    the effect of a prior court judgment in a separate legal proceeding. See *Cox v. Mackenzie*, 70

18    Ariz. 308, 312, 219 P.2d 1048, 1051 (1950). A collateral attack is an impermissible, indirect

19    challenge to a final judgment, as opposed to a direct appeal. Courts do not allow the collateral

20    attacks which offend the finality accorded to a final judgment.

21        Here, Plaintiff already sought to set aside the foreclosure judgment through a Rule 60

22    Motion to Set Aside, yet she again failed to raise any constitutional challenge at that time. The

23    Court denied her motion, and that denial was affirmed on appeal. Now, Plaintiff seeks to

24    circumvent the final foreclosure judgment by filing a separate lawsuit to relitigate the same

25    issues, effectively seeking a second chance at relief she failed to obtain in the original case.

26    This is a textbook example of an improper collateral attack. Moreover, Plaintiff did not even

27    attempt to refute Arapaho Defendants' argument on this point. For these reasons, this case

28    should be dismissed as an impermissible collateral attack on a final judgment.

SUP000237

### C. Arapaho Defendants cannot be state actors.

Plaintiff's Response fails to establish that Arapaho Defendants acted as state actors. Plaintiff's arguments largely rely on case law from Nebraska and New Jersey, which are not controlling on this Court. See *Cont'l Res. v. Fair*, 317 Neb. 391, 407 (Neb. 2024) *Nieveen v. TAX 106*, 317 Neb. 425, 433 (Neb. 2024). Additionally, those cases are distinguishable from the present case.

Plaintiff asserts that Arapaho Defendants exercised state-conferred powers and are thus state actors. But merely utilizing a state-created process does not transform private actors into state actors. In *Culbertson v. Leland*, 528 F.2d 426 (9th Cir. 1975), the Ninth Circuit held that a private party enforcing rights granted by statute does not equate to state action absent direct government involvement in the deprivation. Here, Arapaho Defendants exercised their statutory rights to foreclose on a tax lien they privately purchased. The Treasurer's involvement in selling tax liens and issuing deeds is entirely administrative and does not constitute "significant state involvement" as required under *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972).

This is unlike *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), where the state itself assisted in enforcing a prejudgment seizure. This is also unlike *Tyler v. Hennepin County*, 598 U.S. 631 (2023), upon which Plaintiff relies heavily. *Tyler* involved a direct governmental taking of property, where Minnesota's tax foreclosure process resulted in the government keeping surplus equity. Arizona's tax lien system is fundamentally different: The state does not seize or retain property. Private parties, not the government, acquire liens and enforce foreclosures. If an owner redeems the lien – and is given a required notice of its right to do so, the state has no further involvement.

By that same logic, Plaintiff's reliance on *Cont'l Res. v. Fair, 317 Neb. 391* and *Nieveen v. TAX* 106, 317 Neb. 425 is also misplaced and inapplicable. First, Nebraska rulings are not controlling on this Court. Secondly, Arizona law more narrowly defines the role of private parties and state government in the tax lien foreclosure process. A.R.S. § 42-18151 and A.R.S. § 42-18201 provide detailed procedures for the redemption and foreclosure of tax liens,

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

7

SUP000238

1  emphasizing the roles of private purchasers and the county treasurer. These statutes outline the

2  responsibilities and actions of private tax lien holders without explicitly categorizing them as

3  state actors. The Arizona Legislature's decision to detail the roles of private parties and state

4  actors clearly indicates an intention for the private actors and state actors to remain separate,

5  different than the holdings of the Nebraska case law. There is not a sufficient nexus between

6  the Treasury's ministerial role and Arapaho Defendants' purchase of the tax lien to consider

7  Arapaho Defendants state actors.

8      *257-261 20th Ave., Realty, LLC v. Roberto, 259 N.J. 417*(NJ 2025) is also not

9  controlling. The holding was based on the state's significant and direct involvement in the

10  process, creating a sufficient nexus that *"may"* or "**can**" transform a party private party into a

11  state actor. The court's careful choice of conditional language is insightful and underscores the

12  fact-specific nature of its holding. Here, the Treasury's ministerial role is far from the

13  significant and direct involvement required to deem Arapaho Defendants state actors. Arapaho

14  Defendants, as *Culberson* suggests, should not be held as a state actor for merely utilizing a

15  state-created process. If that were not the case, nearly everyone who acted pursuant to state-

16  created processes or even laws, whether foreclosing on a mortgage, enforcing a contract, or

17  evicting a tenant, would be deemed a state actor.

18      Further, as Arapaho Defendants' Motion outlined, at this point, the state is no longer

19  involved and Arapaho Defendants' foreclosure efforts are legally no different than the

20  foreclosure of any other lien or mortgage. As such, the most critical aspect of a Takings Clause

21  violation, a state taking, is not present. Plaintiff has failed to meaningfully rebut this focal point

22  of the analysis.

23      Plaintiff also suggests that Arapaho Defendants engaged in a "joint action" with the

24  government, citing *Dennis v. Sparks*, 449 U.S. 24 (1980). However, *Sparks* involved private

25  parties conspiring with a judge to obtain a wrongful ruling—far from the neutral and

26  ministerial role the Treasurer plays in Arizona's lien process. Plaintiff cannot claim that

27  Arapaho Defendants had any improper agreement, collusion with the County.

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

8

SUP000239

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    Lastly, Plaintiff relies on *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S.

2    288, 296 (2001) to support her claim that the Maricopa County Treasurer played a role so

3    integral as to deem Arapaho Defendants a state actor. But in *Brentwood,* the Supreme Court

4    found state action due to the pervasive entwinement of public officials in the governance,

5    funding, and rule enforcement of the Tennessee Secondary School Athletic Association

6    (TSSAA). There, 84% of the Association's membership consisted of public schools, its

7    governing bodies were composed entirely of public school administrators, and its rules were

8    historically approved and enforced by the Tennessee State Board of Education. The

9    Association effectively functioned as an arm of the government.

10    In stark contrast, the Maricopa County Treasurer's role in the tax lien foreclosure

11    process is purely administrative and ministerial. Once the Treasurer sells a tax lien, the state's

12    role completely ends (other than the ministerial act of the treasurer's deed after the private

13    investor completes the foreclosure), and the private lienholder operates independently—just as

14    a mortgagee enforcing a foreclosure would. Unlike in *Brentwood*, where the government was

15    entwined in both policy and enforcement, the Arizona tax lien system merely establishes a

16    neutral statutory framework for private transactions. Accordingly, Plaintiff's reliance on

17    *Brentwood* is misplaced, and Arapaho Defendants cannot be deemed state actors.

18    Plaintiff's Response fails to identify any basis for treating Arapaho Defendants as state

19    actors. Arizona's tax lien foreclosure system is a private process with no state involvement

20    beyond statutory enactment and administrative facilitation. The state neither retains property

21    nor directs lienholder actions. Because Plaintiff's claims do not constitute a constitutional

22    deprivation by a state actor, the claims must be dismissed.

23    **D. Searle admittedly failed to comply with the notice of claim statute**

24    Plaintiff does not dispute that she failed to serve any of the Arapaho Defendants with

25    the required notice of claim six months prior to filing her lawsuit as required by A.R.S. § 12-

26    821.01(A). Rather, after Plaintiff argues vehemently that Arapaho Defendants should be

27    considered state actors, she then turns around and argues that she was not required to serve the

28    notice of claim, which is required when filing a lawsuit against state actors.

9

22071-230:PD 2861941v2

SUP000240

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1    Plaintiff's Complaint raised eight claims for relief, none of which are claims for

2    injunctive relief. Further, Plaintiff is not seeking title to the Property and therefore there was no

3    basis for injunctive relief. Any claim for injunctive relief was extinguished when Arapaho

4    Defendants stipulated not to evict Plaintiff from the Property allowing Plaintiff to continue

5    living in the Property while the litigation proceeded. Any attempt by Plaintiff to rely on

6    vaguely worded requests for relief as sufficient to nullify their requirement to serve a notice of

7    claim should be disregarded. To the extent Arapaho Defendants are to be considered state

8    actors, which Arapaho Defendants argue they are not, Plaintiff was required to serve a notice

9    of claim. She did not. As such, her claims should be dismissed for failure to comply with the

10    claims statute.

11    Even if the emergency situation existed initially before Plaintiff filed her federal case,

12    no emergency existed requiring injunctive relief prior to filing the present action.  Thus, there

13    was no excuse for Plaintiff's failure to comply with A.R.S. § 12-821.01(A) prior to filing the

14    present action.

15    **E.  Searle's claims are barred by the statute of limitations.**

16    Plaintiff's Response fails to overcome the clear bar of the statute of limitations.

17    Plaintiff's claims, whether framed under § 1983 or the Arizona Constitution, accrued no later

18    than December 15, 2021, when the Judgment in the Foreclosure Action was recorded. Plaintiff

19    did not initiate this lawsuit until August 19, 2024—more than two years and eight months

20    later—well beyond the applicable statute of limitations. Plaintiff's efforts to establish a later

21    accrual date, including the assertion that her Takings claim did not accrue until just

22    compensation was denied, fail as a matter of law.

23    A claim under § 1983 accrues when the plaintiff "knows or has reason to know of the

24    injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

25    In this case, Plaintiff knew of the alleged injury—the foreclosure and the alleged deprivation of

26    her property rights—at multiple possible points:

27    (1) August 18, 2021, when she was served with the Foreclosure Complaint;

28    (2) September 8, 2021, when she was given notice that default would be entered;

10

SUP000241

1    (3) December 14, 2021, when the Judgment was entered;

2    (4) December 15, 2021, when the Judgment was recorded.

3    Any of these dates could reasonably be argued to be the start of the statute of limitations

4 clock under Arizona's two-year limitations period for § 1983 claims. See A.R.S. § 12-542;

5 *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004). Because Plaintiff filed

6 this action on August 19, 2024—well beyond the two-year period—her § 1983 claims are

7 time-barred.

8    The argument her Takings claim did not accrue until just compensation was denied is

9 meritless for two reasons. First, the Ninth Circuit has made clear that a Takings claim accrues

10 when the plaintiff could have challenged the taking, not when compensation is formally

11 denied. *See San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1101-02 (9th

12 Cir. 1998). Here, Plaintiff could have asserted her claims as early as the initiation of the

13 Foreclosure Action and certainly by the entry of Judgment in December 2021. Second,

14 Plaintiff's reliance on *Knick v. Township of Scott*, 588 U.S. 180 (2019), is entirely misplaced.

15 Plaintiff mischaracterizes *Knick* as supporting her assertion that a Takings claim is not ripe

16 until just compensation is denied. In fact, *Knick* explicitly overruled *Williamson County*

17 *Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), and rejected the notion

18 that a plaintiff must first be denied compensation through state procedures before pursuing a

19 Takings claim. The Supreme Court was unequivocal. A property owner acquires a right to

20 compensation immediately upon an uncompensated taking because the taking itself violates the

21 Fifth Amendment. The Court further stated that a Takings claim is ripe "at the time of the

22 taking, regardless of post-taking remedies." *Knick*, 588 U.S. at 190. Thus, Plaintiff's assertion

23 that her claim did not accrue until a formal denial of compensation is fundamentally incorrect

24 and contrary to Supreme Court holding in *Knick*.

25    Moreover, Plaintiff entirely fails to address the exception to the general rule that a

26 Takings claim accrues when just compensation is denied—namely, that where the state lacks a

27 "reasonable, certain, and adequate provision for obtaining compensation" at the time of the

28 taking, the claim is immediately ripe. See *San Remo Hotel*, 145 F.3d at 1101-02 (citing

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

11

1  *Williamson County*, 473 U.S. at 194). Plaintiff alleges precisely that: that Arizona's tax-lien

2  statutes failed to provide a mechanism for her to obtain just compensation. Under her own

3  theory, her claim was "instantly ripe" at the time of the foreclosure, meaning the statute of

4  limitations began running immediately. Her failure to address this argument further

5  underscores that her claims are untimely.

6      Plaintiff's Excessive Fines and Arizona Constitutional claims fail for the same reasons

7  as her Takings claims—they accrued at the time of the alleged taking or when Plaintiff could

8  have first brought her claims. The continued retention of the Property does not extend or restart

9  the limitations period. Because Plaintiff did not file her claims within the applicable

10  timeframes—two years for federal claims and one year for Arizona constitutional claims—they

11  are time-barred and must be dismissed.

12      **F.  Equitable tolling should not apply.**

13      As briefed in Arapaho Defendants' Motion to Dismiss, equitable tolling applies only

14  when a plaintiff is excusably ignorant of the relevant limitations period and the defendant

15  would not be prejudiced. *Kyles v. Contractors/Engineers Supply, Inc.,* 190 Ariz. 403, 406, 949

16  P.2d 63, 66 (Ct. App. 1997). Plaintiff fails to establish either prong.

17      Plaintiff's argument that she was unaware of her Takings claim until *Tyler v. Hennepin*

18  *County*, 598 U.S. 631 (2023), is unpersuasive. The courts' previously rejection of similar

19  claims does not render Plaintiff "excusably ignorant" of her legal rights. A change in legal

20  precedent does not reset the statute of limitations. *See Martinez v. United States*, 333 F.3d

21  1295, 1319 (Fed. Cir. 2003) (declining to apply equitable tolling where a plaintiff "sleeps on

22  his rights" despite later changes in the law).

23      Further, Plaintiff's history of delinquency in paying property taxes undermines any

24  claim that she was unaware of the consequences of nonpayment. She previously failed to pay

25  taxes and had to redeem the property during the commencement of at least three prior lawsuits

26  before the last foreclosure action, demonstrating clear awareness of the tax lien system and its

27  implications. Her claim of ignorance now is neither credible nor a basis for tolling.

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

12

SUP000243

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

1     Plaintiff attempts to invoke equitable tolling by asserting that Arapaho Defendants

2 "actively concealed" her rights or "failed to provide notice." But Plaintiff does not allege any

3 specific act of concealment because none exist. Simply claiming that Arapaho Defendants

4 actively concealed what Ms. Searle's rights were does not make it so. Instead, Plaintiff

5 suggests that the structure of Arizona's tax lien system itself deprived her of information. This

6 is insufficient to trigger equitable tolling.

7     Further, the law does not require Arapaho Defendants to educate Plaintiff about her

8 legal rights or potential claims. Even so, Arapaho Defendants provided notice multiple times to

9 Plaintiff regarding the consequences of her continued failure to redeem when she received the

10 foreclosure complaint and notice of default. Plaintiff's failure to pay property taxes—not any

11 action by Arapaho Defendants—triggered the foreclosure process. Her suggestion that

12 Arapaho Defendants should have somehow ensured she understood potential claims stemming

13 from her failure to act is contrary to fundamental principles of personal responsibility. Plaintiff

14 cannot bury her head in the sand, claim ignorance, and shift the responsibility for asserting her

15 legal rights onto Arapaho Defendants. Holding otherwise would create a dangerous and

16 inequitable precedent whereby individuals would be better off ensuring they are unaware of

17 their legal rights and potential claims, rendering statutes of limitations largely useless.

18     Plaintiff also failed to address Arapaho Defendants' claim that equitable tolling is

19 inappropriate where a defendant would be prejudiced by a plaintiff's delayed filing. Plaintiff

20 entirely ignores this requirement. Allowing her to proceed with this lawsuit would subject

21 Arapaho Defendants to unnecessary litigation costs and the potential for liability that should

22 have been resolved long ago.

23     Plaintiff's attempt to litigate this issue after the expiration of the limitations period—

24 despite having multiple prior opportunities to do so—demonstrates precisely why statutes of

25 limitations exist. Arapaho Defendants should not be required to defend against claims that

26 Plaintiff failed to bring within the legally prescribed time. She was not excusably ignorant of

27 her rights, Arapaho Defendants did not conceal anything, and it is not Arapaho Defendants'

28 responsibility to protect her legal claims. Additionally, Arapaho Defendants would be

1  prejudiced if the Court permitted this case to proceed. For these reasons, Arapaho Defendants
2  respectfully request that the Court grant the Motion to Dismiss.

3  **G. There can be no doubt that the State was an indispensable party.**

4  Plaintiff's assertion that the State is not an indispensable party is contradicted by their
5  own arguments. In their Response to Arapaho Defendants' Motion to Dismiss, Plaintiff
6  repeatedly claims that the State conferred authority to Arapaho Defendants, that Arapaho
7  Defendants "wielded state-conferred power," acted with "substantial assistance from state
8  officials," and engaged in "close cooperation" with the State. *See* Plaintiff's Response at pp.
9  11–16. By Plaintiff's own reasoning, the State played a crucial role in the tax lien statutory
10  framework and Arapaho Defendants' actions. Yet, despite emphasizing the State's significant
11  involvement, Plaintiff simultaneously argues that the State is not an indispensable party.

12  As fully briefed in Arapaho Defendants' Motion, the State is an indispensable party
13  under Rule 19(a*), Ariz. R. Civ. P.* Any alleged constitutional violation would have been
    committed by the State, and any monetary relief Plaintiff seeks would be owed by the State.
15  Therefore, the State's inclusion in this lawsuit was required, and its omission warrants
16  dismissal.

17  **II.    CONCLUSION**

18  For the foregoing reasons, Plaintiff's claims must be dismissed. Plaintiff's arguments
19  fail on multiple independent grounds, including *res judicata*, the collateral attack doctrine,
20  lack of state action, failure to comply with the notice of claim statute, expiration of the
21  statute of limitations, and the absence of an indispensable party. Additionally, Plaintiff's
22  reliance on inapplicable case law does not change the fundamental fact that Arapaho
23  Defendants are private entities, not state actors.

24  Because Plaintiff's claims are legally deficient and procedurally barred, Arapaho
25  Defendants respectfully request that this Court grant their Motion to Dismiss in its entirety.

26

27

28

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

14

22071-230:PD 2861941v2

RESPECTFULLY SUBMITTED this 26th day of February, 2025.

**HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**

/s/John L. Lohr, Jr.
John L. Lohr, Jr. (SBN 019876)
David B. Goldstein (SBN 003410)
Justin D. Yetter (SBN 038956)
*Attorneys for Arapaho Defendants*

ORIGINAL e-filed this 26th day of February, 2025
and copies emailed and mail the same day to:

Veronica Lucero
Davillier Law Group, LLC
2201 E. Camelback Rd., Ste. 355
Phoenix, AZ 85016
Vlucero@davillierlawgroup.com
PhxAdmin@davillierlawgroup.com
*Attorney for Christine M. Searle*

Grady J. Block
William E. Trachman
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
gblock@mslegal.org
wtrachman@mslegal.org
*Attorney for Christine M. Searle*

Kim Miles
Maricopa County Attorney's Office
225 West Madison Street
Phoenix, Arizona 85003
milesk@mcao.maricopa.gov

/s/Rachel Hogan

22071-230:PD 2861941v2

SUP000246

**EXHIBIT "1"**

SUP000247

| | |
|---|---|
| **Subject:** | Arapaho - Searle; Rule 408 Settlement Offer |
| **Location:** | Microsoft Teams Meeting |
| | |
| **Start:** | Mon 11/18/2024 3:00 PM |
| **End:** | Mon 11/18/2024 3:30 PM |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Accepted |
| | |
| **Organizer:** | William Trachman |

---

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 268 677 155 806

Passcode: uSG9Kp

---

**Dial in by phone**

+1 720-464-2155,,901788214# United States, Denver

Find a local number

Phone conference ID: 901 788 214#

For organizers: Meeting options | Reset dial-in PIN

---

1

SUP000248

| | |
|---|---|
| **Subject:** | Re: ARAPAHO - SEARLE; RULE 408 SETTLEMENT OFFER |
| **Start:** | Mon 11/18/2024 3:00 PM |
| **End:** | Mon 11/18/2024 4:00 PM |
| **Recurrence:** | (none) |
| **Organizer:** | John Lohr Jr |

------------

| | |
|---|---|
| **From:** | William Trachman <wtrachman@mslegal.org> |
| **Sent:** | Thursday, November 14, 2024 9:05 PM |
| **To:** | John Lohr Jr |
| **Cc:** | vlucero@davillierlawgroup.com; Grady Block; Nicole Taylor; David Goldstein |
| **Subject:** | Re: ARAPAHO - SEARLE; RULE 408 SETTLEMENT OFFER |

Hi John. Grady and I are traveling this week but how about 3pm MT on Monday?

On Nov 14, 2024, at 2:25 PM, John Lohr Jr <jll@hgplaw.com> wrote:

William

We filed the Answering Brief.

It varied a bit from the draft I sent to you last week.

Once you have a chance to review, I would like to discuss your email below with you.

Please let me know a good time tomorrow or Monday to call.

Thanks.

**HGPL MOVED!**

SUP000249

As of June 10th, you will find us at:

8706 E. Manzanita Drive, Suite 100

Scottsdale, AZ 85258

Our new office is conveniently located off the AZ Loop 101 Freeway
at Via de Ventura (Exit 43).

HGPL's telephone numbers, email addresses and website will remain the same.

We look forward to seeing you at our new location!

<image001.png>

"Try and keep trying with a positive mental attitude."  W. Clement Stone

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  UNLESS YOU DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, WITHIN 30 DAYS OF YOUR RECEIPT OF THIS LETTER, THE DEBT WILL BE ASSUMED TO BE VALID.  IF THE DISPUTE IS RECEIVED IN WRITING, DEBT VERIFICATION, OR A COPY OF THE JUDGMENT WILL BE OBTAINED AND MAILED TO YOU.   IF REQUESTED IN WRITING WITHIN 30 DAYS OF RECEIPT OF THIS LETTER, THE ORIGINAL CREDITOR'S NAME AND ADDRESS WILL BE PROVIDED.**

**From:** William Trachman <wtrachman@mslegal.org>
**Sent:** Wednesday, November 6, 2024 9:29 PM
**To:** Rachel Hogan <rhogan@hgplaw.com>; vlucero@davillierlawgroup.com

SUP000250

**Cc:** John Lohr Jr <jll@hgplaw.com>; Grady Block <gblock@mslegal.org>; Nicole Taylor <ntaylor@mslegal.org>
**Subject:** Re: ARAPAHO - SEARLE; RULE 408 SETTLEMENT OFFER


Hi Rachel—

Thank you for your e-mail and the offer of resolution. We have presented it to our client, and decline. While we are pleased that your clients agree with *Tyler*, and that you think in a perfect world she ought to be owed something from the taking of her home, we don't think the offer fairly represents the exposure to your clients, which goes well beyond the fate of the house.

As you know, we have a claim under 42 USC 1983 against your clients. This is permitted because they acted under color of state law when they secured a property right to Ms. Searle's home. There is little dispute that such claims may be brought against private parties in these contexts, where property is secured through coordinated government and private efforts. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 932-33 (1982) ("[C]onstitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers of the State act jointly with a creditor in securing the property in dispute.").

When a party prevails under 42 USC 1983, that party is entitled to attorney fees under 42 USC 1988. Even in cases where plaintiffs obtain small awards, their attorney fees are shifted to the defendant. For instance, I am attaching a judgment here in Colorado, where a party obtaining a nominal damages award of $1 separately obtained an attorney fee award of $210,000. In short, there is no requirement that an attorney fee award be proportional to the value of any award on the merits.

To date, we have billed approximately $344,000 in fees. That includes the time spent on the complaints, the motions and oppositions in the district court, and our appellate brief.

It also includes a separate Arizona state court complaint that we intend to serve on your clients in the next 2 weeks, given the district court's admonition that Ms. Searle's potentially meritorious claims ought to be brought in state court. We also plan to file a Rule 60 motion in the old foreclosure action.

Separately, since this is a civil rights case, it would be inappropriate to ask us to waive our attorney fees as a condition of meaningful settlement negotiations. *See, e.g., Lisa F. v. Snider*, 561 F. Supp. 724, 725-26 (1983) ("Similarly, private parties to litigation should not be allowed to demand the waiver of attorney fees as a condition to meaningful settlement negotiations on the merits.").

All that said, we propose a counter-offer that includes (1) $500,000 for your clients obtaining the house, as is, and (2) 75% of our current fees, or $227,000, or a total of $727,000. We also don't see why your client should get to retain the $12,000 payments made to live in the house, although we understand that is less important than the other figures above.

I should say that we are very determined in this case to press forward on our clients' economic liberty interests. That includes finalizing the 9th circuit appeal (with oral argument), and seeking further review at the en banc level and with the US Supreme Court, if necessary.

SUP000251

We think the following issues are particularly enticing to judges at those levels: (a) how *Tyler* applies in the context of a private party obtaining and owning the property; (b) whether this may be a private-use taking, and provide an opportunity to re-evaluate the 2005 *Kelo* v. *New London* decision; (c) how *Rooker-Feldman* is being over-used by lower courts generally; and (d) *Rooker-Feldman* operates when a plaintiff could not have relied on a case that did not yet exist at the time of the state court judgment; and (e) based on Justice Kagan's comment at oral argument in *Devillier*, whether an uncompensated taking can be classified as an ongoing injury. In short, your offer does not reflect even the nuisance value of Ms. Searle's complaint, because there are multiple layers of briefing/preparation/travel in these stages. And that is to say nothing of the precedential impact of this case on others who may be similarly situated to Ms. Searle with respect to your clients.

We are amenable to other parts of the offer related to a dismissal of the case—including a vacatur of the holding below—and confidentiality and non-disparagement provisions, understanding that we are a public interest organization and would need some leeway to describe our case as "favorably resolved" or similar wording.

Last, I'll say that while we don't expect your clients to jump at an offer of $727,000, it is our opening counter-offer, and at least provides a good baseline to see if further negotiations are worth the time. It may be harder (for both of us) once our bills mount higher.

Sincerely,

Will

PS: I know that you sent over what is just a draft, but lines like this are not well taken: "In a footnote, Searle cited to *Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024) and *Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1037 (9th Cir. 2018) <u>in an attempt to mislead the Court</u>." First, we cited *Fikre* to establish that Ms. Searle's claims are not moot, despite a change in Arizona law. That is a simple, indisputable point; it's also not about *Rooker-Feldman* at all, and that's why it's relegated to a footnote on page 49. Second, ad hominem attacks like these are troubling, and we won't hesitate to respond to them in our Reply brief. Adjust your draft accordingly, please.

<image002.jpg>

https://www.facebook.com/mountainstateslegalfoundation/

<image003.png>
https://twitter.com/MSLF
<image004.png>

**William E. Trachman**

General Counsel | Mountain States Legal Foundation

Address: 2596 S. Lewis Way, Lakewood, CO 80227

SUP000252

Email: wtrachman@mslegal.org

Web site:
https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.mslegal.org%2f&c=E,1,5N1Ckz1N3er1zHEJLotqrA
Rg9j-VWb5soO-oQO1OoCuC7fcLCWAx2vqnXJ-
6jELVV9m1KRM3vizx503DfqXsRS24yqc_X8dfUA8qay1pTeo,&typo=1www.mslegal.org

Desk Phone : 720-640-8713 | Cell: 303-887-7284

Free country. Free people.

---

**From:** Rachel Hogan <rhogan@hgplaw.com>
**Sent:** Monday, November 4, 2024 12:34 PM
**To:** William Trachman <wtrachman@mslegal.org>; vlucero@davillierlawgroup.com
<vlucero@davillierlawgroup.com>
**Cc:** John Lohr Jr <jll@hgplaw.com>
**Subject:** ARAPAHO - SEARLE; RULE 408 SETTLEMENT OFFER


https://staticmediafiles.s3.amazonaws.com/media/uploads/logo/machineLOGIC_Logo_PNG_42x40_ORNG.png

**machineLOGIC mPOWER Anti-Phishing couldn't recognize this email as this is the first time you have
received an email from this sender rhogan @
https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fhgplaw.com&c=E,1,jEIrqHe2Lrj6Aml0ZuRUCbsiC5kV
Wzt6sPg9zZ09PyxuOO158wLYOmwFBt6mb8SaPe-9apMXaL9a46IRMzBcGmLC4Yp4DKTtgNPxwcwQkDLwB-
D1XgM,&typo=1&ancr_add=1hgplaw.com**


Mr. Trachman and Ms. Lucero:

Please see the attached settlement offer letter from John Lohr.

Thank you,
Rachel

HGPL HAS MOVED!
We are now located at:
8706 E. Manzanita Drive, Suite 100
Scottsdale, AZ 85258

5

Our new office is conveniently located off the AZ Loop 101 Freeway
at Via de Ventura (Exit 43).

<ARAPAHO - SEARLE FED; 25.1 ARAPAHO APPELLEES' JOINT ANSWERING BRIEF 11-14-
24 (2838287).pdf>

SUP000254

**EXHIBIT "2"**

SUP000255

| | |
|---|---|
| **From:** | William Trachman |
| **To:** | John Lohr Jr |
| **Cc:** | Kim Miles; Veronica Lucero; David Goldstein; Kim Miles; Nicole Grunewald; Grady Block |
| **Subject:** | Re: Searle MTD CV 2024-022530 |
| **Date:** | Wednesday, January 29, 2025 5:55:22 PM |
| **Attachments:** | image001.png |
| | image003.png |
| | image004.png |
| | image001.png |
| | image003.png |
| | image004.png |

I totally get it and don't want to waste anyone's time but the rule says it can't just be by email. I'll have Nicole send out an invite for 1pm MT tomorrow.

On the monthly payments, my client's son says he's wiring $4,500 tonight to your trust account. I'm not clear on why those weren't made before now.

On Jan 29, 2025, at 4:03 PM, John Lohr Jr <jll@hgplaw.com> wrote:

William:

You have no grounds to stay the case.
Please explain your basis to stay the ruling other than just to delay unnecessarily.

I am happy to discuss this again.
But I don't see that you gain anything having another conversation about this State case.
We are going to ask that you dismiss.
You are not going to agree.
I am going to tell you again that we are seeking sanctions and you will get offended again.
But happy to have a Groundhog Day moment if you like.
Happy to do it right now or anytime tomorrow or Friday.
Just let me know.

By the way, since your client has not paid anything for the right to maintain possession and is in breach of our agreement, we will be seeking an eviction shortly.

Good day!

**HGPL MOVED!**

As of June 10th, you will find us at:

8706 E. Manzanita Drive, Suite 100

Scottsdale, AZ 85258

Our new office is conveniently located off the AZ Loop 101 Freeway
at Via de Ventura (Exit 43).

HGPL's telephone numbers, email addresses and website will remain the same.

We look forward to seeing you at our new location!



"Try and keep trying with a positive mental attitude."  W. Clement Stone

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  UNLESS YOU DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, WITHIN 30 DAYS OF YOUR RECEIPT OF THIS LETTER, THE DEBT WILL BE ASSUMED TO BE VALID.  IF THE DISPUTE IS RECEIVED IN WRITING, DEBT VERIFICATION, OR A COPY OF THE JUDGMENT WILL BE OBTAINED AND MAILED TO YOU.  IF REQUESTED IN WRITING WITHIN 30 DAYS OF RECEIPT OF THIS LETTER, THE ORIGINAL CREDITOR'S NAME AND ADDRESS WILL BE PROVIDED.**

**From:** William Trachman <wtrachman@mslegal.org>
**Sent:** Wednesday, January 29, 2025 3:47 PM
**To:** Kim Miles (MCAO) <milesk@mcao.maricopa.gov>; John Lohr Jr <jll@hgplaw.com>; Veronica Lucero <vlucero@davillierlawgroup.com>
**Subject:** Re: Searle MTD CV 2024-022530

Thanks Kim. We don't view this e-mail (or the November 18th Rule 408 settlement conference) as sufficient conferral under the relevant rules. Let us know if you'd like to have a phone call.

In any event, we would like to chat with both parties regarding a motion to stay that we intend to file with the court, likely on the same day as the opposition to the MTD. We don't view the filing of the MTD itself as sufficient to satisfy our conferral duty, on the topic of whether you folks will oppose our request to stay the action until the federal case is resolved.



**William E. Trachman**

General Counsel | Mountain States Legal Foundation

Address: 2596 S. Lewis Way, Lakewood, CO 80227

Email: wtrachman@mslegal.org

Web site: www.mslegal.org

Desk Phone : 720-640-8713 | Cell: 303-887-7284

Free country. Free people.

---

**From:** Kim Miles (MCAO) <milesk@mcao.maricopa.gov>
**Sent:** Wednesday, January 29, 2025 2:43 PM
**To:** John Lohr Jr <jll@hgplaw.com>; William Trachman <wtrachman@mslegal.org>; Veronica Lucero <vlucero@davillierlawgroup.com>
**Subject:** Searle MTD CV 2024-022530

Good afternoon,

I just wanted to reach out and let you know that I am planning on joining Mr. Lohr's MTD and raising the same arguments the County did previously.  My joinder may not be filed until late next week.  I know there is a current extension in effect, but just wanted to let you know.

Kim Miles, DCA
Maricopa County Attorney's Office

# EXHIBIT "4"

Clerk of the Superior Court
*** Electronically Filed ***
03/10/2025 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2024-022530                                    03/06/2025


HONORABLE CHRISTOPHER WHITTEN

CLERK OF THE COURT
C. Lockhart
Deputy


CHRISTINE M SEARLE                    VERONICA LUCERO

v.

JOHN M ALLEN, et al.                  JOHN M ALLEN
                                      301 W JEFFERSON ST STE 100
                                      PHOENIX AZ  85003


                                      JOHN L LOHR JR.
                                      KIM MILES
                                      JUDGE WHITTEN


MINUTE ENTRY


    The Court has received and reviewed Defendants Arapaho, LLC and American Pride Properties, LLC's *Motion to Dismiss*,  filed December 27, 2024 and *Defendant John M. Allen, in His Official Capacity as the Treasurer of Maricopa County, and Maricopa County's Joinder to Arapaho, LLC and American Pride Properties, LLC's Motion to Dismiss Pursuant to Ariz.R.Civ.P 12(b)(6) and 12(b)(7)*, filed February 7, 2025.

    Plaintiff has filed an opposition to both motions.

    Good cause appearing,

    **IT IS ORDERED** granting both motions to dismiss.


Docket Code 019              Form V000A                    Page 1

SUP000340

# EXHIBIT "5"

Clerk of the Superior Court
*** Electronically Filed ***
10/02/2025 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2024-022530                                             09/29/2025


HONORABLE CHRISTOPHER WHITTEN              CLERK OF THE COURT
                                                C. Lockhart
                                                  Deputy


CHRISTINE M SEARLE                    VERONICA LUCERO

v.

JOHN M ALLEN, et al.                  KIM MILES


                                      JOHN L LOHR JR.
                                      CHARLES E TRULLINGER
                                      JAMES C SABALOS
                                      JUDGE WHITTEN


MINUTE ENTRY


East Court Building – Courtroom 413


9:28 a.m.   This is the time set for an Oral Argument regarding Plaintiff's Notice of Dismissal without Prejudice Under Ariz.R.Civ.P. 41(a)(1)(A)(i), in Light of Ninth Circuit Ruling; or in the Alternative, Request to Dismiss without Prejudice, filed August 29, 2025.  Plaintiff, Christine M. Searle, who is not present, is represented by counsel William Trachman *(pro hac vice)* on behalf of counsel of record Veronica Lucero.  Defendant, Maricopa County, is represented by counsel, Kim Miles and Charles E. Trullinger.  Defendants, Arapaho LLC, and American Pride Properties LLC, are represented by counsel, John L. Lohr Jr. Court reporter, Robin Lawlor, is present.  All appearances are virtual.

Court reporter, Robin Lawlor, is present and a record of the proceedings is also made digitally.

Argument is presented to the Court.

Docket Code 005                     Form V000A                         Page 1

SUP000419

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2024-022530                                                09/29/2025

For the reasons set forth on the record,

**IT IS ORDERED** taking this matter under advisement.

10:08 a.m. Matter concludes.

**LATER:**

There are two issues raised by the parties that have now been fully briefed:

1) Defendant's Proposed Form of Judgment, filed March 19, 2025, and
2) Plaintiff's Notice of Voluntary Dismissal or, in the Alternative, Motion to Dismiss without prejudice, filed August 29, 2025.

The Court benefited from oral argument on both motions on September 29, 2025.

By order dated March 6, 2025, this Court stayed all proceedings pending resolution of the appeal of the related federal case. At the time of that stay, however, Defendants' motions to dismiss were already fully briefed and under advisement. On the same date that it stayed further proceedings, this Court granted both motions to dismiss. Nothing done by the Defendants to reduce the grant of their motions to dismiss was done in violation of the stay.

On June 11, 2025, the Court continued the stay but did not enter the form of judgment requested by Defendants, waiting for the federal appeal to be resolved. The day after the Ninth Circuit issued its opinion on August 28, 2025, Plaintiff filed a notice of voluntary dismissal under Rule 41(a)(1)(A)(i).

The Court concludes that Plaintiff's August 29, 2025 notice of dismissal was ineffective. Once this Court had considered and granted Defendants' motions to dismiss, Plaintiff no longer held the unilateral right to voluntarily dismiss the action. Rule 41(a)(1)(A)(i) provides that such a notice is effective only if filed before an answer or a motion for summary judgment is served, and before the Court has ruled on the merits. Because the motions to dismiss were submitted, briefed, and granted, Plaintiff cannot avoid the Court's ruling by attempting to file a notice of dismissal.

The Court agrees with Maricopa County that dismissal with prejudice is appropriate as to all claims except Counts One and Five, which should be dismissed without prejudice to their being considered by the Federal District Court of Arizona. The Ninth Circuit's opinion clarifies

SUP000420

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2024-022530                                    09/29/2025

that any claims directly attacking the state foreclosure judgment are barred, and that the facial challenge to the statute has been mooted by legislative amendment.  This Court expresses no opinion on the merits of those claims in the District Court.

Accordingly, the Court grants dismissal with prejudice of all counts other than Counts One and Five. Counts One and Five are dismissed without prejudice.

**IT IS ORDERED** that Plaintiff's August 29, 2025 Notice of Voluntary Dismissal is denied as ineffective.

**IT IS FURTHER ORDERED** Defendant's Proposed Form of Judgment be modified consistently with the above and re-submitted to the Court by no later than **October 10, 2025**.

SUP000421

# EXHIBIT "6"

Granted as Submitted
***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
C. Lockhart, Deputy
10/29/2025 8:00:00 AM
Filing ID 20839631

John L. Lohr, Jr. (SBN 019876)
David B. Goldstein (SBN 003410)
Justin D. Yetter (SBN 038956)
**HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC**
8706 E. Manzanita Drive, Suite 100
Scottsdale, Arizona 85258
Telephone:  480-991-9077
E-mail: jll@hgplaw.com
dbg@hgplaw.com
jyetter@hgplaw.com
minute@hgplaw.com
*Attorneys for Arapaho, LLC*
*and American Pride Properties, LLC*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

CHRISTINE M. SEARLE;

Plaintiff,

v.

JOHN M. ALLEN, IN HIS OFFICIAL
CAPACITY AS THE TREASURER OF
MARICOPA COUNTY; ARAPAHO, LLC;
AMERICAN PRIDE PROPERTIES, LLC;
MARICOPA COUNTY, JOHN DOE; JANE
DOE; BLACK CORPORATIONS; WHITE
PARTNERSHIPS; and GREEN LIMITED
LIABILITY COMPANIES,

Defendant.

Case No. CV2024-022530

**JUDGMENT OF DISMISSAL**

(Assigned to the Honorable
Christopher Whitten)

THIS MATTER came before the Court on Defendants, Arapaho, LLC, and American Pride Properties, LLC's Motions to Dismiss, and Defendants John M. Allen, in his official capacity as Treasurer of Maricopa County, and Maricopa County's Joinder therein.

The Court, by Minute Entry dated March 6, 2025, granted Defendants' Motions to Dismiss. By subsequent Minute Entry dated September 29, 2025, the Court determined that Plaintiff's August 29, 2025 Notice of Dismissal was ineffective, and ruled that dismissal with prejudice is appropriate as to all counts of Plaintiff's, Christine M. Searle, Verified Complaint dated August 19, 2025 except Counts One and Five, which are dismissed without prejudice due

22071-230:PD 2942993v2

SUP000428

to their being considered in the United States District Court for the District of Arizona. Accordingly,

**IT IS ORDERED, ADJUDGED, AND DECREED** that:

1. Plaintiff's Count One (THE VIOLATION OF PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983 FAILURE TO PAY JUST COMPENSATION AGAINST ALL DEFENDANTS) is dismissed without prejudice.

2. Plaintiff's Count Two (THE VIOLATION OF PLAINTIFF'S PROPERTY RIGHTS UNDER 42 U.S.C. § 1983 NO PUBLIC USE AGAINST ALL DEFENDANTS) is dismissed with prejudice.

3. Plaintiff's Count Three (TAKING OF PRIVATE PROPERTY DIRECT FIFTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS FOR NO JUST COMPENSATION AND NO PUBLIC USE) is dismissed with prejudice.

4. Plaintiff's Count Four (EXCESSIVE FINES VIOLATION OF THE UNITED STATES CONSTITUTION AGAINST ALL DEFENDANTS) is dismissed with prejudice.

5. Plaintiff's Count Five (TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE ARIZONA CONSTITUTION NO JUST COMPENSATION AGAINST ALL DEFENDANTS) is dismissed without prejudice.

6. Plaintiff's Count Six (TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE ARIZONA CONSTITUTION NO VALID PUBLIC OR PRIVATE USE AGAINST ALL DEFENDANTS) is dismissed with prejudice.

7. Plaintiff's Count Seven (EXCESSIVE FINES VIOLATION OF THE ARIZONA CONSTITUTION AGAINST ALL DEFENDANTS) is dismissed with prejudice.

8. Plaintiff's Count Eight (VIOLATION OF THE ARIZONA GIFT CLAUSE AGAINST DEFENDANTS ALLEN AND MARICOPA COUNTY) is dismissed with prejudice.

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

2

22071-230:PD 2942993v2

9.     Plaintiff's Count Nine (UNJUST ENRICHMENT AGAINST ARAPAHO; AMERICAN PRIDE; JOHN DOE; JANE DOE; BLACK CORPORATIONS, WHITE PARTNERSHIPS, AND GREEN LIMITED COMPANIES) is dismissed with prejudice.

10.   Plaintiff's August 29, 2025, Notice of Voluntary Dismissal is denied as ineffective.

11.   There being no just reason for delay, final judgment is entered pursuant to Rule 54(c), Arizona Rules of Civil Procedure.

DONE IN OPEN COURT this ___ day of _____, 2025.

_____
The Honorable Christopher Whitten
Maricopa County Superior Court Judge

HYMSON GOLDSTEIN PANTILIAT & LOHR, PLLC
8706 E. Manzanita Dr., Suite 100
Scottsdale, Arizona 85258
Telephone: 480-991-9077 / Facsimile: 480-443-8854

3

SUP000430

# eSignature Page 1 of 1

Filing ID: 20839631   Case Number: CV2024-022530
Original Filing ID: 20694371

**Granted as Submitted**



/S/ Christopher Whitten Date: 10/28/2025

Judicial Officer of Superior Court

SUP000431

**ENDORSEMENT PAGE**

CASE NUMBER: CV2024-022530                    SIGNATURE DATE: 10/28/2025

E-FILING ID #: 20839631                       FILED DATE: 10/29/2025 8:00:00 AM


JOHN L LOHR JR.


KIM MILES


VERONICA LUCERO

SUP000432